ORIGINAL

DONALD SEARLES, Cal. Bar No. 135705
SearlesD@sec.gov
KELLY BOWERS, Cal. Bar No. 164007
BowersK@sec.gov
J. CINDY ESON, Cal. Bar. No. 219782
EsonJC@sec.gov
ROBERTO A. TERCERO, Cal. Bar No. 143760
TerceroR@sec.gov

Attorney for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Acting Regional Director
Andrew Petillon, Associate Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California  90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908


FILED
MAR 0 4 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

vs.

TUCO TRADING, LLC, and DOUGLAS G. FREDERICK,

    Defendants.

Case No.: '08 CV 0400 DMS BLM

RECOMMENDATION BY PLAINTIFF SECURITIES AND EXCHANGE COMMISSION THAT THOMAS F. LENNON BE APPOINTED TEMPORARY RECEIVER

1   Plaintiff Securities and Exchange Commission ("Commission") seeks the appointment of
2  a temporary receiver over Tuco Trading, LLC ("Tuco") and their subsidiaries and affiliates. The
3  commission requests the temporary receiver have the full powers of an equity receiver, including
4  but not limited to, full power over all funds, assets, collateral, premises books, records, papers,
5  and other real or personal property, belonging to, being managed by, or in the possession or
6  control of Tuco, and any of its subsidiaries and affiliates.
7   The Commission respectfully recommends the appointment of Thomas F. Lennon as
8  temporary receiver. Attached as Exhibit 1 is a true and correct copy of Mr. Lennon's proposal,
9  containing his resume and his letter setting forth additional information, including hourly rates he
10 charges for his and his staff's time, and what steps he would take if initially appointed as the
11 receiver.
12  The Commission recommends Mr. Lennon for several reasons. First, he is an
13 experienced receiver who has supervised numerous large and complex receiverships with assets
14 that have ranged over a billion dollars in similar enforcement actions brought by the Commission
15 and other regulatory and enforcement agencies and, as such, is qualified to serve as a receiver
16 over Tuco. Second, his hourly rate of $300 and his hourly rate of $120 - $270 for his staff are
17 reasonable. In addition, Mr. Lennon intends to use, on as as-needed basis: outside counsel, with
18 experience in receivership proceedings, litigation, securities and secured financing transactions;
19 an outside accountant, who has substantial experience in forensic auditing and is knowledgeable
20 in investor-related transactions on the Internet; and a computer consultant who has performed
21 work for Mr. Lennon on several major Commission cases. Based on the team of professionals
22 that he will form to accomplish these tasks, the Commission expects that Mr. Lennon will be
23 able to quickly evaluate the steps necessary to locate, manage, and protect the personal and real
24 property assets of Tuco. Third, it appears that Mr. Lennon will make every attempt to minimize
25 overall expenses to the receivership estate, by, among other things, following his standard
26 practice of utilizing members of his staff that are qualified to complete the necessary tasks at the
27 lowest rate and by attempting to make sure that most of the administrative work will be done by
28 his own office.

-2-

1  For these reasons, and the reasons stated in his proposal attached as Exhibit 1 hereto, the
2  Commission respectfully recommends that the Court appoints Thomas F. Lennon as temporary
3  receiver in this matter.

8  DATED: March 3, 2008

_____
DONALD W. SEARLES
Attorney for Plaintiff
Securities and Exchange Commission

**THOMAS F. LENNON, INC.**
7777 ALVARADO RD., SUITE 712
LA MESA, CA 91941-3688
(619) 668-6680   FAX: (619) 465-9288
E-MAIL: tlennon@tflinc.com

February 7, 2008
By facsimile: 323 965 4513

Cindy Eason, Esquire
United States Securities and Exchange Commission
Pacific Regional Offices
11th Floor
5670 Wilshire Boulevard
Los Angeles, California 90036-3648

RE:   Proposal to act as Receiver

Dear Ms. Eason:

I am pleased to present a proposal to act as Receiver at the request of the SEC in the matter regarding a broker/dealer of unregistered securities operating out of San Diego, California. Enclosed is a copy of my resume for your information. Regarding your request for a proposal, I have prepared comments on items that relate to your request. They are outlined below:

   (1)   <u>Hourly Rates</u>.  My rate as Receiver is $300.00 per hour. My staff rates vary from $125.00 for accounting and control functions and up to $270.00 per hour for other professionals on my staff. It is my standard practice to utilize the qualified employee with the lowest rate to accomplish the task required.

I would use Allen, Matkins, Leck, Gamble & Mallory ("Allen Matkins") as my counsel in this case. I have had extensive and satisfactory dealings with Allen Matkins in the areas with which this case is concerned. The rates for their attorneys, including those with experience in receivership proceedings, litigation, securities, and secured financing transactions, range from $300 to $600 per hour and paralegals $100 to $200 per hour. They have agreed to limit costs for which they will seek reimbursement to those permitted by the United States Trustee Guidelines covering the representation of bankruptcy trustees and debtors-in-possession.

I would use William H. Ling, CPA as my accountant in this case. The Ling firm has extensive forensic audit experience and is well versed in the use of the Internet for investor related transactions. The rates for Mr. Ling's work and that of his staff range from $100 to $250 per hour.

I am prepared to retain Investigative Technologies as my computer consultant who has performed extensive work for me on several major SEC cases. The rates for the principal and staff range from $200 to $300 per hour.

Financial Consulting / Receiverships / Workouts / Turnarounds / Expert Testimony
Member National Association of Bankruptcy Trustees

Exhibit ____1____ Page ___3___

Cindy Eason, Esquire
February 7, 2008
Page 2

(2) <u>Discounts</u>. My rate and those of my staff are not discounted rates but they are significantly lower than those of many other experienced Receivers. The rates for the attorneys and accountants do not include discounts. In my extensive experience with major law firms, I believe these rates to be reasonable and justified in a case of this type. Allen Matkins' rates, William Ling's rates and my firm's rates will be held at the levels stated until at least July 1, 2008. Travel time to and from the properties and the city in which the presiding Court is located, other than San Diego, will be included in my billings for time. Out of pocket expenses, including airline tickets, meals and lodging, will be billed at cost.

(3) <u>Proposed actions as Receiver</u>.
My recommendations are based upon extensive experience in the handling of various defendant entities.

- I would contact all of the investors included in the case and advise them of my appointment, assure them that I will move expeditiously to resolve all outstanding issues and that I would keep them informed as the case progresses. I would advise them of the reasons why the SEC has had me appointed, including any underlying failures on the part of previous management to tell them the true facts regarding their investments. As part of the process of providing information to the investors and other interested parties I would establish a link to a case-specific page within my website (tflinc.com) and provide that information to investors, creditors and all interested parties.
- Initially, I would identify all assets owned by the entities involved, research and analyze all ownership interests of each of the entities and any related liability issues. I would undertake a complete accounting including a schedule of sources and uses of funds with the goal of identifying the alleged $2.2 million that is missing or unaccounted for. Based on the foregoing, I would seek to collect from the principal and then distribute or credit investor accounts.
- I would locate, review and analyze any investments included in the case, take possession of them on behalf of the Receivership and provide for their security.
- I would work closely with the SEC in seeking disgorgement from the principals of the investing entity to the extent permitted by the Court. If appropriate, I would anticipate retention of a private investigator, at rates commensurate with those ordinarily charged in such circumstances, in identifying and obtaining control over the personal assets and bank accounts of the principals as part of the disgorgement process.
- Preliminary research regarding the status of the other offices has revealed that the international offices and the office in Houston have already been closed.

(4) <u>Staffing</u>. I maintain a staff of five people in my office with extensive skills and work experience. In addition, because of my almost 30 years of experience in this profession, I have access to contract labor personnel who are available for immediate assistance on projects. I would anticipate that for the first month or two, my staff and I would devote a significant percentage of our time to this case. My involvement would decrease as time passed, but a senior member of my staff or I would oversee the day to day operations of the trading entity as long as necessary. While I would retain professionals such as lawyers and brokers, most of the

Exhibit ___1___ Page ___4___

Cindy Eason, Esquire
February 7, 2008
Page 3

administrative work on this case would be handled by my office, which would result in significant savings to the estate.

    (5)    <u>Other Pertinent Information</u>. Upon my appointment, the team that I would assemble to deal with this matter will bring in-depth experience across the broad spectrum of the challenges found in this case. During my career, I have acted as a Receiver for the Securities and Exchange Commission in cases involving assets of over a billion and one half dollars. Among the cases that I have handled for the SEC are 12dailyPro - online autosurf ponzi scheme involving 175,000 investors with original investments of $500 million; Learn Waterhouse – $80 million ponzi scheme; Alpha Telcom - $130 million payphone ponzi scheme; Doerring & Associates - $200 million multi entity real estate syndicator and developer; Continental Wireless Cable - $40 million boiler room fraud involving 3,000 investors and Whitworth Energy Resources - $22 million oil and gas Ponzi scheme involving 1,700 investors. A number of the SEC cases have included Ponzi like schemes and fraud, and I have functioned as a Receiver for other government agencies, courts and financial institutions in well over 100 cases. I have been a consultant and have advised major lending institutions on their loan portfolios.

Another case that I have handled for the SEC was Capital Consultants, LLC. CCL chose a variety of investment vehicles on behalf of its clients. CCL placed approximately $442 million into public equities and cash and approximately $485 million into private investments including loans and private equities. The public equities in the case required coordination and supervision of the senior officers of CCL who handled the buying and selling associated with this case.

Allen Matkins also has significant experience representing receivers in SEC fraud cases, having served as my counsel in most of the above-mentioned cases. In addition Allen Matkins has represented bankruptcy trustees and examiners in a variety of fraud and Ponzi based enterprises. They have also represented an internet-based sales company in bankruptcy reorganization. Allen Matkins has expertise in a broad range of substantive areas such as real estate transactions, technology law and secured financing that can be tapped as needed for this case.

I trust the information I have provided is responsive to your requirements. If there is any additional information you require, please call me at your convenience.

                        Very truly yours,

                        Thomas F. Lennon

Exhibit ___1___ Page ___5___

**THOMAS F. LENNON**
7777 Alvarado Road, Suite 712
La Mesa, CA 91941
(619) 668-6680

## Business Workout Experience

**2006 - Present   Receiver: 12Daily Pro and Related Entities**

- Appointed by U.S. District Court in Los Angeles, CA at the request of the Securities and Exchange Commission.
- Assumed control of companies assets and operations.
- Over 300,000 investors with more then $400,000 million invested.

**2005 - Present   Receiver: Credit First, LLC and Related Entities**

- Appointed by U.S. District Court in Los Angeles, CA, at the request of the Securities and Exchange Commission.
- Assumed control of company's assets and operations of acquisition and sale of debt portfolios.
- Approximately 200 investors with $10.7 million invested.

**2004 - Present   Receiver: Learn Waterhouse, Inc.**

- Appointed by U.S. District Court in San Diego, CA, at the request of the Securities and Exchange Commission.
- Assumed control of company's assets and operations.
- Over 2000 investors with more than $56 million invested.

**2001 - Present   Receiver: Alpha Telcom and Related Entities**

- Appointed by U.S. District Court in Portland, OR, at the request of the Securities and Exchange Commission.
- Assumed all management and operating control.
- Appointed by the U.S. Bankruptcy Court for the district of Oregon as the sole natural person in charge of the bankruptcy.
- Case includes over 7,000 investors and 15,000 pay phones operating in 40 states.
- An orderly liquidation is being conducted.

**2000 - Present   Receiver: Capital Consultants, LLC**

- Appointed by U.S. District Court in Portland, OR, at request of the Department of Labor and the Securities and Exchange Commission.
- Assumed all management and operating control.
- Over $1 billion in assets.
- Is administrating an orderly liquidation.

Exhibit ___1___ Page ___6___

**1996 - 1998   Responsible Officer:** San Diego Symphony Orchestra

- Appointed by the Bankruptcy Court of San Diego, CA, worked pro-bono in a custodial role to bring the Orchestra through a successful reorganization strategy and plan.
- As the Chapter XI responsible officer, helped to create a revenue stream for the bankrupt Symphony and keep it out of Chapter VII.
- Assets included approximately 80 highly trained musicians and the Copley Symphony Hall.

**1987 - 2000   Trustee and Receiver**

- Extensive experience as Trustee/Receiver in a variety of cases under the jurisdiction of U.S. Bankruptcy Court, U.S District Court and Superior Court for the State of California involving operational control of $150 million in assets.
- Served as SEC Receiver in Continental Wireless Cable TV., Inc., a $40 million boiler room fraud involving 3000 investors, and Whitworth Energy Resources, a $22 million oil and gas Ponzi scheme involving 1700 investors. (A number of the SEC cases have included Ponzi like schemes and fraud.)
- Administrator for Receivership Estates before the SEC and Receiver for other government agencies, courts and financial institutions in well over 100 cases.
- A consultant and advisor to major lending institutions on their loan portfolios.
- Specialized in construction and sale of commercial and residential real estate projects. Successfully completed and sold residential subdivisions, which had been halted due to developers' insolvency.

**1985 - 1987   Receiver:** Doerring & Associates, Inc.

- Appointed by United States District Court, at the request of the Securities and Exchange Commission, to assume all management and operating control of this multi-entity real estate syndicator and developer.
- Responsibility for over $200 million in projects, including commercial buildings, shopping centers, apartment complexes and acreage.
- Organized and directed committees of investors to restructure over 80 limited partnerships involving 850 investors.
- Conducted extensive negotiations with lenders, creditors and attorneys. Liquidated or proposed substitute general partners for all entities within fifteen months.

**1977 - 1982   President & CEO:** TraileRancho Corporation

- Overall responsibility for operation and highly successful liquidation of this publicly held real estate developer specializing in mobile home parks.
- Over $40 million in 18 projects sold within one year resulting in 1350 shareholders receiving four times market value for their shares.
- Appointed by Board of Directors as a result of investigations by Securities and Exchange Commission, California Department of Corporations and Nevada Gaming Commission.

**1975 - 1977   Corporate Controller:** Royal Inns of America, Inc.

- Joined this developer/operator of hotels/motels as part of trustees' management team shortly after it filed for reorganization under Chapter XI.
- Streamlined entire financial reporting systems and drastically reduced corporate overhead.
- Worked closely for trustees in bankruptcy, attorneys, investors and creditors in formulating and implementing plan of reorganization.

Exhibit ____1____ Page ___7___

### Other Business Experience

**1982 - 1985**   **Financial Consultant**

Advised clients on a wide range of business aspects. List of clients included law firms, medical professionals, and real estate developers. Emphasis on securing financing for new projects.

**1969 - 1975**   **CPA-Audit Supervisor**

Pannell, Kerr, Forster & Co., New York, N.Y. & San Diego. Specialized in audits of publicly held companies in hotel and real estate industries.

### Reference

Karen Matteson, Regional Trial Counsel
Securities and Exchange Commission Pacific Regional Office
5670 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90036-3648

### Personal

Age 62. Married with two children.

Exhibit 1   Page 8