1  DONALD W. SEARLES, Cal. Bar No. 135705
   SearlesD@sec.gov
2  KELLY BOWERS, Cal. Bar No. 164007
   BowersK@sec.gov
3  J. CINDY ESON, Cal. Bar. No. 219782
   EsonJC@sec.gov
4  ROBERTO A. TERCERO, Cal. Bar No. 143760
   TerceroR@sec.gov
5
   Attorneys for Plaintiff
6  Securities and Exchange Commission
   Rosalind R. Tyson, Acting Regional Director
7  Andrew Petillon, Associate Regional Director
   5670 Wilshire Boulevard, 11th Floor
8  Los Angeles, California 90036
   Telephone: (323) 965-3998
9  Facsimile: (323) 965-3908



**ORIGINAL**

**FILED**

MAR 0 4 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY

10

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13

14

15  SECURITIES AND EXCHANGE              Case No.:
    COMMISSION,
16                                        DECLARATION OF KENT L. WOO IN SUPPORT
                                          OF PLAINTIFF SECURITIES AND EXCHANGE
17           Plaintiff,                   COMMISSION'S *EX PARTE* MOTION FOR A
                                          TEMPORARY RESTRAINING ORDER AND
18       vs.                              ORDERS: (1) FREEZING ASSETS; (2)
                                          APPOINTING A TEMPORARY RECEIVER; (3)
19  TUCO TRADING, LLC, and DOUGLAS G.     GRANTING EXPEDITED DISCOVERY; (4)
    FREDERICK,                            PROHIBITING THE DESTRUCTION OF
20                                        DOCUMENTS; (5) REQUIRING ACCOUNTINGS;
             Defendants.                  AND (6) ORDER TO SHOW CAUSE RE
21                                        PRELIMINARY INJUNCTIONS AND
                                          APPOINTMENT OF A RECEIVER
22
                                          VOLUME I
23

24

25

26

27

28

1    I, KENT L. WOO, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

2         1.     I am a certified public accountant licensed in the State of California.  I am

3    employed by the United States Securities and Exchange Commission (the "Commission") as a

4    Branch Chief in the Broker-Dealer Regulation section in the Los Angeles Regional Office.  I

5    make this declaration in support of the Commission's *Ex Parte* Motion for Temporary

6    Restraining Order And Orders:  (1) Freezing Assets; (2) Appointing a Temporary Receiver; (3)

7    Granting Expedited Discovery; (4) Prohibiting the Destruction of Documents; (5) Requiring

8    Accountings; and (6) Order to Show Cause Re Preliminary Injunctions and Appointment of a

9    Permanent Receiver.  I have personal knowledge of the matters set forth herein and, if called as a

10   witness, could and would competently testify under oath hereto.

11        2.     In the course of my duties with the Commission, I conduct and supervise

12   examinations and inspections of broker-dealers registered with the Commission.  The purpose of

13   these examinations and inspections is to ensure that broker-dealers comply with the federal

14   securities laws, with particular emphasis on the Securities Exchange Act of 1934 ("Exchange

15   Act").  Other purposes include detecting fraud and other violations of the securities laws,

16   fostering broker-dealer compliance with those laws, and helping to ensure that the Commission

17   is continually made aware of developments and areas of potential risk in the securities industry.

18        3.     My responsibilities include: (1) obtaining and analyzing documents; (2)

19   interviewing witnesses; (3) applying statutes and regulations promulgated by the Commission;

20   and (4) ensuring compliance with the rules and regulations of self-regulatory organizations, such

21   as the Financial Industry Regulatory Authority ("FINRA").  In my capacity as a Branch Chief in

22   the Broker-Dealer Regulation section for the Commission, I am required to be, and have become,

23   personally familiar with the manner in which the Commission's documents, books and records

24   are prepared and made.  The Commission maintains records of its examinations and inspections

25   in the ordinary and regular course of its business, and it is the ordinary and regular course of

26   business of the Commission to make and keep such records.  It is the regular course of business

27   of the Commission's staff with knowledge of an examination or inspection to make or receive a

28   record of the activity or to transmit information thereof to be included in such record, and the

1 | record was made at or near the time of the activity or reasonably soon after.

2 | <u>**THE COMMISSION STAFF'S EXAMINATION OF GLB TRADING, INC.**</u>

3 |     4.      The Commission staff received information indicating that, from at least

4 | November 2006 to the present, Douglas G. Frederick ("Frederick"), a registered representative

5 | associated with registered broker-dealer GLB Trading, Inc. ("GLB Trading"), may be operating

6 | an unregistered broker-dealer named Tuco Trading, LLC ("Tuco"), through GLB Trading.

7 | Accordingly, another Commission staff member and I conducted an examination of GLB

8 | Trading pursuant to the Commission's statutory authority over broker-dealers.

9 |     5.      During the examination, the Commission staff interviewed witnesses, and sought

10 | and obtained documents and other materials regarding the activities of Tuco and Frederick, both

11 | whom are named as defendants in this action.  The Commission staff kept records of the

12 | examination in the ordinary and regular course of business, and it was the ordinary and regular

13 | course of business to make and maintain such records.

14 |     6.      I confirmed that GLB Trading is a registered broker-dealer by utilizing a database

15 | maintained by FINRA, called the Central Registration Depository ("CRD"), which provides the

16 | Commission, participating states, self-regulatory organizations, and other regulators and

17 | authorized users with licensing and registration information regarding broker-dealers and their

18 | associated persons.  According to the CRD database, GLB Trading is an Irvine, California-based

19 | broker-dealer registered with the Commission since June 11, 2003.  According to the CRD

20 | database, GLB Trading is an introducing broker and clears its securities transactions through

21 | Penson Financial Services, Inc. ("Penson").  Attached hereto as Exhibit 1 is a true and correct

22 | copy of GLB Trading's Form BD (Uniform Application for Broker-Dealer Registration), dated

23 | January 29, 2008, from the CRD database.  Attached hereto as Exhibit 2 is a certified attestation

24 | by the Commission's Office of Filings and Information Services stating that GLB Trading is

25 | registered with the Commission as a broker-dealer.

26 |     7.      According to the CRD database, Frederick holds Series 7, 55, and 63 securities

27 | licenses and has been associated with GLB Trading since April 2006.  Attached hereto as Exhibit

28 | 3 is a true and correct copy of Frederick's Form U4 (Uniform Application for Securities Industry

1 | Registration or Transfer), as of November 16, 2007, from the CRD database.

2 | <u>**TUCO IS NOT REGISTERED WITH THE COMMISSION**</u>

3 | <u>**AS A BROKER-DEALER**</u>

4 |       8.     I confirmed that Tuco is not registered with the Commission as a broker-dealer.

5 | There was no record in the CRD database for Tuco. Moreover, according to the Commission's

6 | Office of Filings and Information Services, Tuco is not registered with the Commission as

7 | broker-dealer under the Exchange Act. Attached hereto as Exhibit 4 is a certified attestation by

8 | the Commission's Office of Filings and Information Services stating that Tuco is not registered

9 | with the Commission as a broker-dealer.

10 | <u>**FREDERICK IS NOT REGISTERED WITH THE COMMISSION**</u>

11 | <u>**IN ANY CAPACITY**</u>

12 |       9.     According to the Commission's Office of Filings and Information Services,

13 | Frederick is not registered with the Commission in any capacity. Attached hereto as Exhibit 5

14 | are certified attestations provided by the Commission's Office of Filings and Information

15 | Services stating that Frederick is not registered with the Commission in any capacity.

16 | <u>**FREDERICK IS TUCO'S SOLE MANAGING MEMBER**</u>

17 |       10.    During the examination, the Commission staff requested and obtained from GLB

18 | Trading the account opening documents for Tuco's brokerage accounts at GLB Trading. Based

19 | upon my review of the account opening documents, I have determined that Tuco maintains three

20 | brokerage accounts at GLB Trading: account number 2131-4075, opened in November 2006;

21 | account number 2131-7813, opened in May 2007; and account number 2132-0155, opened in

22 | September 2007 (the "Master Accounts"). Based upon my review of the account opening

23 | documents and Frederick's statements to me during the examination, I have determined that

24 | Frederick is the broker of record for each Master Account. A true and correct copy of the

25 | account opening documents for account number 2131-4075 is attached hereto as Exhibit 6. A

26 | true and correct copy of the account opening documents for account number 2131-7813 is

27 | attached hereto as Exhibit 7. A true and correct copy of the account opening documents for

28 | account number 2131-0155 is attached hereto as Exhibit 8.

11.    Based upon my review of the account opening documents for Tuco's Master Accounts at GLB Trading, I have determined that Frederick is Tuco's sole managing member and has sole access to the funds and securities held in Tuco's brokerage accounts at GLB Trading. Moreover, in interviews with the Commission staff, Frederick told me that he is Tuco's sole managing member and has sole access to the funds and securities in Tuco's brokerage accounts at GLB Trading.

### TUCO'S MASTER/SUB-ACCOUNT ARRANGEMENT AT GLB TRADING

12.    During the examination, Frederick told me that the Master Accounts were funded primarily from monies Tuco raised from its "members," also known as "traders." Frederick told me that Tuco uses its own back office system to create and maintain for each trader a "sub-account" within Tuco's Master Accounts at GLB Trading. Frederick also told me that Tuco provides the traders with trading platform software that allows each trader to use his or her sub-account to place securities trades in Tuco's Master Accounts.

13.    During the examination, Frederick told me that Tuco's traders were not customers of GLB Trading or Penson. Frederick also told me that the traders and their sub-accounts are largely unknown to GLB Trading.

14.    According to information provided to the Commission staff by Frederick on February 25, 26, and 28, 2008, Tuco's traders are:  1) individuals or entities who trade through one or more sub-accounts; or 2) "trading groups," i.e., individuals who have agreed among themselves to trade as a group through multiple sub-accounts and provide cross-guarantees for each other.  (See Exhibits 11 to 14, infra.)

15.    According to information provided to the Commission staff by Frederick on February 25, 26, and 28, 2008, Tuco combines, or "nets," the positive and negative equity balances of traders and trading groups with multiple sub-accounts.  (See Exhibits 11-14, infra.)

### EQUITY BALANCES REFLECTED IN TUCO'S BACK OFFICE SYSTEM AS OF DECEMBER 31, 2007

16.    On February 4, 2008, Frederick sent me a spreadsheet showing the equity balances in each trader's sub-account or sub-accounts, as of December 31, 2007, as reflected in Tuco's back office system. [Declaration of Roberto A. Tercero in Support of Plaintiff Securities

1  and Exchange Commission's Ex Parte Motion for a Temporary Restraining Order and Orders:

2  (1) Freezing Assets; (2) Appointing a Temporary Receiver; (3) Granting Expedited Discovery;

3  (4) Prohibiting the Destruction of Documents; (5) Requiring Accountings; and (6) Order to Show

4  Cause re Preliminary Injunctions and Appointment of a Receiver ("Tercero Dec."), Ex. 14.]

5        17.    On February 12, 2008, Frederick sent me a revised spreadsheet, which he stated

6  showed the revised equity balances in each trader's sub-account or sub-accounts, as of December

7  31, 2007, as reflected in Tuco's back office system.  [Tecero Dec., Ex. 15.]

8        18.    Based on my review of the revised equity balances spreadsheet sent to me by

9  Frederick on February 12, 2008, and further information provided to the Commission staff by

10  Frederick on February 25, 26, and 28, 2008, I have determined that Tuco's back office system

11  showed that, as of December 31, 2007, Tuco had 274 traders with 330 sub-accounts.  According

12  to Tuco's back office system, as of December 31, 2007, 186 traders had 229 sub-accounts with a

13  net positive equity balance of $10,208,588.  Of the 229 sub-accounts with net positive equity

14  balances, 157 had equity balances of less than $25,000.

15                 **TUCO'S NET ASSETS AS OF DECEMBER 31, 2007**

16        19.    During the examination, I reviewed the monthly brokerage account statements for

17  the Master Accounts provided to the Commission staff by GLB Trading for the period ending

18  December 31, 2007.  [Tercero Dec., Ex. 10.]  Based on my review of the monthly account

19  statements for the Master Accounts, I have determined that the value of each Master Account, as

20  of December 31, 2007, was as follows:

21          a.   account number 2131-4075:  $4,984,376

22          b.   account number 2132-0155:  $2,791,650

23          c.   account number 2131-7813:      $86,534

24  I added up the value of each Master Account and have determined that the total value of the

25  Master Accounts, as of December 31, 2007, was $7,862,560.

26        20.    Based on the information provided to the Commission staff by Frederick as well

27  as the monthly account statements for the Master Accounts provided to the Commission staff by

28  GLB Trading, I have determined that $1,766,929 of the $7,862,560 total value of the Master

1  Accounts constituted loan proceeds deposited into account number 2131-4075 in three separate

2  transactions on December 31, 2007. [Tercero Dec., Ex. 10, p. 228.] I deducted the loan

3  proceeds of $1,766,929 from the $7,862,560 total value of the Master Accounts to calculate the

4  net value of Tuco's Master Accounts at GLB Trading. I determined that the net value of Tuco's

5  Master Accounts at GLB Trading was $6,095,631.

6      21.     During the examination, Frederick told me that in addition to the Master Accounts

7  at GLB Trading, Tuco also maintained brokerage accounts at Wedbush Morgan Securities

8  ("Wedbush"), Evolution Financial Technologies, LLC ("Evolution Financial"), and ViewTrade

9  Securities, Inc. ("ViewTrade"). I requested and obtained from Frederick copies of Tuco's

10  December 2007 statements for these accounts.

11      22.     Based on my review of the December 2007 statements provided to the

12  Commission staff by Frederick, I have determined that Tuco maintains two accounts at

13  Wedbush:  account number 8244-9330 and account number 8244-9331. I have also determined

14  that as of December 31, 2007, the value of account number 8244-9330 was $7,044, and that

15  account number 8244-9331 had a negative balance of ($1.00). [Tercero Dec., Ex. 13.]

16      23.     Based on my review of the December 2007 statements provided to the

17  Commission staff by Frederick, I have determined that Tuco maintains one brokerage account at

18  Evolution Financial:  account number 1153-2603. I have also determined that as of December

19  31, 2007, the value of account number 1153-2603 was $36,000. [Tercero Dec., Ex. 9.]

20      24.     Based on my review of the December 2007 account statements provided to the

21  Commission staff by Frederick, I have determined that Tuco maintains one brokerage account at

22  ViewTrade:  account number 4936-3559. I also determined that as of December 31, 2007, the

23  value of account number 4936-3559 was $126,713. [Tercero Dec., Ex. 12.]

24      25.     Based on my review of the December 2007 account statements provided to the

25  Commission staff by Frederick, I have determined that Tuco maintains one commodity futures

26  account at MF Global, Inc.:  account number E-480-HSP1-SP404. I also determined that as of

27  December 31, 2007, the value of account number E-480-HSP1-SP404 was $122,846. [Tercero

28  Dec., Ex. 11.]

26.    Based on my review of the December 2007 account statements provided to the Commission staff by Frederick, I have determined that Tuco maintains one commodity futures account at Advantage Futures, LLC:  account number L  MH006-A0535.  I have also determined that as of December 31, 2007, the value of account number L  MH006-A0535 was $77,050. [Tercero Dec., Ex. 8.]

27.    During the examination, the Commission staff requested and obtained from Frederick copies of Tuco's monthly bank statements.  I analyzed the monthly bank account statements provided by Frederick and have determined that Tuco maintains two bank accounts at JPMorganChase:  account number 000000722923067, which is titled the Operating Account (the "3067 Account"), and account number 000000722923075, which is titled the Wire Account (the "3075 Account").  Based on my review of Tuco's bank account statements, I have determined that, as of December 31, 2007, the 3067 Account had a balance of $92,025, and the 3075 Account had a balance of $28,578.  [Tercero Dec., Ex. 7.]

28.    I calculated the total value, as of December 31, 2007, of Tuco's brokerage accounts at Wedbush, Evolution Financial, and ViewTrade, its commodity futures accounts at MF Global and Advantage Futures, and its bank accounts at JPMorganChase.  I have determined that the value of those accounts was $490,255.  I added the net value of Tuco's Master Accounts at GLB Trading, $6,095,631 to the total value of Tuco's other brokerage, commodity futures, and bank accounts, $490,255, and have determined that the total value of Tuco's net assets, as of December 31, 2007, was $6,585,886.

29.    The records described above are voluminous, such that they cannot be conveniently examined in Court.  As a result, the Commission is presenting them in summary form in the spreadsheet attached hereto as Exhibit 9.  The underlying documents are available for examination and copying at the Commission's office in Los Angeles.  Furthermore, the Commission will submit the documents to the Court if the Court desires.

### $3.6 MILLION SHORTFALL IN TUCO'S ACCOUNTS

30.    I subtracted the total value of Tuco's net assets, $6,585,886, from the traders' net positive equity balance reflected in Tuco's back office system, $10,208,588, and have

1    determined that there was a $3,622,702 shortfall between the traders' net positive equity balance

2    and Tuco's net assets in its brokerage, commodity futures, and bank accounts. In other words, if

3    there had been a "run on the bank" on December 31, 2007, there would have been insufficient

4    funds in the amount of $3,622,702, to cover traders' withdrawals of their net positive equity

5    balances.

6    **EQUITY BALANCES REFLECTED IN TUCO'S BACK OFFICE SYSTEM AS OF JANUARY 31, 2008**

7         31.    On February 19, 2008, Frederick provided to the Commission staff a spreadsheet

8    showing the equity balances in each trader's sub-account or sub-accounts, as of January 31,

9    2008, as reflected in Tuco's back office system, a true and correct copy of which is attached

10   hereto as Exhibit 10.

11        32.    On February 25, 2008, Frederick provided to the Commission staff a revised

12   spreadsheet showing the equity balances in each trader's sub-account or sub-accounts, as of

13   January 31, 2008, as reflected in Tuco's back office system. The revised spreadsheet included

14   notations that certain sub-accounts with negative equity balances were linked to other sub-

15   accounts with positive equity balances. A true and correct copy of the February 25, 2008 revised

16   spreadsheet is attached hereto as Exhibit 11.

17        33.    On February 26, 2006, Frederick e-mailed his responses to questions from the

18   Commission staff regarding the February 25 revised spreadsheet. A true and correct copy of

19   Frederick's e-mail is attached hereto as Exhibit 12.

20        34.    On February 26, 2008, Frederick provided to the Commission staff another

21   version of the revised spreadsheet, but it did not include any notations. A true and correct copy

22   of the February 26, 2008 revised spreadsheet is attached hereto as Exhibit 13.

23        35.    On February 28, 2008, Frederick provided a written response to follow up

24   questions from the Commission staff regarding the February 25 revised spreadsheet. A true and

25   correct copy of Frederick's February 28, 2008 response is attached hereto as Exhibit 14.

26        36.    Based on my review of the revised equity balances spreadsheets Frederick

27   provided to the Commission staff on February 25 and 26, 2008, and further information provided

28   to the Commission staff by Frederick on February 26 and 28, 2008, I have determined that

1    Tuco's back office system showed that, as of January 31, 2008, Tuco had 261 traders with 335

2    sub-accounts. According to Tuco's back office system, as of January 31, 2008, 198 traders had

3    257 sub-accounts with a net positive equity balance of $11,395,934. Of the 257 sub-accounts

4    with net positive equity balances, 159 had equity balances of less than $25,000.

5    **TUCO'S NET ASSETS AS OF JANUARY 31, 2008**

6        37.    On February 21, 2008, the Commission staff received from Penson copies of the

7    January 2008 statements for two of Tuco's Master Accounts at GLB Trading (account number

8    2131-4075 and account number 2132-0155). True and correct copies of portions of the GLB

9    Trading account statements are attached hereto as Exhibit 15. According to Penson, there was

10   no January 2008 account statement for the third account, account number 2131-7813, because

11   there was no activity in the account in January and thus, the account balance was unchanged

12   from December 2007. Penson provided the Commission staff with a screen capture of its system

13   regarding account number 2131-7813, a true and correct copy of which is attached hereto as

14   Exhibit 16.

15       38.    I reviewed the monthly statements and other information provided to the

16   Commission staff by Penson for Tuco's Master Accounts at GLB Trading for the period ending

17   January 31, 2008. Based on my review of the account statements for two of the Master Accounts

18   as well as the information provided to the Commission staff by Penson, I have determined that

19   the value of each Master Account, as of January 31, 2008, was as follows:

20           a.   account number 2131-4075:   $6,887,065

21           b.   account number 2132-0155:   $4,922,952

22           c.   account number 2131-7813:        $86,534

23   I added up the value of each Master Account and have determined that the total value of the

24   Master Accounts, as of January 31, 2008, was $11,896,551.

25       39.    Based on the information provided to the Commission staff by Frederick as well

26   as the January 2008 statements for the Master Accounts provided to the Commission staff by

27   Penson, I have determined that $2,300,000 of the total value of the Master Accounts constituted

28   loan proceeds deposited into account number 2131-4075 in two transactions on January 28, 2008

1    and one on January 31, 2008. I deducted the loan proceeds of $2,300,000 from the $11,896,551

2    total value of the Master Accounts to calculate the net value of Tuco's Master Accounts. I have

3    determined that the net value of Tuco's Master Accounts, as of January 31, 2008, was

4    $9,596,551.

5        40.    On February 15, 2008, the Commission staff requested and received from

6    Wedbush copies of the January 2008 statements for Tuco's Wedbush accounts. Based on my

7    review of the January 2008 Wedbush statements provided to the Commission staff by Wedbush,

8    I have determined that as of January 31, 2008, the value of account number 8244-9330, was

9    $7,067, and that account number 8244-9331 had a negative balance of ($1.00). True and correct

10    copies of the second page of each account statement are attached hereto as Exhibit 17.

11        41.    On February 15, 2008, the Commission staff requested and received from Penson

12    a copy of the January 2008 statement for Tuco's Evolution Financial account. Based on my

13    review of the January 2008 Evolution Financial statement provided to the Commission staff by

14    Penson, I have determined that, as of January 31, 2008, the value of account number 1153-2603,

15    was $36,090. A true and correct copy of the first page of the Evolution Financial account

16    statement is attached hereto as Exhibit 18.

17        42.    On February 15, 2008, the Commission staff requested and received from Penson

18    a copy of the January 2008 statement for Tuco's ViewTrade account. Based on my review of the

19    January 2008 ViewTrade statement provided to the Commission staff by Penson, I have

20    determined that, as of January 31, 2008, the value of account number 4936-3559, was $190,707.

21    A true and correct copy of the first page of the ViewTrade account statement is attached hereto

22    as Exhibit 19.

23        43.    On February 19, 2008, the Commission staff received from Frederick a copy of

24    the January 2008 statement for Tuco's MF Global account. Based on my review of the January

25    2008 MF Global statement provided to the Commission staff by Frederick, I have determined

26    that, as of January 31, 2008, the value of account number E-480-HSP1-SP404 was $58,149. A

27    true and correct copy of the second page of the MF Global account statement is attached hereto

28    as Exhibit 20.

44.    On February 19, 2008, the Commission staff received from Frederick a copy of the January 2008 statement for Tuco's Advantage Futures account. Based on my review of the January 2008 Advantage Futures statement provided to the Commission staff by Frederick, I have determined that, as of January 31, 2008, the value of account number L MH006-A0535 was $89,653. A true and correct copy of the fourth page of the Advantage Futures account statement is attached hereto as Exhibit 21.

45.    On February 19, 2008, the Commission staff received from Frederick a copy of the January 2008 statement for Tuco's JPMorganChase accounts, a true and correct copy of which is attached hereto as Exhibit 22. Based on my review of the January 2008 JPMorganChase statement provided to the Commission staff by Frederick, I determined that, as of January 31, 2008, the value of the 3067 Account was $6,204 and the value of the 3075 Account was $65,480.

46.    I calculated the total value, as of January 31, 2008, of Tuco's brokerage accounts at Wedbush, Evolution Financial, and ViewTrade, its commodity futures accounts at MF Global and Advantage Futures, and its bank accounts at JPMorganChase. I have determined that the value of those accounts was $453,349. I added the net value of Tuco's Master Accounts at GLB Trading, $9,596,551 to the total value of Tuco's other brokerage, commodities, futures and bank accounts, $453,349, and have determined that the total value of Tuco's net assets, as of January 31, 2008, was $10,049,900.

47.    The records described above are voluminous, such that they cannot be conveniently examined in Court. As a result, the Commission is presenting them in summary form in the spreadsheet attached hereto as Exhibit 23. The underlying documents are available for examination and copying at the Commission's office in Los Angeles. Furthermore, the Commission will submit the documents to the Court if the Court desires.

### $1.3 MILLION SHORTFALL IN TUCO'S ACCOUNTS

48.    I subtracted the total value of Tuco's net assets, $10,049,900, from the traders' net positive equity balance reflected in Tuco's back office system, $11,395,934, and have determined that there was a $1,346,034 shortfall between the traders' net positive equity balance

1  and Tuco's net assets in its brokerage, commodity futures, and bank accounts.  In other words, if

2  there had been a "run on the bank" on January 31, 2008, there would have been insufficient

3  funds in the amount of $1,346,034, to cover traders' withdrawals of their net positive equity

4  balances.

5      I declare under penalty of perjury that the foregoing is true and correct.

6      Executed on March 3, 2008, at Los Angeles, California.

7

8

9      _____

10     Kent L. Woo

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS - EXHIBITS

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Form BD for GLB Trading, Inc., dated January 29, 2008 | 15 |
| 2 | Certified – SEC Attestation regarding GLB Trading, Inc., dated February 6, 2008 | 35 |
| 3 | Form U4 for Douglas G. Frederick, as of November 16, 2007 | 36 |
| 4 | Certified – SEC Attestation regarding Tuco Trading, LLC, dated February 11, 2008 | 58 |
| 5 | Certified – SEC Attestations regarding Douglas G. Frederick, dated February 25, 2008 | 59-60 |
| 6 | Account opening documents for Tuco's GLB Trading, Inc. account number 2131-4075 | 61 |
| 7 | Account opening documents for Tuco's GLB Trading, Inc. account number 2131-7813 | 88 |
| 8 | Account opening documents for Tuco's GLB Trading, Inc. account number 2131-0155 | 106 |
| 9 | Accounting as of December 31, 2007 | 112 |
| 10 | Tuco's Spreadsheet of Traders' Equity Balances as of January 31, 2008 | 113 |
| 11 | E-mail from Steve Young to Roberto A. Tercero, dated February 25, 2008, attaching Tuco's Revised Spreadsheet of Traders' Equity Balances as of January 31, 2008 (with notations) | 119 |
| 12 | E-mail from Steve Young to Roberto A. Tercero, dated February 26, 2008, forwarding responses from Frederick to questions from Commission staff regarding the February 25, 2008 revised spreadsheet | 130 |
| 13 | E-mail from Steve Young to Roberto A. Tercero, dated February 26, 2008, attaching Tuco's Revised Spreadsheet of Traders' Equity Balances as of January 31, 2008 (without notations) | 135 |
| 14 | Letter from Stephen Young to J. Cindy Eson, dated February 28, 2008, forwarding responses from Frederick to follow up questions from Commission staff regarding the February 25, 2008 revised spreadsheet | 143 |
| 15 | January 2008 Statement of Account for Tuco's GLB Trading, Inc. account number 2131-4075 (pages 1, 10258, and 10264 only) and account number 2132-0155 (page 1 only) | 145 |
| 16 | Screen capture from Penson Financial Services, Inc. regarding Tuco's GLB Trading, Inc. account number 2131-7813 | 149 |
| 17 | January 2008 Account Statements for Tuco's Wedbush Morgan Securities account number 8244-9330 (page 2 only), and account number 8244-9331 (page 2 only) | 150 |
| 18 | January 2008 Account Statement for Tuco's Evolution Financial account number 11532603 (page 1 only) | 152 |
| 19 | January 2008 Statement of Account for Tuco's ViewTrade account 4936-3559 (page 1 only) | 153 |
| 20 | Daily Commodity Statement for Tuco's MF Global Inc. account number E-480-HSP1-SP404 (page 2 only), dated January 31, 2008 | 154 |

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| 21 | January 2008 Account Statement for Tuco's Advantage Futures account number L MH006-A0535 (page 4 only), dated January 31, 2008 | 155 |
| 22 | January 2008 Account Statement for Tuco's JPMorganChase account number 000000722923067 and account number 000000722923075 | 156 |
| 23 | Accounting as of January 31, 2008 | 171 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# FORM BD
## UNIFORM APPLICATION FOR BROKER-DEALER REGISTRATION

| Primary Business Name: GLB TRADING, INC | BD Number: 125363 |
|---|---|

**BD - AMENDMENT**
01/29/2008

### BD - APPLICANT INFORMATION

OMB Number ..........................3235-0012
Expires...........................September 30, 2007
Estimated average burden hours per:
Response..............................2.75
Amendment.............................0.33

**WARNING:** Failure to keep this form current and to file accurate supplementary information on a timely basis, or the failure to keep accurate books and records or otherwise to comply with the provisions of law applying to the conduct of business as a broker-dealer would violate the Federal securities laws and the laws of the *jurisdictions* and may result in disciplinary, administrative, injunctive or criminal action.
**INTENTIONAL MISSTATEMENTS OR OMISSIONS OF FACTS MAY CONSTITUTE CRIMINAL VIOLATIONS.**

○ APPLICATION ◉ AMENDMENT

1. Exact name, principal business address, mailing address, if different, and telephone number of *applicant*:

A. **Full name of *applicant***(if sole proprietor, state last, first and middle name):
   GLB TRADING, INC

B. **IRS Empl. Ident. No.:**
   41-2062298

C. (1) Name under which broker-dealer business primarily is conducted, if different from Item 1A.
   GLB TRADING, INC

   (2) List on Schedule D, Page 1, Section I, Other Business Names any other name by which the firm conducts business and where it is used.

D. If this filing makes a name change on behalf of the *applicant*, enter the new name and specify whether the name change is of the ☐ *applicant name* (1A) or ☐ *business name* (1C):
   *Please check above.*

E. **Firm main address:** (Do not use a P.O. Box)
   Number and Street 1:
   3333 MICHELSON ST 620

   Number and Street 2:

   | City: | State: | Country: | Zip/Postal Code: |
   |---|---|---|---|
   | IRVINE | California | | 92612 |

Exhibit _____1_____  Page _15_

**F. Mailing Address, if different:**

**Number and Street 1:**
3333 MICHELSON ST. 620

**Number and Street 2:**

**City:**
IRVINE

**State:**
California

**Country:**

**Zip/Postal Code:**
92612

**G. Business Telephone Number:**
949-955-1966

**H. Contact Employee:**

**Name:**
ROBERT A. LECHMAN

**Title:**
PRESIDENT

**Telephone Number:**
949-955-1966

## BD – EXECUTION

**EXECUTION:**

For the purposes of complying with the laws of the State(s) designated in Item 2 relating to either the offer or sale of securities or commodities, the undersigned and *applicant* hereby certify that the *applicant* is in compliance with applicable state surety bonding requirements and irrevocably appoint the administrator of each of those State(s) or such other person designated by law, and the successors in such office, attorney for the *applicant* in said State(s), upon whom may be served any notice, process, or pleading in any action or *proceeding* against the *applicant* arising out of or in connection with the offer or sale of securities or commodities, or out of the violation or alleged violation of the laws of those State(s), and the *applicant* hereby consents that any such action or *proceeding* against the *applicant* may be commenced in any court of competent jurisdiction and proper venue within said State(s) by service of process upon said appointee with the same effect as if *applicant* were a resident in said State(s) and had lawfully been served with process in said State(s).

The *applicant* consents that service of any civil action brought by or notice of any *proceeding* before the Securities and Exchange Commission or any *self-regulatory organization* in connection with the *applicant's* broker-dealer activities, or of any application for a protective decree filed by the Securities Investor Protection Corporation, may be given by registered or certified mail or confirmed telegram to the *applicant's* contact employee at the main address, or mailing address if different, given in Items 1E and 1F.

The undersigned, being first duly sworn, deposes and says that he/she has executed this form on behalf of, and with the authority of, said *applicant*. The undersigned and *applicant* represent that the information and statements contained herein, including exhibits attached hereto, and other information filed herewith, all of which are made a part hereof, are current, true and complete. The undersigned and *applicant* further represent that to the extent any information previously submitted is not amended such information is currently accurate and complete.

| **Date MM/DD/YYYY** | **Name of Applicant** |
| 01/29/2008 | GLB TRADING, INC |

| **Authorized Signatory** | **Title** |
| ROBERT A LECHMAN | PRESIDENT |

Exhibit ___1___ Page _16_

Subscribed and sworn before me this _____ day of _____ , _____ by
_____

Year

Notary Public _____

My commission expires _____

County of _____    State of _____

## BD - SECURITIES AND EXCHANGE COMMISSION

2. Indicate by checking the appropriate box(es) each governmental authority, organization, or *jurisdiction* in which the *applicant* is registered or registering as a broker-dealer.

If *applicant* is registered or registering with the SEC, check here and answer Items 2A through 2D below.  ☑

|  | YES | NO |
|---|---|---|
| A. Is *applicant* registered or registering as a broker-dealer under Section 15(b) or Section 15B of the Securities Exchange Act of 1934? | ⦿ | ○ |
| B. Is *applicant* registered or registering as a broker-dealer under Section 15(b) of the Securities Exchange Act of 1934 and also acting or intending to act as a government securities broker or dealer? | ⦿ | ○ |
| C. Is *applicant* registered or registering *solely* as a government securities broker or dealer under Section 15C of the Securities Exchange Act of 1934? | ○ | ⦿ |
| *Do not answer "yes" to Item 2C if applicant answered "yes" to Item 2A or Item 2B.* | | |
| D. Is *applicant* ceasing its activities as a government securities broker or dealer? | ○ | ⦿ |

*If applicant answers "yes" to Items 2A and 2D, applicant expressly consents to the withdrawal of its registration as a government securities broker or dealer under Section 15C of the Securities Exchange Act of 1934. See "Instructions."*

## SECURITY FUTURES PRODUCTS ACTIVITIES

(Note: The field below is reserved exclusively for the reporting of single stock futures activities by registered broker-dealers. This field cannot be utilized until the SEC approves rules relating to the form and content of such reporting.)

## BD - SRO / JURISDICTION

### BD - SELF REGULATORY ORGANIZATIONS

| AMEX | BSE | CBOE | CHX | NSX | NASD | NqLX | NQX | NYSE | PHLX | ARCA | ISE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☑ | ☐ | ☐ | ☑ | ☐ |

### BD - JURISDICTION

| Alabama | Illinois | Montana | Puerto Rico |
|---|---|---|---|
| ☑ | ☑ | ☐ | ☐ |
|  |  |  | Rhode Island |

| | | | |
|---|---|---|---|
| ☐ Alaska | ☑ Indiana | ☐ Nebraska | ☑ South Carolina |
| ☑ Arizona | ☐ Iowa | ☑ Nevada | ☐ South Dakota |
| ☑ Arkansas | ☐ Kansas | ☐ New Hampshire | ☑ Tennessee |
| ☑ California | ☑ Kentucky | ☑ New Jersey | ☑ Texas |
| ☑ Colorado | ☑ Louisiana | ☑ New Mexico | ☑ Utah |
| ☑ Connecticut | ☑ Maine | ☑ New York | ☐ Vermont |
| ☑ Delaware | ☑ Maryland | ☑ North Carolina | ☐ Virgin Islands |
| ☐ District of Columbia | ☑ Massachusetts | ☐ North Dakota | ☑ Virginia |
| ☑ Florida | ☑ Michigan | ☑ Ohio | ☑ Washington |
| ☑ Georgia | ☑ Minnesota | ☑ Oklahoma | ☐ West Virginia |
| ☑ Hawaii | ☐ Mississippi | ☑ Oregon | ☑ Wisconsin |
| ☐ Idaho | ☑ Missouri | ☑ Pennsylvania | ☐ Wyoming |

## BD - LEGAL STATUS

3. A. Indicate legal status of applicant:

⊙ Corporation       ○ Sole Proprietorship                    ○ Other (specify)

○ Partnership       ○ Limited Liability Company

B. Month applicant's fiscal year ends:
NOVEMBER

C. If other than a sole proprietor, indicate date and place applicant obtained its legal status (i.e., state or country where incorporated, where partnership agreement was filed, or where applicant entity was formed):

| State of formation: | Country of formation: | Date of formation: MM/DD/YYYY |
|---|---|---|
| California | | 06/17/2002 |

Schedule A, Direct Owners and Executive Officers Section and, if applicable, Schedule B, Indirect Owners Section must be completed as part of all initial applications. Amendments to these schedules must be provided on Schedule C.

4. If applicant is a sole proprietor, state full residence address and Social Security Number.

Social Security Number:

Exhibit   1   Page 18

**Number and Street 1:**

**Number and Street 2:**

**City:**         **State:**         **Country:**         **Zip/Postal Code:**

## BD – SUCCESSION

|  | YES | NO |
|---|---|---|
| 5. Is *applicant* at the time of this filing *succeeding* to the business of a currently registered broker-dealer? | ○ | ◉ |

*Do not report previous successions already reported on Form BD.*

*If "Yes," contact CRD prior to submitting form; complete appropriate items on Schedule D, Page 1, Section III.*

## BD – ARRANGEMENTS

|  | Yes | No |
|---|---|---|
| 6. Does *applicant* hold or maintain any funds or securities or provide clearing services for any other broker or dealer? | ○ | ◉ |
| 7. Does *applicant* refer or introduce customers to any other broker or dealer? | ◉ | ○ |

*If "yes," complete appropriate items on Schedule D, Page 1, Section IV, Arrangement Detail.*

| 8. Does *applicant* have any arrangement with any other *person, firm, or organization* under which: |  |  |
|---|---|---|
| A. any books or records of *applicant* are kept or maintained by such other *person, firm or organization*? | ◉ | ○ |
| B. accounts, funds, or securities of the *applicant* are held or maintained by such other *person,* firm, or organization? | ◉ | ○ |
| C. accounts, funds, or securities of customers of the *applicant* are held or maintained by such other *person, firm, or organization*? | ◉ | ○ |

*For purposes of 8B and 8C, do not include a bank or satisfactory control location as defined in paragraph(c) of Rule 15c3-3 under the Securities Exchange Act of 1934 (17 CFR 240. 15c3-3).*

*If "Yes" to any part of Item 8, complete appropriate items on Schedule D, Page 1, Section IV, Arrangement Detail.*

| 9. Does any person not named in Item 1 or Schedules A, B, or C, directly or indirectly; |  |  |
|---|---|---|
| A. control the management or policies of the *applicant* through agreement or otherwise? | ○ | ◉ |
| B. wholly or partially finance the business of *applicant*? | ○ | ◉ |

Exhibit __1__ Page __19__

*Do not answer "yes" to 9B if the person finances the business of the applicant through: 1) a public offering of securities made pursuant to the Securities Act of 1933; 2) credit extended in the ordinary course of business by suppliers, banks, and others; or 3) a satisfactory subordination agreement, as defined in Rule 15c3-1 under the Securities Exchange Act of 1934 (17 CFR.240. 15c3-1).*

*If "Yes" to any part of Item 9, complete appropriate items on Schedule D, Page 1, Section IV, Arrangement Detail.*

## BD – BUSINESS AFFILIATES

### BD – Control Affiliates

|  | YES | NO |
|---|---|---|
| 10. A. Directly or indirectly, does applicant *control*, is applicant *controlled* by, or is applicant under *common control* with, any partnership, corporation, or other organization that is engaged in the securities or investment advisory business? | ○ | ◉ |
| *If "Yes" to Item 10A, complete appropriate items on Schedule D, Page 2, Section V, Firm Affiliates.* | | |
| B. Directly or indirectly, is applicant *controlled* by any bank holding company, national bank, state member bank of the Federal Reserve System, state non-member bank, savings bank or association, credit union, or foreign bank? | ○ | ◉ |
| *If "Yes" to Item 10B, complete appropriate items on Schedule D, Page 3, Section VI, Bank Affiliates.* | | |

## BD – DISCLOSURE QUESTIONS

11. Use the appropriate DRP for providing details to "yes" answers to the questions in Item 11. Refer to the Explanation of Terms section of Form BD Instructions for explanations of italicized terms.

### CRIMINAL DISCLOSURE

|  | YES | NO |
|---|---|---|
| A. In the past ten years has the *applicant* or a *control affiliate*: | | |
| (1) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any *felony*? | ○ | ◉ |
| (2) been *charged* with any *felony*? | ○ | ◉ |
| B. In the past ten years has the *applicant* or a *control affiliate*: | | |
| (1) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment*-related business, or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | ○ | ◉ |
| (2) been *charged* with a *misdemeanor* specified in 11B(1)? | ○ | ◉ |

### REGULATORY ACTION DISCLOSURE

Exhibit __1__  Page 20

|  | YES | NO |
|---|:---:|:---:|
| **C. Has the U.S. Securities and Exchange Commission or the Commodity Futures Trading Commission ever:** | | |
| (1) found the applicant or a control affiliate to have made a false statement or omission? | ○ | ● |
| (2) found the applicant or a control affiliate to have been *involved* in a violation of its regulations or statutes? | ○ | ● |
| (3) *found* the applicant or a control affiliate to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ● |
| (4) entered an *order* against the applicant or a *control affiliate* in connection with an *investment-related activity*? | ○ | ● |
| (5) imposed a civil money penalty on the *applicant* or a *control affiliate*, or ordered the applicant or a *control affiliate* to cease and desist from any activity? | ○ | ● |
| **D. Has any other federal regulatory agency, any state regulatory agency, or foreign financial regulatory authority:** | | |
| (1) ever *found* the applicant or a *control affiliate* to have made a false statement or omission or been dishonest, unfair, or unethical? | ○ | ● |
| (2) ever *found* the applicant or a *control affiliate* to have been *involved* in a violation of *investment-related* regulations or statutes? | ● | ○ |
| (3) ever *found* the applicant or a *control affiliate* to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ● |
| (4) in the past ten years, entered an *order* against the applicant or a *control affiliate* in connection with an *investment-related activity*? | ○ | ● |
| (5) ever denied, suspended, or revoked the *applicant's* or a *control affiliate's* registration or license or otherwise, by *order*, prevented it from associating with an *investment-related* business or restricted its activities? | ● | ○ |
| **E. Has any self-regulatory organization or commodities exchange ever:** | | |
| (1) *found* the applicant or a *control affiliate* to have made a false statement or omission? | ○ | ● |
| (2) *found* the applicant or a *control affiliate* to have been *involved* in a violation of its rules (other than a violation designated as a "minor rule violation" under a plan approved by the U.S. Securities and Exchange Commission)? | ● | ○ |
| (3) *found* the applicant or a *control affiliate* to have been the cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ● |
| (4) disciplined the *applicant* or a *control affiliate* by expelling or suspending it from membership, barring or suspending its association with other members, or otherwise restricting its activities? | ● | ○ |
| **F.** Has the *applicant's* or a *control affiliate's* authorization to act as an attorney, accountant, or federal contractor ever been revoked or suspended? | ○ | ● |
| **G.** Is the *applicant* or a *control affiliate* now the subject of any regulatory *proceeding* that could result in a "yes" answer to any part of 11C, D, or E? | ○ | ● |

## CIVIL JUDICIAL ACTION DISCLOSURE

|  | YES | NO |
|---|:---:|:---:|
| **H. (1)** Has any domestic or foreign court: | | |

Exhibit _____1_____ Page _21_

(a) in the past ten years, *enjoined* the *applicant* or a *control affiliate* in connection with any *investment-related* activity?   O  ⊙

(b) ever *found* that the *applicant* or a *control affiliate* was *involved* in a violation of *investment-related* statutes or regulations?   O  ⊙

(c) ever dismissed, pursuant to a settlement agreement, an *investment-related* civil action brought against the *applicant* or *control affiliate* by a state or *foreign financial regulatory authority*?   O  ⊙

(2) Is the *applicant* or a *control affiliate* now the subject of any civil *proceeding* that could result in a "yes" answer to any part of 11H(1)?   O  ⊙

## FINANCIAL DISCLOSURE

| | YES | NO |
|---|---|---|
| I. In the past ten years has the *applicant* or a *control affiliate* of the *applicant* ever been a securities firm or a *control affiliate* of a securities firm: | O | ⊙ |
| (1) has been the subject of a bankruptcy petition? | O | ⊙ |
| (2) has had a trustee appointed or a direct payment procedure initiated under the Securities Investor Protection Act? | O | ⊙ |
| J. Has a bonding company ever denied, paid out on, or revoked a bond for the *applicant*? | O | ⊙ |
| K. Does the *applicant* have any unsatisfied judgments or liens against it? | O | ⊙ |

## BD - TYPES OF BUSINESS

12. Check types of business engaged in (or to be engaged in, if not yet active) by *applicant*. Do not check any category that accounts for (or is expected to account for) less than 1% of annual revenue from the securities or investment advisory business.

A.  Exchange member engaged in exchange commission business other than floor activities.      ☐ EMC

B.  Exchange member engaged in floor activities.      ☐ EMF

C.  Broker or dealer making inter-dealer markets in corporate securities over-the-counter.      ☑ IDM

D.  Broker or dealer retailing corporate equity securities over-the-counter.      ☑ BDR

E.  Broker or dealer selling corporate debt securities.      ☑ BDD

F.  Underwriter or selling group participant (corporate securities other than mutual funds).      ☐ USG

G.  Mutual fund underwriter or sponsor.      ☐ MFU

H.  Mutual fund retailer.      ☑ MFR

I.  1.  U.S. government securities dealer.      ☐ GSD

2.  U.S. government securities broker.      ☑ GSB

J.  Municipal securities dealer.      ☐ MSD

K.  Municipal securities broker.      ☑ MSB

Exhibit ___1___ Page 22

L.  Broker or dealer selling variable life insurance or annuities. ☑VLA

M.  Solicitor of time deposits in a financial institution. ☐SSL

N.  Real estate syndicator. ☐RES

O.  Broker or dealer selling oil and gas interests. ☑OGI

P.  Put and call broker or dealer or option writer. ☑PCB

Q.  Broker or dealer selling securities of only one issuer or associate issuers (other than mutual funds). ☐BIA

R.  Broker or dealer selling securities of non-profit organizations (e.g., churches, hospitals). ☐NPB

S.  Investment advisory services. ☐IAD

T.  1.  Broker or dealer selling tax shelters or limited partnerships in primary distributions. ☐TAP

    2.  Broker or dealer selling tax shelters or limited partnerships in the secondary market. ☐TAS

U.  Non-exchange member arranging for transactions in listed securities by exchange member. ☑NEX

V.  Trading securities for own account. ☑TRA

W.  Private placement of securities. ☑PLA

X.  Broker or dealer selling interests in mortgages or other receivables. ☐MRI

Y.  Broker or dealer involved in a networking, kiosk or similar arrangement with a:

    1.  bank, savings bank or association, or credit union. ☐BNA

    2.  insurance company or agency ☐INA

Z.  Other (give details on Schedule D, Page 1, Section II, Other Business) ☐OTH

|  | YES | NO |
|---|---|---|
| 13. A. Does applicant effect transactions in commodity futures, commodities or commodity options as a broker for others or as a dealer for its own account? | ⊙ | ○ |
| B. Does applicant engage in any other non-securities business? | ○ | ⊙ |

If "yes", describe each other business briefly on Schedule D, Page 1, Section II, Other Business.

## BD - DIRECT OWNERS

Are there any indirect owners of the applicant required to be reported on Schedule B?        ⊙ Yes ○ No

| Ownership Codes: | NA - less than 5% | B - 10% but less than 25% | D - 50% but less than 75% |
|---|---|---|---|
|  | A - 5% but less than 10% | C - 25% but less than 50% | E - 75% or more |

| Full Legal Name | DE/FE/I | Title or Status | Date Acquired | Own. Code | Control Person | PR | CRD #(or S.S.No., IRS Tax |
|---|---|---|---|---|---|---|---|

| Full Legal Name | DE/FE/I | Title or Status | Date Acquired | Own. Code | Control Person | PR | CRD # (or SSN, IRS Tax #, Emp. ID) |
|---|---|---|---|---|---|---|---|
| KATSAFAROS, GUS PETER | I | EXECUTIVE VP | 10/2005 | NA | N | N | 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 |
| LECHMAN, ROBERT | I | PRESIDENT/CEO/FINOP/CCO/CFO/SRO/CROP/TRUSTEE | 03/2004 | NA | Y | N | 1045237 |
| LECHMAN, ROBERT TRUST 08/14/06 | DE | OWNER | 08/2006 | E | Y | N | 33-1449482 |
| TITLE TRADING HOLDINGS, CORP | DE | TITLE TRADING HOLDINGS, CORP | 10/2007 | B | Y | N | 30-0452480 |

**BD - INDIRECT OWNERS**

Ownership Codes:  
NA - less than 5%    B - 10% but less than 25%    D - 50% but less than 75%  
A - 5% but less than 10%    C - 25% but less than 50%    E - 75% or more

| Full Legal Name | DE/FE/I | Entity in Which Interest is Owned | Status | Date Acquired | Own. Code | Control Person | PR | CRD # (or SSN, IRS Tax #, Emp. ID) |
|---|---|---|---|---|---|---|---|---|
| GEORGE ELIOPOULOS | I | TITLE TRADING HOLDING, CORP | PRESIDENT, CEO | 06/2007 | E | N | N | 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 |

Ownership Codes:  
NA - less than 5%    B - 10% but less than 25%    D - 50% but less than 75%  
A - 5% but less than 10%    C - 25% but less than 50%    E - 75% or more    F - Other General Partners

**BD Schedule C - Amendments to Schedules A & B**

In the Type of Amd. column, indicate "A" (addition), "D" (deletion), or "C" (change of information about the same *person*).

Ownership Codes are:  
NA - less than 5%    B - 10% but less than 25%    D - 50% but less than 75%  
A - 5% but less than 10%    C - 25% but less than 50%    E - 75% or more

List below all changes to Schedule A: (DIRECT OWNERS AND EXECUTIVE OFFICERS)

| Full Legal Name | DE/FE/I | Type of Amd. | Title or Status | Date Acquired | Own. Code | Control Person | PR | CRD # (or SSN, IRS Tax #, Emp. ID) |
|---|---|---|---|---|---|---|---|---|
| TITLE TRADING HOLDING, CORP | DE | C | TITLE TRADING HOLDINGS, CORP | 10/2007 | B | Y | N | 30-0452480 |

List below all changes to Schedule B: (INDIRECT OWNERS)

| Full Legal Name | DE/FE/I | Type of Amd. | Entity in Which Interest is Owned | Status | Date Acquired | Own. Code | Control Person | PR | CRD # (or SSN, IRS Tax #, Emp. ID) |
|---|---|---|---|---|---|---|---|---|---|

**No Information Filed**

**BD - OTHER BUSINESS NAMES**

Exhibit ___1___   Page __24__

## No Information Filed

### BD - OTHER BUSINESS

Briefly describe any other business (Item 12Z).

Briefly describe any other non-securities business (Item 13B).

### BD - SUCCESSIONS

Date of Succession: MM/DD/YYYY        Name of Predecessor:

Firm CRD Number        IRS Employer Identification Number (if any)        SEC File Number (if any)
8-

Briefly describe details of the *succession* including any assets or liabilities not assumed by the successor.

### BD - ARRANGEMENTS / CONTROL PERSONS / FINANCING

| (check one) | ◉ Item 7 | ○ Item 8A | ○ Item 8B | ○ Item 8C | ○ Item 9A | ○ Item 9B |
|---|---|---|---|---|---|---|

*Applicant* must complete a separate Schedule D Page 1, Arrangement Detail for each affirmative response in this section including any multiple responses to any item. Complete the "Effective Date" box with Month, Day and Year that the arrangement or agreement became effective. When reporting a change or termination of an arrangement or agreement, enter the effective date of the change.

Organization/Individual Name:        CRD Number:        ◉ Entity
PENSON FINANCIAL SERVICES, INC.        25866        ○ Individual

Business Address

Street 1:        Street 2:
1700 PACIFIC AVE ST 1400

City:        State:        Country:        Zip/Postal Code:
DALLAS        Texas        75201

Effective Date MM/DD/YYYY        Termination Date MM/DD/YYYY
10/01/2005

Briefly describe the nature of reference or arrangement (ITEM 7 or ITEM 8); the nature of the *control* or agreement (ITEM 9A); or the method and amount of financing (ITEM 9B)

CLEARING CORPORATION THAT WILL HOLD ALL FUNDS AND SECURITIES

| (check one) | ○ Item 7 | ◉ Item 8A | ○ Item 8B | ○ Item 8C | ○ Item 9A | ○ Item 9B |
|---|---|---|---|---|---|---|

Exhibit ____1____ Page 25

*Applicant* must complete a separate Schedule D Page 1, Arrangement Detail for each affirmative response in this section including any multiple responses to any item. Complete the "Effective Date" box with Month, Day and Year that the arrangement or agreement became effective. When reporting a change or termination of an arrangement or agreement, enter the effective date of the change.

**Organization/Individual Name:**
PENSON FINANCIAL SERVICES, INC.

**CRD Number:**
25866

⊙ **Entity**
○ **Individual**

**Business Address**

**Street 1:**
1700 PACIFIC AVE ST 1400

**Street 2:**

**City:**
DALLAS

**State:**
Texas

**Country:**

**Zip/Postal Code:**
75201

**Effective Date MM/DD/YYYY**
10/01/2005

**Termination Date MM/DD/YYYY**

**Briefly describe the nature of reference or arrangement (ITEM 7 or ITEM 8); the nature of the *control* or agreement (ITEM 9A); or the method and amount of financing (ITEM 9B)**

IS THE CLEARING CORPORATION THAT WILL HOLD ALL FUNDS AND SECURITIES

| (check one) | ○ Item 7 | ○ Item 8A | ⊙ Item 8B | ○ Item 8C | ⊙ Item 9A | ○ Item 9B |
|---|---|---|---|---|---|---|

---

*Applicant* must complete a separate Schedule D Page 1, Arrangement Detail for each affirmative response in this section including any multiple responses to any item. Complete the "Effective Date" box with Month, Day and Year that the arrangement or agreement became effective. When reporting a change or termination of an arrangement or agreement, enter the effective date of the change.

**Organization/Individual Name:**
PENSON FINANCIAL SERVICES, INC.

**CRD Number:**
25866

⊙ **Entity**
○ **Individual**

**Business Address**

**Street 1:**
1700 PACIFIC AVE ST 1400

**Street 2:**

**City:**
DALLAS

**State:**
Texas

**Country:**

**Zip/Postal Code:**
75201

**Effective Date MM/DD/YYYY**
10/01/2005

**Termination Date MM/DD/YYYY**

**Briefly describe the nature of reference or arrangement (ITEM 7 or ITEM 8); the nature of the *control* or agreement (ITEM 9A); or the method and amount of financing (ITEM 9B)**

THE CLEARING CORPORATION THAT WILL HOLD ALL FUNDS AND SECURITIES

| (check one) | ○ Item 7 | ○ Item 8A | ○ Item 8B | ⊙ Item 8C | ○ Item 9A | ○ Item 9B |
|---|---|---|---|---|---|---|

*Applicant* must complete a separate Schedule D Page 1, Arrangement Detail for each affirmative response in this section including any multiple responses to any item. Complete the "Effective Date" box with Month, Day and Year that the arrangement or agreement became effective. When reporting a change or termination of an arrangement or agreement, enter the effective date of the change.

**Organization/Individual Name:**
PENSON FINANCIAL SERVICES, INC.

**CRD Number:**
25866

○ Entity
○ Individual

**Business Address**

**Street 1:**
1700 PACIFIC AVE ST 1400

**Street 2:**

**City:**
DALLAS

**State:**
Texas

**Country:**

**Zip/Postal Code:**
75201

**Effective Date MM/DD/YYYY**
10/01/2005

**Termination Date MM/DD/YYYY**

Briefly describe the nature of reference or arrangement (ITEM 7 or ITEM 8); the nature of the *control* or agreement (ITEM 9A); or the method and amount of financing (ITEM 9B):

THE CLEARING CORPORATION THAT WILL HOLD ALL FUNDS AND SECURITIES

**BD - AFFILIATES**

### No Information Filed

**BD - BRANCHES**

### No Information Filed

**BD - CRIMINAL DRP**

No Information Filed

**BD - REGULATORY ACTION DRP**

This Disclosure Reporting Page (DRP BD) is an ○ INITIAL OR ⊙ AMENDED response used to report details for affirmative responses to *Items 11C, 11D, 11E, 11F or 11G* of Form BD;

**Check item(s) being responded to:**

| | | **Regulatory Action** | |
|---|---|---|---|
| ☐11C(1) | ☐11C(5) | ☐11D(4) | ☐11E(3) |
| ☐11C(2) | ☐11D(1) | ☑11D(5) | ☑11E(4) |
| ☐11C(3) | ☑11D(2) | ☐11E(1) | ☐11F |

Exhibit 1   Page 27

☐11C(4)    ☐11D(3)    ☑11E(2)    ☐11F    ☐11G

Use a separate DRP for each event or *proceeding*. An event or *proceeding* may be reported for more than one *person* or entity using one DRP. File with a completed Execution Page.

One event may result in more than one affirmative answer to Items 11C, 11D, 11E, 11F or 11G. Use only one DRP to report details related to the same event. If an event gives rise to actions by more than one regulator, provide details to each action on a separate DRP.

It is not a requirement that documents be provided for each event or *proceeding*. Should they be provided, they will not be accepted as disclosure in lieu of answering the questions on this DRP.

If a *control affiliate* is an individual or organization registered through the CRD, such *control affiliate* need only complete Part I of the *applicant's* appropriate DRP (BD). Details of the event must be submitted on the *control affiliate's* appropriate DRP (BD) or DRP (U4). If a *control affiliate* is an individual or organization not registered through the CRD, provide complete answers to all the items on the *applicant's* appropriate DRP (BD). The completion of this DRP does not relieve the *control affiliate* of its obligation to update its CRD records.

**PART I**

A. The *person(s)* or entity(ies) for whom this DRP is being filed is (are):

○ **The Applicant**

○ **Applicant and one or more control affiliates**

● **One or more control affiliates**

If this DRP is being filed for a *control affiliate*, give the full name of the *control affiliate* below (for individuals, Last name, First name, Middle name).
If the *control affiliate* is registered with the CRD, provide the CRD number. If not, indicate "non-registered" by checking the appropriate checkbox.

| BD DRP - Control Affiliate | | |
|---|---|---|
| **Control Affiliate Name** | **CRD #** | **Registered** |
| LECHMAN, ROBERT ALLEN | 1045237 | Y |

☐ **This DRP should be removed from the BD record because the *control affiliate(s)* are no longer associated with the BD.**

B. If the *control affiliate* is registered through the CRD, has the *control affiliate* submitted a DRP (with Form U4) or BD DRP to the CRD System for the event? If the answer is "Yes," no other information on this DRP must be provided.

Exhibit    1    Page 28

⊙ Yes ○ No

**NOTE:** The completion of this form does *not* relieve the *control affiliate* of its obligation to update its CRD records.

## PART II

1. Regulatory Action initiated by:
   ○ SEC  ○ Other Federal  ○ State  ○ SRO  ○ Foreign
   (Full name of regulator, foreign financial regulatory authority, federal, state, or SRO)

2. Principal Sanction:

   Other Sanctions:

3. Date Initiated (MM/DD/YYYY):
   ○ Exact  ○ Explanation
   If not exact, provide explanation:

4. Docket/Case Number:

5. *Control Affiliate* Employing Firm when activity occurred which led to the regulatory action (if applicable):

6. Principal Product Type:

   Other Product Types:

7. Describe the allegations related to this regulatory action. (The information must fit within the space provided.)

8. Current status ? ○ Pending  ○ On Appeal  ○ Final

9. If on appeal, regulatory action appealed to: (SEC, SRO, Federal or State Court) and Date Appeal Filed:

**If Final or On Appeal, complete all items below. For Pending Actions, complete Item 13 only.**

10. How was matter resolved:

Exhibit ___1___ Page 29

11. Resolution Date (MM/DD/YYYY):

    ○ **Exact**  ○ E**xplanation**

If not exact, provide explanation:

12. **Resolution Detail:**

A. Were any of the following Sanctions Ordered? (Check all appropriate items):

| | |
|---|---|
| ☐ **Monetary/Fine** | **Amount: $** |
| ☐ **Revocation/Expulsion/Denial** | ☐ **Disgorgement/Restitution** |
| ☐ **Censure** | ☐ **Cease and Desist/Injunction** |
| ☐ **Bar** | ☐ **Suspension** |

B. Other Sanctions Ordered:

C. Sanction detail: if suspended, *enjoined* or barred, provide duration including start date and capacities affected (General Securities Principal, Financial Operations Principal, etc.). If requalification by exam/retraining was a condition of the sanction, provide length of time given to requalify/retrain, type of exam required and whether condition has been satisfied. If disposition resulted in a fine, penalty, restitution, disgorgement or monetary compensation, provide total amount, portion levied against *applicant or control affiliate*, date paid and if any portion of penalty was waived:

13. Provide a brief summary of details related to the action status and (or) disposition and include relevant terms, conditions and dates. (The information must fit within the space provided.)

---

This Disclosure Reporting Page (DRP BD) is an ○ I**NITIAL OR** ⊙ **AMENDED** response used to report details for affirmative responses to *Items 11C, 11D, 11E, 11F or 11G* of Form BD:

**Check item(s) being responded to:**

**Regulatory Action**

| | | | |
|---|---|---|---|
| ☐ **11C(1)** | ☐ **11C(5)** | ☐ **11D(4)** | ☐ **11E(3)** |
| ☐ **11C(2)** | ☐ **11D(1)** | ☐ **11D(5)** | ☐ **11E(4)** |
| ☐ **11C(3)** | ☐ **11D(2)** | ☐ **11E(1)** | ☐ **11F** |
| ☐ **11C(4)** | ☐ **11D(3)** | ☑ **11E(2)** | ☐ **11G** |

Exhibit ___1___  Page ___30___

Use a separate DRP for each event or *proceeding*. An event or *proceeding* may be reported for more than one *person* or entity using one DRP. File with a completed Execution Page.

One event may result in more than one affirmative answer to Items 11C, 11D, 11E, 11F or 11G. Use only one DRP to report details related to the same event. If an event gives rise to actions by more than one regulator, provide details to each action on a separate DRP.

It is not a requirement that documents be provided for each event or *proceeding*. Should they be provided, they will not be accepted as disclosure in lieu of answering the questions on this DRP.

If a *control affiliate* is an individual or organization registered through the CRD, such *control affiliate* need only complete Part I of the *applicant's* appropriate DRP (BD). Details of the event must be submitted on the *control affiliate's* appropriate DRP (BD) or DRP (U4). If a *control affiliate* is an individual or organization not registered through the CRD, provide complete answers to all the items on the *applicant's* appropriate DRP (BD). The completion of this DRP does not relieve the *control affiliate* of its obligation to update its CRD records.

## PART I

A. The *person(s)* or entity(ies) for whom this DRP is being filed is (are):

    &#x25C9; **The Applicant**

    &#x25CB; **Applicant and one or more control affiliates**

    &#x25CB; **One or more control affiliates**

If this DRP is being filed for a *control affiliate*, give the full name of the *control affiliate* below (for individuals, Last name, First name, Middle name).
If the *control affiliate* is registered with the CRD, provide the CRD number. If not, indicate "non-registered" by checking the appropriate checkbox.

&#x2610; **This DRP should be removed from the BD record because the *control affiliate(s)* are no longer associated with the BD.**

B. If the *control affiliate* is registered through the CRD, has the *control affiliate* submitted a DRP (with Form U4) or BD DRP to the CRD System for the event? If the answer is "Yes," no other information on this DRP must be provided.

    &#x25CB; Yes &#x25CB; No

**NOTE:** The completion of this form does not relieve the *control affiliate* of its obligation to update its CRD records.

## PART II

Exhibit ___1___    Page ___31___

1. Regulatory Action initiated by:

   ○ SEC  ○ Other  ○ Federal  ○ State  ⊙ SRO  ○ Foreign
   (Full name of regulator, foreign financial regulatory authority, federal, state, or SRO)
   FINRA

2. Principal Sanction:
   Censure
   Other Sanctions:

3. Date Initiated (MM/DD/YYYY):

   10/04/2007  ⊙ Exact  ○ Explanation
   If not exact, provide explanation:

4. Docket/Case Number:
   20060055593-01

5. *Control Affiliate* Employing Firm when activity occurred which led to the regulatory action (if applicable):

6. Principal Product Type:
   Equity - OTC
   Other Product Types:

7. Describe the allegations related to this regulatory action. (The information must fit within the space provided.)
   NASD RULES 2110, 3010, 6620, 6620(A) - GLB TRADING, INC. FAILED, WITHIN 90 SECONDS AFTER EXECUTION, TO TRANSMIT TO
   THE OTC REPORTING FACILITY LAST SALE REPORTS OF TRANSACTIONS IN OTC EQUITY SECURITIES AND FAILED TO DESIGNATE
   TO THE OTC REPORTING FACILITY SOME LAST SALE REPORTS AS LATE. THE FIRM INCORRECTLY DESIGNATED AS ".SLD" TO THE
   OTC REPORTING FACILITY LAST SALE REPORTS OF TRANSACTIONS IN OTC EQUITY SECURITIES REPORTED TO THE OTC
   REPORTING FACILITY WITHIN 90 SECONDS AFTER EXECUTION. THE FIRM'S SUPERVISORY SYSTEM DID NOT PROVIDE FOR
   SUPERVISION REASONABLY DESIGNED TO ACHIEVE COMPLIANCE WITH APPLICABLE SECURITIES LAWS, REGULATIONS AND NASD
   RULES CONCERNING TRADE REPORTING REQUIREMENTS

8. Current status ?  ○ Pending  ○ On Appeal  ⊙ Final

9. If on appeal, regulatory action appealed to: (SEC, *SRO*, Federal or State Court) and Date Appeal Filed:

   **If Final or On Appeal, complete all items below. For Pending Actions, complete Item 13 only.**

10. How was matter resolved:

Exhibit ___1___  Page 32

Acceptance, Waiver & Consent(AWC)

**11.** Resolution Date (MM/DD/YYYY):

10/04/2007  ⊙ **Exact**  ○ **Explanation**

If not exact, provide explanation:

**12. Resolution Detail:**

A. Were any of the following Sanctions Ordered? (Check all appropriate items):

☑ **Monetary/Fine**          **Amount:** $ 10,000.00

☐ **Revocation/Expulsion/Denial**      ☐ **Disgorgement/Restitution**

☑ **Censure**                ☐ **Cease and Desist/Injunction**

☐ **Bar**                    ☐ **Suspension**

B. Other Sanctions Ordered:
UNDERTAKING

C. Sanction detail: if suspended, *enjoined* or barred, provide duration including start date and capacities affected (General Securities Principal, Financial Operations Principal, etc.). If requalification by exam/retraining was a condition of the sanction, provide length of time given to requalify/retrain, type of exam required and whether condition has been satisfied. If disposition resulted in a fine, penalty, restitution, disgorgement or monetary compensation, provide total amount, portion levied against *applicant or control affiliate*, date paid and if any portion of penalty was waived:
WITHOUT ADMITTING OR DENYING THE FINDINGS, THE FIRM CONSENTED TO THE DESCRIBED SANCTIONS AND TO THE ENTRY OF FINDINGS; THEREFORE, THE FIRM IS CENSURED, FINED $10,000 AND REQUIRED TO REVISE ITS WRITTEN SUPERVISORY PROCEDURES REGARDING TRADE REPORTING REQUIREMENTS WITHIN 30 BUSINESS DAYS OF ACCEPTANCE OF THIS AWC BY THE NAC.

**13.** Provide a brief summary of details related to the action status and (or) disposition and include relevant terms, conditions and dates. (The information must fit within the space provided.)

| BD – CIVIL JUDICIAL DRP |
|---|
| No Information Filed |

| BD – BANKRUPTCY DRP |
|---|
| No Information Filed |

| BD – BOND DRP |
|---|
| No Information Filed |

Exhibit ___1___  Page 33

**BD - JUDGMENT LIEN DRP**
No Information Filed

Exhibit ___1___ Page 34

# UNITED STATES OF AMERICA

## SECURITIES AND EXCHANGE COMMISSION

# ATTESTATION

**I HEREBY ATTEST**

*that:*

*The Commission records reflect, an application on Form BD for registration as a broker-dealer was received on January 31, 2003, under the name GLB Trading, Inc., File No. 8-65790, pursuant to the provisions of the Securities Exchange Act of 1934, said registration was effective on June 11, 2003, and is still in full force and effect.*

on file in this Commission

February 6, 2008
(Date)

*Larry Mills*
*Records Officer*

It is hereby certified that the Secretary of the U.S. Securities and Exchange Commission, Washington, D.C., which Commission was created by the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) is official custodian of the records and files of said Commission, and all records and files created or established by the Federal Trade Commission pursuant to the provisions of the Securities Act of 1933 and transferred to this Commission in accordance with Section 210 of the Securities Exchange Act of 1934, and was such official custodian at the time of executing the above attestation, and that he/she, and persons holding the positions of Deputy Secretary, Assistant Director, Records Officer, Branch Chief of Records Management, and the Program Analyst for the Records Officer, or any one of them, are authorized to execute the above attestation.

For the Commission

Secretary

SEC 334 (10/07)

Exhibit ___  Page ___