# FORM U4
## UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTRATION OR TRANSFER

U4 - AMENDMENT
11/16/2007

Rev. Form U4 (10/2005)

### 1. GENERAL INFORMATION

| First Name: | Middle Name: | Last Name: | Suffix: |
|---|---|---|---|
| DOUGLAS | GLEN | FREDERICK | |

*Firm CRD #:*
125363

*Firm Name:*
GLB TRADING, INC

Employment Date (MM/DD/YYYY):
04/11/2006

**Firm Billing Code:**

*Individual CRD #:*
2348759

Individual SSN:
6596

Do you have an independent contractor relationship with the above named firm?:

⊙ Yes ○ No

### Office of Employment Address

| CRD Branch # | NYSE Branch Code | Firm Billing Code | Address | Private Residence | Type of Office | Start Date | End Date |
|---|---|---|---|---|---|---|---|
| BD Main | | | 3333 MICHELSON ST 620<br><br>IRVINE , CA  92612 | N | Supervised From | 04/11/2006 | |
| 283794 | | | 3333 MICHELSON ST 620<br><br>IRVINE , CA  92612<br>UNITED STATES | N | Supervised From | 06/23/2006 | |

### 2. FINGERPRINT INFORMATION

Rev. Form U4 (10/2005)

Electronic Filing Representation

⊙ By selecting this option, I represent that I am submitting, have submitted, or promptly will submit to the appropriate *SRO* a fingerprint card as required under applicable *SRO* rules; or

○ Fingerprint card barcode

○ By selecting this option, I represent that I have been employed continuously by the *filing firm* since the last submission of a

Exhibit ___3___    Page 36

○ fingerprint card to CRD and am not required to resubmit a fingerprint card at this time; or,

○ By selecting this option, I represent that I have been employed continuously by the *filing firm* and my fingerprints have been processed by an *SRO* other than NASD. I am submitting, have submitted, or promptly will submit the processed results for posting to CRD.

**Exceptions to the Fingerprint Requirement**

○ By selecting one or more of the following two options, I affirm that I am exempt from the federal fingerprint requirement because I/*filing firm* currently satisfy(ies) the requirements of at least one of the permissive exemptions indicated below pursuant to Rule 17f-2 under the Securities Exchange Act of 1934, including any notice or application requirements specified therein:

  ☐ Rule 17f-2(a)(1)(i)

  ☐ Rule 17f-2(a)(1)(iii)

**Investment Adviser Representative Only Applicants**

○ I affirm that I am applying only as an investment adviser representative and that I am not also applying or have not also applied with this *firm* to become a broker-dealer representative. If this radio button/box is selected, continue below.

○ I am applying for registration only in *jurisdictions* that do not have fingerprint card filing requirements, or

○ I am applying for registration in *jurisdictions* that have fingerprint card filing requirements and I am submitting, have submitted, or promptly will submit the appropriate fingerprint card directly to the *jurisdictions* for processing pursuant to applicable *jurisdiction* rules.

---

## 3. REGISTRATIONS WITH UNAFFILIATED FIRMS

Some *jurisdictions* prohibit "dual registration," which occurs when an individual chooses to maintain a concurrent registration as a representative/agent with two or more *firms* (either BD or IA *firms*) that are not affiliated. *Jurisdictions* that prohibit dual registration would not, for example, permit a broker-dealer agent working with brokerage *firm* A to maintain a registration with brokerage *firm* B if *firms* A and B are not owned or controlled by a common parent. Before seeking a dual registration status, you should consult the applicable rules or statutes of the *jurisdictions* with which you seek registration for prohibitions on dual registrations or any liability provisions.

Please indicate whether the individual will maintain a "dual registration" status by answering the questions in this section. (Note: An individual should answer 'yes' only if the individual is currently registered and is seeking registration with a *firm* (either BD or IA) that is

**Exhibit** _3_    **Page** _37_

not affiliated with the individual's current employing *firm*. If this is an initial application, an individual must answer 'no' to these questions; a "dual registration" may be initiated only after an initial registration has been established).

Answer "yes" or "no" to the following questions:

**A.** Will *applicant* maintain registration with a broker-dealer that is not *affiliated* with the *filing firm*? If you answer "yes," list the *firm*(s) in Section 12 (Employment History).

**B.** Will *applicant* maintain registration with an investment adviser that is not *affiliated* with the *filing firm*? If you answer "yes," list the *firm*(s) in Section 12 (Employment History).

|  | Yes | No |
|---|---|---|
| A. | ○ | ◉ |
| B. | ○ | ◉ |

Rev. Form U4 (10/2005)

## 4. SRO REGISTRATIONS

**Check appropriate *SRO* Registration requests.**
**Qualifying examinations will be automatically scheduled if needed. If you are only scheduling or re-scheduling an exam, skip this section and complete Section 7 (EXAMINATION REQUESTS).**

| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | ARCA | CBOE | CHX | PHLX | ISE | NQX |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OP - Registered Options Principal (S4) | ☐ | ☐ | ☐ |  |  | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| IR - Investment Company and Variable Contracts Products Rep. (S6) | ☐ | ☐ | ☐ |  | ☐ |  |  |  |  |  | ☐ |
| GS - Full Registration/General Securities Representative (S7) | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☑ |
| TR - Securities Trader (S7) |  | ☐ | ☐ | ☐ | ☐ |  |  |  |  |  |  |
| TS - Trading Supervisor (S7) |  | ☐ | ☐ | ☐ | ☐ |  |  |  |  |  |  |
| SU - General Securities Sales Supervisor (S9 and S10) | ☐ |  |  | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |  |
| BM - Branch Office Manager (S9 and S10) |  | ☐ | ☐ |  |  |  |  |  |  |  |  |
| SM - Securities Manager (S10) |  | ☐ |  |  |  |  |  |  |  |  |  |
| AR - Assistant Representative/Order Processing (S11) | ☐ |  |  |  | ☐ |  |  | ☐ |  | ☐ |  |

| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | ARCA | CBOE | CHX | PHLX | ISE | NQX |
|---|---|---|---|---|---|---|---|---|---|---|---|
| IE - United Kingdom - Limited General Securities Registered Representative (S17) | ☐ | ☐ | ☐ |  | ☐ | ☐ | ☐ | ☐ | ☐ |  | ☐ |
| DR - Direct Participation Program Representative (S22) | ☐ | ☐ | ☐ |  | ☐ |  |  | ☐ |  |  |  |
| GP - General Securities Principal (S24) |  |  |  |  |  |  |  |  |  |  |  |

Exhibit 3    Page 38

| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | ARCA | CBOE | CHX | PHLX | ISE | NQX |
|---|---|---|---|---|---|---|---|---|---|---|---|
| IP - Investment Company and Variable Contracts Products Principal (S26) | □ | □ | □ | □ | □ | □ | | □ | | | □ |
| FA - Foreign Associate | □ | | | | | | | | | | □ |
| FN - Financial and Operations Principal (S27) | □ | | □ | □ | □ | □ | | □ | □ | | □ |
| FI - Introducing Broker-Dealer/Financial and Operations Principal (S28) | □ | | □ | □ | □ | □ | | □ | | | □ |
| RS - Research Analyst (S86, S87) | □ | □ | | | | | | | | | |
| RP - Research Principal | □ | | | | | | | | | | |
| DP - Direct Participation Program Principal (S39) | □ | | □ | □ | □ | | | □ | | | □ |
| OR - Options Representative (S42) | □ | | | □ | | | | □ | | | |

| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | ARCA | CBOE | CHX | PHLX | ISE | NQX |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MR - Municipal Securities Representative (S52) | □ | □ | □ | □ | □ | | | □ | | | |
| MP - Municipal Securities Principal (S53) | □ | | □ | | □ | | | □ | | | |
| CS - Corporate Securities Representative (S62) | □ | | □ | □ | □ | | | □ | | | □ |
| RG - Government Securities Representative (S72) | □ | | | | | | | | | | |
| PG - Government Securities Principal (S73) | □ | | | | | | | | | | |
| SA - Supervisory Analyst (S16) | □ | □ | □ | | | | | | | | |
| PR - Limited Representative – Private Securities Offerings (S82) | □ | □ | □ | | | | | | | | |
| CD - Canada-Limited General Securities Registered Representative (S37) | □ | □ | □ | | | □ | □ | | | | □ |
| CN - Canada-Limited General Securities Registered Representative (S38) | □ | □ | □ | | | □ | □ | | | | □ |

| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | ARCA | CBOE | CHX | PHLX | ISE | NQX |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ET - Equity Trader (S55) | ☑ | □ | □ | □ | □ | | | | | | ☑ |
| AM - Allied Member | | □ | □ | | | □ | | | | | |
| AP - Approved Person | | □ | □ | □ | | | | | | | |
| LE - Securities Lending Representative | | □ | □ | | | | | | | | |

Exhibit 3 Page 39

LS - Securities Lending Supervisor

ME - Member Exchange

FE - Floor Employee

OF - Officer

CO - Compliance Official (S14)

| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | ARCA | CBOE | CHX | PHLX | ISE | NQX |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CF - Compliance Official Specialist (S14A) | | | | | | | | | | | |
| PM - Floor Member Conducting Public Business | | | | | | | | | | | |
| PC - Floor Clerk Conducting Public Business | | | | | | | | | | | |
| SC - Specialist Clerk (S21) | | | | | | | | | | | |
| TA - Trading Assistant (S25) | | | | | | | | | | | |
| FP - Municipal Fund (S51) | | | | | | | | | | | |
| IF - In-Firm Delivery Proctor | | | | | | | | | | | |
| MM - Market Maker Authorized Trader-Options (S44) | | | | | | | | | | | |

| REGISTRATION CATEGORY | NASD | NYSE | AMEX | BSE | NSX | ARCA | CBOE | CHX | PHLX | ISE | NQX |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FB - Floor Broker | | | | | | | | | | | |
| MB - Market Maker acting as Floor Broker | | | | | | | | | | | |
| OT - Authorized Trader (S7) | | | | | | | | | | | |
| MT - Market Maker Authorized Trader-Equities (S7) | | | | | | | | | | | |
| Other _____ (Paper Form Only) | | | | | | | | | | | |

## 5. JURISDICTION REGISTRATION

Check appropriate *jurisdiction(s)* for broker-dealer agent (AG) and/or investment adviser representative (RA) registration requests.

| JURISDICTION | AG | RA | JURISDICTION | AG | RA | JURISDICTION | AG | RA | JURISDICTION | AG | RA |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | ☐ | ☐ | Illinois | ☑ | ☐ | Montana | ☐ | ☐ | Puerto Rico | ☐ | ☐ |
| Alaska | ☐ | ☐ | Indiana | ☐ | ☐ | Nebraska | ☐ | ☐ | Rhode Island | ☐ | ☐ |

Rev. Form U4 (10/2005)

Exhibit _3_ Page _40_

| State | | State | | State | | State | |
|---|---|---|---|---|---|---|---|
| Arizona | ☑ | Iowa | ☐ | Nevada | ☑ | South Carolina | ☐ |
| Arkansas | ☐ | Kansas | ☐ | New Hampshire | ☐ | South Dakota | ☐ |
| California | ☑ | Kentucky | ☐ | New Jersey | ☑ | Tennessee | ☐ |
| Colorado | ☐ | Louisiana | ☑ | New Mexico | ☑ | Texas | ☑ |
| Connecticut | ☐ | Maine | ☐ | New York | ☐ | Utah | ☐ |
| Delaware | ☐ | Maryland | ☐ | North Carolina | ☐ | Vermont | ☐ |
| District of Columbia | ☐ | Massachusetts | ☐ | North Dakota | ☐ | Virgin Islands | ☐ |
| Florida | ☑ | Michigan | ☑ | Ohio | ☐ | Virginia | ☐ |
| Georgia | ☐ | Minnesota | ☐ | Oklahoma | ☐ | Washington | ☐ |
| Hawaii | ☐ | Mississippi | ☐ | Oregon | ☐ | West Virginia | ☐ |
| Idaho | ☐ | Missouri | ☐ | Pennsylvania | ☐ | Wisconsin | ☐ |
| | | | | | | Wyoming | ☐ |

**AGENT OF THE ISSUER REGISTRATION (AI)** ☐  Indicate 2 letter *jurisdiction code(s)*:

Rev. Form U4 (10/2005)

## 6. REGISTRATION REQUESTS WITH AFFILIATED FIRMS

Will *applicant* maintain registration with *firm(s)* under common ownership or control with the *filing firm*? If "yes", fill in the details to indicate a request for registration with additional *firm(s)*.

○ Yes    ● No

No Information Filed

Rev. Form U4 (10/2005)

## 7. EXAMINATION REQUESTS

**Scheduling or Rescheduling Examinations** Complete this section only if you are scheduling or rescheduling an examination or continuing education session. Do not select the Series 63 (S63) or Series 65 (S65) examinations in this section if you have completed Section 5 (JURISDICTION REGISTRATION) and have selected registration in a *jurisdiction*. If you have completed Section 5 (JURISDICTION REGISTRATION), and requested an AG registration in a *jurisdiction* that requires that you pass the S63 examination, an S63 examination will be automatically scheduled for you upon submission of this Form U4. If you have completed Section 5 (JURISDICTION REGISTRATION), and requested an RA registration in a *jurisdiction* that requires that you pass the S65 examination, an

Exhibit 3    Page 41

S65 examination will be automatically scheduled for you upon submission of this Form U4.

| | | | |
|---|---|---|---|
| ☐ S3 | ☐ S11 | ☐ S22 | ☐ S32 | ☐ S51 | ☐ S73 |
| ☐ S4 | ☐ S12 | ☐ S23 | ☐ S33 | ☐ S52 | ☐ S82 |
| ☐ S5 | ☐ S14 | ☐ S24 | ☐ S37 | ☐ S53 | ☐ S86 |
| ☐ S6 | ☐ S14A | ☐ S25 | ☐ S38 | ☐ S55 | ☐ S87 |
| ☐ S7 | ☐ S15 | ☐ S26 | ☐ S39 | ☐ S62 | ☐ S101 |
| ☐ S7A | ☐ S16 | ☐ S27 | ☐ S42 | ☐ S63 | ☐ S106 |
| ☐ S9 | ☐ S17 | ☐ S28 | ☐ S44 | ☐ S65 | ☐ S201 |
| ☐ S10 | ☐ S21 | ☐ S30 | ☐ S45 | ☐ S66 | |
| | | ☐ S31 | ☐ S46 | ☐ S72 | |

Other _____ (Paper Form Only)

OPTIONAL: Foreign Exam City _____  Date (MM/DD/YYYY) _____

Rev. Form U4 (10/2005)

## 8. PROFESSIONAL DESIGNATIONS

Select each designation you currently maintain.

☐ Certified Financial Planner
☐ Chartered Financial Consultant (ChFC)
☐ Personal Financial Specialist (PFS)
☐ Chartered Financial Analyst (CFA)
☐ Chartered Investment Counselor (CIC)

## 9. IDENTIFYING INFORMATION/NAME CHANGE

Rev. Form U4 (10/2005)

First Name:
DOUGLAS

Middle Name:
GLEN

Last Name:
FREDERICK

Suffix:

Date of Birth
(MM/DD/YYYY)

State/Province of Birth
IOWA

Country of Birth
USA

Sex
⦿ Male ◯ Female

Exhibit 3 _____ Page 42

Height (ft)
5

Hair Color
Brown

Height (in)
9

Eye Color
Green

Weight (lbs)
170

## 10. OTHER NAMES

No Information Filed

Rev. Form U4 (10/2005)

## 11. RESIDENTIAL HISTORY

Starting with the current address, give all addresses for the past 5 years. Report changes as they occur.

| From | To | Street | City | State | Country | Postal Code |
|------|-----|--------|------|-------|---------|-------------|
| 09/2003 | PRESENT | 1807 MORGAN LAKE CT. | BRIGHTON | MI | USA | 48114 |
| 04/2003 | 09/2003 | 1730 N. CLARK # 2013 | CHICAGO | IL | USA | 60614 |
| 10/1999 | 04/2003 | 811 N. RACINE # 3F | CHICAGO | IL | USA | 60622 |
| 05/1999 | 09/1999 | 1221 N. DEORBORN #P95 | CHICAGO | IL | USA | 60614 |

Rev. Form U4 (10/2005)

## 12. EMPLOYMENT HISTORY

Provide complete employment history for the past 10 years. Include the *firm*(s) noted in Section 1 (GENERAL INFORMATION) and Section 6 (REGISTRATION REQUESTS WITH AFFILIATED FIRMS). Include all *firm*(s) from Section 3 (REGISTRATION WITH UNAFFILIATED FIRMS). Account for all time including full and part-time employments, self-employment, military service, and homemaking. Also include statuses such as unemployed, full-time education, extended travel, or other similar statuses. Report changes as they occur.

| From | To | Name of *Firm* or Company | Investment-Related business? | City | State | Country | Position |
|------|-----|---------------------------|------------------------------|------|-------|---------|----------|
| 06/2004 | PRESENT | SPIKE FINANCIAL SERVICES, LLC | ● Yes ○ No | CHICAGO | IL | USA | TRADER |
| 04/2006 | PRESENT | GLOBALVEST GROUP, INC | ● Yes ○ No | IRVINE | CA | US | REG |
| 11/2003 | 06/2004 | TJM INVESTMENTS, LLC | | CHICAGO | IL | USA | SOLICITOR OF NEW |

Rev. Form U4 (10/2005)

Exhibit 3     Page 43

| | | | | | | | BUISNESS |
|---|---|---|---|---|---|---|---|
| 12/2002 | 11/2003 | NT SECURITIES LLC | ◉ Yes ○ No | CHICAGO | IL | USA | TRADER |
| 06/2003 | 11/2003 | HOLD BROTHERS ON-LINE INVESTMENT SERVICES LLC | ◉ Yes ○ No | CHICAGO | IL | USA | TRADER |
| 08/2002 | 11/2002 | HOLD BROTHERS ON-LINE INVESTMENT SERVICES, LLC | ◉ Yes ○ No | CHICAGO | IL | USA | TRADER |
| 07/2002 | 08/2002 | SKEFFINGTON SECURITIES, LLC | ◉ Yes ○ No | JERSEY CITY | NJ | USA | MEMBER -- TRADER |
| 04/2001 | 07/2002 | DYNAMIC TRADING | ◉ Yes ○ No | BOCA RATON | FL | USA | TRADER |
| 04/2001 | 07/2001 | ANDOVER BROKERAGE, LLC | ◉ Yes ○ No | BOCA RATON | FL | USA | REG. REP. |
| 10/1998 | 04/2001 | ONLINE INVESTMENTS | ◉ Yes ○ No | CHICAGO | IL | USA | TRADER |
| 04/1997 | 09/1998 | BLOCK TRADING, INC. | ◉ Yes ○ No | MIAMI | FL | USA | TRADER |
| 03/1996 | 03/1997 | NATIONAL FUELSOVER | ○ Yes ◉ No | SCOTTSDALE | AZ | USA | SALES |
| 05/1994 | 02/1996 | MML INVESTORS SERVICES, INC. | ◉ Yes ○ No | PHOENIX | AZ | USA | AGENT |

Rev. Form U4 (10/2005)

## 13. OTHER BUSINESS

◉ Yes ○ No

MANAGER TUCO 20 HRS

Are you currently engaged in any other business either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise? (Please exclude non *investment-related* activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.) If YES, please provide the following details: the name of the other business, whether the business is *investment-related*, the address of the other business, the nature of the other business, your position, title, or relationship with the other business, the start date of your relationship, the approximate number of hours/month you devote to the other business, the number of hours you devote to the other business during securities trading hours, and briefly describe your duties relating to the other business.

## 14. DISCLOSURE QUESTIONS

**IF THE ANSWER TO ANY OF THE FOLLOWING QUESTIONS IS 'YES', COMPLETE DETAILS OF ALL EVENTS OR PROCEEDINGS ON APPROPRIATE DRP(S)**

**REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U4 INSTRUCTIONS FOR EXPLANATIONS OF ITALICIZED TERMS.**

Rev. Form U4 (10/2005)

Exhibit 3 Page 44

## Criminal Disclosure

|  | YES | NO |
|---|---|---|
| **14A. (1) Have you ever:** | | |
| (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to any *felony*? | ○ | ◉ |
| (b) been *charged* with any *felony*? | ○ | ◉ |
| **(2) Based upon activities that occurred while you exercised *control* over it, has an organization ever:** | | |
| (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to any *felony*? | ○ | ◉ |
| (b) been *charged* with any *felony*? | ○ | ◉ |
| **14B. (1) Have you ever:** | | |
| (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment-related* business or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | ○ | ◉ |
| (b) been *charged* with a *misdemeanor* specified in 14B(1)(a)? | ○ | ◉ |
| **(2) Based upon activities that occurred while you exercised *control* over it, has an organization ever:** | | |
| (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to a *misdemeanor* specified in 14B(1)(a)? | ○ | ◉ |
| (b) been *charged* with a *misdemeanor* specified in 14B(1)(a)? | ○ | ◉ |

## Regulatory Action Disclosure

|  | YES | NO |
|---|---|---|
| **14C.   Has the U.S. Securities and Exchange Commission or the Commodity Futures Trading Commission ever:** | | |
| (1) *found* you to have made a false statement or omission? | ○ | ◉ |
| (2) *found* you to have been *involved* in a violation of its regulations or statutes? | ○ | ◉ |
| (3) *found* you to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ◉ |
| (4) entered an *order* against you in connection with *investment-related* activity? | ○ | ◉ |
| (5) imposed a civil money penalty on you, or *ordered* you to cease and desist from any activity? | ○ | ◉ |
| **14D(1) Has any other Federal regulatory agency or any state regulatory agency or foreign financial regulatory authority ever:** | | |
| (a) *found* you to have made a false statement or omission or been dishonest, unfair or unethical? | | |

Exhibit __3__    Page __45__

(b) *found* you to have been *involved* in a violation of *investment-related regulation(s)* or statute(s)?  ○ ◉

(c) *found* you to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked or restricted?  ○ ◉

(d) entered an *order* against you in connection with an *investment-related* activity?  ○ ◉

(e) denied, suspended, or revoked your registration or license or otherwise, by *order*, prevented you from associating with an *investment-related* business or restricted your activities?  ○ ◉

**14D(2) Have you been subject to any *final order* of a state securities commission (or any agency or officer performing like functions), state authority that supervises or examines banks, savings associations, or credit unions, state insurance commission (or any agency or office performing like functions), an appropriate *federal banking agency*, or the National Credit Union Administration, that:**

(a) bars you from association with an entity regulated by such commission, authority, agency, or officer, or from engaging in the business of securities, insurance, banking, savings association activities, or credit union activities; or  ○ ◉

(b) constitutes a *final order* based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?  ○ ◉

**14E. Has any *self-regulatory organization or commodities exchange* ever:**

(1) *found* you to have made a false statement or omission?  ○ ◉

(2) *found* you to have been *involved* in a violation of its rules (other than a violation designated as a *"minor rule violation"* under a plan approved by the U.S. Securities and Exchange Commission)?  ◉ ○

(3) *found* you to have been the cause of an *investment-related* business having its authorization to do business denied, suspended, revoked or restricted?  ○ ◉

(4) disciplined you by expelling or suspending you from membership, barring or suspending your association with its members, or restricting your activities?  ◉ ○

**14F. Have you ever had an authorization to act as an attorney, accountant or federal contractor that was revoked or suspended?**  ○ ◉

**14G. Have you been notified, in writing, that you are now the subject of any:**

(1) regulatory complaint or *proceeding* that could result in a "yes" answer to any part of 14C, D or E? *(If yes, complete the Regulatory Action Disclosure Reporting Page.)*  ○ ◉

(2) *investigation* that could result in a "yes" answer to any part of 14A, B, C, D or E? *(If yes, complete the Investigation Disclosure Reporting Page.)*  ○ ◉

Exhibit 3    Page 46

## Civil Judicial Disclosure

| 14H. | YES | NO |
|---|---|---|
| **(1) Has any domestic or foreign court ever:** | | |
| (a) *enjoined* you in connection with any *investment-related* activity? | ○ | ◉ |
| (b) *found* that you were *involved* in a violation of any *investment-related* statute(s) or regulation(s)? | ○ | ◉ |
| (c) dismissed, pursuant to a settlement agreement, an *investment-related* civil action brought against you by a state or *foreign financial regulatory authority*? | ○ | ◉ |
| **(2) Are you named in any pending *investment-related* civil action that could result in a "yes" answer to any part of 14H(1)?** | ○ | ◉ |

## Customer Complaint/Arbitration/Civil Litigation Disclosure

| 14I. | YES | NO |
|---|---|---|
| **(1) Have you ever been named as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that you were *involved* in one or more *sales practice violations* and which:** | | |
| (a) is still pending, or; | ○ | ◉ |
| (b) resulted in an arbitration award or civil judgment against you, regardless of amount, or; | ○ | ◉ |
| (c) was settled for an amount of $10,000 or more? | ○ | ◉ |
| **(2) Have you ever been the subject of an *investment-related*, consumer-initiated complaint, not otherwise reported under question 14I(1) above, which alleged that you were *involved* in one or more *sales practice violations*, and which complaint was settled for an amount of $10,000 or more?** | ○ | ◉ |
| **(3) Within the past twenty four (24) months, have you been the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under question 14I(1) or (2) above, which:** | | |
| (a) alleged that you were *involved* in one or more *sales practice violations* and contained a claim for compensatory damages of $5,000 or more (if no damage amount is alleged, the complaint must be reported unless the firm has made a good faith determination that the damages from the alleged conduct would be less than $5,000), or; | ○ | ◉ |
| (b) alleged that you were *involved* in forgery, theft, misappropriation or conversion of funds or securities? | ○ | ◉ |

## Termination Disclosure

| 14J. | YES | NO |
|---|---|---|
| **Have you ever voluntarily *resigned*, been discharged or permitted to *resign* after allegations were made that accused you of:** | | |
| (1) violating *investment-related* statutes, regulations, rules, or industry standards of conduct? | ◉ | ○ |
| (2) fraud or the wrongful taking of property? | ○ | ◉ |
| (3) failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct? | ○ | ◉ |

## Financial Disclosure

Exhibit 3 Page 47

**14K. Within the past 10 years:**

|  | YES | NO |
|---|---|---|
| (1) have you made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition? | ○ | ◉ |
| (2) based upon events that occurred while you exercised *control* over it, has an organization made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition? | ○ | ◉ |
| (3) based upon events that occurred while you exercised *control* over it, has a broker or dealer been the subject of an involuntary bankruptcy petition, or had a trustee appointed, or had a direct payment procedure initiated under the Securities Investor Protection Act? | ○ | ◉ |
| **14L. Has a bonding company ever denied, paid out on, or revoked a bond for you?** | ○ | ◉ |
| **14M. Do you have any unsatisfied judgments or liens against you?** | ○ | ◉ |

Rev. Form U4 (10/2005)

## 15. SIGNATURE SECTION

Please Read Carefully

All signatures required on this Form U4 filing must be made in this section.

A "signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

15A    INDIVIDUAL/APPLICANT'S ACKNOWLEDGMENT AND CONSENT
This section must be completed on all initial or Temporary Registration form filings.

15B    FIRM/APPROPRIATE SIGNATORY REPRESENTATIONS
This section must be completed on all initial or Temporary Registration form filings.

15C    TEMPORARY REGISTRATION ACKNOWLEDGMENT
This section must be completed on Temporary Registration form filings to be able to receive Temporary Registration.

15D    INDIVIDUAL/APPLICANT'S AMENDMENT ACKNOWLEDGMENT AND CONSENT
This section must be completed on any amendment filing that amends any information in Section 14 (Disclosure Questions) or any Disclosure Reporting Page (DRP).

15E    FIRM/APPROPRIATE SIGNATORY AMENDMENT REPRESENTATIONS

Exhibit 3    Page 48

This section must be completed on all amendment form filings.

15F  FIRM/APPROPRIATE SIGNATORY CONCURRENCE
This section must be completed to concur with a U4 filing made by another *firm (IA/BD)* on behalf of an individual that is also registered with that other *firm (IA/BD)*.

## 15C. TEMPORARY REGISTRATION ACKNOWLEDGMENT

If an *applicant* has been registered in a *jurisdiction or self regulatory organization (SRO)* in the 30 days prior to the date an application for registration is filed with the Central Registration Depository or Investment Adviser Registration Depository, he or she may qualify for a Temporary Registration to conduct securities business in that *jurisdiction or SRO* if this acknowledgment is executed and filed with the Form U4 at the *applicant's firm*.

This acknowledgment must be signed only if the *applicant* intends to apply for a Temporary Registration while the application for registration is under review.

I request a Temporary Registration in each *jurisdiction and/or SRO* requested on this Form U4, while my registration with the *jurisdiction(s) and/or SRO(s)* requested is under review;

I am requesting a Temporary Registration with the *firm* filing on my behalf for the *jurisdiction(s) and/or SRO(s)* noted in Section 4 (SRO REGISTRATION) and/or Section 5 (JURISDICTION REGISTRATION) of this Form U4;

I understand that I may request a Temporary Registration only in those *jurisdiction(s) and/or SRO(s)* in which I have been registered with my prior *firm* within the previous 30 days;

I understand that I may not engage in any securities activities requiring registration in a *jurisdiction and/or SRO* until I have received notice from the CRD or IARD that I have been granted a Temporary Registration in that *jurisdiction and/or SRO;*

I agree that until the Temporary Registration has been replaced by a registration, any *jurisdiction and/or SRO* in which I have applied for registration may withdraw the Temporary Registration;

If a *jurisdiction or SRO* withdraws my Temporary Registration, my application will then be held pending in that *jurisdiction and/or SRO* until its review is complete and the registration is granted or denied, or the application is withdrawn;

I understand and agree that, in the event my Temporary Registration is withdrawn by a *jurisdiction and/or SRO*, I must immediately cease any securities activities requiring a registration in that *jurisdiction and/or SRO* until it grants my registration;

I understand that by executing this Acknowledgment I am agreeing not to challenge the withdrawal of a Temporary Registration; however, I do not waive any right I may have in any *jurisdiction and/or SRO* with respect to any decision by that *jurisdiction and/or SRO* to deny my application for registration.

**Date (MM/DD/YYYY)**      **Signature of Applicant**
11/16/2007                 D FREDERICK

                           **Signature**

## 15D. AMENDMENT INDIVIDUAL/APPLICANT'S ACKNOWLEDGMENT AND CONSENT

Exhibit 3    Page 49

| Date (MM/DD/YYYY) | Signature of Applicant |
|---|---|
| 11/16/2007 | D FREDERICKN |
| | Signature |

**15E. FIRM/APPROPRIATE SIGNATORY AMENDMENT REPRESENTATIONS**

| Date (MM/DD/YYYY) | Signature of Appropriate Signatory |
|---|---|
| 11/16/2007 | R LECHMAN |
| | Signature |

Rev. Form U4 (10/2005)

---

**CRIMINAL DRP**

This Disclosure Reporting Page is an ○ **INITIAL OR** ◉ **AMENDED** response to report details for affirmative responses to *Questions 14A and 14B* on Form U4;

**Check question(s) you are responding to:**

**Criminal**

| ☐ 14A(1)(a) | ☐ 14B(1)(a) |
|---|---|
| ☑ 14A(1)(b) | ☐ 14B(1)(b) |

| ☐ 14A(2)(a) | ☐ 14B(2)(a) |
|---|---|
| ☐ 14A(2)(b) | ☐ 14B(2)(b) |

Use this DRP to report all charges arising out of the same event. One event may result in more than one affirmative answer to the above items. Multiple counts of the same charge arising out of the same event should be reported on the same DRP. Unrelated criminal actions, including separate cases arising out of the same event, must be reported on separate DRPs. **Applicable court documents (i.e., criminal complaint, information or indictment as well as judgment of conviction or sentencing documents) must be provided to the CRD if not previously submitted.**

1.  If charge(s) were brought against an organization over which you exercise(d) control: Enter Organization Name, whether or not the organization was an *investment-related* business and your position, title or relationship.

2.  Formal Charge(s) were brought in: (include name of Federal, Military, State or Foreign Court, Location of Court - City or County and State or Country, Docket/Case number).
    CHARGED FOR DWI, CHICAGO IL.

3.  **Event Disclosure Detail** (Use this for both organizational and individual charges.)

Exhibit __3__  Page __50__

A. Date First Charged (MM/DD/YYYY):

09/01/1990  ⊙ **Exact**  ○ **Explanation**
If not exact, provide explanation:

B. Event Disclosure Detail **(include Charge(s)/Charge Description(s), and for each charge provide: 1. number of counts, 2. felony or misdemeanor, 3. plea for each charge, and 4. product type if charge is *investment-related*):**
STOPPED WHILE SPEEDING AND CHARGED FOR DWI

C. Did any of the Charge(s) within the Event involve a *Felony?* ⊙ **Yes** ○ **No**

D. Current status of the Event? ○ **Pending**  ○ **On Appeal**  ⊙ **Final**

E. Event Status Date (complete unless status is Pending) (MM/DD/YYYY):

11/01/1990  ⊙ **Exact**  ○ **Explanation**
If not exact, provide explanation:

4. **Disposition Disclosure Detail**
Include for each charge, A. Disposition Type [e.g., convicted, acquitted, dismissed, pretrial, etc.], B. Date, C. Sentence/Penalty, D. Duration [if sentence-suspension, probation, etc.], E. Start Date of Penalty, F. Penalty/Fine Amount and G. Date Paid.
DEFERRED SENTENCE FOR OPERATING A MOTOR VEICHEL ON 11/90. PAID FINE ON 11/92. $500.00

5. Comment (Optional). You may use this field to provide a brief summary of the circumstances leading to the charge(s) as well as the current status or final disposition. Your information must fit within the space provided.
STOPPED FOR SPEEDING ON 9/90, SENTENCED FOR DWI ON 11/90. PAID FINE OF $500.00 ON 11/92.

Rev. Form U4 (10/2005)

## REGULATORY ACTION DRP

This Disclosure Reporting Page is an ○ **INITIAL OR**  ⊙ **AMENDED** response to report details for affirmative responses to *Questions 14C, 14D, 14E, 14F and 14G(1)* on Form U4;

Check question(s) you are responding to:

**Regulatory Action**

□14C(1)   □14D(1)(a)   □14E(1)   □14F

Exhibit _3_    Page_51_

☐ 14C(2)
☐ 14C(3)
☐ 14C(4)
☐ 14C(5)

☐ 14D(1)(b)
☐ 14D(1)(c)
☐ 14D(1)(d)
☐ 14D(1)(e)
☐ 14D(2)(a)
☐ 14D(2)(b)

☐ 14E(2)
☐ 14E(3)
☒ 14E(4)

☐ 14G(1)

One event may result in more than one affirmative answer within each of the above items. Use only one DRP to report details related to the same event. If an event gives rise to actions by more than one regulator, provide details to each action on a separate DRP.

1.  Regulatory Action initiated by:
○ SEC   ○ Other Federal   ○ State   ⊙ SRO   ○ Foreign   ○ Federal Banking Agency   ○ National Credit Union
Administration   ○ Other
(Full name of regulator, foreign financial regulatory authority, federal, state, SRO, commodities exchange or National Credit Union Administration)
NASD

2.  Principal Sanction:
Revocation
Other Sanctions:

3.  Date Initiated (MM/DD/YYYY):
01/26/1998   ⊙ Exact   ○ Explanation
If not exact, provide explanation:

4.  Docket/Case Number:
C3A970080

5.  Employing Firm when activity occurred which led to the regulatory action:
MML INVESTORS SERVICES, INC.

6.  Principal Product Type:
No Product
Other Product Types:

7.  Describe the allegations related to this regulatory action. (Your information must fit within the space provided.):

Exhibit 3    Page 52

FAILED TO PAY FINES AND/OR COST.

8. Current status ? ○Pending  ○On Appeal  ◉Final

9. If on appeal, regulatory action appealed to: (SEC, SRO, Federal or State Court) and Date Appeal Filed:

**If Final or On Appeal, complete all items below. For Pending Actions, complete Item 13 only.**

10. How was matter resolved:
Other

11. Resolution Date (MM/DD/YYYY):

12/23/2002  ◉Exact  ○Explanation
If not exact, provide explanation:

12. **Resolution Detail:**

A. Were any of the following sanctions ordered? (Check all appropriate items):

☐**Monetary/Fine**                         **Amount: $**

☐**Revocation/Expulsion/Denial**    ☐**Disgorgement/Restitution**

☐**Censure**                                   ☐**Cease and Desist/Injunction**

☐**Bar**                                          ☐**Suspension**

B. Other sanctions ordered:
NASD REGISTRATION REVOKED ON 7/16/98. REVOCATION RESCINDED ON 12/23/02 DUE TO FULL PAYMENT OF FINES AND/OR COST.

C. Sanction detail: if suspended, enjoined or barred, provide duration including start date and capacities affected (General Securities Principal, Financial Operations Principal, etc.). If requalification by exam/retraining was a condition of the sanction, provide length of time given to requalify/retrain, type of exam required and whether condition has been satisfied. If disposition resulted in a fine, penalty, restitution, disgorgement or monetary compensation, provide total amount, portion levied against you, date paid and if any portion of penalty was waived:
FINE PAID AND ATTACHED IS A COPY OF THE AGREEMENT. MR FREDERICK PAID $6500 BY WIRE TRANSFER 12/23/2002.

13. Comment (Optional). You may use this field to provide a brief summary of the circumstances leading to the action as well as the current status or disposition and/or finding(s). Your information must fit within the space provided.

This Disclosure Reporting Page is an ○**INITIAL OR** ◉**AMENDED** response to report details for affirmative responses to **Questions**

Exhibit __3__  Page __53__

**14C, 14D, 14E, 14F and 14G(1) on Form U4;**

**Check question(s) you are responding to:**

Regulatory Action

| | | | |
|---|---|---|---|
| ☐14C(1) | ☐14D(1)(a) | ☐14E(1) | ☐14F |
| ☐14C(2) | ☐14D(1)(b) | ☑14E(2) | |
| ☐14C(3) | ☐14D(1)(c) | ☐14E(3) | ☐14G(1) |
| ☐14C(4) | ☐14D(1)(d) | ☐14E(4) | |
| ☐14C(5) | ☐14D(1)(e) | | |
| | ☐14D(2)(a) | | |
| | ☐14D(2)(b) | | |

One event may result in more than one affirmative answer within each of the above items. Use only one DRP to report details related to the same event. If an event gives rise to actions by more than one regulator, provide details to each action on a separate DRP.

1. Regulatory Action initiated by:
   ○ SEC  ○ Other Federal  ○ State  ◉ *SRO*  ○ *Foreign*  ○ *Federal Banking Agency*  ○ *National Credit Union Administration*  ○ Other
   (Full name of regulator, *foreign financial regulatory authority, federal, state, SRO,* commodities exchange or National Credit Union Administration)
   NASD

2. Principal Sanction:

   Other Sanctions:

3. Date Initiated (MM/DD/YYYY):
   01/26/1998  ◉ **Exact**  ○ **Explanation**
   If not exact, provide explanation:

4. Docket/Case Number:
   C3A970080

5. Employing *Firm* when activity occurred which led to the regulatory action:
   MML INVESTORS SERVICES, INC.

Exhibit _3_    Page _54_

6.  Principal Product Type:
    Insurance
    Other Product Types:

7.  Describe the allegations related to this regulatory action. (Your information must fit within the space provided.): FROM SEPTEMBER 1995 TO FEBRUARY 1996, I ENGAGED IN BUSINESS ACTIVITIES OUTSIDE THE SCOPE OF EMPLOYMENT WITH MML INVESTOR SERVICES INC. I RECEIVED COMPENSATION FOR REFERRING 4 CLIENTS TO BRIDGE EXPRESS INC. I FAILED TO REPORT THESE ACTIVITIES TO MY EMPLOYER. THIS WAS A VIOLATION OF NASD CONDUCT RULES 2110 & 3030. THERE WERE NO DAMAGES OR CLAIMS.

8.  Current status ? ○ Pending  ○ On Appeal  ◉ Final

9.  If on appeal, regulatory action appealed to: (SEC, SRO, Federal or State Court) and Date Appeal Filed:

**If Final or On Appeal, complete all items below. For Pending Actions, complete Item 13 only.**

10. How was matter resolved:
    Acceptance, Waiver & Consent(AWC)

11. Resolution Date (MM/DD/YYYY):
    07/16/1998  ◉ Exact  ○ Explanation
    If not exact, provide explanation:

12. **Resolution Detail:**

    A.  Were any of the following sanctions ordered? (Check all appropriate items):

    ☑ Monetary/Fine                      **Amount: $ 6,500.00**

    ☐ Revocation/Expulsion/Denial        ☐ Disgorgement/Restitution

    ☑ Censure                            ☐ Cease and Desist/Injunction

    ☐ Bar                                ☐ Suspension

    B.  Other sanctions ordered:

    C.  Sanction detail: if suspended, enjoined or barred, provide duration including start date and capacities affected (General Securities Principal, Financial Operations Principal, etc.). If requalification by exam/retraining was a condition of the sanction, provide length of time given to requalify/retrain, type of exam required and whether condition has been satisfied. If disposition resulted in a fine, penalty, restitution, disgorgement or monetary compensation, provide total amount, portion levied against you, date paid and if any portion of penalty was waived:

Exhibit ___3___    Page ___55___

ON 01/26/1998, DISTRICT #3 ACCEPTED THE AWC AND I HAVE PAID THE FINE OF $6500 VIA WIRE TRANSFER ON 12/23/2002.

13. Comment (Optional). You may use this field to provide a brief summary of the circumstances leading to the action as well as the current status or disposition and/or finding(s). Your information must fit within the space provided.
I HAVE PAID THE FINE AND WILL NOT ENGAGE IN OUTSIDE BUSINESS ACTIVITIES IN THE FUTURE WITHOUT GIVING WRITTEN NOTIFICATION TO MY EMPLOYER B/D FIRM.

Rev. Form U4 (10/2005)

## CIVIL JUDICIAL DRP

No Information Filed

Rev. Form U4 (10/2005)

## CUSTOMER COMPLAINT/ARBITRATION/CIVIL LITIGATION DRP

No Information Filed

Rev. Form U4 (10/2005)

## TERMINATION DRP

This Disclosure Reporting Page is an ○ INITIAL OR ◉ AMENDED response to report details for affirmative response to **Question 14J** on Form U4;

**Check question(s) you are responding to:**

| Termination | |
|---|---|
| ☑ 14J(1) | ☐ 14J(2) |
| | ☐ 14J(3) |

One event may result in more than one affirmative answer to the above items. Use only one DRP to report details related to the same termination. Use a separate DRP for each termination reported.

1. Firm Name:
   MASS MUTUAL

2. Termination Type:
   Voluntary Resignation

3. Termination Date (MM/DD/YYYY):
   02/19/1996   ◉ Exact  ○ Explanation
   If not exact, provide explanation:

Exhibit _3_____   Page_56_

4.  Allegation(s):
    OUTSIDE BUSINESS.

5.  Principal Product Type:
    Insurance
    Other Product Types:

6.  Comment (Optional). You may use this field to provide a brief summary of the circumstances leading to the termination. Your information must fit within the space provided.
    SOLD ANOTHER FIRM'S PRODUCTS TO A CUSTOMER OF MASS MUTUAL.

**INVESTIGATION DRP**
No Information Filed
Rev. Form U4 (10/2005)

**BANKRUPTCY/SIPC/COMPROMISE WITH CREDITORS DRP**
No Information Filed
Rev. Form U4 (10/2005)

**BOND DRP**
No Information Filed
Rev. Form U4 (10/2005)

**JUDGMENT LIEN DRP**
No Information Filed
Rev. Form U4 (10/2005)

Exhibit _3_ Page _57_

# UNITED STATES OF AMERICA

## SECURITIES AND EXCHANGE COMMISSION

# ATTESTATION

I HEREBY ATTEST

that:

*A diligent search has this day been made of the records and files of this Commission and the records and files do not disclose that any application for registration as a broker-dealer was received in this Commission, under the name Tuco Trading, LLC, pursuant to the provisions of the Securities Exchange Act of 1934.*

on file in this Commission

February 11, 2008
(Date)

_Larry Mills_

Larry Mills
Records Officer

It is hereby certified that the Secretary of the U.S. Securities and Exchange Commission, Washington, D.C., which Commission was created by the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) is official custodian of the records and files of said Commission, and all records and files created or established by the Federal Trade Commission pursuant to the provisions of the Securities Act of 1933 and transferred to this Commission in accordance with Section 210 of the Securities Exchange Act of 1934, and was such official custodian at the time of executing the above attestation, and that he/she, and persons holding the positions of Deputy Secretary, Assistant Director, Records Officer, Branch Chief of Records Management, and the Program Analyst for the Records Officer, or any one of them, are authorized to execute the above attestation.

For the Commission

_Nancy M. Morris_

Secretary

SEC 334 (10/07)

Exhibit 4     Page 58

# UNITED STATES OF AMERICA

## SECURITIES AND EXCHANGE COMMISSION

# ATTESTATION

**I HEREBY ATTEST**

*that:*

*A diligent search has this day been made of the records and files of this Commission and the records and files do not disclose that any registration statement has been received in this Commission, under the name Douglas G. Frederick, pursuant to the provisions of any of the Acts administered by the Commission.*

on file in this Commission

ebruary 25, 2008
_____
(Date)

*Larry Mills*
*Records Officer*

It is hereby certified that the Secretary of the U.S. Securities and Exchange Commission, Washington, D.C., which Commission was created by the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) is official custodian of the records and files of said Commission, and all records and files created or established by the Federal Trade Commission pursuant to the provisions of the Securities Act of 1933 and transferred to this Commission in accordance with Section 210 of the Securities Exchange Act of 1934, and was such official custodian at the time of executing the above attestation, and that he/she, and persons holding the positions of Deputy Secretary, Assistant Director, Records Officer, Branch Chief of Records Management, and the Program Analyst for the Records Officer, or any one of them, are authorized to execute the above attestation.

For the Commission

*Nancy M. Morris*
Secretary

SEC 334 (10/07)

Exhibit 5        Page 59

# UNITED STATES OF AMERICA

## SECURITIES AND EXCHANGE COMMISSION

# ATTESTATION

I HEREBY ATTEST

that:

A diligent search has this day been made of the records and files of this Commission and the records and files do not disclose that any application for registration as a broker-dealer was received in this Commission, under the name Douglas G. Frederick, pursuant to the provisions of the Securities Exchange Act of 1934.

on file in this Commission
February 25, 2008
_____
(Date)

_Larry Mills_

Larry Mills
Records Officer

It is hereby certified that the Secretary of the U.S. Securities and Exchange Commission, Washington, D.C., which Commission was created by the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) is official custodian of the records and files of said Commission, and all records and files created or established by the Federal Trade Commission pursuant to the provisions of the Securities Act of 1933 and transferred to this Commission in accordance with Section 210 of the Securities Exchange Act of 1934, and was such official custodian at the time of executing the above attestation, and that he/she, and persons holding the positions of Deputy Secretary, Assistant Director, Records Officer, Branch Chief of Records Management, and the Program Analyst for the Records Officer, or any one of them, are authorized to execute the above attestation.

For the Commission

_Nancy M. Morris_
_____
Secretary

SEC 334 (10/07)

Exhibit 5     Page 60

Start Page   Logoff   Site Map   Contact Us



Getting Started  •  Account Information  •  Inquiry  •  Tools  •  Documents  •  Reports  •  Transactions

**• Customer Info •**

| Firm | Account | | |
|------|---------|---|---|
| 07-Penson Financial Services, Inc. | 21314075 | * | Go |

**Customer Information** ◇

| | | | |
|---|---|---|---|
| **Account\*:** | 07 - 21314075 | **Registered Rep\*:** | DOUG FREDERICK - YU19 |
| **Customer\*:** | TUCO TRADING LLC | **Account Registration\*:** | Margin LLC |
| **Address\*:** | 1807 MORGAN LAKE CT | **Account Status\*:** | Open |
| | BRIGHTON, MI 48114 | **Interested Party:** | |
| | | **Interested Party ID:** | |
| Change Address | | **Related Party:** | LLC |
| **Tax ID Number\*:** | 421711487 | **Outstanding Paperwork:** | No |
| **Trade Authorization:** | No | **Customer Profile:** | |
| **Pattern Daytrader:** | Yes | Estimated Annual Income: | $250,000 - over |
| | | Estimated Net Worth: | $250,000 - over |
| | | Investment Objective: | Speculative (High Risk) |
| | | Investment Experience: | |

**Account Features** ◇

| | | | |
|---|---|---|---|
| **Money Market Sweep:** | | **Automatic Distribution:** | **Frequency:** |
| **Money Market Type:** | | | **Day of Month:** |
| **Debit Card:** | No | | **Amount:** |
| **Checkwriting:** | No | | |
| **Systematic ACH:** | No | **ACH Detail:** | **Bank ABA Number:** |
| **Automatic Distribution:** | No | | |
| | | | **Bank Account Number:** |
| | | **Tax Withholding:** | **State Rate:** 0.00 |
| | | | **Federal Rate:** 0.00 |

**Client Connection User Profile** ◇

**Account Detail** ◇

https://online.penson.com/(obzh33rm5rvuqavaopdsyqjv)/Default.aspx?LI=Y&LinkID=98          11/3

Exhibit __6__   Page __61__

**Penson Financial Services**
**New Account Approval Form**

Account Number: 21314075

Cash ☐  Mgn. ☑  Short ☐  Optn. ☐  IRA ☐  Office Code: V4  RR# 19  Acct. Open Date: 10/19/0

Is this account for a Foreign Bank? ☐ YES / ☑ NO. If yes, please list U.S. agent for service of process: _____

**Name of Primary Account Holder or Title of Account:** Tuco Trading LLC
(Write name exactly as it appears on Social Security Card or Fed ID Registration)

**Name of Secondary Acct. Holder:** _____

**Primary Account Holder Information:**

| | | | |
|---|---|---|---|
| SSN, Fed ID, Cedula, NIT#: | 42-1711487 | Home Telephone: | (810) 844-0692 |
| Residential Address: (No PO Boxes) | 1807 Morgan Lake Ct. | | |
| City, State, Zip: | Brighton, Mi 48114 | | |
| Mailing Address (if different): | | | |
| City, State, Zip: | | | |
| Employers Name: | | Occupation: | |
| Employers Address | | Employer's Telephone: | |
| City, State, Zip: | | | |
| Email Address (if Applicable): | doug@tuco.com | Date of Birth: | 9/18/69 |
| Associated person of a Broker? | Yes ☑ / No ☐ (If Yes, please name): | licensed with Gib Trading | |

**Secondary Account Holder Information (If Joint Acct.):** ☐ YES / ☐ NO – Is Secondary Account holder the Spouse of Primary Account Holder?

| | | | |
|---|---|---|---|
| SSN, Fed ID, Cedula, NIT#: | | Home Telephone: | |
| Residential Address: (No PO Boxes) | | | |
| City, State, Zip: | | | |
| Mailing Address (if different): | | | |
| City, State, Zip: | | | |
| Employers Name: | | Occupation: | |
| Employers Address | | Employer's Telephone: | |
| City, State, Zip: | | | |
| Email Address (if Applicable): | | Date of Birth: | |
| Associated person of a Broker? | Yes ☐ / No ☐ (If Yes, please name): | | |

**Citizenship Information:**

Primary:

Are you a U.S. Citizen? Yes ☑ No ☐
Resident Alien? Yes ☐ / No ☑ Country of Birth _____
Non-Resident Alien? Yes ☐ No ☑ Country Residing In: _____

Secondary:

Are you a U.S. Citizen? Yes ☐ / No ☐
Resident Alien? Yes ☐ No ☐ Country of Birth _____
Non-Resident Alien? Yes ☐ / No ☐ Country Residing In: _____

**Investment Objectives:** (* If more than one, please rank 1-6)

| | | |
|---|---|---|
| ☐ | Long term growth with safety (long term capital appreciation with relative safety of principal) | A |
| ☐ | Short term growth with high risk (Appreciation with acceptance of high risk) | B |
| ☑ | Speculative (want increase in value of investments – High Risk) | C |
| ☐ | Income (want to use proceeds of the acct. as a source of income) | H |
| ☐ | Growth and income (preserve capital as much as possible) | I |
| ☐ | Long term growth with greater risk – Aggressive Growth (trade volatile securities that have wide changes in price) | J |
| ☐ | All of the Above | M |

**Tax Information:**

| | |
|---|---|
| # Of Dependents: | 0 |
| Tax Status: | 0 % |
| Initial Deposit: | $ 500,000 |
| Initial Transaction: | |

Marital Status: ☐ S / ☑ M / ☐ D / ☐ W

Penson New Account Approval Form Page 1 of 2

12/2004

Exhibit 6  Page 62

**Penson Financial Services**
**New Account Approval Form**

Account Number: 2131 4075

Cash [ ]  Mgn. [ ]  Short [✓]  Optn. [ ]  IRA [ ]  Office Code: Y4  RR# 19  Acct. Open Date: 10/19/

**Client Information:**

| | |
|---|---|
| How long has account holder known the Broker? | 1 year |
| Who where you introduced by? | mutual friend |
| Is account holder a control person? (Officer, Director or 10% stock owner) | [✓] Yes / [ ] No |

If Yes, Please list the company(s) controlled & position:

owner of LLC

Is client an employee of Insurance Co., Bank, Fund, Securities firm or Investment Advisor? [ ] Yes [✓] No

**Income:**

| Income | Net Worth (Excluding Primary Residence) | Liquid Net Worth | | Payment Instructions |
|---|---|---|---|---|
| [ ] $0 - 25,000 | [ ] $0 - 25,000 | [ ] $0 - 25,000 | A | **Securities:** / **Money** / **Dividends** |
| [ ] $25,000 - 39,999 | [ ] $25,000 - 39,999 | [ ] $25,000 - 39,999 | B | [ ] Transfer & Ship (1) / [ ] Pay (1) / [ ] Pay Weekly (1) |
| [ ] $40,000 - 64,999 | [ ] $40,000 - 64,999 | [ ] $40,000 - 64,999 | C | [✓] Hold St. Name (2) / [✓] Hold (7) / [ ] Pay Monthly (2) |
| [ ] $65,000 - 124,999 | [ ] $65,000 - 124,999 | [ ] $65,000 - 124,999 | D | [✓] Hold (4) |
| [ ] $125,000 - 249,999 | [ ] $125,000 - 249,999 | [ ] $125,000 - 249,999 | E | |
| [✓] $250,000 - $499,999 | [✓] $250,000 - $499,999 | [ ] $250,000 - $499,999 | F | Principal & Maturity: [✓] Credit to Account [ ] Send Payment |
| [ ] $500,000 - $1,000,000 | [ ] $500,000 - $1,000,000 | [ ] $500,000 - $1,000,000 | F | Process checks: [✓] Monthly [ ] Weekly |
| [ ] $1,000,000 - Over | [ ] $1,000,000 - Over | [ ] $1,000,000 - Over | F | Money Market Sweep: [ ] Yes / [✓] No - If Yes, List Fund: |

**Investment Experience:**

| | Yrs. | Avg. Size | Avg. # P/Yr |
|---|---|---|---|
| Options: | 10 | 1000 | 10000 |
| Stocks: | 14 | 1000 | 2b.11 |
| Bonds: | 0 | | |
| Commodities: | 0 | | |
| Other (specify): | | | |

**Type of Registration:**
- [✓] Individual / [ ] Joint Community Property / [ ] Payable on Death (Individual)
- [✓] Joint TEN / [ ] Joint with Rights of Survivorship (except in LA)
- [✓] Joint with Rights of Survivorship & Payable on Death (except in LA) / [ ] Transfer on Death
- [ ] UGMA [ ] UTMA (Provide DOB & SSN for minor): SSN _____ DOB _____
- [ ] Retirement Account – Type: _____ / [ ] Foreign Non-Resident Alien / [ ] Resident Alien
- [ ] Other (Circle): Corporate, LLC, Trust, Partnership, Estate, Non-Profit, Sole Proprietorship, Investment Club.

**Credit References:**

| | |
|---|---|
| Bank: | Chase |
| Branch: | Brighton, M. |
| Type of Acct.: | Checking |
| Broker: | |

**Duplicate Confirmations:**
Please send Duplicate confirms to the following address:

**Authorized Person:**
If a person, other than the primary and/or secondary account holder will be operating this account, list Name, Address, ID# & Employer:

**Customer and Authorized Persons Signature:**

Primary Account Holder: Doug Frederick / Tuza Trading LLC   Date: 10/2/06
Secondary Account Holder: _____ Date: _____
Authorized Person (if Applicable): _____ Date: _____

**Broker Use Only:**

| | |
|---|---|
| Registered Rep Signature: | |
| Branch Manager Signature: | |
| Designated Officer Signature: | |

**Daytrading:**
Approved for Day Trading Strategy? [✓] YES / [ ] NO
Was Daytrading Risk Disclosure Statement Delivered? [✓] YES / [ ] NO
Date Daytrading Disclosure was delivered: 10/1/06

Penson New Account Approval Form Page 2 of 2

12/2004

Exhibit 6   Page 63

**PENSON FINANCIAL SERVICES, INC.**
**AND/OR BROKER DEALERS**
**FOR WHICH IT CLEARS**

## CUSTOMER ACCOUNT, MARGIN AND SHORT ACCOUNT AGREEMENT

| Account Number: | Full Name and Address on Account | Social Security Number / Employment Identification Number |
|---|---|---|
| 2131407S | Tusa Trading LLC 1807 Morgan Lakes Ct. Brighton, Mi 48114 | 42 - 1711487 The TIN provided must match the name given to avoid backup withholding. |

### CERTIFICATION OF TAXPAYER ID NUMBER (SUBSTITUTE W-9)
*(Please skip this section if you are not a U.S. Person for Tax Purposes)*

Check appropriate box:   ☐ Individual/Sole Proprietor   ☒ Corporation   ☐ Partnership   ☐ Other ____   ☐ Exempt from Backup Withholding

Under penalty of perjury I certify that:

(1) The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me) and

(2) I am not subject to backup withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property, contributions to an individual retirement account (IRA), and payments other than interest and dividends).

(3) I am a U.S. person (including a U.S. resident alien).

Certification Instructions —You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

Signature _____   Date **10/2/06**

### DISCLOSURE OF NAME/ADDRESS ON SECURITIES YOU OWN

Under rule 14b-1(c) of the Securities Exchange Act, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Please check below if you do not want your ownership disclosed.   By not checking below, you acknowledge that your ownership information may be transmitted to a third party for the processing and reporting of such information.

____ I object to the disclosure of such information.

### AUTHORIZATION TO EARN INTEREST ON FUNDS AWAITING INVESTMENT

This is to confirm my intention to reinvest each credit balance held by you in my name, and I further confirm that this cash credit balance is being maintained with you solely for the purpose of reinvestment. I understand that cash balances of up to $100,000 are protected by the Securities Investor Protection Corporation (SIPC), but that SIPC coverage is not available for funds maintained solely for the purpose of earning interest.

BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF THE CUSTOMER AGREEMENT PRINTED ON THIS SIDE AND THE REVERSE OF THIS DOCUMENT. THE UNDERSIGNED ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT, THE INFORMATION BROCHURE PREPARED BY PENSON FINANCIAL SERVICES, INC. AND PENSON'S PRIVACY POLICY. THE UNDERSIGNED CERTIFIES THAT THE UNDERSIGNED HAS READ AND UNDERSTANDS ALL PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT BENEFITS PENSON FINANCIAL SERVICES, INC., INTRODUCING BROKERS FOR WHICH IT CLEARS AND PERSONS RELATED TO EACH OF THE FOREGOING. THE REVERSE SIDE OF THIS AGREEMENT, PARAGRAPH 8, CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.

Important information about procedures for opening a new account: To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. **What this means to you:** when you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

Date of Delivery of Privacy Policy _**10/10/06**_

BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF THE MARGIN AND SHORT ACCOUNT AGREEMENT PRINTED ON THIS SIDE AND THE REVERSE SIDE OF THIS DOCUMENT. THE REVERSE SIDE OF THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE IN PARAGRAPH 6. The undersigned acknowledges that the undersigned's margin account securities may be borrowed by you or loaned to others. The undersigned also acknowledges receipt of a copy of this Agreement and a copy of the Margin Risk Disclosure Statement.

Date of Delivery of Margin Risk Disclosure Statement: _**10/10/06**_

**For Use by Individuals, Including Joint Accounts:**

Signature _____

Print Name **Doug Frederick**

Signature (Second Party, If Joint Account):

Print Name:

Date: **10/2/06**

**For use by entity accounts only (i.e. corporations, partnerships, trusts):**

Is this account a foreign bank?   ☐ Yes   ☒ No – If Yes, please list Agent for service of process.

Is this account for a foreign shell bank?   ☐ Yes   ☒ No.

Does this firm offer services to a foreign shell bank?   ☐ Yes   ☒ No

If you answered yes to any of the above questions, Corporation will need to complete Certification Regarding Correspondent Accounts

Signature _____

Print Name: **Doug Frederick**

Title: _____   Date: _____

Penson Combined CAG/Margin – 4/2006                                                              Page 1

Exhibit _C_   Page _64_

**1. Applicable Rules and Regulations.** All transactions shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market and its clearing house, if any, upon which such transactions are executed, except as otherwise specifically provided in this Agreement.

**2. Definitions.** "Introducing broker" means any brokerage firm which introduces securities transactions on behalf of the undersigned, which transactions are cleared through you, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the undersigned to you, whether now existing or hereafter arising. "Securities and other property" shall include, but shall not be limited to, money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "your" refers to Penson Financial Services, Inc.

**3. Breach; Security Interest.** Whenever in your discretion you consider it necessary for your protection, or for the protection of the undersigned's introducing firm or in the event of, but not limited to, (i) any breach by the undersigned of this or any other agreement with you, or (ii) the undersigned's failure to pay for securities and other property purchased or to deliver securities and other property sold, you may sell any or all securities and other property held in any of the undersigned's accounts (either individually or jointly with others), cancel or complete any open orders for the purchase or sale of any securities and other property, and/or borrow or buy-in any securities and other property required to make delivery against any sale, including a short sale, effected for the undersigned, all without demand for deposit of collateral, other notice of sale or purchase, or other notice or advertisement, each of which is expressly waived by the undersigned, and/or you may require the undersigned to deposit cash or adequate collateral to the undersigned's account prior to any settlement date in order to assure the performance or payment of any open contractual commitments and/or unsettled transactions. Any and all securities and other property belonging to the undersigned or in which the undersigned may have an interest held by you or carried in any of the undersigned's accounts with you (either individually or jointly with others) shall be subject to a first and prior security interest and lien for the discharge of the undersigned's obligations to you, wherever or however arising and without regard to whether or not you have made advances with respect to such securities and other property, and you are hereby authorized to sell and/or purchase any and all securities and other property in any of the undersigned's accounts, and/or to transfer any such securities and other property among any of the undersigned's accounts to the fullest extent of the law and without notice where allowed. The costs and expenses of collection of the debit balance and any unpaid deficiency in the accounts of the undersigned with you, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by you shall be payable to you by the undersigned.

**4. Cancellation.** You are authorized, in your discretion, should you for any reason whatsoever deem it necessary for your protection, without notice, to cancel any outstanding order, to close out the accounts of the undersigned, in whole or in part, or to close out any commitment made on behalf of the undersigned.

**5. Payment of Indebtedness Upon Demand.** The undersigned shall at all times be liable for the payment upon demand of any obligations owing from the undersigned to you, and the undersigned shall be liable to you for any deficiency remaining in any such accounts in the event of the liquidation thereof (as contemplated in Paragraph 3 of this Agreement or otherwise), in whole or in part, by you or by the undersigned; and the undersigned shall make payment of such obligations upon demand. If Customer also holds a futures account with Penson Financial Futures, Inc. ("PFFI"), Customer hereby authorizes Penson, without prior notice, to transfer from any account held with Penson to any account held with PFFI, any assets that PFFI represents to Penson are reasonably required to avoid the calling of margins for a Penson PFFI account or the payment of any obligations owed Penson by Customer. Customer also authorizes Penson to request from PFFI assets held by PFFI that in Penson's judgment may be reasonably required to avoid the calling of margins for a Penson account or the payment of any obligations owed Penson by Customer.

**6. Accounts Carried as Clearing Broker.** The undersigned understands that you are carrying the accounts of the undersigned as clearing broker by arrangement with the undersigned's introducing broker through whose courtesy the account of the undersigned has been introduced to you. Until receipt from the undersigned of written notice to the contrary, you may accept from and rely upon the undersigned's introducing broker for (a) orders for the purchase or sale in said account of securities and other property, and (b) any other instructions concerning the undersigned's accounts. The undersigned represents that the undersigned understands that you act only to clear trades introduced by the undersigned's introducing broker and to effect other back office functions for the undersigned's introducing broker. The undersigned confirms to you that the undersigned is relying for any advice concerning the undersigned's accounts solely on the undersigned's introducing broker. The undersigned understands that all representatives, employees and other agents with whom the undersigned communicates concerning the undersigned's account are agents of the introducing broker, and not your representatives, employees or other agents. The undersigned understands that you are not a principal of or partner with, and do not control in any way, the introducing broker or its representatives, employees or other agents. The undersigned understands that you will not review the undersigned's accounts and will have no responsibility for trades made in the undersigned's accounts. You shall not be responsible or liable for any acts or omissions of the introducing broker or its representatives, employees or other agents. Notwithstanding the foregoing, in the event that the undersigned initiates a claim against you in your capacity as clearing broker and does not prevail, the undersigned shall be responsible for the costs and expenses associated with your defense of such claim.

**6A. Account Carried as Custodian.** In some cases the undersigned's account is being carried by arrangement with the undersigned's Investment Advisor or Investment Manager, who uses Penson as the its Broker-Dealer custodian. The undersigned acknowledges that Penson's role as custodian is to hold or custody account assets, distribute or collect funds on behalf of the undersigned's account, execute and clear trades under instruction of the undersigned's Investment Advisor or Investment Manager, generate account statements and provide other custodial services as may be mandated by various regulatory standards and requirements. The undersigned understands that in the capacity as custodian, you will not offer investment advice, review the undersigned's accounts, and will have no responsibility for trades made in the undersigned's accounts. Additionally, in your capacity as custodian, you will not verify the accuracy of management fees that the undersigned's pays to Investment Advisors or Investment Managers pursuant to the terms of the Investment Management Agreement executed between the undersigned and the Investment Advisor or Investment Manager. Notwithstanding the foregoing, in the event that the undersigned initiates a claim against you in your capacity as custodial broker and does not prevail, the undersigned shall be responsible for the costs and expenses associated with your defense of such claim.

**7. Communications.** You may send communications to the undersigned at the undersigned's address or at such other address as the undersigned may hereafter give you in writing, and all communications so sent, whether by mail, telegraph, or otherwise, shall be deemed given to the undersigned personally, whether actually received or not. Reports of execution of orders and statements of accounts of the undersigned shall be conclusive if not objected to in writing to you, the former within five (5) days and the latter within ten (10) days, after forwarding by you.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:

   a.  ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED;

   b.  ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

   c.  THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

   d.  THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

   e.  THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

   f.  THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

   g.  THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**8. ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NASD. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR(S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE

Penson Combined CAG/Margin – 4/2006

Page 2

Exhibit ___6___ Page _65_

ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.
No person shall bring a punitive or certified class action in arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action, or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**8. Representations.** The undersigned represents that the undersigned is of majority age, that the undersigned is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business dealing either as broker or as principal in securities, bills of exchange, acceptances or other forms of commercial paper. If the undersigned is a corporation, partnership, trust or other entity, the undersigned represents that its governing instruments permit this Agreement, that this Agreement has been authorized by all applicable persons and that the undersigned signatory is authorized to bind the undersigned. The undersigned represents that the undersigned shall comply with all applicable laws, rules and regulations in connection with the undersigned's account. The undersigned further represents that no one except the undersigned has an interest in the account or accounts of the undersigned with you.

**10. Joint Accounts.** If the undersigned shall consist of more than one person, the undersigned's obligations under this Agreement shall be joint and several. References to the "undersigned" shall include each of the undersigned. You may rely on transfer or other instructions from any one of the undersigned in a joint account, and such instructions shall be binding on each of the undersigned. You may deliver securities or other property to, and send confirmations, notices, statements and communications of every kind, to any one of the undersigned, and such action shall be binding on each of the undersigned. Notwithstanding the foregoing, you are authorized in your discretion to require joint action by the joint tenants with respect to any matter concerning the joint account, including but not limited to the giving or cancellation of orders and the withdrawal of money, securities, futures or commodities.

**11. Other Agreements.** If the undersigned trades any options, the undersigned agrees to be bound by the terms of your Customer Option Agreement. The undersigned understands that copies of these agreements are available from you and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between you and the undersigned.

**12. Data Not Guaranteed.** The undersigned expressly agrees that any data or online reports is provided to the undersigned without warranties of any kind, express or implied, including but not limited to, the implied warranties of merchantability, fitness of a particular purpose or non-infringement. The undersigned acknowledges that the information contained in any reports provided by you is obtained from sources believed to be reliable but is not guaranteed as to its accuracy of completeness. Such information could include technical or other inaccuracies, errors or omissions. In no event shall you or any of your affiliates be liable to the undersigned or any third party for the accuracy, timeliness, or completeness of any information made available to the undersigned or for any decision made or taken by the undersigned in reliance upon such information. In no event shall you or your affiliated entities be liable for any special incidental, indirect or consequential damages whatsoever, including, without limitation, those resulting from loss of use, data or profits, whether or not advised of the possibility of damages, and on any theory of liability, arising out of or in connection with the use of any reports provided by you or with the delay or inability to use such reports.

**13. Order Flow Disclosure.** Depending on the security traded and absent specific direction from the undersigned, stock orders are routed via an electronic system to a listed, NASDAQ or over the counter broker or dealer. You or your correspondents may receive cash payments for routing such orders to specific brokers or dealers. Because those agents are market makers, they carry inventory in their specific securities, allowing for price improvements to the undersigned by trading through their inventories. Accordingly, the undersigned's orders will always be executed at the "best bid" or "best offer", or at a price superior to either, by virtue of the market maker's inventory positioning capabilities.

**14. Credit Check.** You are authorized, in your discretion, should you for any reason deem it necessary for your protection to request and obtain a consumer credit report for the undersigned.

**15. Miscellaneous.** If any provision of this Agreement is held to be unenforceable, it shall not affect any other provision of this Agreement. The headings of each section of this Agreement are descriptive only and do not modify or qualify any provision of this Agreement. This Agreement and its enforcement shall be governed by the laws of the state of Texas and shall cover individually and collectively all accounts which the undersigned has previously opened, now has open or may open or reopen with you, or any introducing broker, and any and all previous, current and future transactions in such accounts. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by your authorized representative. This Agreement and all provisions shall inure to the benefit of you and your successors, whether by merger, consolidation or otherwise, your assigns, the undersigned's introducing broker, and all other persons specified in Paragraph 8. You shall not be liable for losses caused directly or indirectly by any events beyond your reasonable control, including without limitation, government restrictions, exchange or market rulings, suspension of trading or unusually heavy trading in securities, a general change in economic, political or financial conditions, war or strikes. You may transfer the accounts of the undersigned to your successors and assigns. This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the undersigned.

**Additionally, for margin and/or short accounts, the following provisions are also applicable:**

**16. Liquidation.** In the event of the death of the undersigned, or in the event the margin in any account in which the undersigned has an interest shall in either your or the introducing broker's discretion become unsatisfactory to either you or the introducing broker, or be deemed insufficient by either you or the introducing broker, you are hereby authorized; (a) to sell any or all securities or other property which you may hold for the undersigned (either individually or jointly with others); (b) to buy any or all securities and other property which may be short in such accounts; and/or (c) to cancel any open orders and to close any or all outstanding contracts, all without demand for margin or additional margin, notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of your rights provided herein. You may likewise accept and rely upon transactions which you receive from the introducing broker to effect any of the aforementioned transactions (as noted in (a); (b), and (c). You shall have the discretion to determine which securities and other property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and you may be the purchaser for your own account.

**17. Hypothecation.** Within the limitations imposed by applicable laws, rules and regulations, all securities now or hereafter held by you, or carried by you in any account for the undersigned (either individually or jointly with others), or deposited to secure same, may from time to time, without any notice, be carried in your general loans and may be pledged, repledged, hypothecated or re-hypothecated, separately or in common with other securities for the sum due to you thereon or for a greater sum and without restricting to your possession or control for delivery a like amount of similar securities. The IRS requires Broker Dealers to treat dividend payments on loaned securities positions as in-lieu dividends for 1099 tax reporting purposes. Taxation of substitute dividend payments may be greater than ordinary on qualified dividends. It is understood, however, that you agree to deliver to the undersigned upon demand and upon payment of the full amount due thereon, all securities in such accounts, but without obligation to deliver the same certificates or securities deposited by the undersigned originally. Any securities in the undersigned's margin or short account may be borrowed by you, or lent to others.

**18. Interest.** Debit balances in all the accounts of the undersigned shall be charged with interest in accordance with your established custom, as disclosed to the undersigned in the Customer Information Brochure pursuant to the provisions of Rule 10b-16, of the Securities Exchange Act.

**19. Margin.** The undersigned agrees to maintain in all accounts with you such positions and margins as required by all applicable statutes, rules, regulations, procedures and custom, or as you deem necessary or advisable. The undersigned agrees to promptly satisfy all margin and maintenance calls.

**20. Sales.** The undersigned agrees to specifically designate any order to sell a security which the undersigned does not own as a short sale, and understands that you will mark such order as a short sale. The undersigned agrees that any order which is not specifically designated as a short sale is a sale of securities owned by the undersigned, and that the undersigned will deliver the securities on or before settlement date, if not already in the account. If the undersigned should fail to make such delivery in the time required, you are authorized to borrow such securities as necessary to make delivery for the undersigned's sale, and the undersigned agrees to be responsible for any loss you may thereby sustain, or which you may sustain as a result of your inability to borrow such securities.

Penson Combined CAG/Margin – 4/2006                                                                 Page 3

Exhibit 6     Page 66

Account # _2/3/4075_

# Limited Liability Company (LLC) Authorization

**To: Penson Financial Services, Inc.**

You are authorized and empowered to open and carry an account in the name of: _Tusa Trading LLC_
_____. (Name of Limited Liability Company) a Limited Liability Company (LLC)
organized under the laws of _Nevada_ _____ and having its principal place of business in
_Nevada_ _____.

This LLC is managed by its ☒ Member(s) ☐ Manager(s) (please check one). This LLC is empowered to (i) establish a ☐ Cash
Account ☒ Margin Account (please check one) for the purchase and sale (including short sales if this is a margin account) of stocks,
bonds, options and other securities, commodities and commodity futures, on margin (if this is a margin account) or otherwise, on
exchanges of which you are members or otherwise. The Account shall be governed by the terms and conditions of the Penson
Financial Services Client Agreement.

Any of the following persons, to-wit:

1.  _Doug Frederick_
    (Person Authorized to Give Orders)

2.  _____
    (Person Authorized to Give Orders)

3.  _____
    (Person Authorized to Give Orders)

4.  _____
    (Person Authorized to Give Orders)

is hereby authorized to give written or oral instructions by telephone or otherwise to you to buy or sell (including short sales if this is a
margin account) stocks, bonds, options and other securities, commodities and commodity futures, either for immediate or future
delivery, and to borrow money in the name of this LLC from or through you, and to secure payment therefore with property of this
LLC from or through you, and to secure payment therefore with property of this LLC. Any of the persons above named shall at all
times have authority in every way to bind and obligate this LLC for the carrying out of any contract, arrangement or transaction which
he or she shall, for or on behalf of this LLC, enter into or make with or through you. Notwithstanding the foregoing, you are
authorized in your discretion to require action by any combination of its members or its managers with respect to any matter
concerning the Limited Liability Company account, including but not limited to the giving or cancellation of orders and the
withdrawal of money, securities, futures, or commodities.

You are authorized to receive from this LLC checks and drafts drawn upon its funds by any of the persons above named or any
employee of this LLC and apply the same to the credit of this LLC or its account. You are also authorized to receive from any of the
persons above named, or any employee of this LLC, stocks, bonds, options and other securities, as collateral or margin (if this is a
margin account) upon this account of this LLC, and to accept instructions from any of the persons above named as to the delivery of
stocks, bonds, options and other securities for the account of this LLC and at his or her direction to cause certificates of stock, bonds,
options and other securities held in said account to be transferred to the name of any of the persons above named or of this LLC in the
discretion of any of the persons above named. Delivery to such person of such stocks, bonds, options, and securities, issued as
directed by him or her shall be deemed delivery to this LLC. Notwithstanding the foregoing, you are authorized in your discretion to
require action by any combination of its members or its managers with respect to any matter concerning the Limited Liability
Company account, including but not limited to the giving or cancellation of orders and the withdrawal of money, securities, futures, or
commodities. All confirmations, notices and demands upon this LLC may be delivered by you orally or in writing or by telephone,
telegraph, to any of the persons above named who severally is authorized to empower and any person or persons that he or she deems
proper at any time or times to do any and all things that he or she is hereinbefore authorized to do.

We, the undersigned certify that a correct list of the members (and manager(s), if the LLC is managed by manager(s) comprising said
LLC is set forth on the list attached hereto.

Revised 10-2003
Limited Liability Company (LLC) Authorization

Page 1 of 2

Exhibit _6_ Page_67_

Account # 21314075

The Corporation is formed to engage in the business of _stock trading_ and represents that it is not a commodity pool operator.

We further certify that all transactions, which may be entered into in, said account, or which may have been entered into ("the transactions"), are authorized under the LLC's organizational documents including but not limited to the articles of organization (or similar document property filed) and the operating agreement (or similar type of agreement) of the undersigned.

We hereby represent and warrant to you that each member of the LLC has the legal ability to participate in said LLC according to the laws of the state (i) in which said LLC has been organized and (ii) in which such member is domiciled, and to enter into the transactions. We further represent and warrant that all members (or manger(s)) who are natural persons have reached the age of legal majority.

In case of the death or withdrawal of any one of said members or termination of an authorized manager, if applicable, or in the case of the termination or dissolution of said LLC, we agree to notify you promptly and to execute any supplementary authorization which you may require in such event. If we do not notify you, we hereby authorize you to continue to receive orders in said account which may be given to you by any one of persons above named then surviving and to execute the same and treat all monies, options, futures, securities, or other property to the credit of said account as the property of the remaining member(s) subject to the order of any of the persons above named as the case may by.

This authorization shall also inure to the benefit of your successors, by merger, consolidation, or otherwise and assigns.

This authorization shall continue until signed, more of revocation is received by or from you and in case of such revocation it shall continue effective as to transactions entered into prior thereto.

**If managed by members, ALL MEMBERS must provide information and sign below. If manager-run, ALL MANAGERS must fill in information and sign below.**

| Name: | Doug Frederick | | | Signature: | | | |
|---|---|---|---|---|---|---|---|
| Date: | SSN, Fed ID, Cedula, NIT# | | 6596 | ID # | | | |
| | ID Type: drivers license | Expiration Date: 9/16/2007 | | Issued By: M' | | Issue Date: 2005 | |

| Name: | | | | Signature: | | | |
|---|---|---|---|---|---|---|---|
| Date: | SSN, Fed ID, Cedula, NIT# | | | ID # | | | |
| | ID Type: | Expiration Date: | | Issued By: | | Issue Date: | |

| Name: | | | | Signature: | | | |
|---|---|---|---|---|---|---|---|
| Date: | SSN, Fed ID, Cedula, NIT# | | | ID # | | | |
| | ID Type: | Expiration Date: | | Issued By: | | Issue Date: | |

| Name: | | | | Signature: | | | |
|---|---|---|---|---|---|---|---|
| Date: | SSN, Fed ID, Cedula, NIT# | | | ID # | | | |
| | ID Type: | Expiration Date: | | Issued By: | | Issue Date: | |

As defined in Section 5318(j) of Title 31 United States Code, the Corporation is a shell bank: ☐ YES ☒ NO; or a business offering services to a shell bank: ☐ YES ☒ NO; or a foreign bank: ☐ YES ☒ NO. If YES, please complete and return the Certification Regarding Correspondent Accounts.

Revised 10-2003
Limited Liability Company (LLC) Authorization

Page 2 of 2

Exhibit _6_ Page _68_

## SECRETARY OF STATE



### STATE OF NEVADA

## LIMITED LIABILITY COMPANY CHARTER

I, DEAN HELLER, the Nevada Secretary of State, do hereby certify that **TUCO TRADING, L.L.C.** did on August 9, 2006, file in this office the Articles of Organization for a Limited Liability Company, that said Articles of Organization are now on file and of record in the office of the Nevada Secretary of State, and further, that said Articles contain all the provisions required by the laws governing Limited Liability Companies in the State of Nevada.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of State, at my office on August 9, 2006.



**DEAN HELLER**
Secretary of State

By

Certification Clerk

Exhibit ___6___   Page ___69___

Tax ID No: 42-1

*DEAN HELLER*
*Secretary of State*

**STATE OF NEVADA**

*CHARLES E. MOORE*
*Securities Administrator*

*RENEE L. PARKER*
*Chief Deputy*
*Secretary of State*

*SCOTT W. ANDERSON*
*Deputy Secretary*
*for Commercial Recordings*

*PAMELA RUXEL*
*Deputy Secretary*
*for Southern Nevada*



*F LLICK HSU*
*Deputy Secretary*
*for Elections*

**OFFICE OF THE**
**SECRETARY OF STATE**

CAROL OSHANA
180 NORTH LASALLE STE 1450
CHICAGO, IL 60601

August 9, 2006

**Job Number:**    C20060809-1147

**Job Contents:**

| | |
|---|---|
| NV Corp Filing Acknowledgement(s): | 1 |
| File Stamped Copy(s): | 1 |
| LLC Charter(s): | 1 |
| ILMM-ALMM(s): | 1 |

**Special Handling Instructions:**

2HR/ FSC/FAXED AND MAILED 08-09-06/TAG

CAROL OSHANA
180 NORTH LASALLE STE 1450
CHICAGO, IL 60601

Exhibit __6__    Page __70__

**DEAN HELLER**
*Secretary of State*

**RENEE L. PARKER**
*Chief Deputy*
*Secretary of State*

**PAMELA RUCKEL**
*Deputy Secretary*
*for Southern Nevada*

**STATE OF NEVADA**



**OFFICE OF THE**
**SECRETARY OF STATE**

**CHARLES E. MOORE**
*Securities Administrator*

**SCOTT W. ANDERSON**
*Deputy Secretary*
*for Commercial Recordings*

**ELLICK HSU**
*Deputy Secretary*
*for Elections*

## Filing Acknowledgement

August 9, 2006

**Job Number**

C20060809-1147

**Limited Liability**
**Company Number**

E0591032006-7

**Filing Description**

Articles of Organization

**Document Filing**
**Number**

20060510262-14

**Date/Time of Filing**

August 9, 2006 01:30:55 PM

**Limited Liability Company Name**

TUCO TRADING, L.L.C.

**Resident Agent**

THE CORPORATION TRUST COMPANY
OF NEVADA

The attached document(s) were filed with the Nevada Secretary of State, Commercial
Recordings Division. The filing date and time have been affixed to each document,
indicating the date and time of filing. A filing number is also affixed and can be used to
reference this document in the future.

Respectfully,

*Dean Heller*

**DEAN HELLER**
Secretary of State

Commercial Recording Division
202 N. Carson Street
Carson City, Nevada 89701-4069
Telephone (775) 684-5708
Fax (775) 684-7138

Exhibit 6    Page 71

08/09/2006 14:01   3127588792   GT CORP   PAGE 01/01



DEAN HELLER
Secretary of State
[address illegible]
Carson City, Nevada [illegible]
[phone illegible]
Website: www.secretaryofstate.biz

Entity #
E0591032006-7
Document Number
20060510262-14

Date Filed:
8/9/2006 1:30:55 PM
In the office of
[signature]

Dean Heller
Secretary of State

**Articles Of Organization
Limited-Liability Company**
(PURSUANT TO NRS 86)

ABOVE SPACE IS FOR OFFICE USE ONLY

| | |
|---|---|
| 1. Name of Limited-Liability Company: | TODD SHAPIRO, LLC |
| 2. Resident Agent Name and Street Address: | The Corporation Trust Company of Nevada   Name   6100 Neil Road Suite 500   Physical Street Address   City   [Zip Code]   Mailing Address (if different)   City   State   Zip Code |
| 3. [illegible] | Latest date upon which the company is to dissolve (if existence is not perpetual):   N/A |
| 4. Management: | Company shall be managed by   ☐ Managers   or   ☒ Members |
| 5. Names and Addresses of Managers or Managing Members: | TODD SHAPIRO   Name   11617 MORRISON LAKE COURT   Address   BRIGHTON   City   MI   48114   State   Zip Code |
| | JONATHAN KIRKLAND   Name   8444 EAST ORLANDO DRIVE   Address   SCOTTSDALE   City   AZ   85258   State   Zip Code |
| | MICHAEL STEINER   Name   3030 CAMINO DEL RIO NORTH SUITE   Address   SAN DIEGO   City   CA   92108   State   Zip Code |
| 6. Name, Address and Signature of Organizer: | TODD SHAPIRO   Name   [signature] Doug Friedrich   11617 MORRISON LAKE COURT   Address   BRIGHTON   City   MI   48114   State   Zip Code |
| 7. Certificate of Acceptance of Appointment of Resident Agent: | I hereby accept appointment as Resident Agent for the above named limited-liability company.   [signature]   Assistant Secretary   8-9-06   Authorized Signature of R.A. or On Behalf of R.A. Company   Date |

This form must be accompanied by appropriate fees.

[Submit]

08/09/2006 14:01   3127588792   BASILE LAW FIRM   PAGE 01

08/09/2006 15:13   3127588296   BASILE LAW FIRM   PAGE 02

Exhibit   6   Page   72

EXHIBIT B

AGREEMENT FOR

MARKET DATA DISPLAY SERVICES

(Usage-Based Services/Nonprofessional Subscriber Status)

(Printed Version)

_____ [NAME OF VENDOR/BROKER DEALER] ("Vendor")
agrees to make "Market Data" available to you pursuant to the terms and conditions set forth in
this agreement. By executing this Agreement in the space indicated below, you ("Subscriber")
agree to comply with those terms and conditions. Section 1 sets forth terms and conditions of
general applicability. Section 2 applies insofar as Subscriber receives and uses Market Data made
available pursuant to this Agreement as a Nonprofessional Subscriber.

## SECTION 1: TERMS AND CONDITIONS OF GENERAL APPLICABILITY

1.    **MARKET DATA DEFINITION** – For all purposes of this Agreement, "Market
Data" means (a) last sale information and quotation information relating to securities that are
admitted to dealings on the New York Stock Exchange ("NYSE"), (b) such bond and other equity
last sale and quotation information, and such index and other market information, as United
States-registered national securities exchanges and national securities associations (each, an
"Authorizing SRO") may make available and as the NYSE may from time to time designate as
"Market Data"; and (c) all information that derives from any such information.

2.    **PROPRIETARY NATURE OF DATA** – Subscriber understands and
acknowledges that each Authorizing SRO and Other Data Disseminator has a proprietary interest
in the Market Data that originates on or derives from it or its market(s).

3.    **ENFORCEMENT** – Subscriber understands and acknowledges that (a) the
Authorizing SROs are third-party beneficiaries under this Agreement and (b) the Authorizing
SROs or their authorized representative(s) may enforce this Agreement, by legal proceedings or
otherwise, against Subscriber or any person that obtains Market Data that is made available
pursuant to this Agreement other than as this Agreement contemplates. Subscriber shall pay the
reasonable attorney's fees that any Authorizing SRO incurs in enforcing this Agreement against
Subscriber.

4.    **DATA NOT GUARANTEED** – Subscriber understands that no Authorizing
SRO, no other entity whose information is made available over the Authorizing SROs' facilities
(an "Other Data Disseminator") and no information processor that assists any Authorizing SRO

Exhibit  C    Page 73

or Other Data Disseminator in making Market Data available (collectively, the "Disseminating Parties") guarantees the timeliness, sequence, accuracy or completeness of Market Data or of other market information or messages disseminated by any Disseminating Party. Neither Subscriber nor any other person shall hold any Disseminating Party liable in any way for (a) any inaccuracy, error or delay in, or omission of, (i) any such data, information or message or (ii) the transmission or delivery of any such data, information or message, or (b) any loss or damage arising from or occasioned by (i) any such inaccuracy, error, delay or omission, (ii) non-performance or (iii) interruption in any such data, information or message, due either to any negligent act or omission by any Disseminating Party, to any "force majeure" (e.g., flood, extraordinary weather conditions, earthquake or other act of God, fire, war, insurrection, riot, labor dispute, accident, action of government, communications or power failure, equipment or software malfunction) or to any other cause beyond the reasonable control of any Disseminating Party.

**5.     PERMITTED USE** — Subscriber shall not furnish Market Data to any other person or entity and, subject to Paragraph 10, shall use Market Data only for its individual use in its business.

**6.     DISSEMINATION DISCONTINUANCE OR MODIFICATION** — Subscriber understands and acknowledges that, at any time, the Authorizing SROs may discontinue disseminating any category of Market Data, may change or eliminate any transmission method and may change transmission speeds or other signal characteristics. The Authorizing SROs shall not be liable for any resulting liability, loss or damages that may arise therefrom.

**7.     DURATION; SURVIVAL** — This Agreement remains in effect for so long as Subscriber has the ability to receive Market Data as contemplated by this Agreement. In addition, Vendor may terminate this Agreement at any time, whether at the direction of the Authorizing SROs or otherwise. Paragraphs 2, 3 and 4, and the first two sentences of Paragraph 8, survive any termination of this Agreement.

**8.     MISCELLANEOUS** — The laws of the State of New York shall govern this Agreement and it shall be interpreted in accordance with those laws. This Agreement is subject to the Securities Exchange Act of 1934, the rules promulgated under that act, and the joint-industry plans entered into pursuant to that act. This writing contains the entire agreement between the parties in respect of its subject matter. Subscriber may not assign all or any part of this Agreement to any other person. The person executing this Agreement below represents and warrants that he or she has legal capacity to contract and, if that person is executing this Agreement on behalf of a proprietorship or a business, partnership or other organization, represents and warrants that he or she has actual authority to bind the organization.

Exhibit ___(c___   Page___74

## SECTION 2: NONPROFESSIONAL SUBSCRIBER

9.      NONPROFESSIONAL SUBSCRIBER DEFINITION -"Nonprofessional Subscriber" means any natural person whom Vendor has determined to qualify as a "Nonprofessional Subscriber" and who is not:

    (a)    registered or qualified with the Securities and Exchange Commission (the "SEC"), the Commodities Futures Trading Commission, any state securities agency, any securities exchange or association, or any commodities or futures contract market or association.

    (b)    engaged as an "investment advisor" as that term is defined in Section 201(11) of the Investment Advisor's Act of 1940 (whether or not registered or qualified under that Act), nor

    (c)    (c) employed by a bank or other organization exempt from registration under Federal and/or state securities laws to perform functions that would require him or her to be so registered or qualified if he or she were to perform such functions for an organization not so exempt.

10.      PERMITTED USE – If Subscriber is a Nonprofessional Subscriber, he or she shall receive Market Data solely for his or her personal, non-business use.

11.      PERSONAL AND EMPLOYMENT DATA – As a prerequisite to qualifying as a "Nonprofessional Subscriber", Subscriber shall provide the following information:

Subscriber's name and address:

    Tuco Trading LLC
    1807 Morgan Lake Ct.
    Brighton, Mi. 48114

Subscriber's occupations (list all occupations – including homemaker, student, retiree, etc.):

    owner of LLC

Name(s) and address(es) of Subscriber's employer(s):

    (312) 286-1894
    same address as above

Subscriber's title(s) and/or position(s):

    owner of LLC

Subscriber's employment functions (description):

    oversee trading operations

Exhibit __6__   Page __75__

Subscriber shall notify Vendor promptly in writing of any change in his or her circumstances that may cause him or her to cease to qualify as a Nonprofessional Subscriber.

12.   **CERTIFICATION** – By executing this Agreement, Subscriber hereby certifies that he or she falls within Paragraph 9's definition of "Nonprofessional Subscriber" and that the personal and employment information that he or she has included in Paragraph 11 is truthful and accurate.

ACCEPTED AND AGREED: I, the "Subscriber" to which the preceding terms and conditions refer, acknowledge that I have read the preceding terms and conditions, that I understand them and that I hereby agree to comply with those terms and conditions.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first above written.

SUBSCRIBER                                              VENDOR

_____                    _____
(Name of Subscriber)                                (Name of Vendor)

By: _Doug Frederick_                          By: _____
Name: Tuco Trading LLC/Doug Frederick          Name:
Title: Owner                                   Title:
Date: 10/2/06                                  Date:

Exhibit _6_   Page _76_

**IRS** DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
PHILADELPHIA PA   19255-0023

Date of this notice:  08-16-200(

Employer Identification Number:
42-1711487

000013.366317.0001.001 2 AB 0.556 1029

Form:  SS-4

Number of this notice:  CP 575 /

TUCO TRADING LLC
1807 MORGAN LAKE CT
BRIGHTON MI   48114

For assistance you may call us :
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB OF THIS NOTICE.

## WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN).  We assigned
you EIN 42-1711487.  This EIN will identify your business account, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

When filing tax documents, please use the label we provided.  If this isn't
possible, it is very important that you use your EIN and complete name and address
exactly as shown above on all federal tax forms, payments and related correspondence.
Any variation may cause a delay in processing, result in incorrect information in your
account or even cause you to be assigned more than one EIN.  If the information
isn't correct as shown above, please correct it using tear off stub from this notice
and return it to us so we can correct your account.

Based on the information from you or your representative, you must file the
following form(s) by the date(s) shown.

            Form 1120                              03/15/2007

If you have questions about the form(s) or the due dates(s) shown, you can call
or write to us at the phone number or address at the top of the first page of this
letter.  If you need help in determining what your tax year is, see Publication 536,
Accounting Periods and Methods, available at your local IRS office or you can download
this Publication from our Web site at www.irs.gov.

We assigned you a tax classification based on information obtained from you or
your representative.  It is not a legal determination of your tax classification,
and is not binding on the IRS.  If you want a legal determination on your tax
classification, you may request a private letter ruling from the IRS under the
guidelines in Revenue Procedure 2004-1,2004-1 I.R.B. 1 (or superseding Revenue
Procedure for the year at issue.)

Exhibit _6_____    Page_77_

**INITIAL LIST OF MANAGER OR MANAGING MEMBERS AND RESIDENT AGENT OF**

FILE NUMBER

| TUCO TRADING, LLC. |
|---|

(Name of Limited-Liability Company)

E0591032006-7

FOR THE FILING PERIOD OF [ AUG, 2006 ] TO [ AUG, 2007.  Due by Sep 30, 2006 ]

The corporation's duly appointed resident agent in the State of Nevada upon whom process can be served is:

THE CORPORATION TRUST COMPANY OF NEVADA

6100 NEIL ROAD SUITE 500

RENO NV 89511

☐ CHECK BOX IF YOU REQUIRE A FORM TO UPDATE YOUR RESIDENT AGENT INFORMATION

Important: Read instructions before completing and returning this form.     THE ABOVE SPACE IS FOR OFFICE USE ONLY

1. Print or type names and addresses, either residence or business, for all managers or members. A Manager, or if none, a Managing Member of the company must sign the form. FORM WILL BE RETURNED IF UNSIGNED
2. If there are additional managers or managing members, attach a list of them to this form.
3. Return the completed form with the $125.00 filing fee. A $75.00 penalty must be added for failure to file this form by the last day of the first month following the incorporation/initial registration. and appropriate instructions.
4. Make your check payable to the Secretary of State. Your cancelled check will constitute a certificate to transact business. To receive a certified copy, enclose an additional $30.00
5. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, NV 89701-4201, (775) 684-5708.
6. Form must be in the possession of the Secretary of State on or before the last day of the last month following the incorporation/initial registration date. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties.

FILING FEE $125.00          LATE PENALTY: $75.00

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) |
|---|---|
|  | ☐ MANAGER   ☐ MANAGING MEMBER |
| ADDRESS | CITY            ST        ZIP |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) |
|---|---|
|  | ☐ MANAGER   ☐ MANAGING MEMBER |
| ADDRESS | CITY            ST        ZIP |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) |
|---|---|
|  | ☐ MANAGER   ☐ MANAGING MEMBER |
| ADDRESS | CITY            ST        ZIP |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) |
|---|---|
|  | ☐ MANAGER   ☐ MANAGING MEMBER |
| ADDRESS | CITY            ST        ZIP |

| NAME | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED) |
|---|---|
|  | ☐ MANAGER   ☐ MANAGING MEMBER |
| ADDRESS | CITY            ST        ZIP |

I declare, to the best of my knowledge under penalty of perjury, that the above mentioned entity has complied with the provisions of NRS 360.760 and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

X Signature of Manager or Managing Member          Title          Date

Nevada Secretary of State Form I030 - LIST LLC 2003

Revised 01/03/104 (0)

Exhibit __6__   Page __78__



Exhibit __6__ Page __79__

# PENSON FINANCIAL SERVICES, INC.
### AND/OR BROKER DEALERS FOR WHICH IT CLEARS
### CUSTOMER OPTION AGREEMENT

To open an Options Account we must obtain the following supplemental information in addition to that on the New Account form. If account is a joint account, give information as to all owners. Information concerning the customer obtained from sources other than the customer, including estimates, should be noted as such on this form. Also, the customer's refusal to provide information called for on this form should be noted on the form.

Account Name: **Tuco Trading LLC**    Account Number: **2131407S**

Address: **1807 Morgan Lake ct.**    Home Phone #: **810 844-0692**
(No P.O. Boxes) **Brighton, MI 48114**    No. of Dependants: ___   Marital Status: S M D W (S/O)

Birth date: **9/16/1969**    Spouse's Name: ___

Work Phone #: **312-286-1894**    Spouse's Birth date: ___
Employer /    Spouse's Employer
Position: **N/A**    / Position: ___

**PREVIOUS OPTIONS EXPERIENCE:    PREVIOUS INVESTMENT EXPERIENCE:    INVESTMENT OBJECTIVES & ANTICIPATED TYPE(S) OF OPTION TRANSACTIONS:** Choose one or more

| | Stock Options | Index Options | | Years of Experience | Usual Size of Trades Per Year | Usual No. Of Trades Per Year |
|---|---|---|---|---|---|---|
| Buying (includes Debit, Spreads & Straddles) | 8 | 4 | Options: | 8 | 1000 | 60 |
| Covered Writing: | 8 | 4 | Stocks: | 14 | 1500 | 500K |
| Spreads: | 8 | 4 | Bonds: | 0 | | |
| Uncovered Writing: | 8 | 4 | Commodities: | 0 | | |
| None: | | | Other (Specify): | | | |

Income: ___
Safety or Leverage: ___
Speculation: ✓
Covered Call Writing: ✓
Purchasing Options: *Puts for Safety or Leverage/Calls for Leverage
Other Option Transactions: *(Uncovered) Spreads, Straddles, Combinations

**APPROXIMATE ANNUAL INCOME AND NET WORTH:**

| | | | | | |
|---|---|---|---|---|---|
| **120,000** Salary | Bonus | Other | **120,000** Total | Approximate net worth: (Exclusive of residence, etc.) **400,000** | Approximate liquid net worth: (Cash, cash equivalents, marketable securities **100,000** |

BY SIGNING BELOW, THE UNDERSIGNED CERTIFIES THAT THE INFORMATION CONTAINED HEREIN IS COMPLETE AND ACCURATE. THE UNDERSIGNED AGREES TO ADVISE ITS BROKER OF ANY MATERIAL CHANGE IN THE UNDERSIGNED'S FINANCIAL STATUS AND/OR INVESTMENT OBJECTIVES. BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF THE CUSTOMER OPTIONS AGREEMENT PRINTED ON THE BOTH SIDES OF THIS DOCUMENT. THE REVERSE SIDE OF THIS DOCUMENT, PARAGRAPH 9, CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE. THE UNDERSIGNED ACKNOWLEDGES THAT HE/SHE HAS RECEIVED THE DISCLOSURE DOCUMENT, "CHARACTERISTICS AND RISKS OF STANDARDIZED OPTIONS" AND IS AWARE OF THE SPECIAL RISKS INHERENT IN OPTIONS TRADING.

For use by individual, including accounts:    For use by entity customers only (i.e., corporations, partnerships, trusts)

Customer Name: **Tuco Trading LLC**

Signature ___    By: _____

Print Name ___    Title: **Managing Director**

Signature (Second Party, if Joint Account) ___    Date: **10/19/06**

Print Name ___

Date: ___

**BROKERS USE ONLY:** (Must be filled in before Penson can accept)    **TO BE COMPLETED BY MANAGER PRIOR TO OPTION TRADING:**
Please note Date of Delivery:    Approved for option trading as follows:
1. Characteristics and Risks of Standard Options: **10/19/06**    Covered Call Writing: **YES**
2. Special Statement for Uncovered Option Writers: **10/19/06**    Purchasing Options: **Equity & Index**
AE Signature: ___  Date: **10/19/06**    Other Option Transactions: **Spreads Appt -cmb**
ROP Signature: ___  Date: **11/19/06**    Approved Subject to the Following Limits: **To Contracts**
Manager Signature: ___  Date: **10/19/06**

4/2005 – Customer Options Agreement    Page 1 of
3

Exhibit **6**    Page **80**

**PENSON FINANCIAL SERVICES, INC.**
**AND/OR BROKER DEALERS FOR WHICH IT CLEARS**
**CUSTOMER OPTION AGREEMENT**

To open an Options Account we must obtain the following supplemental information in addition to that on the New Account form. If account is a joint account, give information as to all owners. Information concerning the customer obtained from sources other than the customer, including estimates, should be noted as such on this form. Also, the customer's refusal to provide information called for on this form should be noted on the form.

| | |
|---|---|
| Account Name: Tuco Trading LLC | Account Number: 21314075 |
| Address: 19 Redondo | Home Phone #: (949) 249-1899 |
| (No P.O. Boxes) Laguna Niguel, Ca 92677 | No. of Dependants: 2    Marital Status: S (M) D W N/A |
| Birth date: 9/16/69 | Spouse's Name: Tamera Frederick |
| Work Phone #: (312) 286-1894 | Spouse's Birth date: 10/21/69 |
| Employer / Position: self-employed | Spouse's Employer / Position: N/A |

**PREVIOUS OPTIONS EXPERIENCE:    PREVIOUS INVESTMENT EXPERIENCE:    INVESTMENT OBJECTIVES & ANTICIPATED TYPE(S) OF OPTION TRANSACTIONS: Choose one or more**

| | Stock Options | Index Options | | Years of Experience | Usual Size of Trades Per Year | Usual No. Of Trades Per Year | |
|---|---|---|---|---|---|---|---|
| Buying (Includes Debit, Spreads & Straddles: | ✓ | | Options: | 10 | 10 | 48,000 | Income: _____ |
| Covered Writing: | ✓ | | Stocks: | 17 | 5000 | 900m | Safety or Leverage: _____ |
| Spreads: | | | Bonds: | | | | Speculation: ✓ |
| Uncovered Writing: | | | Commodities: | | | | Covered Call Writing: _____ |
| None: | | | Other: (Specify) | | | | Purchasing Options: *Puts for Safety or Leverage/Calls for Leverage |
| | | | | | | | Other Option Transactions: *(Uncovered) Spreads, Straddles, Combinations |

**APPROXIMATE ANNUAL INCOME AND NET WORTH:**

| 120,000 | | | 120,000 | Approximate net worth: (Exclusive of residence, etc.) 300,000 | Approximate liquid net worth: (Cash, cash equivalents, marketable securities) 150,000 |
|---|---|---|---|---|---|
| Salary | Bonus | Other | Total | | |

BY SIGNING BELOW, THE UNDERSIGNED CERTIFIES THAT THE INFORMATION CONTAINED HEREIN IS COMPLETE AND ACCURATE. THE UNDERSIGNED AGREES TO ADVISE ITS BROKER OF ANY MATERIAL CHANGE IN THE UNDERSIGNED'S FINANCIAL STATUS AND/OR INVESTMENT OBJECTIVES. BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF THE CUSTOMER OPTIONS AGREEMENT PRINTED ON THE BOTH SIDES OF THIS DOCUMENT. THE REVERSE SIDE OF THIS DOCUMENT, PARAGRAPH 9, CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE. THE UNDERSIGNED ACKNOWLEDGES THAT HE/SHE HAS RECEIVED THE DISCLOSURE DOCUMENT, "CHARACTERISTICS AND RISKS OF STANDARDIZED OPTIONS" AND IS AWARE OF THE SPECIAL RISKS INHERENT IN OPTIONS TRADING.

For use by individual, including accounts:

Signature: _____
Print Name: Doug Frederick

Signature (Second Party, if Joint Account): _____
Print Name: _____

Date: _____

For use by entity customers only (i.e., corporations, partnerships, trusts)

Customer Name: Tuco Trading LLC
By: Doug Frederick
Title: President
Date: 3/3/07

| BROKERS USE ONLY: (Must be filled in before Penson can accept) | TO BE COMPLETED BY MANAGER PRIOR TO OPTION TRADING: |
|---|---|
| Please note Date of Delivery: | Approved for option trading as follows: |
| 1. Characteristics and Risks of Standard Options: 1/4/7 | Covered Call Writing: YES |
| 2. Special Statement for Uncovered Option Writers: 1/4/7 | Purchasing Options: YES |
| AE Signature: _____ Date: 1/4/7 | Other Option Transactions: AU |
| ROP Signature: _____ Date: 1/4/7 | Approved Subject to the Following Limits: NO! |
| | Manager Signature: _____ Date: 1/4/7 |

4/2005 – Customer Options Agreement
3

Page 1 of

Exhibit 6    Page 81

In connection with any transactions in options which have been or may be purchased, sold, exercised or endorsed for the undersigned's account with an introducing broker(s) which clears through Penson Financial Services, Inc., the undersigned agrees as follows:

**1. Definitions, Introducing broker**" means any brokerage firm which introduces security transactions on behalf of the undersigned, which transactions are cleared through you, whether one or more . "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the undersigned to you, whether now existing or hereafter arising. "Options" means all types of options, including puts, calls, equity, debt, index or otherwise. "Securities and other property" shall include, but shall not be limited to money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "your" refers to Penson Financial Services, Inc.

**2. Limits.** The Undersigned shall not, acting alone or in concert with others, exceed the position/exercise limits set forth by any exchange or market or by any other regulatory authority having jurisdiction.

**3. Authority, Execution of Orders, Security Interest.** The undersigned hereby authorizes you in your discretion, should you deem it necessary for your protection for any reason, or if the undersigned dies, to buy, sell, or sell short for the undersigned's account and risk, puts, calls or other forms of option and/or to buy, sell or sell short any part or all of the underlying shares represented by options endorsed by you for the undersigned's account. Any and all expenses incurred by you in connection with such transactions shall be reimbursed by the undersigned to you. The undersigned understands and acknowledges that when transactions on the undersigned's behalf are to be executed and the options are traded in more than one marketplace you may use your discretion in selecting the market in which to enter the undersigned's order unless the undersigned specifically instructs otherwise. All monies, securities, or other property which you may hold in any account of the undersigned shall be held subject to a general lien for the discharge of the undersigned's obligations to you under this Agreement or otherwise.

**4. Notice, Exercise, Random Allocation.** The undersigned is aware of your requirements and time limitations for accepting an exercise notice and expiration date. The undersigned understands that the undersigned may not receive actual notice of exercise until the week following exercise. The undersigned bears full responsibility for taking action to exercise or sell valuable options; however, in the absence of the undersigned notifying the introducing broker to exercise a valuable options contract by 3 p.m. Central Standard Time on the last business day prior to the expiration date of the options contract, and the introducing broker instructing you to sell valuable options on the undersigned's behalf within such time, the undersigned agrees that you may exercise the options contract on the undersigned's behalf. In the event of such exercise, the profit in excess of commission costs created thereby will be credited to the undersigned's account. In the event that the commissions to be charged for such an expiration transaction exceeds the proceeds to be realized, the undersigned agrees and hereby relinquishes the undersigned's ownership in said option to you, and you may exercise such option for your own account. If the undersigned does not instruct the introducing broker to exercise the valuable option by the time stated above, and you for whatever reason, do not exercise such option on the undersigned's behalf, the undersigned hereby waives any and all claims for damage or loss which the undersigned might at the time or any time thereafter have against you arising out of the fact that the option was not exercised. The undersigned is aware that you utilize a random method of allocation for all option(s) assignments received from the Option Clearing Corporation. Exercise assignment notices for options contracts are allocated among all customers' short positions within that series. This is accomplished by a manual procedure, which randomly selects from among all customer short positions, including positions established on the day of assignment, those contracts which are subject to exercise. All American short positions are liable for assignment at any time. The undersigned understands that a more detailed description of this procedure is available upon request by the undersigned.

**5. Uncovered Options.** The undersigned agrees that in connection with any uncovered option(s) for the undersigned's account, the undersigned will not sell, during the life of such options, the underlying securities collateralizing such options, including any cash or securities which may accrue on the underlying covered securities until such options are closed, exercised or expired or the undersigned has met the collateral requirements established by you and/or the introducing broker for carrying uncovered options. The undersigned also agrees that the introducing broker and/or you, in your respective sole discretion, may refuse any order to sell such underlying securities received from the undersigned or by means of a "give up" basis through another firm unless, prior to such sale, the undersigned has met the collateral requirements established by you and/or the introducing broker for carrying uncovered options. You have the right, in your sole discretion, to permit the undersigned to apply the proceeds of such sale to such collateral requirements.

**6. Risks.** The undersigned is aware of the high degree of risk involved in options transactions and has given the introducing broker, in strict confidence, information to demonstrate that this account and the trading anticipated in connection therewith is not unsuitable for the undersigned in light of the undersigned's investment objectives, financial situation and needs, experience and knowledge. The undersigned agrees to advise the introducing broker of any changes in the undersigned's investment objectives, financial situation or other circumstances that may be deemed to materially affect the suitability of executing options transactions for the undersigned's account.

**7. Options Account Form, Disclosure Documents.** The undersigned has reviewed the contents of the options account form and represents that they are accurate. Although certain types of transactions are indicated as anticipated you and the introducing broker may execute any other types of transactions for the undersigned's account upon the undersigned's instructions. The undersigned has received an Options Disclosure Document relating to options on the categories of underlying securities which the undersigned has been approved for trading.

**8. Accounts Carried as Clearing Broker.** The undersigned understands that you are carrying the accounts of the undersigned as clearing broker by arrangement with the undersigned's introducing broker through whose courtesy the account of the undersigned has been introduced to you. Until receipt from the undersigned of written notice to the contrary, you may accept and rely upon the introducing broker for (a) orders for the purchase or sale in said account of securities and other property, and (b) any other instructions concerning the undersigned's accounts. The undersigned represents that the undersigned understands that you act only to clear trades introduced by the undersigned's introducing broker and to effect other back office functions for the undersigned's introducing broker. The undersigned confirms to you that the undersigned is relying for any advice concerning the undersigned's accounts solely on the undersigned's introducing broker. The undersigned understands that all representatives, employees and other agents with whom the undersigned communicates concerning the undersigned's account are agents of the introducing broker, and not your representatives, employees or other agents. The undersigned understands that you will not review the undersigned's accounts and will have no responsibility for trades made in the undersigned's accounts. You shall not be responsible or liable for any acts or omissions of the introducing broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

a. ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b. ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c. THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d. THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e. THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f. THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g. THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**9. ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR YOUR AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, OR OF THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. I

Exhibit __6__ Page __82__

YOU ARE A PARTY TO SUCH ARBITRATION, TO THE EXTENT PERMITTED BY THE RULES OF THE APPLICABLE ARBITRATION TRIBUNAL, THE ARBITRATION SHALL BE CONDUCTED IN DALLAS, TEXAS. THE DECISION AND AWARD OF THE ARBITRATORS(S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:(i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**10. Other Agreements.** The undersigned agrees to be bounded by the terms of your **Customer Account Agreement**. If the undersigned trade on margin or short accounts, the undersigned agrees to be bound by the terms of your **Customer Margin and Short Account Agreement**. The undersigned understands that copies of these agreements are available from you and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between you and the undersigned.

**11. Data Not Guaranteed.** The undersigned expressly agrees that any data or online reports is provided to the undersigned without warranties of any kind, express or implied, including but not limited to, the implied warranties of merchantability, fitness of a particular purpose or non-infringement. The undersigned acknowledges that the information contained in any reports provided by you is obtained from sources believed to be reliable but is not guaranteed as to its accuracy of completeness. Such information could include technical or other inaccuracies, errors or omissions. In no event shall you or any of your affiliates be liable to the undersigned or any third party for the accuracy, timeliness, or completeness of any information made available to the undersigned or for any decision made or taken by the undersigned in reliance upon such information. In no event shall you or your affiliated entities be liable for any special incidental, indirect or consequential damages whatsoever, including, without limitation, those resulting from loss of use, data or profits, whether or not advised of the possibility of damages, and on any theory of liability, arising out of or in connection with the use of any reports provided by you or with the delay or inability to use such reports.

**12. Credit Check.** You are authorized, in your discretion, should you for any reason deem it necessary for your protection to request and obtain a consumer credit report for the undersigned.

**13. Miscellaneous.** The undersigned agrees that this Agreement and all transactions in the undersigned's accounts shall be governed by the constitution, rules, regulations, customs, usages and bylaws of the Options Clearing Corporation and all exchanges or other facilities upon which options are traded for the account of the undersigned. If any provisions of this Agreement is held to be unenforceable, it shall not affect any other provisions of this Agreement. The headings of each sections of this Agreement are descriptive only and do not modify or qualify any provision of this Agreement. This Agreement and its enforcement shall be governed by the law of the state of Texas and shall cover individually and collectively all accounts which the undersigned has previously opened, now has open or may open or reopen with you, or any introducing broker, and any and all previous, current and future transactions in such accounts. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by your authorized representative. This Agreement and all provisions shall insure to the benefit of you and your successors, whether by merger, consolidation or otherwise, your assigns, the undersigned's introducing broker, and all other persons specified in Paragraph 9. You shall not be liable for losses caused directly or indirectly by any events beyond your reasonable control, including without limitation, government restrictions, exchange or market rulings, suspension of trading or unusually heavy trading in securities, a general change in economic, political or financial conditions, war or strikes. You may transfer the accounts of the undersigned to your successors and assigns. This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the undersigned.

Exhibit ____6____ Page___83___

## PENSON FINANCIAL SERVICES, INC.
### AND/OR BROKER DEALERS FOR WHICH IT CLEARS
### CUSTOMER OPTION AGREEMENT

**ORIGINAL**

To open an Options Account we must obtain the following supplemental information in addition to that on the New Account form. If account is a joint account, give information as to all owners. Information concerning the customer obtained from sources other than the customer, including estimates, should be noted as such on this form. Also, the customer's refusal to provide information called for on this form should be noted on the form.

Account Name: Tuco Trading LLC    Account Number: 2131407S

Address: 1807 Morgan Lake Ct.    Home Phone #: 810 844-0692
(No P.O. Boxes)
Brighton, MI 48114    No. of Dependants:    Marital Status: S M D W (SUS)

Birth date: 9/16/1969    Spouse's Name:

Work Phone #: 317-286-1894    Spouse's Birth date:
Employer /    Spouse's Employer
Position: N/A    / Position:

PREVIOUS OPTIONS EXPERIENCE:    PREVIOUS INVESTMENT EXPERIENCE:    INVESTMENT OBJECTIVES & ANTICIPATED TYPE(S) OF OPTION TRANSACTIONS: Choose one or more

| | Stock Options | Index Options | | Years of Experience | Usual Size of Trades Per Year | Usual No. Of Trades Per Year | |
|---|---|---|---|---|---|---|---|
| Buying (Includes Debit, Spreads & Straddles) | 8 | 4 | Options: | 8 | 1000 | 60 | Income: |
| Covered Writing: | 8 | 4 | Stocks: | 14 | 1500 | 800K | Safety or Leverage: |
| Spreads: | 8 | 4 | Bonds: | 0 | | | Speculation: ✓ |
| Uncovered Writing: | 8 | 4 | Commodities: | 0 | | | Covered Call Writing: ✓ |
| None: | | | Other: (Specify) | | | | Purchasing Options: ✓ |

APPROXIMATE ANNUAL INCOME AND NET WORTH:

| 120,000 Salary | Bonus | Other | 120,000 Total | Approximate net worth: (Exclusive of residence, etc.) 400,000 | Approximate liquid net worth: (Cash, cash equivalents, marketable securities) 100,000 |

BY SIGNING BELOW, THE UNDERSIGNED CERTIFIES THAT THE INFORMATION CONTAINED HEREIN IS COMPLETE AND ACCURATE. THE UNDERSIGNED AGREES TO ADVISE ITS BROKER OF ANY MATERIAL CHANGE IN THE UNDERSIGNED'S FINANCIAL STATUS AND/OR INVESTMENT OBJECTIVES. BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF THE CUSTOMER OPTIONS AGREEMENT PRINTED ON THE BOTH SIDES OF THIS DOCUMENT. THE REVERSE SIDE OF THIS DOCUMENT, PARAGRAPH 9, CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE. THE UNDERSIGNED ACKNOWLEDGES THAT HE/SHE HAS RECEIVED THE DISCLOSURE DOCUMENT, "CHARACTERISTICS AND RISKS OF STANDARDIZED OPTIONS" AND IS AWARE OF THE SPECIAL RISKS INHERENT IN OPTIONS TRADING.

For use by individual, including accounts:    For use by entity customers only (i.e., corporations, partnerships, trusts)

Signature ___    Tuco Trading LLC
Customer Name
Print Name ___    By: ___
Signature (Second Party, if Joint Account) ___    Title: Managing Director
Print Name ___    Date: 10/19/06
Date: ___

BROKERS USE ONLY: (Must be filled in before Penson can accept)    TO BE COMPLETED BY MANAGER PRIOR TO OPTION TRADING:
Please note Date of Delivery:    Approved for option trading as follows:
1. Characteristics and Risks of Standard Options: 10/19/06    Covered Call Writing: YES
2. Special Statement for Uncovered Option Writers: 10/19/06    Purchasing Options: Equity & Index
AE Signature: ___ Date: 10/19/06    Other Option Transactions: Spread debit-credit
ROP Signature: ___ Date: 11/1/06    Approved Subject to the Following Limits: To Customers
    Manager Signature: ___ Date: 10/1/06

4/2005 – Customer Options Agreement 3    Page 1 of

Exhibit 6    Page 84

● **Wire Transfer** ●

## Penson Account Information

| | |
|---|---|
| Account | 07-21314075 |
| Account Name | TUCO TRADING LLC |
| Account Type | 2 - Margin |
| Account Balance | No |
| Amount | $50000.00 (USD) |

## Recipient Bank Information

| | |
|---|---|
| Bank ABA Number | 072000326 |
| Foreign Wire | No |

## Beneficiary Information

| | |
|---|---|
| Bank Account Number | 722923067 |
| Third Party | No |
| Beneficiary Name | TUCO TRADING LLC |
| Beneficiary Address Line 1 | 1807 MORGAN LAKE CT |
| Beneficiary Address Line2 | |

## For Further Credit To

| | |
|---|---|
| Intermediate Account | No |

## Other Information

| | |
|---|---|
| Process Date | 01/03/2007 |
| Charge Domestic Wire Fee To | Customer |

## Fee Summary

| | |
|---|---|
| Domestic Wire Fee | 25.00 |
| Total Fees | 25.00 |

**Your request has been submitted successfully.**

I agree to hold all parties acting on this request, including the introducing broker and Penson Financial Services, Inc., and their respective agents and employe
(hereinafter, collectively, "the parties") harmless from any and all claims, demands, proceedings, suits and actions and all liabilities, losses, and expenses inclu
without limitation those asserted by me, associated with actions taken by the parties due to instructions received from me in this request.

_____    ___/___/___

Signature

F/c
21314075

**• Wire Transfer •**

## Penson Account Information

| | |
|---|---|
| Account | 07-21314075 |
| Account Name | TUCO TRADING LLC |
| Account Type | 2 - Margin |
| Account Balance | No |
| Amount | $640000.00 (USD) |

## Recipient Bank Information

| | |
|---|---|
| Bank ABA Number | 072000326 |
| Foreign Wire | No |

## Beneficiary Information

| | |
|---|---|
| Bank Account Number | 722923075 |
| Third Party | No |
| Beneficiary Name | TUCO TRADING LLC |
| Beneficiary Address Line 1 | 1807 MORGAN LAKE CT |
| Beneficiary Address Line2 | |

## For Further Credit To

| | |
|---|---|
| Intermediate Account | No |

## Other Information

| | |
|---|---|
| Process Date | 12/22/2006 |
| Charge Domestic Wire Fee To | Customer |

## Fee Summary

| | |
|---|---|
| Domestic Wire Fee | 25.00 |
| Total Fees | 25.00 |

## Your request has been submitted successfully.

I agree to hold all parties acting on this request, including the introducing broker and Penson Financial Services, Inc., and their respective agents and employee (hereinafter, collectively, "the parties") harmless from any and all claims, demands, proceedings, suits and actions and all liabilities, losses, and expenses inclu without limitation those asserted by me, associated with actions taken by the parties due to instructions received from me in this request.

_____          _____/_____/_____
Signature                                Date

https://online.penson.com/(spf3lo55lw2uzx55utxwdzyg)/Default.aspx?LI=Y&ExportTimeStamp=10%3...   12/22/2

Exhibit _6_    Page _86_

● Wire Transfer ●

**Penson Account Information**

| | |
|---|---|
| Account | 07-21314075 |
| Account Name | TUCO TRADING LLC |
| Account Type | 2 - Margin |
| Account Balance | No |
| Amount | $522000.00 (USD) |

**Recipient Bank Information**

| | |
|---|---|
| Bank ABA Number | 072000326 |
| Foreign Wire | No |

**Beneficiary Information**

| | |
|---|---|
| Bank Account Number | 722923075 |
| Third Party | No |
| Beneficiary Name | TUCO TRADING LLC |
| Beneficiary Address Line 1 | 1807 MORGAN LAKE CT |
| Beneficiary Address Line2 | |

**For Further Credit To**

| | |
|---|---|
| Intermediate Account | No |

**Other Information**

| | |
|---|---|
| Process Date | 11/24/2006 |
| Charge Domestic Wire Fee To | Customer |

**Fee Summary**

| | |
|---|---|
| Domestic Wire Fee | 25.00 |
| Total Fees | 25.00 |

**Your request has been submitted successfully.**

I agree to hold all parties acting on this request, including the introducing broker and Penson Financial Services, Inc., and their respective agents and employees (hereinafter, collectively, "the parties") harmless from any and all claims, demands, proceedings, suits and actions and all liabilities, losses, and expenses including without limitation those asserted by me, associated with actions taken by the parties due to instructions received from me in this request.

_____          _____/_____/_____
Signature                                                              Date

Exhibit __6__   Page __87__

**Exhibit 7**