Start Page    Logoff    Site Map    Contact Us



Getting Started  •  Account Information  •  Inquiry  •  Tools  •  Documents  •  Reports  •  Transactions



## • Customer Info •

**Firm**
07-Penson Financial Services, Inc.

**Account**
21317813    *    [Go]

## Customer Information ◇

| | |
|---|---|
| **Account\*:** | 07 - 21317813 |
| **Customer\*:** | TUCO TRADING LLC |
| **Address\*:** | 19 REDONDO |
| | LAGUNA NIGUEL, CA 92677 |

**Change Address**

| | |
|---|---|
| **Tax ID Number\*:** | 421711487 |
| **Telephone(s)\*:** | B - 949-249-1899 |
| **Trade Authorization:** | No |
| **Pattern Daytrader:** | No |

| | |
|---|---|
| **Registered Rep\*:** | DOUG FREDERICK - YU19 |
| **Account Registration\*:** | Margin LLC |
| **Account Status\*:** | Open |
| **Interested Party:** | |
| **Interested Party ID:** | |
| **Related Party:** | LLC |
| **Outstanding Paperwork:** | No |

**Customer Profile:**

| | |
|---|---|
| Estimated Annual Income: | $250,000 - over |
| Estimated Net Worth: | $250,000 - over |
| Investment Objective: | Speculative (High Risk) |
| Investment Experience: | Stock |
| | Option |

## Account Features ◇

| | |
|---|---|
| **Money Market Sweep:** | |
| **Money Market Type:** | |
| **Debit Card:** | No |
| **Checkwriting:** | No |
| **Systematic ACH:** | No |
| **Automatic Distribution:** | No |

| | |
|---|---|
| **Automatic Distribution:** | Frequency: |
| | Day of Month: |
| | Amount: |
| **ACH Detail:** | Bank ABA Number: |
| | Bank Account Number: |
| **Tax Withholding:** | State Rate: |
| | Federal Rate: |

## Client Connection User Profile ◇

## Account Detail ◇

Exhibit _7_    Page _88_


| Home | Regulatory Consolidation | Rules & Regulations | Regulatory Enforcement | Education & Programs | Regulatory Systems | Arbitration & Mediation | Investor Information |
|------|------|------|------|------|------|------|------|

NASD Manual | Notices to Members | Rule Filings | Member Alerts | Publications & Guidance | Issue Center | Compliance Tools



## OFAC Search Tool

### Search OFAC's Sanction Program Listings

Tuco

[ Submit Query ]  [ Clear Search ]

Search for: at least one word

☑ Specially Designated Nationals (SDN)

☑ Palestinian Legislative Council (PLC)

- Each line should contain a separate name or phrase to search for in the OFAC Sanctions Program Listings.
- Your search will include all of the checked OFAC Listings.
- You may search for a maximum of 500 names or phrases at a time as shown in the example below:
  **John Andrew Doe**
  **Smith, George Q.**
  **Airways Charters, Inc.**

How to use this tool.

### Search Results

View the records below with your search term or terms highlighted. Using the highlighted list will allow you to quickly verify whether an entity or individual appears on the OFAC Sanctions Program Listings. If you find a match or are in doubt about a specific account or transaction or you need additional information, contact OFAC's Compliance Hotline at 800-540-6322.

| **Tuco - 0 hit(s)** | click to expand |
|---|---|
| | **Page: 1** |

Data Updated: 3/23/2007

©2007 NASD. All rights reserved. | Legal Notices and Privacy Policy.

http://apps.nasd.com/rulesregulation/ofac/nasd/Default.aspx

3/23/2007

Exhibit 7     Page 89

| Home | Regulatory Consolidation | Rules & Regulation | Regulatory Enforcement | Education & Programs | Regulatory Systems | Arbitration & Mediation | Investor Information |
|---|---|---|---|---|---|---|---|

NASD Manual | Notices to Members | Rule Filings | Member Alerts | Publications & Guidance | Issue Center | Compliance Tools

 NASD

# OFAC Search Tool

## Search OFAC's Sanction Program Listings

Frederick

[Submit Query]  [Clear Search]

Search for: at least one word

☑ Specially Designated Nationals (SDN)
☑ Palestinian Legislative Council (PLC)

- Each line should contain a separate name or phrase to search for in the OFAC Sanctions Program Listings.
- Your search will include all of the checked OFAC Listings.
- You may search for a maximum of 500 names or phrases at a time as shown in the example below:
  **John Andrew Doe**
  **Smith, George Q.**
  **Airways Charters, Inc.**

How to use this tool.

## Search Results

View the records below with your search term or terms highlighted. Using the highlighted list will allow you to quickly verify whether an entity or individual appears on the OFAC Sanctions Program Listings. If you find a match or are in doubt about a specific account or transaction or you need additional information, contact OFAC's Compliance Hotline at 800-540-6322.

### Frederick - 4 hit(s)
click to collapse

| Count | Data | Source |
|---|---|---|
| 1 | NORDIC LTD. (a.k.a. NORDIK LIMITED EOOD), 9 Frederick J. Curie Street, Sofia 1113, Bulgaria [LIBERIA] | SDN |
| 2 | NORDIK LIMITED EOOD (a.k.a. NORDIC LTD.), 9 Frederick J. Curie Street, Sofia 1113, Bulgaria [LIBERIA] | SDN |
| 3 | ROCKMAN LTD. (a.k.a. ROKMAN EOOD), 9 Frederick J. Curie Street, Sofia 1113, Bulgaria [LIBERIA] | SDN |
| 4 | ROKMAN EOOD (a.k.a. ROCKMAN LTD.), 9 Frederick J. Curie Street, Sofia 1113, Bulgaria [LIBERIA] | SDN |

Page: 1

Data Updated: 3/23/2007

©2007 NASD. All rights reserved. | Legal Notices and Privacy Policy.

Exhibit _____7_____ Page _90_

**Rosalie Vargas**

**From:** Linda Nyatenya [INyatenya@PENSON.COM]
**Sent:** Friday, March 23, 2007 7:52 AM
**To:** rosaliev@glbtrading.com
**Subject:** TUCO TRADING LLC - 21317813

**Linda Nyatenya**
New Accounts Representative
Penson Financial Services, Inc.
P: 214.765.1049 F: 214.217.5116
www.penson.com

The Flexible Choice in Global Securities Services™

STATEMENT OF CONFIDENTIALITY: This message and any attachments are intended solely for the person or entity to which it is addressed and may contain confidential or privileged information. If the recipient of this message is not the addressee or a person responsible for delivering the message to the addressee, such recipient is prohibited from reading or using this message in any way. If you have received this message in error, please call the sender of this message immediately and delete the message from any computer.

3/23/2007

Exhibit 7 Page 91

# ORIGINAL

**Penson Financial Services**
**New Account Approval Form**

Account Number: 2737883

**PENSON**

Cash ☐  Mgn. ☐  Short ☐  Optn. ☐  IRA ☐  Office Code: 10  RR# 19  Acct. Open Date: _____

Is this account for a Foreign Bank? ☐ YES / ☑ NO. If yes, please list U.S. agent for service of process: _____

**Name of Primary Account Holder or Title of Account:** Tuco Trading LLC
(Write name exactly as it appears on Social Security Card or Fed ID Registration)

**Name of Secondary Acct. Holder:** _____

## Primary Account Holder Information:

| SSN, Fed ID, Cedula, NIT#: 42-171-1487 | Home Telephone: 949-249-1899 |
|---|---|
| Residential Address: (No PO Boxes) | 19 Redondo |
| City, State, Zip: | Laguna Niguel, CA 92677 |
| Mailing Address (if different): | |
| City, State, Zip: | |
| Employers Name: | Occupation: |
| Employers Address | Employer's Telephone: |
| City, State, Zip: | |
| Email Address (if Applicable): doug@tuco.com | Date of Birth: |
| Associated person of a Broker? Yes ☑ / No ☐ (If Yes, please name): licensed w/ GLB Trading | |

## Secondary Account Holder Information (If Joint Acct.): ☐ YES / ☐ NO – Is Secondary Account holder the Spouse of Primary Account Holder?

| SSN, Fed ID, Cedula, NIT#: | Home Telephone: |
|---|---|
| Residential Address: (No PO Boxes) | |
| City, State, Zip: | |
| Mailing Address (if different): | |
| City, State, Zip: | |
| Employers Name: | Occupation: |
| Employers Address | Employer's Telephone: |
| City, State, Zip: | |
| Email Address (if Applicable): | Date of Birth: |
| Associated person of a Broker? Yes ☐ / No ☐ (If Yes, please name): | |

## Citizenship Information:

**Primary:**

Are you a U.S. Citizen? Yes ☑ / No ☐

Resident Alien? Yes ☐ / No ☑ Country of Birth _____

Non-Resident Alien? Yes ☐ / No ☑ Country Residing In: _____

**Secondary:**

Are you a U.S. Citizen? Yes ☐ / No ☐

Resident Alien? Yes ☐ / No ☐ Country of Birth _____

Non-Resident Alien? Yes ☐ / No ☐ Country Residing In: _____

## Investment Objectives: (* If more than one, please rank 1-6)

| | | |
|---|---|---|
| ☐ | Long term growth with safety (long term capital appreciation with relative safety of principal) | A |
| ☐ | Short term growth with high risk (Appreciation with acceptance of high risk) | B |
| ☑ | Speculative (want increase in value of investments – High Risk) | C |
| ☐ | Income (want to use proceeds of the acct. as a source of income) | H |
| ☐ | Growth and Income (preserve capital as much as possible) | I |
| ☐ | Long term growth with greater risk – Aggressive Growth (trade volatile securities. that have wide changes in price) | J |
| ☐ | All of the Above | M |

## Tax Information:

| # Of Dependents: | 0 | |
|---|---|---|
| Tax Status: | 0 | % |
| Initial Deposit: | $ 500,000 | |
| Initial Transaction: | | |

Marital Status: ☐ S / ☑ M / ☐ D / ☐ W

Penson New Account Approval Form Page 1 of 2

12/2004

Exhibit 7 Page 92

**ORIGINAL**

Penson Financial Services
**New Account Approval Form**

PENSON

Account Number: 2F3FF23

Cash ☐ Mgn. ☐ Short ☐ Optn. ☐ IRA ☐ Office Code: YU RR# 19 Acct. Open Date: _____

## Client Information:

| | |
|---|---|
| How long has account holder known the Broker? | 1 yr |
| Who where you Introduced by? | mutual friends |
| Is account holder a control person? (Officer, Director or 10% stock owner) | ☑ Yes / ☐ No |
| If Yes, Please list the company(s) controlled & position: | owner of LLC |
| | |
| | |
| Is client an employee of Insurance Co., Bank, Fund, Securities firm or Investment Advisor? | ☐ Yes / ☑ No |

### Net Worth:

| Income: | (Excluding Primary Residence) | Liquid Net Worth: | | Payment Instructions: | | |
|---|---|---|---|---|---|---|
| ☐ $0 - 25,000 | ☐ $0 - 25,000 | ☐ $0 - 25,000 | A | **Securities:** | **Money** | **Dividends** |
| ☐ $25,000 - 39,999 | ☐ $25,000 - 39,999 | ☐ $25,000 - 39,999 | B | ☐ Transfer & Ship (1) | ☐ Pay (1) | ☐ Pay Weekly (1) |
| ☐ $40,000 - 64,999 | ☐ $40,000 - 64,999 | ☐ $40,000 - 64,999 | C | ☑ Hold St. Name (2) | ☑ Hold (7) | ☐ Pay Monthly (1) |
| ☐ $65,000 - 124,999 | ☐ $65,000 - 124,999 | ☐ $65,000 - 124,999 | D | | | ☑ Hold (4) |
| ☐ $125,000 - 249,999 | ☐ $125,000 - 249,999 | ☑ $125,000 - 249,999 | E | | | |
| ☑ $250,000 - $499,999 | ☑ $250,000 - $499,999 | ☐ $250,000 - $499,999 | F | **Principal & Maturity:** ☐ Credit to Account | ☐ Send Payment | |
| ☐ $500,000 - $1,000,000 | ☐ $500,000 - $1,000,000 | ☐ $500,000 - $1,000,000 | F | **Process checks:** ☑ Monthly ☐ Weekly | | |
| ☐ $1,000,000 - Over | ☐ $1,000,000 - Over | ☐ $1,000,000 - Over | F | **Money Market Sweeps:** ☐ Yes / ☑ No - If Yes, List Fund: | | |

### Investment Experience:

| | Yrs. | Avg. Size | Avg. # P/Yr. |
|---|---|---|---|
| Options: | 10 | 1000 | 10,000 |
| Stocks: | 14 | 1000 | 8bill |
| Bonds: | | | |
| Commodities: | | | |
| Other (specify): | | | |

### Type of Registration:

☑ Individual / ☐ Joint Community Property / ☐ Payable on Death (Individual)

☐ Joint TEN / ☐ Joint with Rights of Survivorship (except in LA)

☐ Joint with Rights of Survivorship & Payable on Death (except in LA) / ☐ Transfer on Death

☐ UGMA ☐ UTMA (Provide DOB & SSN for minor): SSN _____ DOB _____

☐ Retirement Account – Type: _____ / ☐ Foreign Non-Resident Alien / ☐ Resident Alien

☐ Other (Circle): Corporate, LLC, Trust, Partnership, Estate, Non-Profit, Sole Proprietorship, Investment Club.

### Credit References:

| | |
|---|---|
| Bank: | Chase |
| Branch: | Brighton, MI |
| Type of Acct.: | checking |
| Broker: | |

### Duplicate Confirmations:

Please send Duplicate confirms to the following address:

### Authorized Person:

If a person, other than the primary and/or secondary account holder will be operating this account, list Name, Address, ID# & Employer:

## Customer and Authorized Persons Signature:

Primary Account Holder: Doug Frederick Tibco Trading LLC Date: 3/22/06

Secondary Account Holder: _____ Date: _____

Authorized Person (if Applicable): _____ Date: _____

### Broker Use Only:

X Registered Rep Signature: _____

Branch Manager Signature: _____

Designated Officer Signature: _____

### Daytrading:

Approved for Day Trading Strategy? ☑ YES / ☐ NO

Was Daytrading Risk Disclosure Statement Delivered? ☑ YES / ☐ NO

Date Daytrading Disclosure was delivered: _____

Penson New Account Approval Form Page 2 of 2                    12/2004

Exhibit 7      Page 93

**ORIGINAL**

Account # _21317813_

## Limited Liability Company (LLC) Authorization

To: Penson Financial Services, Inc.

You are authorized and empowered to open and carry an account in the name of: _Tuco Trading LLC._
_____. (Name of Limited Liability Company) a Limited Liability Company (LLC)
organized under the laws of _Nevada_ and having its principal place of business in
_Nevada_.

This LLC is managed by its ☐ Member(s) ☐ Manager(s) (please check one). This LLC is empowered to (i) establish a ☐ Cash
Account ☐ Margin Account (please check one) for the purchase and sale (including short sales if this is a margin account) of stocks,
bonds, options and other securities, commodities and commodity futures, on margin (if this is a margin account) or otherwise, on
exchanges of which you are members or otherwise. The Account shall be governed by the terms and conditions of the Penson
Financial Services Client Agreement.

Any of the following persons, to-wit:

1. _Doug Frederick_
   (Person Authorized to Give Orders)

2. _____
   (Person Authorized to Give Orders)

3. _____
   (Person Authorized to Give Orders)

4. _____
   (Person Authorized to Give Orders)

is hereby authorized to give written or oral instructions by telephone or otherwise to you to buy or sell (including short sales if this is a
margin account) stocks, bonds, options and other securities, commodities and commodity futures, either for immediate or future
delivery, and to borrow money in the name of this LLC from or through you, and to secure payment therefore with property of this
LLC from or through you, and to secure payment therefore with property of this LLC. Any of the persons above named shall at all
times have authority in every way to bind and obligate this LLC for the carrying out of any contract, arrangement or transaction which
he or she shall, for or on behalf of this LLC, enter into or make with or through you. Notwithstanding the foregoing, you are
authorized in your discretion to require action by any combination of its members or its managers with respect to any matter
concerning the Limited Liability Company account, including but not limited to the giving or cancellation of orders and the
withdrawal of money, securities, futures, or commodities.

You are authorized to receive from this LLC checks and drafts drawn upon its funds by any of the persons above named or any
employee of this LLC and apply the same to the credit of this LLC or its account. You are also authorized to receive from any of the
persons above named, or any employee of this LLC. stocks, bonds, options and other securities, as collateral or margin (if this is a
margin account) upon this account of this LLC, and to accept instructions from any of the persons above named as to the delivery of
stocks, bonds, options and other securities for the account of this LLC and at his or her direction to cause certificates of stock, bonds,
options and other securities held in said account to be transferred to the name of any of the persons above named or of this LLC in the
discretion of any of the persons above named. Delivery to such person of such stocks, bonds, options, and securities, issued as
directed by him or her shall be deemed delivery to this LLC. Notwithstanding the foregoing, you are authorized in your discretion to
require action by any combination of its members or its managers with respect to any matter concerning the Limited Liability
Company account, including but not limited to the giving or cancellation of orders and the withdrawal of money, securities, futures, or
commodities. All confirmations, notices and demands upon this LLC may be delivered by you orally or in writing or by telephone,
telegraph, to any of the persons above named who severally is authorized to empower and any person or persons that he or she deems
proper at any time or times to do any and all things that he or she is hereinbefore authorized to do.

We, the undersigned certify that a correct list of the members (and manager(s), if the LLC is managed by manager(s) comprising said
LLC is set forth on the list attached hereto.

Exhibit _7_ Page _94_

**ORIGINAL**

Account # *2131813*

The Corporation is formed to engage in the business of *Stock trading* and represents that it is not a commodity pool operator.

We further certify that all transactions, which may be entered into in, said account, or which may have been entered into ("the transactions"), are authorized under the LLC's organizational documents including but not limited to the articles of organization (or similar document property filed) and the operating agreement (or similar type of agreement) of the undersigned.

We hereby represent and warrant to you that each member of the LLC has the legal ability to participate in said LLC according to the laws of the state (i) in which said LLC has been organized and (ii) in which such member is domiciled, and to enter into the transactions. We further represent and warrant that all members (or manger(s)) who are natural persons have reached the age of legal majority.

In case of the death or withdrawal of any one of said members or termination of an authorized manager, if applicable, or in the case of the termination or dissolution of said LLC, we agree to notify you promptly and to execute any supplementary authorization which you may require in such event. If we do not notify you, we hereby authorize you to continue to receive orders in said account which may be given to you by any one of persons above named then surviving and to execute the same and treat all monies, options, futures, securities, or other property to the credit of said account as the property of the remaining member(s) subject to the order of any of the persons above named as the case may by.

This authorization shall also inure to the benefit of your successors, by merger, consolidation, or otherwise and assigns.

This authorization shall continue until signed, more of revocation is received by or from you and in case of such revocation it shall continue effective as to transactions entered into prior thereto.

**If managed by members, ALL MEMBERS must provide information and sign below. If manager-run, ALL MANAGERS must fill in information and sign below.**

| Name: Doug Frederick | | | Signature: | |
|---|---|---|---|---|
| Date: | SSN, Fed ID, Cedula, NIT# : 65916 | | ID # | |
| | ID Type: Dr Lers License | Expiration Date: 9/16/2007 | Issued By: MI | Issue Date: 2003 |

| Name: | | | Signature: | |
|---|---|---|---|---|
| Date: | SSN, Fed ID, Cedula, NIT# | | ID # | |
| | ID Type: | Expiration Date: | Issued By: | Issue Date: |

| Name: | | | Signature: | |
|---|---|---|---|---|
| Date: | SSN, Fed ID, Cedula, NIT# | | ID # | |
| | ID Type: | Expiration Date: | Issued By: | Issue Date: |

| Name: | | | Signature: | |
|---|---|---|---|---|
| Date: | SSN, Fed ID, Cedula, NIT# | | ID # | |
| | ID Type: | Expiration Date: | Issued By: | Issue Date: |

As defined in Section 5318(j) of Title 31 United States Code, the Corporation is a shell bank:  ☐ YES ☐ NO; or a business offering services to a shell bank: ☐ YES ☐ NO; or a foreign bank: ☐ YES ☐ NO.  If YES, please complete and return the Certification Regarding Correspondent Accounts.

Exhibit 7 Page 95

**ORIGINAL**

## PENSON FINANCIAL SERVICES, INC.
### AND/OR BROKER DEALERS FOR WHICH IT CLEARS
### CUSTOMER OPTION AGREEMENT

To open an Options Account we must obtain the following supplemental information in addition to that on the New Account form. If account is a joint account, give information as to all owners. Information concerning the customer obtained from sources other than the customer, including estimates, should be noted as such on the form. Also, the customer's refusal to provide information called for on this form should be noted on the form.

Account Name: Tuco Trading LLC
Account Number: 2121 7813

Address: (No P.O. Boxes) 19 Redondo
Home Phone #: 949-249-1091

Laguna Niguel, CA 92677
No. of Dependants: ____   Marital Status: S (M) D W (N/A)

Birth date: ____
Spouse's Name: Tamara Frederick

Work Phone #: 312-206-1894
Spouse's Birth date: ____

Employer / Position: self employed
Spouse's Employer / Position: N/A

**PREVIOUS OPTIONS EXPERIENCE:**   **PREVIOUS INVESTMENT EXPERIENCE:**

**INVESTMENT OBJECTIVES & ANTICIPATED TYPE(S) OF OPTION TRANSACTIONS:**
Choose one or more

| | Stock Options | Index Options | | Years of Experience | Usual Size of Trades Per Year | Usual No. Of Trades Per Year | |
|---|---|---|---|---|---|---|---|
| Buying (Includes Debit, Spreads & Straddles: | ✔ | | Options: | 10 | 10 | 49,000 | Income: ____ |
| Covered Writing: | ✔ | | Stocks: | 17 | 5000 | 900m | Safety or Leverage: ____ |
| Spreads: | | | Bonds: | | | | Speculation: ✔ |
| Uncovered Writing: | | | Commodities: | | | | Covered Call Writing: ____ |
| None: | | | Other: (Specify) | | | | Purchasing Options: ____ *Puts for Safety or Leverage/Calls for Leverage |
| | | | | | | | Other Option Transactions: ____ *(Uncovered) Spreads, Straddles, Combinations |

**APPROXIMATE ANNUAL INCOME AND NET WORTH:**

| 120,000 Salary | Bonus | Other | 120,000 Total | Approximate net worth: (Exclusive of residence, etc.) 300,000 | Approximate liquid net worth: (Cash, cash equivalents, marketable securities) 150,000 |
|---|---|---|---|---|---|

BY SIGNING BELOW, THE UNDERSIGNED CERTIFIES THAT THE INFORMATION CONTAINED HEREIN IS COMPLETE AND ACCURATE. THE UNDERSIGNED AGREES TO ADVISE ITS BROKER OF ANY MATERIAL CHANGE IN THE UNDERSIGNED'S FINANCIAL STATUS AND/OR INVESTMENT OBJECTIVES. BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF THE CUSTOMER OPTIONS AGREEMENT PRINTED ON THE BOTH SIDES OF THIS DOCUMENT. THE REVERSE SIDE OF THIS DOCUMENT, PARAGRAPH 9, CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE. THE UNDERSIGNED ACKNOWLEDGES THAT HE/SHE HAS RECEIVED THE DISCLOSURE DOCUMENT, "CHARACTERISTICS AND RISKS OF STANDARDIZED OPTIONS" AND IS AWARE OF THE SPECIAL RISKS INHERENT IN OPTIONS TRADING.

For use by individual, including accounts:
X _____
Signature
Doug Frederick
Print Name

For use by entity customers only (i.e., corporations, partnerships, trusts)
Tuco Trading LLC
Customer Name
Doug Frederick
By:
President
Title:
3/22/07
Date:

Signature (Second Party, If Joint Account)
_____
Print Name
_____
Date:

**BROKERS USE ONLY:** (Must be filled in before Penson can accept)
Please note Date of Delivery:
1. Characteristics and Risks of Standard Options: _____
2. Special Statement for Uncovered Option Writers: _____
AE Signature: _____ Date: 3/22/07
ROP Signature: _____ Date: 10/9/06

**TO BE COMPLETED BY MANAGER PRIOR TO OPTION TRADING:**
Approved for option trading as follows:
Covered Call Writing: _____
Purchasing Options: _____
Other Option Transactions: _____
Approved Subject to the Following Limits: None
Manager Signature: _____ Date: 10/10/06

Exhibit 7 Page 96

21317813

In connection with any transactions in options which have been or may be purchased, sold, exercised or endorsed for the undersigned's account with an introducing broker(s) which clears through Penson Financial Services, Inc., the undersigned agrees as follows:

1. **Definitions. Introducing broker** means any brokerage firm which introduces security transactions on behalf of the undersigned, which transactions are cleared through you, whether one or more . **"Obligations"** means all indebtedness, debit balances, liabilities or other obligations of any kind of the undersigned to you, whether now existing or hereafter arising. **"Options"** means all types of options, including puts, calls, equity, debt, index or otherwise. **"Securities and other property"** shall include, but shall not be limited to money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. **"You"** or **"your"** refers to Penson Financial Services, Inc.

2. **Limits.** The Undersigned shall not, acting alone or in concert with others, exceed the position/exercise limits set forth by any exchange or market or by any other regulatory authority having jurisdiction.

3. **Authority, Execution of Orders, Security Interest.** The undersigned hereby authorizes you in your discretion, should you deem it necessary for your protection for any reason, or if the undersigned dies, to buy, sell, or sell short for the undersigned's account and risk, puts, calls or other forms of option and/or to buy, sell or sell short any part or all of the underlying shares represented by options endorsed by you for the undersigned's account. Any and all expenses incurred by you in connection with such transactions shall be reimbursed by the undersigned to you. The undersigned understands and acknowledges that when transactions on the undersigned's behalf are to be executed and the options are traded in more than one marketplace you may use your discretion in selecting the market in which to enter the undersigned's order unless the undersigned specifically instructs otherwise. All monies, securities, or other property which you may hold in any account of the undersigned shall be held subject to a general lien for the discharge of the undersigned's obligations to you under this Agreement or otherwise.

4. **Notice, Exercise, Random Allocation.** The undersigned is aware of your requirements and time limitations for accepting an exercise notice and expiration date. The undersigned understands that the undersigned may not receive actual notice of exercise until the week following exercise. The undersigned bears full responsibility for taking action to exercise or sell valuable options; however, in the absence of the undersigned notifying the introducing broker to exercise a valuable options contract by 3 p.m. Central Standard Time on the last business day prior to the expiration date of the options contract, and the introducing broker instructing you to sell valuable options on the undersigned's behalf within such time, the undersigned agrees that you may exercise the options contract on the undersigned's behalf. In the event of such exercise, the profit in excess of commission costs created thereby will be credited to the undersigned's account. In the event that the commissions to be charged for such an expiration transaction exceeds the proceeds to be realized, the undersigned agrees and hereby relinquishes the undersigned's ownership in said option to you, and you may exercise such option for your own account. If the undersigned does not instruct the introducing broker to exercise the valuable option by the time stated above, and you for whatever reason, do not exercise such option on the undersigned's behalf, the undersigned hereby waives any and all claims for damage or loss which the undersigned might at the time or any time thereafter have against you arising out of the fact that the option was not exercised. The undersigned is aware that you utilize a random method of allocation for all option(s) assignments received from the Option Clearing Corporation. Exercise assignment notices for options contracts are allocated among all customers' short positions within that series. This is accomplished by a manual procedure, which randomly selects from among all customer short positions, including positions established on the day of assignment, those contracts which are subject to exercise. All American short positions are liable for assignment at any time. The undersigned understands that a more detailed description of this procedure is available upon request by the undersigned.

5. **Uncovered Options.** The undersigned agrees that in connection with any uncovered option(s) for the undersigned's account, the undersigned will not sell, during the life of such options, the underlying securities collateralizing such options, including any cash or securities which may accrue on the underlying covered securities until such options are closed, exercised or expired or the undersigned has met the collateral requirements established by you and/or the introducing broker for carrying uncovered options. The undersigned also agrees that the introducing broker and/or you, in your respective sole discretion, may refuse any order to sell such underlying securities received from the undersigned or by means of a "give up" basis through another firm unless, prior to such sale, the undersigned has met the collateral requirements established by you and/or the introducing broker for carrying uncovered options. You have the right, in your sole discretion, to permit the undersigned to apply the proceeds of such sale to such collateral requirements.

6. **Risks.** The undersigned is aware of the high degree of risk involved in options transactions and has given the introducing broker, in strict confidence, information to demonstrate that this account and the trading anticipated in connection therewith is not unsuitable for the undersigned in light of the undersigned's investment objectives, financial situation and needs, experience and knowledge. The undersigned agrees to advise the introducing broker of any changes in the undersigned's investment objectives, financial situation or other circumstances that may be deemed to materially affect the suitability of executing options transactions for the undersigned's account.

7. **Options Account Form, Disclosure Documents.** The undersigned has reviewed the contents of the options account form and represents that they are accurate. Although certain types of transactions are indicated as anticipated you and the introducing broker may execute any other types of transactions for the undersigned's account upon the undersigned's instructions. The undersigned has received an Options Disclosure Document relating to options on the categories of underlying securities which the undersigned has been approved for trading.

8. **Accounts Carried as Clearing Broker.** The undersigned understands that you are carrying the accounts of the undersigned as clearing broker by arrangement with the undersigned's introducing broker through whose courtesy the account of the undersigned has been introduced to you. Until receipt from the undersigned of written notice to the contrary, you may accept and rely upon the introducing broker for (a) orders for the purchase or sale in said account of securities and other property, and (b) any other instructions concerning the undersigned's accounts. The undersigned represents that the undersigned understands that you act only to clear trades introduced by the undersigned's introducing broker and to effect other back office functions for the undersigned's introducing broker. The undersigned confirms to you that the undersigned is relying for any advice concerning the undersigned's accounts solely on the undersigned's introducing broker. The undersigned understands that all representatives, employees and other agents with whom the undersigned communicates concerning the undersigned's account are agents of the introducing broker, and not your representatives, employees or other agents. The undersigned understands that you will not review the undersigned's accounts and will have no responsibility for trades made in the undersigned's accounts. You shall not be responsible or liable for any acts or omissions of the introducing broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**
  a. **ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;**
  b. **ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.**
  c. **THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;**
  d. **THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.**
  e. **THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.**
  f. **THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.**
  g. **THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.**

9. **ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR YOUR AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS, OR OF THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. IF

Exhibit _____7_____  Page __97__

YOU ARE A PARTY TO SUCH ARBITRATION, TO THE EXTENT PERMITTED BY THE RULES OF THE APPLICABLE ARBITRATION TRIBUNAL, THE ARBITRATION SHALL BE CONDUCTED IN DALLAS, TEXAS. THE DECISION AND AWARD OF THE ARBITRATORS(S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:(i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**10. Other Agreements.** The undersigned agrees to be bounded by the terms of your **Customer Account Agreement**. If the undersigned trade on margin or short accounts, the undersigned agrees to be bound by the terms of your **Customer Margin and Short Account Agreement**. The undersigned understands that copies of these agreements are available from you and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between you and the undersigned.

**11. Data Not Guaranteed.** The undersigned expressly agrees that any data or online reports is provided to the undersigned without warranties of any kind, express or implied, including but not limited to, the implied warranties of merchantability, fitness of a particular purpose or non-infringement. The undersigned acknowledges that the information contained in any reports provided by you is obtained from sources believed to be reliable but is not guaranteed as to its accuracy of completeness. Such information could include technical or other inaccuracies, errors or omissions. In no event shall you or any of your affiliates be liable to the undersigned or any third party for the accuracy, timeliness, or completeness of any information made available to the undersigned or for any decision made or taken by the undersigned in reliance upon such information. In no event shall you or your affiliated entities be liable for any special incidental, indirect or consequential damages whatsoever, including, without limitation, those resulting from loss of use, data or profits, whether or not advised of the possibility of damages, and on any theory of liability, arising out of or in connection with the use of any reports provided by you or with the delay or inability to use such reports.

**12. Credit Check.** You are authorized, in your discretion, should you for any reason deem it necessary for your protection to request and obtain a consumer credit report for the undersigned.

**13. Miscellaneous.** The undersigned agrees that this Agreement and all transactions in the undersigned's accounts shall be governed by the constitution, rules, regulations, customs, usages and bylaws of the Options Clearing Corporation and all exchanges or other facilities upon which options are traded for the account of the undersigned. If any provisions of this Agreement is held to be unenforceable, it shall not affect any other provisions of this Agreement. The headings of each sections of this Agreement are descriptive only and do not modify or qualify any provision of this Agreement. This Agreement and its enforcement shall be governed by the law of the state of Texas and shall cover individually and collectively all accounts which the undersigned has previously opened, now has open or may open or reopen with you, or any introducing broker, and any and all previous, current and future transactions in such accounts. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by your authorized representative. This Agreement and all provisions shall insure to the benefit of you and your successors, whether by merger, consolidation or otherwise, your assigns, the undersigned's introducing broker, and all other persons specified in Paragraph 9. You shall not be liable for losses caused directly or indirectly by any events beyond your reasonable control, including without limitation, government restrictions, exchange or market rulings, suspension of trading or unusually heavy trading in securities, a general change in economic, political or financial conditions, war or strikes. You may transfer the accounts of the undersigned to your successors and assigns. This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the undersigned.

Exhibit    7      Page  98

PENSON FINANCIAL SERVICES, INC.
AND/OR BROKER DEALERS
FOR WHICH IT CLEARS

**ORIGINAL**

## CUSTOMER ACCOUNT, MARGIN AND SHORT ACCOUNT AGREEMENT

| Account Number: | Full Name and Address on Account | Social Security Number / Employment Identification Number |
|---|---|---|
| 2131-7813 | Tuco Trading LLC<br>19 Redondo<br>Laguna Niguel, CA 92677 | 42-171-1487<br>The TIN provided must match the name given to avoid backup withholding. |

### CERTIFICATION OF TAXPAYER ID NUMBER (SUBSTITUTE W-9)
*(Please skip this section if you are not a U.S. Person for Tax Purposes)*

Check appropriate box:  ☐ Individual/Sole Proprietor  ☑ Corporation  ☐ Partnership  ☐ Other ____  ☐ Exempt from Backup Withholding

Under penalty of perjury I certify that:

(1)   The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me) and

(2)   I am not subject to backup withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property, contributions to an individual retirement account (IRA), and payments other than interest and dividends).

(3)   I am a U.S. person (including a U.S. resident alien).

**Certification Instructions** --You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

Signature _____   Date   5/22/07

### DISCLOSURE OF NAME/ADDRESS ON SECURITIES YOU OWN

Under rule 14b-1(c) of the Securities Exchange Act, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Please check below if you do not want your ownership disclosed.   By not checking below, you acknowledge that your ownership information may be transmitted to a third party for the processing and reporting of such information.

_____ I object to the disclosure of such information.

### AUTHORIZATION TO EARN INTEREST ON FUNDS AWAITING INVESTMENT

This is to confirm my intention to reinvest cash credit balances held by you in my name, and I further confirm that this cash credit balance is being maintained with you solely for the purpose of reinvestment. I understand that cash balances of up to $100,000 are protected by the Securities Investor Protection Corporation (SIPC), but that SIPC coverage is not available for funds maintained solely for the purpose of earning interest.

**BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF THE CUSTOMER AGREEMENT PRINTED ON THIS SIDE AND THE REVERSE OF THIS DOCUMENT. THE UNDERSIGNED ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT, THE INFORMATION BROCHURE PREPARED BY PENSON FINANCIAL SERVICES, INC., AND PENSON'S PRIVACY POLICY. THE UNDERSIGNED CERTIFIES THAT THE UNDERSIGNED HAS READ AND UNDERSTANDS ALL PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT BENEFITS PENSON FINANCIAL SERVICES, INC., INTRODUCING BROKERS FOR WHICH IT CLEARS AND PERSONS RELATED TO EACH OF THE FOREGOING. THE REVERSE SIDE OF THIS AGREEMENT, PARAGRAPH 8, CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.**

**Important information about procedures for opening a new account:** To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. **What this means to you:** when you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

Date of Delivery of Privacy Policy _____

**BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF THE MARGIN AND SHORT ACCOUNT AGREEMENT PRINTED ON THIS SIDE AND THE REVERSE SIDE OF THIS DOCUMENT. THE REVERSE SIDE OF THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE IN PARAGRAPH 8.** The undersigned acknowledges that the undersigned's margin account securities may be borrowed by you or loaned to others. The undersigned also acknowledges receipt of a copy of this Agreement and a copy of the Margin Risk Disclosure Statement.

Date of Delivery  of Margin Risk Disclosure Statement: _____

**For Use by Individuals, including Joint accounts:**

X Signature: _____

Print Name:  Doug Frederick

Signature (Second Party, If Joint Account): _____

Print Name: _____

Date: _____

**For use by entity accounts only (i.e. corporations, partnerships, trusts):**

Is this account a foreign bank?  ☐ Yes  ☑ No – If Yes, please list Agent

for service of process: _____

Is this account for a foreign shell bank?  ☐ Yes  ☑ No.

Does this firm offer services to a foreign shell bank?  ☐ Yes  ☑ No

If you answered yes to any of the above questions, Corporation will need to

complete Certification Regarding Correspondent Accounts

X Signature: _____

Print Name: Doug Frederick

Title: _____   Date: 10/10/0_

Penson Combined CAG/Margin – 4/2006

Page 1

Exhibit 7   Page 99

**1.Applicable Rules and Regulations.** All transactions shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market and its clearing house, if any, upon which such transactions are executed, except as otherwise specifically provided in this Agreement.

**2. Definitions.** "Introducing broker" means any brokerage firm which introduces securities transactions on behalf of the undersigned, which transactions are cleared through you, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the undersigned to you, whether now existing or hereafter arising. "Securities and other property" shall include, but shall not be limited to, money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "your" refers to Penson Financial Services, Inc.

**3. Breach; Security Interest.** Whenever in your discretion you consider it necessary for your protection, or for the protection of the undersigned's introducing firm or in the event of, but not limited to; (i) any breach by the undersigned of this or any other agreement with you or (ii) the undersigned's failure to pay for securities and other property purchased or to deliver securities and other property sold, you may sell any or all securities and other property held in any of the undersigned's accounts (either individually or jointly with others), cancel or complete any open orders for the purchase or sale of any securities and other property, and/or borrow or buy-in any securities and other property required to make delivery against any sale, including a short sale, effected for the undersigned, all without demand for deposit of collateral, other notice of sale or purchase, or other notice or advertisement, each of which is expressly waived by the undersigned, and/or you may require the undersigned to deposit cash or adequate collateral to the undersigned's account prior to any settlement date in order to assure the performance or payment of any open contractual commitments and/or unsettled transactions. Any and all securities and other property belonging to the undersigned or in which the undersigned may have an interest held by you or carried in any of the undersigned's accounts with you (either individually or jointly with others) shall be subject to a first and prior security interest and lien for the discharge of the undersigned's obligations to you, wherever or however arising and without regard to whether or not you have made advances with respect to such securities and other property, and you are hereby authorized to sell and/or purchase any and all securities and other property in any of the undersigned's accounts, and/or to transfer any such securities and other property among any of the undersigned's accounts to the fullest extent of the law and without notice where allowed. The costs and expenses of collection of the debit balance and any unpaid deficiency in the accounts of the undersigned with you, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by you shall be payable to you by the undersigned.

**4. Cancellation.** You are authorized, in your discretion, should you for any reason whatsoever deem it necessary for your protection, without notice, to cancel any outstanding order, to close out the accounts of the undersigned, in whole or in part, or to close out any commitment made on behalf of the undersigned.

**5. Payment of Indebtedness Upon Demand.** The undersigned shall at all times be liable for the payment upon demand of any obligations owing from the undersigned to you, and the undersigned shall be liable to you for any deficiency remaining in any such accounts in the event of the liquidation thereof (as contemplated in Paragraph 3 of this Agreement or otherwise), in whole or in part, by you or by the undersigned; and the undersigned shall make payment of such obligations upon demand. If Customer also holds a futures account with Penson Financial Futures, Inc. ("PFFI"), Customer hereby authorizes Penson, without prior notice, to transfer from any account held with Penson to any account held with PFFI, any assets that PFFI represents to Penson are reasonably required to avoid the calling of margins for such PFFI account or the payment of any obligations owed Penson by Customer. Customer also authorizes Penson to request from PFFI assets held by PFFI that in Penson's judgment may be reasonably required to avoid the calling of margins for a Penson account or the payment of any obligations owed Penson by Customer.

**6. Accounts Carried as Clearing Broker.** The undersigned understands that you are carrying the accounts of the undersigned as clearing broker by arrangement with the undersigned's introducing broker through whose courtesy the account of the undersigned has been introduced to you. Until receipt from the undersigned of written notice to the contrary, you may accept from and rely upon the undersigned's introducing broker for (a) orders for the purchase or sale in said account of securities and other property, and (b) any other instructions concerning the undersigned's accounts. The undersigned represents that the undersigned understands that you act only to clear trades introduced by the undersigned's introducing broker and to effect other back office functions for the undersigned's introducing broker. The undersigned confirms to you that the undersigned is relying for any advice concerning the undersigned's accounts solely on the undersigned's introducing broker. The undersigned understands that all representatives, employees and other agents with whom the undersigned communicates concerning the undersigned's account are agents of the introducing broker, and not your representatives, employees or other agents. The undersigned understands that you are not a principal of or partner with, and do not control in any way, the introducing broker or its representatives, employees or other agents. The undersigned understands that you will not review the undersigned's accounts and will have no responsibility for trades made in the undersigned's accounts. You shall not be responsible or liable for any acts or omissions of the introducing broker or its representatives, employees or other agents. Notwithstanding the foregoing, in the event that the undersigned initiates a claim against you in your capacity as clearing broker and does not prevail, the undersigned shall be responsible for the costs and expenses associated with your defense of such claim.

**6A. Accounts Carried as Custodian.** In some cases the undersigned's account is being carried by arrangement with the undersigned's Investment Advisor or Investment Manager, who uses Penson as their Broker-Dealer custodian. The undersigned acknowledges that Penson's role as custodian is to hold or custody account assets, distribute or collect funds on behalf of the undersigned's account, execute and clear trades under instruction of the undersigned's Investment Advisor or Investment Manager, generate account statements and provide other custodial services as may be mandated by various regulatory standards and requirements. The undersigned understands that in the capacity as custodian, you will not offer investment advice, review the undersigned's accounts, and will have no responsibility for trades made in the undersigned's accounts. Additionally, in your capacity as custodian, you will not verify the accuracy of management fees that the undersigned's pays to Investment Advisors or Investment Managers pursuant to the terms of the Investment Management Agreement executed between the undersigned and the Investment Advisor or Investment Manager. Notwithstanding the foregoing, in the event that the undersigned initiates a claim against you in your capacity as custodial broker and does not prevail, the undersigned shall be responsible for the costs and expenses associated with your defense of such claim.

**7. Communications.** You may send communications to the undersigned at the undersigned's address or at such other address as the undersigned may hereafter give you in writing, and all communications so sent, whether by mail, telegraph, or otherwise, shall be deemed given to the undersigned personally, whether actually received or not. Reports of execution of orders and statements of accounts of the undersigned shall be conclusive if not objected to in writing to you, the former within five (5) days and the latter within ten (10) days, after forwarding by you.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:

a. ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b. ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c. THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d. THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e. THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f. THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g. THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**8. ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NASD. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR(S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE

ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.
No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**9. Representations.** The undersigned represents that the undersigned is of majority age, that the undersigned is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business dealing either as broker or as principal in securities, bills of exchange, acceptances or other forms of commercial paper.  If the undersigned is a corporation, partnership, trust or other entity, the undersigned represents that its governing instruments permit this Agreement, that this Agreement has been authorized by all applicable persons and that the undersigned signatory is authorized to bind the undersigned.  The undersigned represents that the undersigned shall comply with all applicable laws, rules and regulations in connection with the undersigned's account.  The undersigned further represents that no one except the undersigned has an interest in the account or accounts of the undersigned with you.

**10. Joint Accounts.** If the undersigned shall consist of more than one person, the undersigned's obligations under this Agreement shall be joint and several.  References to the "undersigned" shall include each of the undersigned.  You may rely on transfer or other instructions from any one of the undersigned in a joint account, and such instructions shall be binding on each of the undersigned.  You may deliver securities or other property to, and send confirmations; notices, statements and communications of every kind, to any one of the undersigned, and such action shall be binding on each of the undersigned.  Notwithstanding the foregoing, you are authorized in your discretion to require joint action by the joint tenants with respect to any matter concerning the joint account, including but not limited to the giving or cancellation of orders and the withdrawal of money, securities, futures or commodities.

**11. Other Agreements.** If the undersigned trades any options, the undersigned agrees to be bound by the terms of your Customer Option Agreement.  The undersigned understands that copies of these agreements are available from you and, to the extent applicable, are incorporated by reference herein.  The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between you and the undersigned.

**12. Data Not Guaranteed.** The undersigned expressly agrees that any data or online reports is provided to the undersigned without warranties of any kind, express or implied, including but not limited to, the implied warranties of merchantability, fitness of a particular purpose or non-infringement.  The undersigned acknowledges that the information contained in any reports provided by you is obtained from sources believed to be reliable but is not guaranteed as to its accuracy of completeness.  Such information could include technical or other inaccuracies, errors or omissions.  In no event shall you or any of your affiliates be liable to the undersigned or any third party for the accuracy, timeliness, or completeness of any information made available to the undersigned or for any decision made or taken by the undersigned in reliance upon such information.  In no event shall you or your affiliated entities be liable for any special incidental, indirect or consequential damages whatsoever, including, without limitation, those resulting from loss of use, data or profits, whether or not advised of the possibility of damages, and on any theory of liability, arising out of or in connection with the use of any reports provided by you or with the delay or inability to use such reports.

**13. Order Flow Disclosure.** Depending on the security traded and absent specific direction from the undersigned, stock orders are routed via an electronic system to a listed, NASDAQ or over the counter broker or dealer.  You or your correspondents may receive cash payments for routing such orders to specific brokers or dealers.  Because these agents are market makers, they carry inventory in their specific securities, allowing for price improvement to the undersigned by trading through their inventories.  Accordingly, the undersigned's orders will always be executed at the "best bid" or "best offer", or at a price superior to either, by virtue of the market maker's inventory positioning capabilities.

**14. Credit Check** You are authorized, in your discretion, should you for any reason deem it necessary for your protection to request and obtain a consumer credit report for the undersigned.

**15. Miscellaneous.** If any provision of this Agreement is held to be unenforceable, it shall not affect any other provision of this Agreement.  The headings of each section of this Agreement are descriptive only and do not modify or qualify any provision of this Agreement.  This Agreement and its enforcement shall be governed by the laws of the state of Texas and shall cover individually and collectively all accounts which the undersigned has previously opened, now has open or may open or reopen with you, or any introducing broker, and any and all previous, current and future transactions in such accounts.  Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by your authorized representative.  This Agreement and all provisions shall inure to the benefit of you and your successors, whether by merger, consolidation or otherwise, your assigns, the undersigned's introducing broker, and all other persons specified in Paragraph 8.  You shall not be liable for losses caused directly or indirectly by any events beyond your reasonable control, including without limitation, government restrictions, exchange or market rulings, suspension of trading or unusually heavy trading in securities, a general change in economic, political or financial conditions, war or strikes.  You may transfer the accounts of the undersigned to your successors and assigns.  This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the undersigned.

**Additionally, for margin and/or short accounts, the following provisions are also applicable:**

**16. Liquidation.** In the event of the death of the undersigned, or in the event the margin in any account in which the undersigned has an interest shall in either your or the introducing broker's discretion become unsatisfactory to either you or the introducing broker, or be deemed insufficient by either you or the introducing broker, you are hereby authorized; (a) to sell any or all securities or other property which you may hold for the undersigned (either individually or jointly with others); (b) to buy any or all securities and other property which may be short in such accounts; and/or (c) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of your rights provided herein.  You may likewise accept and rely upon instructions which you receive from the introducing broker to effect any of the aforementioned transactions (as noted in (a); (b); and (c).  You shall have the discretion to determine which securities and other property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and you may be the purchaser for your own account.

**17. Hypothecation.** Within the limitations imposed by applicable laws, rules and regulations, all securities now or hereafter held by you, or carried by you in any account for the undersigned (either individually or jointly with others), or deposited to secure same, may from time to time, without any notice, be carried in your general loans and may be pledged, repledged, hypothecated or re-hypothecated, separately or in common with other securities for the sum due to you thereon or for a greater sum and without retaining in your possession or control for delivery a like amount of similar securities.  The IRS requires Broker Dealers to treat dividend payments on loaned securities positions as in-lieu dividends for 1099 tax reporting purposes.  Taxation of substitute dividend payments may be greater than ordinary on qualified dividends.  It is understood, however, that you agree to deliver to the undersigned upon demand and upon payment of the full amount due thereon, all securities in such accounts, but without obligation to deliver the same certificates or securities deposited by the undersigned originally.  Any securities in the undersigned's margin or short account may be borrowed by you, or lent to others.

**18. Interest.** Debit balances in all the accounts of the undersigned shall be charged with interest in accordance with your established custom, as disclosed to the undersigned in the Customer Information Brochure pursuant to the provisions of Rule 10b-16 of the Securities Exchange Act.

**19. Margin.** The undersigned agrees to maintain in all accounts with you such positions and margins as required by all applicable statutes, rules, regulations, procedures and custom, or as you deem necessary or advisable.  The undersigned agrees to promptly satisfy all margin and maintenance calls.

**20. Sales.** The undersigned agrees to specifically designate any order to sell a security which the undersigned does not own as a short sale, and understands that you will mark such order as a short sale.  The undersigned agrees that any order which is not specifically designated as a short sale is a sale of securities owned by the undersigned, and that the undersigned will deliver the securities on or before settlement date, if not already in the account.  If the undersigned should fail to make such delivery in the time required, you are authorized to borrow such securities as necessary to make delivery for the undersigned's sale, and the undersigned agrees to be responsible for any loss you may thereby sustain, or which you may sustain as a result of your inability to borrow such securities.

Exhibit 7    Page 101



ORIGINAL

EXHIBIT B

## AGREEMENT FOR

## MARKET DATA DISPLAY SERVICES

## (Usage-Based Services/Nonprofessional Subscriber Status)

## (Printed Version)

_____ [NAME OF VENDOR/BROKER DEALER] ("Vendor") agrees to make "Market Data" available to you pursuant to the terms and conditions set forth in this agreement. By executing this Agreement in the space indicated below, you ("Subscriber") agree to comply with those terms and conditions. Section 1 sets forth terms and conditions of general applicability. Section 2 applies insofar as Subscriber receives and uses Market Data made available pursuant to this Agreement as a Nonprofessional Subscriber.

## SECTION 1: TERMS AND CONDITIONS OF GENERAL APPLICABILITY

1. **MARKET DATA DEFINITION** – For all purposes of this Agreement, "Market Data" means (a) last sale information and quotation information relating to securities that are admitted to dealings on the New York Stock Exchange ("NYSE"), (b) such bond and other equity last sale and quotation information, and such index and other market information, as United States-registered national securities exchanges and national securities associations (each, an "Authorizing SRO") may make available and as the NYSE may from time to time designate as "Market Data"; and (c) all information that derives from any such information.

2. **PROPRIETARY NATURE OF DATA** – Subscriber understands and acknowledges that each Authorizing SRO and Other Data Disseminator has a proprietary interest in the Market Data that originates on or derives from it or its market(s).

3. **ENFORCEMENT** – Subscriber understands and acknowledges that (a) the Authorizing SROs are third-party beneficiaries under this Agreement and (b) the Authorizing SROs or their authorized representative(s) may enforce this Agreement, by legal proceedings or otherwise, against Subscriber or any person that obtains Market Data that is made available pursuant to this Agreement other than as this Agreement contemplates. Subscriber shall pay the reasonable attorney's fees that any Authorizing SRO incurs in enforcing this Agreement against Subscriber.

4. **DATA NOT GUARANTEED** – Subscriber understands that no Authorizing SRO, no other entity whose information is made available over the Authorizing SROs' facilities (an "Other Data Disseminator") and no information processor that assists any Authorizing SRO

Exhibit ___7___ Page __102__



or Other Data Disseminator in making Market Data available (collectively, the "Disseminating Parties") guarantees the timeliness, sequence, accuracy or completeness of Market Data or of other market information or messages disseminated by any Disseminating Party. Neither Subscriber nor any other person shall hold any Disseminating Party liable in any way for (a) any inaccuracy, error or delay in, or omission of, (i) any such data, information or message or (ii) the transmission or delivery of any such data, information or message, or (b) any loss or damage arising from or occasioned by (i) any such inaccuracy, error, delay or omission, (ii) non-performance or (iii) interruption in any such data, information or message, due either to any negligent act or omission by any Disseminating Party, to any "force majeure" (e.g., flood, extraordinary weather conditions, earthquake or other act of God, fire, war, insurrection, riot, labor dispute, accident, action of government, communications or power failure, equipment or software malfunction) or to any other cause beyond the reasonable control of any Disseminating Party.

5.    **PERMITTED USE** – Subscriber shall not furnish Market Data to any other person or entity and, subject to Paragraph 10, shall use Market Data only for its individual use in its business.

6.    **DISSEMINATION DISCONTINUANCE OR MODIFICATION** – Subscriber understands and acknowledges that, at any time, the Authorizing SROs may discontinue disseminating any category of Market Data, may change or eliminate any transmission method and may change transmission speeds or other signal characteristics. The Authorizing SROs shall not be liable for any resulting liability, loss or damages that may arise therefrom.

7.    **DURATION; SURVIVAL** – This Agreement remains in effect for so long as Subscriber has the ability to receive Market Data as contemplated by this Agreement. In addition, Vendor may terminate this Agreement at any time, whether at the direction of the Authorizing SROs or otherwise. Paragraphs 2, 3 and 4, and the first two sentences of Paragraph 8, survive any termination of this Agreement.

8.    **MISCELLANEOUS** – The laws of the State of New York shall govern this Agreement and it shall be interpreted in accordance with those laws. This Agreement is subject to the Securities Exchange Act of 1934, the rules promulgated under that act, and the joint-industry plans entered into pursuant to that act. This writing contains the entire agreement between the parties in respect of its subject matter. Subscriber may not assign all or any part of this Agreement to any other person. The person executing this Agreement below represents and warrants that he or she has legal capacity to contract and, if that person is executing this Agreement on behalf of a proprietorship or a business, partnership or other organization, represents and warrants that he or she has actual authority to bind the organization.

Exhibit _7_ Page _103_

**ORIGINAL**

## SECTION 2: NONPROFESSIONAL SUBSCRIBER

9.       NONPROFESSIONAL   SUBSCRIBER   DEFINITION   -"Nonprofessional Subscriber" means any natural person whom Vendor has determined to qualify as a "Nonprofessional Subscriber" and who is not:

(a)     registered or qualified with the Securities and Exchange Commission (the "SEC"), the Commodities Futures Trading Commission, any state securities agency, any securities exchange or association, or any commodities or futures contract market or association.

(b)     engaged as an "investment advisor" as that term is defined in Section 201(11) of the Investment Advisor's Act of 1940 (whether or not registered or qualified under that Act), nor

(c)     (c) employed by a bank or other organization exempt from registration under Federal and/or state securities laws to perform functions that would require him or her to be so registered or qualified if he or she were to perform such functions for an organization not so exempt.

10.     **PERMITTED USE** – If Subscriber is a Nonprofessional Subscriber, he or she shall receive Market Data solely for his or her personal, non-business use.

11.     **PERSONAL AND EMPLOYMENT DATA** – As a prerequisite to qualifying as a "Nonprofessional Subscriber", Subscriber shall provide the following information:

Subscriber's name and address:

*Doug Frederick*
*19 Redondo*
*Laguna Niguel, CA 92677*

Subscriber's occupations (list all occupations – including homemaker, student, retiree, etc.):

*owner of LLC*

Name(s) and address(es) of Subscriber's employer(s):

*Same as above*

Subscriber's title(s) and/or position(s):

*owner of LLC*

Subscriber's employment functions (description):

*oversees trading operations*

Exhibit ___7___     Page _104_

**ORIGINAL**

Subscriber shall notify Vendor promptly in writing of any change in his or her circumstances that may cause him or her to cease to qualify as a Nonprofessional Subscriber.

    **12.**    **CERTIFICATION** – By executing this Agreement, Subscriber hereby certifies that he or she falls within Paragraph 9's definition of "Nonprofessional Subscriber" and that the personal and employment information that he or she has included in Paragraph 11 is truthful and accurate.

    \*        \*        \*

    ACCEPTED AND AGREED: I, the "Subscriber" to which the preceding terms and conditions refer, acknowledge that I have read the preceding terms and conditions, that I understand them and that I hereby agree to comply with those terms and conditions.

    IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first above written.

SUBSCRIBER

x _____
(Name of Subscriber)

By: Doug Frederick
Name: Tuco Trading, LLC / Doug Frederick
Title: owner
Date: 3/22/2007

VENDOR

_____
(Name of Vendor)

By: _____
Name:
Title:
Date:

Exhibit __7__    Page _105_

Start Page    Logoff    Site Map    Contact Us



Getting Started  •  Account Information  •  Inquiry  •  Tools  •  Documents  •  Reports  •  Transactions

• **Customer Info** •

| Firm | Account | | |
|---|---|---|---|
| 07-Penson Financial Services, Inc. | 21320155 | * | Go |

## Customer Information ◇

| | | | |
|---|---|---|---|
| **Account\*:** | 07 - 21320155 | **Registered Rep\*:** | GLOBALVEST GROUP INC HOUSE REP - YU31 |
| **Customer\*:** | TUCO TRADING LLC SUB ACCT #1 of 21314075 | **Account Registration\*:** | Margin Domestic Sub-Account |
| **Address\*:** | PO BOX 7148 LAGUNA NIGUEL, CA 92607-7148 | **Account Status\*:** | Open |
| | | **Interested Party:** | |
| | | **Interested Party ID:** | |
| Change Address | | **Related Party:** | SUB 1 |
| | | **Outstanding Paperwork:** | No |
| **Tax ID Number\*:** | 421711487 | **Customer Profile:** | |
| **Date of Birth:** | | **Total Trades:** | 6346856 |
| **Trade Authorization:** | No | **Fees:** | $238,078.12 |
| **Pattern Daytrader:** | No | **Commission:** | $2,403,663.60 |
| | | **Estimated Annual Income:** | $250,000 - $499,999 |
| | | **Estimated Net Worth:** | $250,000 - $499,999 |
| | | **Investment Objective:** | Speculative (High Risk) |
| | | **Investment Experience:** | |

## Account Features ◇

| | | | |
|---|---|---|---|
| **Money Market Sweep:** | Automatic Sweep | **Automatic Distribution:** | **Frequency:** |
| **Money Market Type:** | CAT - Money Market Portfolio (service) | | **Day of Month:** |
| | | | **Amount:** |
| **Debit Card:** | No | **Tax Withholding:** | |
| **Checkwriting:** | No | | **State Rate:** |
| **Systematic ACH:** | No | | **Federal Rate:** |
| **Automatic Distribution:** | No | | |

**ACH Detail** ◇◇
1 ◇

| Bank ABA Number | Bank Account Number | Account Type |
|---|---|---|
| | | Checking |
| | | Savings |

Exhibit _8_____ Page _106_

**Client Connection User Profile** ◇

**Account Detail** ◇

| | |
|---|---|
| **Account Opened\*:** | 08/20/2007 |
| **Last Activity Date\*:** | |
| **Last Trade Date:** | |
| **Last Change Date\*:** | 08/21/2007 |
| **Last Statement Date:** | |

| **Account Paperwork:** | **Status:** | **Date:** |
|---|---|---|
| CUSTOMER AGREEMENT | Y | 08/20/2007 |
| LMD LIABILITY COMPANY AGR | Y | 08/20/2007 |
| MARGIN AGREEMENT | Y | 08/20/2007 |
| New Account Approval Form | Y | 08/20/2007 |
| OPTION AGREEMENT | Y | 08/20/2007 |
| Physical mailing Address | Y | 08/20/2007 |
| CUSTOMER SUB-ACCOUNT AGMT | Y | 08/20/2007 |

**Additional Account Information** ◇

```
TUCO TRADING
1807 MORGAN LAKE CT
BRIGHTON, MI 48114
```

Exhibit __8__    Page __107__

312-435-2850 ext 23

**GLB Trading, Inc.**

# Fax

| To: | Stefanie Pointer | From: | Gus Katsafaros |
|---|---|---|---|
| Fax: | 214-217-5116 | Pages: | 2 |
| Phone: | | Date: | 8/17/2007 |
| Re: | | CC: | |

☐ Urgent    ☒ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Stefanie, Iam Attaching a New Sub
Account APP for Tree Trading LLC
Master Account 213/4875.


Thank you.

*[signature]*

Exhibit _8_    Page _108_

**Rosalie Vargas**

| | |
|---|---|
| **From:** | robert lechman [robert@glbtrading.com] |
| **Sent:** | Tuesday, August 21, 2007 1:37 PM |
| **To:** | rosaliev@glbtrading.com |
| **Subject:** | Emailing: 8.20.07.pdf  Very Important |
| **Importance:** | High |
| **Attachments:** | 8.20.07.pdf |



8.20.07.pdf (60 KB)

Please set up this sub acct and look under the master and make sure there are not other sub acct under master each sub needs its own acct number

The message is ready to be sent with the following file or link attachments:

8.20.07.pdf

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments.  Check your e-mail security settings to determine how attachments are handled.

1

Exhibit ___8___ Page _109_

## PENSON FINANCIAL SERVICES, INC.
### AND/OR BROKER DEALERS FOR WHICH IT CLEARS

### CUSTOMER SUBACCOUNT AGREEMENT

| Account Number | Full Name of Account |
|---|---|
| 2134075 | TUCO TRADING, LLC |

Penson Financial Services, Inc. ("Penson") and the person holding the above-named account ("Customer") have executed the Penson Financial Services, Inc. And/Or Broker Dealers For Which It Clears Customer Account Agreement (the "Customer Agreement"). This agreement (the "Subaccount Agreement") supplements the Customer Agreement and by signing below, the parties agree to the following terms:

1. **Creation of Subaccounts.** Customer's account, as shown above, or any future account created by Customer with Penson, may be divided into two or more subaccounts ("Subaccounts") in accordance with the terms of this Subaccount Agreement, upon the request of the Customer.

2. **Nature of Subaccounts.** The Subaccounts shall not be treated as separate accounts for any purpose except to separate securities into separate groups for the convenience of Customer to view the Subaccounts. Securities may be designated for a particular Subaccount for such viewing purposes only, but for all other purposes, the single account, comprised of the sum of all securities in the Subaccounts, shall be the basis for all fees and commissions charged to the Customer, as well as the basis for any margin credit, transfers of funds and disbursements.

3. **Designation of Subaccounts.** The Customer requests ___ number of Subaccounts, which will be designated in numerical order, beginning with No. 1 with the Customer's account name as shown above and such Subaccount number. In addition, each Subaccount will have a separate Penson Subaccount number designated by Penson. Based on the number of Subaccounts requested above, Penson will assign the Subaccount numbers in the space below and on additional sheets, if necessary.

| Subaccount Name | | Subaccount Number |
|---|---|---|
| TUCO LIGHTSPEED | No. 1 | |
| | No. 2 | |
| | No. 3 | |
| | No. 4 | |
| | No. 5 | |

4. **Obligations of the Customer.** Any obligations of the Customer under the Customer Agreement, including any guaranties by a guarantor, for any account created therein shall continue to be an obligation with regard to the account as a whole, regardless of any number of Subaccounts created.

For use by individuals, including joint accounts:

_____
Signature

_____
Print Name

_____
Signature (Second Party, If Joint Account)

_____
Print Name

Date:_____

Penson Financial Services, Inc.

By:_____

Name:_____

Office:_____

Date:_____

For use by entity accounts only (i.e. corporations, partnerships, trusts):

TUCO TRADING, LLC
Name of Customer

DFP
Signature

DOUG FREDERICK
Print Name of Signer

PARTNER
Title

Date: 8-11-07

0/01

Exhibit 8    Page 110

**Rosalie Vargas**

| | |
|---|---|
| **From:** | Clay Mullin [CMullin@PENSON.COM] |
| **Sent:** | Monday, August 20, 2007 2:45 PM |
| **To:** | Stefanie Pointer; Brett Snyder; Gus Katsafaros; rosaliev@glbtrading.com |
| **Cc:** | Ronda White |
| **Subject:** | RE: New Sub-accts office NF15 |

These will be ready for trading tomorrow

---

**From:** Stefanie Pointer
**Sent:** Monday, August 20, 2007 11:35 AM
**To:** Brett Snyder; Clay Mullin; 'Gus Katsafaros'; 'rosaliev@glbtrading.com'
**Cc:** Ronda White
**Subject:** FW: New Sub-accts office NF15

Hello,
I have opened a sub-account for rep YU31 number 1. The margins Department will notify you when the sub-account is ready for margin trading. Do not proceed with the account until you are notified. Thanks

| | | | | |
|---|---|---|---|---|
| 21314075 | YU31 | TUCO TRADI | 421711487 | MAIN |
| 21320155 | YU31 | TUCO TRADI | 421711487 | SUB 1 |

STATEMENT OF CONFIDENTIALITY: This message and any attachments are intended solely for the person or entity to which it is addressed and may contain confidential or privileged information. If the recipient of this message is not the addressee or a person responsible for delivering the message to the addressee, such recipient is prohibited from reading or using this message in any way. If you have received this message in error, please call the sender of this message immediately and delete the message from any computer.

8/21/2007

Exhibit _8_   Page _111_

## Tuco Trading, LLC - Accounting as of December 31, 2007

| Traders' Equity | |
|---|---|
| Sub-account net positive equity balance | **10,208,588** |
| | |
| **Tuco's Master Accounts** | **Value as of 12/31/07** |
| GLB Trading account #  2131-4075 | 4,984,376 |
| GLB Trading account #  2132-0155 | 2,791,650 |
| GLB Trading account #  2131-7813 | 86,534 |
| Subtotal | 7,862,560 |
| Loan proceeds | (1,766,929) |
| *Total equity in Tuco's Master Accounts at GLB Trading* | **6,095,631** |
| | |
| **Tuco's Other Accounts** | **Value as of 12/31/07** |
| Wedbush Morgan Securities account #  8244-9330 | 7,044 |
| Wedbush Morgan Securities account # 8244-9331 | (1) |
| Evolution Financial account # 1153-2603 | 36,000 |
| ViewTrade account # 4936-3559 | 126,713 |
| MF Global account # E-480-HSP1-SP404 | 122,846 |
| Advantage Futures account # L  MH006-A0535 | 77,050 |
| JP Morgan Chase account # 000000722923067 (Operating Account) | 92,025 |
| JP Morgan Chase account #000000722923075 (Wire Account) | 28,578 |
| *Total assets in Tuco's Other Accounts* | **490,255** |
| | |
| *Total value of Tuco's net assets* | **6,585,886** |
| | |
| **Tuco's Shortfall** | |
| Sub-account net positive equity balance | 10,208,588 |
| Total value of Tuco's net assets | (6,585,886) |
| *Tuco's total shortfall* | **3,622,702** |

Exhibit __9__  Page 112

| Name | Equity | |
|---|---|---|
| **Title Trading** | | **$3,608,544.07** |
| **JC Trading** | | **$935,057.15** |
| **T3** | | |
| Dmitry Kulikov | $ | 437,727.20 |
| K Holding Account | $ | 429,358.60 |
| TTEES Halperin Family | $ | 337,172.92 |
| Craig Lavid | $ | 314,740.89 |
| Kevin Wojtowicz 2 | $ | 274,953.23 |
| Thomas Nilles | $ | 249,353.60 |
| Andrew Srebnik (Apas LLC) | $ | 247,256.93 |
| Patrick Nilles 2 | $ | 246,778.23 |
| Alexandr Mozin 1 | $ | 234,315.67 |
| Sean Quinn | $ | 225,366.44 |
| HG Trading LLC. | $ | 216,880.20 |
| William Haynes | $ | 193,777.45 |
| James Anthony Cambece | $ | 177,148.31 |
| DTA Trading (Dustin Luger) | $ | 164,810.97 |
| Kenneth Ancell | $ | 154,790.11 |
| Craig Cloud | $ | 142,226.15 |
| Jesse Sullivan | $ | 132,859.07 |
| Brad Scott Gray | $ | 121,160.63 |
| TDA Trading 1 | $ | 115,182.31 |
| Alexandr Mozin 4 | $ | 105,441.52 |
| CT TRADE, LLC | $ | 101,002.09 |
| Alexandr Mozin 3 | $ | 99,958.73 |
| John Streng | $ | 95,741.31 |
| Coper Trading | | $93,974.70 |
| LimitUp Holdings Ltd2 | $ | 89,082.88 |
| Kevin Wojtowicz | $ | 88,740.33 |
| Penny Peppler | $ | 87,252.86 |
| Rick Boensch Hedge Acct | $ | 84,506.04 |
| Cot Investments Group | $ | 69,578.74 |
| Kevin Wojtowicz 3 | $ | 68,638.32 |
| Darryl Porter | $ | 60,113.45 |
| Igor Voron 12 | $ | 58,369.96 |
| John Crabb | $ | 56,658.96 |
| Dmitry Kulikov 2 | $ | 53,405.49 |
| Scott Dingman | $ | 52,804.21 |
| Chad Sternke | $ | 52,039.15 |
| Brett Hessenius | $ | 51,235.98 |
| Thomas Uelmen | $ | 50,269.42 |
| Franco Rovaretti | $ | 50,032.27 |
| Marcos Connell | $ | 49,315.10 |
| Robert W. Murphy | $ | 49,264.35 |
| John Crabb 2 | $ | 47,686.11 |
| Dan Shaltiel | $ | 46,287.96 |
| Mabas, INC | $ | 45,447.02 |
| Bryant McFarlane | $ | 42,753.87 |
| Scott Herman | $ | 41,120.41 |
| Stephen Sylwester | $ | 37,329.04 |
| William Burgoyne | $ | 36,801.90 |

Exhibit 10    Page 113

| | | |
|---|---|---|
| Gennadiy Iskhakov | $ | 36,365.73 |
| Orange Diviner | $ | 36,105.16 |
| Michael Serafin | $ | 35,437.94 |
| Vadiya Khaimov | $ | 31,688.76 |
| Simon Amos | $ | 31,153.39 |
| John Haynes | $ | 30,813.54 |
| Chong Lee Minsook Lee | $ | 30,015.70 |
| Alan Schmereler | $ | 30,000.00 |
| Jonathan Krug | $ | 29,267.33 |
| Kerem Guneri | $ | 28,022.19 |
| Adam Cooper | $ | 26,917.71 |
| Bob Byrne | $ | 25,620.83 |
| David Reardon | $ | 23,225.97 |
| Kyle Cleveland | $ | 23,180.02 |
| PAI Master Account | $ | 22,972.57 |
| Igor Voron | $ | 21,232.33 |
| LimitUp Holdings Ltd | $ | 21,210.94 |
| Tanayoos Manophinives | $ | 21,068.52 |
| Paul Przelski | $ | 20,964.61 |
| Michael Johnson | $ | 20,491.19 |
| William Ryan Mitchell | $ | 20,484.88 |
| Matthew J Gallagher | $ | 20,355.24 |
| Eric Leopold | $ | 20,274.37 |
| James Buchanan | $ | 20,000.00 |
| Doug Frederick Sterling | $ | 19,766.60 |
| Brandon Fritz | $ | 19,702.23 |
| Igor Viewtrade 1 | $ | 19,285.48 |
| Marc Zangari | $ | 18,351.26 |
| Ashit Johri | $ | 18,150.17 |
| Jacinto Garro Bonilla | $ | 17,958.75 |
| Doug Frederick | $ | 17,478.64 |
| Charles Mehler | $ | 16,713.96 |
| Michael Feintuch | $ | 16,347.51 |
| Terry Bailey | $ | 15,689.93 |
| Mike Serafin Viewtrade 1 | $ | 14,924.06 |
| Phillip Zirges | $ | 14,857.03 |
| Mike Kestler | $ | 14,212.19 |
| Jeff Gresham | $ | 13,982.98 |
| Mike Hartmann | $ | 13,810.27 |
| Priydarshan Shelgikar | $ | 13,682.41 |
| Mohamed Osman | $ | 13,178.51 |
| Keith McHugh | $ | 13,030.69 |
| Robert Scott Gates | $ | 12,860.88 |
| Jeff Snower | $ | 12,521.71 |
| Jason Watkins | $ | 12,016.19 |
| James P Wu | $ | 11,584.35 |
| Mark Grossbard | $ | 11,566.40 |
| David Floyd | $ | 11,148.04 |
| Doug Frederick | $ | 10,786.26 |
| Chris Horning | $ | 10,732.80 |
| WB Capital Master Account 5 | $ | 10,553.66 |
| Sandeep Goyal | $ | 10,013.64 |

Exhibit _10_    Page _114_

| | | |
|---|---|---|
| Rosie Nguyen | $ | 10,000.00 |
| Andrew Fine | $ | 10,000.00 |
| Scott Herman | $ | 9,989.16 |
| Bruce Montegani | $ | 9,857.40 |
| Lucas Gregor | $ | 9,807.78 |
| Abe Krieser | $ | 9,790.14 |
| Matt Mecham | $ | 9,757.88 |
| John Olorunsuyi | $ | 9,740.79 |
| Shawn Quinney | $ | 9,631.47 |
| Tuco Risk Account | $ | 9,477.88 |
| Frank Scriveri | $ | 9,434.68 |
| Reginald Cheatham | $ | 9,332.57 |
| Igor Viewtrade 2 | $ | 9,001.18 |
| Jesus Dominguez | $ | 8,962.86 |
| Lisa Hyatt | $ | 8,924.50 |
| Olexander Bandurchenko | $ | 8,797.96 |
| Jorge Lopez | $ | 8,715.11 |
| John Russell | $ | 8,405.57 |
| Michael Moore | $ | 8,222.59 |
| Michael Steiner | $ | 7,866.92 |
| David Rogers | $ | 7,456.30 |
| Kevin Steigerwalt | $ | 7,000.00 |
| James Shaw | $ | 6,861.70 |
| William Dedelow | $ | 6,799.41 |
| Robert Rains | $ | 6,760.24 |
| Gary Kiebzak | $ | 6,741.32 |
| Stan Ungechauer | $ | 6,674.50 |
| Sean Kerr | $ | 6,594.94 |
| Daniel Vargas | $ | 6,594.51 |
| Abdel Waheb Khedhira | $ | 6,464.15 |
| Kevin Ciccarelli | $ | 6,332.29 |
| Ruston Youngblood | $ | 5,973.03 |
| Haggan Henderson | $ | 5,902.38 |
| Neville C. Pinto | $ | 5,796.70 |
| Joe Arena | $ | 5,707.35 |
| Harry Kao | $ | 5,637.45 |
| Sean Ahern | $ | 5,577.36 |
| Alan Hoes | $ | 5,339.45 |
| James P Stoessel | $ | 5,204.67 |
| Jorge Castro | $ | 5,127.05 |
| Joel Griffith | $ | 5,119.83 |
| Fernando Luiz de Oliveira | $ | 5,045.30 |
| Bryan Chin | $ | 5,016.00 |
| Craig Martin | $ | 4,989.16 |
| Ara Shamlian | $ | 4,817.77 |
| William Smith | $ | 4,681.57 |
| Bill Raffo | $ | 4,665.21 |
| Chris Shepherd | $ | 4,627.45 |
| Robert Scalese | $ | 4,608.27 |
| Steven Saltzman | $ | 4,408.00 |
| Igor Voron 3 | $ | 4,297.50 |
| Vlasta Salnikova | $ | 4,286.01 |

Exhibit 10    Page 115

| | | |
|---|---|---|
| William Henderson | $ | 4,106.34 |
| Phoenix Investing - Chris Jaffe | $ | 4,105.27 |
| Richard Herman | $ | 4,061.50 |
| Donald Callahan | $ | 3,958.05 |
| Justin Ceglar | $ | 3,890.81 |
| WB Capital Master Account 7 | $ | 3,865.87 |
| Joseph Haynes | $ | 3,685.29 |
| Robert Greene | $ | 3,622.95 |
| Herb Schwarz | $ | 3,598.15 |
| Nan Lin | $ | 3,503.09 |
| Robert Davis II | $ | 3,480.69 |
| WB Capital Master Account 2 | $ | 3,479.02 |
| Fathi Azzalarab | $ | 3,322.06 |
| Roman Walter | $ | 2,957.33 |
| Sebastian Acuna | $ | 2,898.23 |
| Rodrigo Motta | $ | 2,845.03 |
| Jon Bischmann | $ | 2,833.74 |
| WB Capital Master Account 4 | $ | 2,820.63 |
| David Gaetano | $ | 2,735.96 |
| Steve Braker | $ | 2,722.09 |
| Chia Hung | $ | 2,700.82 |
| Gary Rains | $ | 2,569.92 |
| Dan Raeihle | $ | 2,312.85 |
| ZhongQiang Lee | $ | 2,224.56 |
| Yongliang Zhang | $ | 2,156.12 |
| Jaime Ramirez | $ | 2,131.23 |
| Hung Van Thai | $ | 1,991.60 |
| Robert Bosler | $ | 1,903.11 |
| WB Capital Master Account 3 | $ | 1,834.01 |
| WB Capital Master Account 6 | $ | 1,680.07 |
| Avi Zimmerman | $ | 1,669.04 |
| Krupnov Mihail | $ | 1,628.57 |
| Brenton Woolworth | $ | 1,558.89 |
| Michael J. Hayes | $ | 1,541.26 |
| George Ashkar | $ | 1,435.70 |
| Eric Scheldt | $ | 1,360.12 |
| Bo O'Connor | $ | 1,169.16 |
| Ken Ancell 2 | $ | 1,134.51 |
| Frank Roth | $ | 1,079.23 |
| Scott Radzik | $ | 1,069.65 |
| Richard Couts | $ | 957.13 |
| Estep Ins. | $ | 914.60 |
| Qionglong Diao | $ | 821.34 |
| Linlin Zheng | $ | 724.43 |
| Alex 1 Viewtrade | $ | 699.92 |
| Pothen Worldwide Inc. | $ | 673.69 |
| Robert Desualniers | $ | 670.10 |
| Bercini Inc., Daniel Maracine | $ | 660.17 |
| Daniel Lane | $ | 644.09 |
| Xi Chen | $ | 632.18 |
| Scott Moll | $ | 584.27 |
| Christopher Read | $ | 503.00 |

Exhibit _10_____ Page _116_

| | | |
|---|---|---|
| Lyudmila Babayeva | $ | 473.18 |
| Eric Leopold 2 | $ | 472.16 |
| Scott Littlefield | $ | 412.97 |
| Laurence Alexander Fleet | $ | 409.03 |
| Cristina Irion | $ | 289.99 |
| Cot Investments 2 | $ | 283.73 |
| Romanov Alexandr | $ | 265.98 |
| Pamela Ombres | $ | 238.65 |
| Mike Landers | $ | 230.11 |
| Matthew Jim Cunningham | $ | 203.43 |
| Fernando Luis Masetto | $ | 148.41 |
| Richard W Ennis | $ | 134.93 |
| Vitcom Investments, LTD | $ | 131.79 |
| Jarrod Vrazel | $ | 100.00 |
| Mark Matthews | $ | 78.31 |
| James Michalik | $ | 50.05 |
| Justin Brewer | $ | 48.44 |
| William J Tobias | $ | 30.00 |
| Phillip Johnson | $ | 24.45 |
| WB Capital Master Account 9 | $ | 9.86 |
| Sean Fritz | $ | 8.41 |
| Nasser Zegar | $ | 3.76 |
| Dave Kinkade | $ | 2.51 |
| TDA Trading 2 | $ | (6.54) has to be counted |
| WB Capital Master Account 8 | $ | (11.14) has to be counted |
| WB Capital Master Account 10 | $ | (12.14) has to be counted |
| TEST DAS Account | $ | (24.36) has to be counted |
| Alex Mrozin 5 | $ | (25.60) has to be counted |
| Rick Boensch | $ | (47.57) has to be counted |
| Solomon Sharbat | $ | (49.26) has to be counted |
| PA2 | $ | (52.00) has to be counted |
| PA3 | $ | (52.00) has to be counted |
| PA4 | $ | (52.00) has to be counted |
| Alex Mrozin 6 | $ | (121.03) has to be counted |
| Pavlov Sergey | $ | (130.88) has to be counted |
| Alexandr Mozin 2 | $ | (181.02) has to be countec |
| Dustin Luger LS | $ | (285.35) has to be counted |
| Nuria Sanchez Lopez | $ | (345.64) has to be countec |
| Victor Salamone | $ | (365.49) has to be counted |
| Yuke Chen | $ | (366.42) has to be counted |
| Alejandro Marini | $ | (368.79) has to be counted |
| Chernov Evgeny | $ | (385.85) has to be counted |
| Zlobin Sergey | $ | (409.52) has to be counted |
| Mishin Maxim | $ | (663.90) has to be counted |
| Martin Briones | $ | (752.62) has to be counted |
| Igor Voron 2 | $ | (834.22) has to be counted |
| LTSPD Test1 | $ | (836.80) has to be counted |
| Maximov Sergei | $ | (845.32) has to be counted |
| Christov Dmitriy | $ | (898.23) has to be counted |
| Lemos Gustavo Marcelo | $ | (963.87) has to be counted |
| Eric Leopold 3 | $ | (1,041.56) has to be counted |
| Apeav Rafael | $ | (1,062.10) has to be counted |

Exhibit _10_ Page _117_

| | | |
|---|---:|---|
| Ivin Alexey | $ (1,141.90) | has to be counted |
| Dmitry 3 | $ (1,302.01) | has to be counted |
| Lyssenko Alexandr | $ (1,519.26) | has to be counted |
| Pablo Castillo Landini | $ (1,581.52) | has to be counted |
| WB Capital Master Account | $ (1,596.00) | has to be counted |
| Federico Toma | $ (1,691.07) | has to be counted |
| PA1 | $ (2,713.18) | has tobe counted |
| Potapov Evgeny | $ (4,200.39) | has to be counted |
| Raul Fermanelli | $ (4,306.34) | has to be counted |
| Pablo Catillo Landini - 2 | $ (4,619.13) | has to be counted |
| Karina Mendoza | $ (5,365.70) | has to be counted |
| Richard Matenaer | $ (5,549.77) | has to be counted |
| Alejo Jimenez Cornejo | $ (5,599.22) | has to be counted |
| Joshua Kahan | $ (11,490.15) | has to be counted |
| Jason Neu 2 (Sterling) | $ (17,760.89) | has to be counted |
| Mike Kestler | $ (48,060.82) | has to be counted |
| T3 | ($49,234.11) | has to be counted |
| Master Accelerated Assets Account | $ (195,961.44) | has to be counted |
| Serafin Group Acct | $ (652,382.83) | has to be counted |
| Total in back office | $11,311,821.80 | |

Exhibit _10_____ Page_118_____