DAVID L. OSIAS (BAR NO. 091287)
DEBRA A. RILEY (BAR NO. 151925)
TED FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: dosias@allenmatkins.com
        driley@allenmatkins.com
        tfates@allenmatkins.com

Attorneys for Permanent Receiver Thomas F. Lennon

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>TUCO TRADING, LLC and DOUGLAS G. FREDERICK,<br><br>    Defendants. | Case No. 08-CV-0400 DMS (BLM)<br><br>**RECEIVER'S APPLICATION FOR ORDER IN AID OF RECEIVERSHIP:**<br><br>**(1) ALLOWING NOTICE BY EMAIL TO MEMBERS OF DEFENDANT TUCO TRADING;**<br><br>**(2) PROVIDING THAT COMMISSIONS EARNED OR PAYABLE TO DEFENDANT FREDERICK ARE PROPERTY OF THE TUCO RECEIVERSHIP ESTATE;**<br><br>**(3) AUTHORIZING THE RECEIVER TO ENTER INTO A TEMPORARY TRANSACTION WITH GLB TRADING, INC.; AND**<br><br>**(4) GRANTING ANCILLARY RELIEF** |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

693241.01/SD

# TABLE OF CONTENTS

**Page**

I. BACKGROUND FACTS .................................................................................................. 1

II. RELIEF REQUESTED ..................................................................................................... 3

    A. Service of Notice on Tuco Members by Email ................................................... 3

    B. Commissions as Property of the Receivership Estate .......................................... 3

    C. Authority to Enter into Temporary Transaction with GLB ................................. 4

    D. Ancillary Matters ................................................................................................. 5

III. ARGUMENT .................................................................................................................... 6

    A. This Court Has Broad Discretion in Issuing Orders to Promote the Efficient Administration of the Receivership Estate ............................................. 6

    B. Service on Tuco Members by Email Should be Deemed Sufficient .................... 7

    C. The Commissions Paid to Frederick Are Properly Deemed Property of the Receivership Estate Requiring Turnover Promptly by Frederick .............................................................................................................. 7

    D. The Receiver Should Be Granted Authority to Enter into the Temporary Transaction with GLB ...................................................................... 7

    E. Ancillary Matters Regarding Administration of the Receivership Estate .................................................................................................................. 8

        1. Reporting ................................................................................................... 8

        2. Banking ..................................................................................................... 8

        3. Bankruptcy Law as Guideline for Administration of Estate ..................... 9

        4. Fee Applications of the Receiver and His Professionals .......................... 9

IV. CONCLUSION ............................................................................................................... 10

1    Thomas F. Lennon ("Receiver"), Court-appointed permanent receiver for Tuco Trading,
2 LLC ("Tuco"), applies for an order in aid of the receivership seeking the following procedural and
3 substantive relief:  (1) allowing notice by email to all Class B members of Tuco ("Members");
4 (2) providing that all commissions earned or payable to Douglas Frederick on account of trading
5 activity are property of the Tuco receivership estate; (3) authorizing the Receiver to enter into a
6 temporary transaction with GLB Trading, Inc.; and (4) granting ancillary relief.  This relief will
7 promote the efficient administration of the Tuco receivership estate, maximize the assets available
8 for distribution, and minimize expenses.

## I.    BACKGROUND FACTS

10    In November 2006, Frederick began operating a day trading firm under the name Tuco
11 Trading, LLC.  Tuco is a Nevada limited liability company.  It is the Receiver's understanding that
12 Tuco and/or Frederick acquired a day trading firm called Evolution Financial ("Evolution") around
13 the time Tuco was formed.[1]  Tuco's main offices are located at 909 Prospect Street, Suite 224,
14 La Jolla, California (the "Tuco Premises").

15    Each Member of Tuco had an oral agreement with Frederick regarding the commission
16 Tuco would charge to the Member, the leverage or margin at which Tuco would allow the
17 Member to trade, and other details.  The majority of the Members would execute trades through
18 Tuco's accounts at its broker-dealer, GLB Trading, Inc. ("GLB").  A small number of Members
19 would use Tuco's accounts at other broker-dealers, such as ViewTrade.  GLB and ViewTrade used
20 Penson Financial Services ("Penson") as the clearing firm for all trades made by Tuco's Members.
21 Tuco's sole source of income was commissions earned from the trading activities of its Members
22 and commissions earned by Frederick for referrals of traders to GLB ("Commissions").  The
23 Commissions would be paid to Frederick as the registered representative of Tuco.  Frederick
24 would deposit the Commissions into Tuco accounts.

25    On March 4, 2008, the Securities and Exchange Commission ("SEC") filed its Complaint
26 and Ex Parte Motion for Temporary Restraining Order and Orders: (1) Freezing Assets;

---

[1]  Evolution was owned by Jonathan Kirkland and Michael Kestler.  Kirkland later moved to China.  Mike Kestler remained with Tuco and served as its head trader.

(2) Appointing a Temporary Receiver; (3) Requiring Accountings; (4) Prohibiting the Destruction of Documents, (5) Granting Expedited Discovery; and (6) Order to Show Cause re Preliminary Injunction and Appointment of a Permanent Receiver.  On March 5, 2008, the Court issued a Temporary Restraining Order and Orders: (1) Appointing a Temporary Receiver; (2) Requiring Accountings; (3)  Prohibiting the Destruction of Documents, (4) Granting Expedited Discovery; and (5) Order to Show Cause re Preliminary Injunction and Appointment of a Permanent Receiver ("TRO").  The Receiver, the SEC and the Defendants sought clarification of the TRO, which was provided in the Court's Supplement to the TRO ("Supplement"), entered on March 6, 2008.  The Supplement provided that Tuco could continue to operate in its ordinary course of business, but that immediate withdrawals by Tuco Members would only be allowed in certain limited circumstances.

Also on March 6, 2008, Penson stopped clearing trades for the Tuco accounts at GLB. Members with open positions in the market were permitted to close out or liquidate those positions, but no new trade orders could be placed.  Only those Members that had been trading through Tuco's account at ViewTrade were able to continue trading.

Telephonic hearings addressing this change in circumstances were held on March 7 and March 10, 2008.  At those hearings, the Court determined that the TRO and Supplement would remain in effect.  Tuco and Frederick represented to the Receiver and the Court that Tuco had sufficient income to cover Tuco's operating expenses in the short-term.  The Court set a schedule for the filing of the Receiver's accounting and the parties' briefs regarding the Order to Show Cause.  Also discussed at the March 10 hearing was a potential transaction between Tuco and GLB in which, for a limited period of time, GLB would pay the operating expenses of Tuco, including rent, employees and other costs, in exchange for the temporary use of the Tuco Premises, software, and employees.

On March 14, 2008, the SEC filed the Consents of Tuco and Frederick, and a Joint Motion for Judgment of Permanent Injunction and Orders: (1) Freezing Tuco's Assets, (2) Appointing a Permanent Receiver for Tuco; and (3) Prohibiting the Destruction of Documents ("Judgment"). The Court entered the Judgment on March 17, 2008.

On March 17, 2008, the Receiver and his professionals, Frederick and his counsel, and Robert Lechman of GLB met to discuss the material terms of the temporary transaction that was discussed at the March 10 telephonic hearing. The parties came to agreement on the material terms, subject to documentation and Court authorization.

## II.  RELIEF REQUESTED

### A.  Service of Notice on Tuco Members by Email

Local Civil Rule 66.1(f) requires that at least ten days notice be provided to all interested parties of the time and place of certain hearings. There are approximately 295 Tuco Members. Tuco has provided the Receiver with an email list for its Members. Notices from Tuco have historically been provided to Members by email. Using email for required notices in this case will substantially reduce administrative expenses, especially considering that a significant portion of Tuco's Members are located overseas. The Receiver has also created a website with information about the case and the Receiver's activities. The website address is http://www.tflinc.com/cases_tuco.html. The website will be updated regularly with pleadings and orders filed in the case, notices to investors and related information. Accordingly, good cause exists to allow all required notices, pleadings, orders and related documents to be served on Members by email.

### B.  Commissions as Property of the Receivership Estate

The Judgment provides in Part VIII that the Receiver has full powers over all assets of Tuco and its subsidiaries and affiliates. As noted above, the Commissions earned for all trading activity of the Members and others that Tuco and/or Frederick referred to GLB are paid directly to Frederick as the registered representative of Tuco. Frederick deposited the Commissions into Tuco accounts. In order to avoid any confusion and to assist the Receiver in any efforts to collect outstanding Commissions, the Receiver requests an order clarifying that the Commissions are property of the Tuco receivership estate under Part VIII of the Judgment.[2] Consistent with the

---

[2] The Receiver understands that Tuco had a unique relationship with one of its Members named T3. Although T3 was treated as one Member for Tuco's purposes, it consists of numerous individual traders or trader groups ("Sub-Members"). T3 charged the Sub-Members commissions which would get processed the same way as commissions earned by Tuco and would be paid directly to Frederick. T3 did a high volume of trading through Tuco's accounts.

Judgment, Frederick should be required to turn over all Commissions immediately upon receipt, and the Receiver is also authorized to collect unpaid Commissions directly.

### C. Authority to Enter into Temporary Transaction with GLB

The Receiver requests authority to enter into a temporary transaction with GLB on the following material terms:

1) The transaction will terminate after the 60th day from entry of the order granting the Receiver authority to enter into the proposed transaction ("Termination Date").

2) GLB will pay in advance to the Receiver on the first and thirtieth day on a pro rata basis calculated for a 60-day period all operating expenses of Tuco, including rent, utilities, insurance (property and general liability), maintenance of the Tuco Premises and all equipment located thereon, and expenses for ancillary Tuco operations in Chicago, Illinois, and Dallas, Texas ("Ancillary Sites"), which expenses do not include payments to the former Tuco employees/consultants. GLB's obligation to pay these expenses shall not to exceed $40,000 per month.

3) GLB will have full use of the Tuco Premises and Ancillary Sites. The Receiver and his professionals shall also continue to have unrestricted access to the Tuco Premises and Ancillary Sites.

4) Tuco's employees and consultants will be terminated by the Receiver and hired as consultants by GLB. Notwithstanding that arrangement, the Receiver may utilize former Tuco employees/consultants Jarrod Vrazel, Adam Korsin and Ben Ball as needed. The Receiver will reimburse GLB from the Tuco receivership estate a pro rata amount based on historical Tuco salaries/compensation for the actual time that the Receiver uses these employees/consultants.

5) GLB will be added as an additional insured party on Tuco's existing property and general liability insurance policies.

---

Tuco did not charge any commissions to T3; Tuco simply benefited from the reduced rates its software vendor Light Speed charged due to T3's trading volume. The relief requested would not alter Tuco and/or Frederick's agreement with T3. Frederick will be required to promptly turnover all Commissions and the Receiver will continue to pay to T3 the commissions it earned from its Sub-Members. Frederick's personal responsibility for Receivership expenses is not modified by the payment of commissions to T3.

6) Within 30 days of entry of the order, GLB must notify the Receiver whether it wishes to propose any other longer term arrangement for the Tuco Premises, Ancillary Sites, or other assets of the Receivership Estate.

7) GLB will use the Tuco Premises and Ancillary Sites only for the purposes of GLB's business and will not operate any part of Tuco's former business, or in any way use the name "Tuco" in conducting its GLB business.

This temporary transaction will minimize administrative expenses while preserving the Receiver's continued access to the Tuco Premises, Ancillary Sites, and Tuco former employees/consultants to assist the Receiver in conducting his investigation and accounting.

### D. Ancillary Matters

The Receiver requests an order modifying certain requirements under Local Civil Rule 66.1 and establishing certain procedures for the administration of the case. Specifically, the Receiver requests that:

1) The Receiver's initial report required under Rule 66.1.e be filed in conjunction with the accounting required by Part VIII.E. of the Judgment, which is to filed as soon as practicable and is estimated by May 30, 2008, and that interim reports be filed thereafter by the Receiver approximately every 120 days;

2) The requirements under Rule 66.1.d. be modified to permit the Receiver to use any depository on the approved lists of depositories prepared by the United States Trustee's Office for the Southern District of California and that the Receiver's initial and interim reports to the Court be considered sufficient reporting on the status of receivership bank accounts;

3) That to fulfill the equity receivership purposes, the provisions of the Bankruptcy Code and Bankruptcy Rules governing the disposition of assets and liabilities be incorporated for administering assets and liabilities of the receivership estate; and

4) That the Receiver and his professionals be permitted to file applications for interim payment of fees and costs approximately every 120 days.

## III. ARGUMENT

### A. This Court Has Broad Discretion in Issuing Orders to Promote the Efficient Administration of the Receivership Estate

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." SEC v. Wencke, 622 F.2d 1363, 1369 (9th Cir. 1980). The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." SEC v. Hardy, 803 F.2d 1034, 1038 (9th Cir 1986). As the appointment of a receiver is authorized by the broad equitable powers of the court, any distribution of assets must also be done equitably and fairly. See S.E.C. v. Elliot, 953 F.2d 1560, 1569 (11th Cir. 1992).

District courts have the broad power of a court of equity to determine the appropriate action in the administration and supervision of an equity receivership. See SEC v. Capital Consultants, LLC, 397 F.3d 733, 738 (9th Cir. 2005). The Ninth Circuit explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions. A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.

Id. (citations omitted); see also Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.; 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve th[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors."). Accordingly, this Court has broad equitable powers and discretion in formulating procedures, schedules and guidelines for administration of the Tuco receivership estate.

### B. Service on Tuco Members by Email Should be Deemed Sufficient

As noted above, service by email on Tuco's approximately 295 Members will provide a substantial savings to the receivership estate. A significant portion of the Members are located overseas, and all Members have historically received notices and other communications from Tuco by email. Tuco has provided an email list which the Receiver will maintain and update throughout the case. Furthermore, the Receiver's website will provide an up to date resource for Members seeking information about specific matters or the case generally. Accordingly, the Receiver requests an order permitting service on the Members of all required notices, pleadings, orders and other documents by email.

### C. The Commissions Paid to Frederick Are Properly Deemed Property of the Receivership Estate Requiring Turnover Promptly by Frederick

The Receiver understands that commissions earned on trading securities cannot be paid by a clearing firm or a broker-dealer to an unlicensed person or entity. Accordingly, the Commissions have been paid directly to Frederick, rather than to Tuco. Frederick then deposits the Commissions into Tuco accounts. To avoid any confusion or difficulty in collecting Commissions, the Receiver requests an order clarifying that the Commissions are property of the Tuco receivership estate under Part VIII of the Judgment. The Commissions have historically been treated as Tuco property and are derived from the trading activity of Tuco's Members and those that Tuco and/or Frederick have referred to GLB.

### D. The Receiver Should Be Granted Authority to Enter into the Temporary Transaction with GLB

Until the documents and electronic data located at the Tuco Premises can be reviewed and analyzed, the Receiver must continue to have access thereto and to the employees of Tuco that are familiar with Tuco's operating and accounting systems. The temporary transaction with GLB will relieve the receivership estate of the obligation to pay rent and expenses associated with the Tuco Premises and Ancillary Sites for the 60-day period following entry of the requested order. The agreement, the material terms of which are described above, will minimize administrative expenses while allowing the Receiver and his professionals sufficient time to secure critical data,

and gain a more complete understanding of Tuco's business, accounting systems and financial condition. Accordingly, the temporary transaction with GLB is in the best interests of the receivership estate and its creditors.

### E.  Ancillary Matters Regarding Administration of the Receivership Estate

The Receiver requests an order establishing the following procedures, schedules and guidelines to assist in the efficient administration of the receivership estate:

#### 1.  Reporting

The Receiver's suggests that the initial report required under Rule 66.1.e be filed in conjunction with the accounting required by Part VIII.E. of the Judgment, which is to be filed as soon as practicable. Rule 66.1.e states that a receiver's initial report shall be filed within 30 days of appointment. The Receiver estimates that he will be able to file the accounting by May 30, 2008, only approximately 45 days after the initial report would be required under Rule 66.1.e. The accounting will be accompanied by a report from the Receiver. Filing the initial report and the accounting together will eliminate the expense of generating two reports.

The Receiver also proposes that interim reports be filed by the Receiver approximately every 120 days thereafter, such that the Court and other interested parties can be kept informed of the Receiver's activities while keeping expenses associated with generating reports to a reasonable amount.

#### 2.  Banking

The Receiver requests that the requirements under Rule 66.1.d. be modified to permit him to use any depository approved by the United States Trustee's Office for the Southern District of California for bankruptcy cases. The list of approved depositories can be viewed at http://www.usdoj.gov/ust/r15/Forms/authorized_depositories.pdf. The Receiver's also requests that his initial and interim reports to the Court be considered sufficient reporting on the status of receivership bank accounts (in lieu of having to present bank statements and cancelled checks to the clerk every month). This measure will also help reduce administrative expenses.

### 3. Bankruptcy Law as Guideline for Administration of Estate

In the absence of controlling authority, district courts supervising equity receiverships often look to bankruptcy law for guidance. S.E.C. v. American Capital Investments, Inc., 98 F.3d 1133, 1140 (9th Cir. 1996) abrogated on other grounds by Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998) (applying bankruptcy authority by analogy to determine the mootness effect of a sale's closing upon an appeal from a sale confirmation order in an equity receivership); Topworth, 205 F.3d at 1116 ("The local rules of the Central District of California direct receivers, unless ordered otherwise by the court, to 'administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy.'"); Fleet Nat'l Bank v. H & D Entertainment, 926 F. Supp. 226, 240 n.56 (D. Mass. 1996) ("what is permitted under the Bankruptcy Code, generally is, therefore, *a fortiori*, permissible under receivership law.").

This receivership case, although pending before the District Court and not the bankruptcy court, will operate much as a liquidation of a business would under the Bankruptcy Code. Assets must be liquidated, claims reviewed and funds distributed. The Receiver requests that the Bankruptcy Code and Bankruptcy Rules governing property of the estate, including sales of assets, treatment of executory contracts and unexpired leases, and related matters be governed by the Bankruptcy Code and Rules to the extent that Ninth Circuit federal equity receivership law does not specifically address these issues. The Bankruptcy Code, Rules, and cases interpreting them provide additional clarity and certainty that will assist in the orderly and efficient administration of the estate.

### 4. Fee Applications of the Receiver and His Professionals

The Receiver requests that he and his professionals be permitted to request interim payment of their fees and costs approximately every 120 days. This is the time frame for professional fee applications provided under section 331 of the Bankruptcy Code. 11 U.S.C. § 331. As always, the Court can review the fee applications and determine what amounts to

approve.[3]  This will keep fees and costs associated with generating fee applications to a reasonable amount without unfairly delaying compensation of the Receiver and his professionals.

### IV.     CONCLUSION

Based on the foregoing, the Receiver requests entry of an order in aid of receivership specifically providing as follows:

1)     Service on all Members of Tuco by email shall be deemed proper and effective service of all required notices, pleadings, orders and related documents;

2)     The Commissions are property of the Tuco receivership estate under Part VIII of the Judgment, subject to immediate turnover to the Receiver upon receipt by Frederick;

3)     The Receiver is authorized to enter into a temporary transaction with GLB on the terms and conditions described herein;

4)     The Receiver's initial report required under Local Civil Rule 66.1.e. may be filed in conjunction with the accounting required under Part VIII.E. of the Judgment.  Interim reports of the Receiver shall be filed approximately every 120 days thereafter;

5)     The Receiver may use any depository approved by the United States Trustee's Office for the Southern District of California for all banking needs in connection with this case. The Receiver shall report on the status of all receivership bank accounts in his initial and interim reports, but is not required to deliver to the clerk bank statements and/or cancelled checks on a monthly basis;

6)     To the extent that Ninth Circuit federal receivership law does not address issues that arise in the administration of the Tuco receivership estate, the Bankruptcy Code, Bankruptcy Rules and cases interpreting them shall govern;

7)     The Receiver and his professionals may apply to the Court for interim payment of fees and costs approximately every 120 days; and

---

[3]  As is customary in bankruptcy cases, the Receiver and his professionals will be requesting payment of 80% of their fees and 100% of their costs in their interim fee applications, with the balance of fees reserved for approval until the final fee application.

8) Granting such other relief as the Court deems just and proper.

Dated: March 19, 2008

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By:/s/ David L. Osias
DAVID L. OSIAS
Attorneys for Permanent Receiver Thomas F. Lennon