DAVID L. OSIAS (BAR NO. 091287)
DEBRA A. RILEY (BAR NO. 151925)
TED FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: dosias@allenmatkins.com
        driley@allenmatkins.com
        tfates@allenmatkins.com

Attorneys for Permanent Receiver Thomas F. Lennon

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>             Plaintiff,<br><br>    v.<br><br>TUCO TRADING, LLC and DOUGLAS G. FREDERICK,<br><br>             Defendants. | Case No. 08-CV-0400 DMS (BLM)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION FOR ORDER AUTHORIZING INTERIM DISTRIBUTION**<br><br>Date:   July 25, 2008<br>Time:  1:30 p.m.<br>Ctrm:  10<br>Judge: Hon. Dana M. Sabraw |

Thomas F. Lennon ("Receiver"), Court-appointed permanent receiver for Tuco Trading, LLC ("Tuco"), submits this memorandum of points and authorities in support of his motion for order authorizing an interim distribution to the class B members ("Members") and other creditors of Tuco. Since his appointment as temporary receiver on March 5, 2008, the Receiver has received numerous requests and inquiries from Members regarding withdrawals and interim distributions. The Members' concerns are not only with being able to use the funds for trading activities, but also with paying monthly bills and other obligations. The Receiver is also conscious of concerns of certain Tuco non-Member creditors that a distribution from the receivership estate not be made without their participation.

Although his accounting is not yet complete, the Receiver has been able to analyze Tuco's assets and liabilities sufficiently to make an interim distribution that will not compromise an equitable final distribution of the receivership estate. Based on preliminary accounting figures, and using a conservative approach, the Receiver proposes that 40% of each Member's undisputed account balance[1] with Tuco be distributed. Likewise, the Receiver proposes that 40% of the undisputed amount owed to each trade creditor, as reflected by Tuco's books and records and confirmed by the Receiver, be distributed. A reserve of 40% will be created for disputed Member and other creditor claims. The Member account balances and amounts owed to other creditors according to Tuco's books and records are collectively referred to herein as "Preliminary Claims". To minimize the risk that any interested party might receive more or less than it ultimately should, the Receiver proposes that the amount distributed at this time be limited to 40%, and that the distribution be made pro rata to both Members and other creditors.

<u>This does not in any way represent an estimate of what Members and other creditors will ultimately receive</u>. This is merely a conservatively-calculated, interim distribution, made in an effort to ease the immediate financial burden on Tuco's Members. Pursuant to Local Rule 66.1.f, all Members and other creditors have been given at least 10 days notice (not including weekends and holidays) of the hearing on the Motion. Notice has been provided to all known non-Member creditors by mail, and pursuant to the Order in Aid of Receivership entered on March 19, 2008, to all Members by email.

## I.   BACKGROUND FACTS

On March 4, 2008, the Securities and Exchange Commission ("SEC") filed its Complaint and Ex Parte Motion for Temporary Restraining Order and Orders: (1) Freezing Assets; (2) Appointing a Temporary Receiver; (3) Requiring Accountings; (4) Prohibiting the Destruction

---

[1] As discussed in the Receiver's First Interim Report, certain Members had more than one account with Tuco. For purposes of an interim distribution, multiple accounts held by one member ("Master Accounts") will be aggregated and netted. These members will receive one payment of 40% of the aggregate, net balance of their accounts. Additionally, certain members allowed more than one individual, and in some instances many individuals, to trade through their account at Tuco ("Accounts with Sub-Accounts"). One payment will be made to the Member under whose name the Account with Sub-Accounts was established. Tuco does not and will not account for or have any involvement in how these Members handle payments from Tuco, including how they distribute the funds amongst their individual traders.

of Documents, (5) Granting Expedited Discovery; and (6) Order to Show Cause re Preliminary Injunction and Appointment of a Permanent Receiver.  On March 5, 2008, the Court issued a Temporary Restraining Order and Orders: (1) Appointing a Temporary Receiver; (2) Requiring Accountings; (3) Prohibiting the Destruction of Documents, (4) Granting Expedited Discovery; and (5) Order to Show Cause re Preliminary Injunction and Appointment of a Permanent Receiver ("TRO").  The Receiver, the SEC and the Defendants sought clarification of the TRO, which was provided in the Court's Supplement to the TRO ("Supplement"), entered on March 6, 2008.

The TRO and Supplement appointed the Receiver as temporary receiver with limited powers.  The Receiver was granted access to the company, but Tuco was permitted to continue operations in the ordinary course of business.  The Supplement also restricted the ability of Members to withdraw funds.

On March 6, 2008, trading activity at Tuco was halted when Penson terminated clearing service to Tuco's main broker accounts.  Members were only permitted to issue liquidating orders from that point forward.  The Court held telephonic hearings on March 7 and March 10, 2008 to address this change in circumstances.  At those hearings, it was determined that Tuco could continue to operate on a limited basis until the Receiver could provide an initial accounting and the parties could brief the Order to Show Cause re Preliminary Injunction.

On March 11, 2008, Douglas Frederick and Tuco filed financial statements as required under the TRO and Supplement.  On March 14, 2008, the SEC filed the Consents of Tuco and Frederick, and a Joint Motion for Judgment as to Defendants Tuco and Frederick and Orders: (1) Freezing Tuco's Assets, (2) Appointing a Permanent Receiver for Tuco; and (3) Prohibiting the Destruction of Documents ("Judgment").  The Court entered the Judgment on March 17, 2008.

On March 19, 2008, in response to the Receiver's application, the Court entered an Order in Aid of Receivership:  (1) Allowing Notice by Email to Members; (2) Providing that Commissions Earned or Payable to Frederick are Property of the Receivership Estate; (3) Authorizing the Receiver to Enter into a Temporary Transaction with GLB Trading, Inc.; and (4) Granting Ancillary Relief ("Order in Aid").  The Order in Aid provides, among other things, that the Receiver's initial report may be filed in conjunction with the accounting due under Part

1   VIII.E. of the Judgment, and that interim reports shall be filed by the Receiver approximately
2   every 120 days thereafter.
3         On May 1, 2008, the Receiver applied for approval of a sale of Tuco's office furniture and
4   equipment to Frederick for $21,000.  The Court entered an order approving the sale on May 5,
5   2008.
6         On May 15, 2008, new counsel representing Frederick filed a Stipulation for Substitution
7   of Counsel ("Stipulation").  The Stipulation states that Frederick's new counsel is substituted as
8   counsel of record for Tuco and Frederick.  With the assistance of Allen Matkins, the Receiver
9   contacted Frederick's new counsel and advised that Frederick's former counsel was not employed
10  by the Receiver or Tuco at any time after entry of the Judgment.  The Stipulation is therefore
11  improper to the extent that Frederick's new counsel purports to represent Tuco.
12        On May 19, 2008, new counsel for Frederick, again purporting to represent Tuco, filed a
13  Notice of Appeal of the Judgment ("Notice of Appeal").  On May 29, 2008, the Ninth Circuit
14  Court of Appeals issued a Time Schedule Order for the appeal that was entered on this Court's
15  docket.  As of the filing of this report, Frederick has not sought a stay of the Judgment pending
16  appeal or filed any other motions with the Court of Appeals.
17        On June 2, 2008, the Receiver filed his First Interim Report, including his Preliminary
18  Accounting of Tuco ("Report").  The Report was served by email and mail on the parties, and by
19  mail on all non-Member creditors.  Notice of the Report was emailed to all Members and the
20  Report itself was posted on the Receiver's website.  A hearing on the Report is scheduled for
21  July 18, 2008.

## II.     RELIEF REQUESTED

23        This Motion should be read in conjunction with the Report, which provides detailed,
24  preliminary accounting analysis of Tuco, including its assets, liabilities, and Member account
25  balances.  As discussed in the Report, the accounting analysis thus far by the Receiver and his
26  forensic accountant, William H. Ling ("Ling"), is preliminary only.  The Receiver and Ling
27  continue to review and analyze records of Tuco's operations.  The Receiver is confident, however,
28  that under the worst case scenario, the Members and other creditors of Tuco would receive a

distribution of at least 40%.  Again, <u>40% is not an estimate of what Members and creditors will ultimately receive</u>.  This is only a conservatively-calculated, interim distribution.

If this application is approved, a distribution form will be emailed to all Members and mailed to all other creditors, instructing each to provide wiring or mailing instructions for transmission of their distribution from the estate.  The Receiver will work to resolve any name and/or address issues with the Members and other creditors to ensure that all parties receive an interim distribution promptly.[2]  As the distribution forms are returned, the Receiver will process interim distribution payments.

To the extent that the Receiver determines that a Member or creditor (a) has unresolved amounts pertaining to his/her Preliminary Claim, or (b) has a relationship with Tuco or Frederick other than as a Member or other creditor, the Receiver, in his sole discretion, will decide whether such Member or other creditor's interim distribution will be reserved pending additional investigation.

This is **not** the appropriate time for Members and other creditors to dispute Preliminary Claims.  In the next several weeks, the Receiver will seek approval from the Court of a process for receiving and administering claims.  The Receiver will ask the Court to set a bar date by which all claims must be submitted.  The Receiver will then review the claims submitted and, where appropriate, file objections.  Members and other creditors will have the opportunity to respond to the Receiver's objections, and the Court will resolve claim disputes.  Claims that have been submitted to the Receiver and resolved by agreement or by the Court are referred to herein as "Final Claims".  In due course, the Receiver will also seek approval from the Court of a plan of distribution, providing for distribution of the assets of the receivership estate to Members and other creditors with allowed Final Claims.

The claims process will be the appropriate time for Members and other creditors to provide evidence indicating that their Final Claim amounts should be something other than what the Receiver's records show.  Allowing Members and other creditors to dispute Preliminary Claim

---

[2]   Shortly after the Receiver's appointment as permanent receiver, Members and other creditors were instructed to contact the Receiver with any changes to their contact information.

amounts will duplicate the claims process, and unnecessarily complicate and delay the proposed interim distribution.

### III.   ARGUMENT

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." SEC v. Wencke, 622 F.2d 1363, 1369 (9th Cir. 1980). The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." SEC v. Hardy, 803 F.2d 1034, 1038 (9th Cir 1986). As the appointment of a receiver is authorized by the broad equitable powers of the court, any distribution of assets must also be done equitably and fairly. See S.E.C. v. Elliot, 953 F.2d 1560, 1569 (11th Cir. 1992).

District courts have the broad power of a court of equity to determine the appropriate action in the administration and supervision of an equity receivership. See SEC v. Capital Consultants, LLC, 397 F.3d 733, 738 (9th Cir. 2005). The Ninth Circuit explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions. A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.

Id. (citations omitted); see also Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.; 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve th[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors.").

This Court has broad equitable powers and discretion in the administration of this equity receivership estate, including the discretion to authorize an interim distribution. An interim distribution will allow the Members to pay their bills and continue with their livelihood (trading).

The Receiver's preliminary accounting shows that 40% of Preliminary Claims can be distributed at this time without jeopardizing an equitable final distribution.

It is important that the Receiver have discretion to reserve an interim distribution if there are unresolved issues pertaining to Preliminary Claims such that additional investigation can be done. In some cases, unresolved fees, charges or disputes could substantially reduce Preliminary Claims. An interim distribution should not be made if such distribution might result in a Member or other creditor receiving more than it ultimately should as part of an equitable final distribution. The Receiver will exercise his business judgment under the specific circumstances to determine when, and in what amount, an interim distribution will be made.

Finally, allowing Members and other creditors to dispute their Preliminary Claim amount would cause the estate to incur the expenses associated with administering claims twice. The proposed interim distribution has been conservatively calculated to account for the likelihood that some adjustments to Preliminary Claims will have to be made. As noted above, the Receiver will seek approval of a process for receiving and administering claims in the next several weeks. The claims process will the be the appropriate time for Members and creditors to provide evidence indicating that their Final Claim amounts should be something other than what the Receiver's records show. The claims process will also provide the opportunity for Members and other creditors to have their Final Claims reviewed and determined by the Court to the extent there is an unresolved dispute.

The goal of an interim distribution is to get money into the hands of Members and other creditors sooner rather than later. Disputes over Preliminary Claims will unnecessarily delay and complicate this process.

As discussed in the Declaration of Ted Fates in Support of the Motion, the Motion, in substantially final form, was circulated to the SEC, Douglas Frederick and Tuco's largest non-Member creditor, Lightspeed, before filing. The SEC and Lightspeed have stated that they do not oppose the Motion. Frederick has not stated a position with respect to the Motion.

### IV.   CONCLUSION

Based on the foregoing, the Receiver requests entry of an order granting the Motion, authorizing an interim distribution to the Members and other creditors of Tuco in the amount of 40% of their Preliminary Claims, and granting such other relief as the Court deems just and proper.

Dated:  July 10, 2008

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By:/s/ David L. Osias
DAVID L. OSIAS
Attorneys for Permanent Receiver Thomas F. Lennon