```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF CALIFORNIA

      BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING.
```

_____
SECURITIES AND EXCHANGE COMMISSION,)
           PLAINTIFF,    )   CASE NO. 08CV0400-DMS
    VS.                                )
TUCO TRADING, LLC AND          )   SAN DIEGO, CALIFORNIA
DOUGLAS G. FREDERICK,           )    MARCH 5, 2008
         DEFENDANTS.      )
_____

TELEPHONIC HEARING RE TEMPORARY RESTRAINING ORDER

REPORTER'S TRANSCRIPT OF PROCEEDINGS

COUNSEL APPEARING:

FOR PLAINTIFF:     ROBERTO TERCERO, SENIOR COUNSEL
                     DONALD W. SERLES, ESQ.
                     UNITED STATES SECURITIES AND EXCHANGE
                       COMMISSION
                     11TH FLOOR
                     5670 WILSHIRE BOULEVARD
                     LOS ANGELES, CALIFORNIA 90036

FOR DEFENDANTS:    MICHELE R. FRON, ESQ.
                     KEESAL, YOUNG & LOGAN &
                     400 OCEANGATE
                     LONG BEACH, CALIFORNIA 90801

FOR THE RECEIVER:  DAVID L. OSIAS, ESQ.
                     EDWARD FATES, ESQ.
                     ALLEN MATKINS LECK GAMBLE & MALLORY
                     501 WEST BROADWAY, 15TH FLOOR
                     SAN DIEGO, CALIFORNIA 92101


        REPORTED BY:    LEE ANN PENCE,
                             OFFICIAL COURT REPORTER
                             UNITED STATES COURTHOUSE
                             940 FRONT STREET, BOX 4199
                             SAN DIEGO, CALIFORNIA 92101

```
 1  SAN DIEGO, CALIFORNIA - WEDNESDAY, MARCH 5, 2008 - 3:30 P.M.
 2                           *   *   *
 3           THE CLERK:  CASE 08CV0400, S.E.C. VERSUS TUCO
 4  TRADING; ON FOR STATUS HEARING.
 5           THE COURT:  GOOD AFTERNOON, COUNSEL.  THIS IS JUDGE
 6  SABRAW.  WE ARE ON THE TELEPHONE, I BELIEVE WITH ALL COUNSEL.
 7           AND I HAVE ELECTED TO PUT THE MATTER ON THE RECORD,
 8  SO AT THIS TIME CAN I HAVE COUNSEL IDENTIFY THEMSELVES AND
 9  MAKE AN APPEARANCE?
10           MR. SEARLES:  YES, YOUR HONOR.  FOR THE COMMISSION,
11  DONALD SEARLES AND ROBERTO TERCERO.
12           MS. FRON:  ON BEHALF OF THE DEFENDANTS, MICHELE FRON
13  AND STEVE YOUNG OF KEESAL, YOUNG & LOGAN.
14           MR. OSIAS:  ON BEHALF OF THE TEMPORARY RECEIVER, TOM
15  LENNON, DAVID OSIAS OF ALLEN MATKINS.
16           THE COURT:  THANK YOU VERY MUCH.
17           THE COURT DID ISSUE A TRO EARLIER TODAY, AND I
18  UNDERSTAND THERE ARE SOME QUESTIONS REGARDING THAT ORDER.
19           I AM HAPPY TO HEAR FROM COUNSEL.
20           MR. SEARLES:  YOUR HONOR, FROM THE S.E.C.'S
21  PERSPECTIVE -- AND I BELIEVE THIS IS THE UNDERSTANDING ALSO OF
22  THE RECEIVER'S COUNSEL -- IS THAT BASED UPON THE COURT'S
23  FINDING IN SECTION B OF THE SECOND PAGE, SORT OF THE PREAMBLE
24  PORTION OF THE ORDER, IN WHICH THE COURT FOUND THAT GOOD CAUSE
25  EXISTS TO BELIEVE THE DEFENDANTS WILL CONTINUE TO ENGAGE IN
```

1   SUCH VIOLATIONS, NAMELY VIOLATION OF SECTION 15(A) AND 10B-5
2   OR 10(B) OF THE EXCHANGE ACT, TO THE IRREPARABLE AND IMMEDIATE
3   LOSS OR DAMAGE TO INVESTORS AND TO THE GENERAL PUBLIC UNLESS
4   THEY ARE RESTRAINED AND ENJOINED, THAT THERE IS A TEMPORARY
5   RESTRAINING ORDER THAT THE COURT DID GRANT PREVENTING
6   CONTINUING THE FUTURE VIOLATIONS OF SECTION 15(A) OR 10(B).
7            BASED ON THAT ASSUMPTION, THE ACTIVITY THAT TUCO IS
8   ENGAGED IN BY ALLOWING ITS TRADERS TO TRADE THROUGH ITS
9   ACCOUNTS AND COLLECTING COMMISSIONS ON THOSE ACCOUNTS AND
10  AUTHORIZING OR SUPERVISING THE WITHDRAWALS AND DISTRIBUTIONS
11  OF FUNDS FROM THOSE ACCOUNTS, THAT IS THE VERY ACTIVITY THAT
12  VIOLATES SECTION 15(A), AND THAT IS THE VERY ACTIVITY THAT IS
13  ENJOINED.
14           OUR DISCUSSION WITH YOUR CLERK WE OBVIOUSLY -- I
15  THINK THERE IS A CONFUSION ABOUT THE ORDER WITH RESPECT TO THE
16  ALLOWANCE OF THE TRADERS TO CONTINUE TO TRADE.
17           WE HAVE ARTICULATED OUR UNDERSTANDING WHAT THE
18  COURT'S ORDER IS.  I BELIEVE, THE DEFENDANT'S COUNSEL HAS
19  PERHAPS A DIFFERENT INTERPRETATION, OR AT LEAST WE NEED A
20  CLARIFICATION ON THE ORDER.
21       **THE COURT**:  YES.  THAT IS A FAIR QUESTION, SO I
22  APPRECIATE YOUR BRINGING IT TO THE COURT'S ATTENTION.
23           WHAT I ATTEMPTED TO DO IN THIS ORDER, I OBVIOUSLY
24  USED THE PROPOSED ORDER BY THE S.E.C., WITH SOME SIGNIFICANT
25  MODIFICATIONS.

```
 1           AND THE FOCUS OF THE ORDER THAT WAS ISSUED BY THE
 2   COURT WAS TO FIND THAT THE COMMISSION MADE A PRIMA FACIE
 3   SHOWING, AS SET FORTH IN THE PREAMBLE AT PARAGRAPH B -- AS IN
 4   BOY -- AND C -- AS IN CAT.  AND SO BASED ON THAT PRIMA FACIE
 5   SHOWING, THE TRO WAS ISSUED.
 6           HOWEVER, I ELECTED TO TAKE OUT THE LANGUAGE
 7   RESTRAINING AND ENJOINING THE DEFENDANTS FROM THE STANDARD
 8   LANGUAGE, WHICH WAS INCLUDED IN THE INITIAL PROPOSED TRO,
 9   RESTRAINING AND ENJOINING THE DEFENDANTS FROM VIOLATING THOSE
10   SECURITY LAWS THAT ARE SET FORTH AND FROM FREEZING ASSETS.
11           WHAT I INTENDED TO DO IS CONCLUDE THAT A PRIMA FACIE
12   SHOWING HAD BEEN MADE, BUT RATHER THAN ISSUE A TRO FREEZING
13   ASSETS AND ENJOINING THE DEFENDANTS FROM CONDUCTING BUSINESS,
14   I WANTED TO SET -- I WANTED TO DECLINE TO DO THAT, AND INSTEAD
15   SET THE MATTER FOR AN OSC ON PRELIMINARY INJUNCTION.
16           SO I INTENDED THE ORDER SIMPLY TO INDICATE THAT A
17   PRIMA FACIE SHOWING HAS BEEN MADE, BUT ULTIMATELY DECLINING TO
18   ISSUE AN ULTIMATE TRO FREEZING ASSETS AND ENJOINING DEFENDANTS
19   FROM CONDUCTING BUSINESS.  AND RATHER, IN LIGHT OF THE PRIMA
20   FACIE SHOWING, TO ENJOIN THE DEFENDANTS FROM, AS SET FORTH IN
21   THE ORDER, DESTROYING DOCUMENTS OR ANY OTHER RELEVANT
22   INFORMATION, PROVIDING FOR EXPEDITED DISCOVERY, AND THEN
23   SETTING THE MATTER ON SHORT NOTICE FOR AN OSC.
24           SO THAT WAS THE FOCUS OF THE ORDER.
25           I UNDERSTAND THERE IS ALSO A QUESTION WITH RESPECT
```

```
 1  TO THE RECEIVER, AND HOW HE SHOULD GO ABOUT PERFORMING HIS
 2  DUTIES IN THE ABSENCE OF AN ASSET FREEZE.
 3         BUT ON THIS FIRST QUESTION, DOES THAT ADDRESS
 4  COUNSELS' CONCERNS?
 5         MR. SEARLES:  I THINK THAT -- THIS IS DON SEARLES
 6  AGAIN.
 7         THAT CLARIFIES THE ORDER FOR US.  WHETHER IT
 8  ADDRESSES OUR CONCERNS OR NOT -- OBVIOUSLY, THE RELIEF
 9  REQUESTED IS FAR SHORT OF WHAT WE HAD ASKED FOR.  AND THE
10  CONTINUING VIOLATIONS OF LAW OVER THE NEXT TWO WEEKS ARE OF
11  DEEP CONCERN TO US.
12         I IMAGINE THAT WHAT MOTIVATED THE COURT HERE WAS A
13  CONCERN FOR THE TRADERS AND NOT WANTING TO HARM THE TRADERS.
14         WHAT I THINK THE LOOPHOLE IS, IS NOW MR. FREDERICK
15  IS FREE TO WITHDRAW ALL FUNDS AND MOVE TO COSTA RICA, WHICH,
16  HOPEFULLY, HE WON'T DO.
17         BUT THERE IS -- THERE IS A LOT OF LEEWAY HERE FOR
18  NOT ONLY CONTINUED TRADING ACTIVITY BUT FOR CONTINUED -- OR
19  FOR WITHDRAWALS.  AND OF MOST CONCERN WITHDRAWALS BY
20  FREDERICK.
21         MS. FRON:  IT IS OUR UNDERSTANDING THAT THE INTENT
22  OF THE COURT WAS TO ALLOW TUCO TRADING TO CONTINUE IN ITS
23  NORMAL BUSINESS PRACTICES BETWEEN NOW AND MARCH 19TH, AND THAT
24  THEIR INVESTORS ARE ALLOWED TO EXECUTE ORDERS, AS THEY HAVE
25  BEEN.  AND IF THEY WISH TO WITHDRAW FUNDS, THAT THEY WILL BE
```

1  FREE TO DO SO.
2         **THE COURT:**  THAT'S CORRECT.
3         IT WAS MY ESTIMATION, AT THE END OF THE HEARING
4  YESTERDAY, AS I INDICATED, THAT THE S.E.C. HAD MADE A PRIMA
5  FACIE SHOWING.  BUT IT SEEMED TO ME, UNDER ALL OF THE
6  CIRCUMSTANCES AND THE INFORMATION PRESENTED THUS FAR, THAT THE
7  SCOPE AND THE BREADTH OF THE TRO THAT WAS REQUESTED WAS -- I
8  WAS UNCOMFORTABLE ISSUING THAT ORDER AT THIS TIME, AND I
9  PREFERRED TO HAVE THE NOTICED HEARING ON AN OSC TO ADDRESS THE
10 FULL SCOPE OF THE REQUESTED TRO.
11        SO I THINK, WITH THE COMMENTS IN THIS SETTING, I
12 THINK I HAVE CLARIFIED THE SCOPE OF THE TRO AT THIS POINT ON
13 THIS FIRST ISSUE.
14        BUT I UNDERSTAND THERE IS ANOTHER QUESTION WITH
15 REGARD TO THE RECEIVER.
16        **MR. OSIAS:**  YOUR HONOR, THIS IS DAVID OSIAS FOR THE
17 TEMPORARY RECEIVER.
18        **THE COURT:**  YES.
19        **MR. OSIAS:**  I VERY MUCH APPRECIATE YOUR MAKING
20 YOURSELF AVAILABLE.  AS WE HAVE EXPLAINED, BOTH THE S.E.C. AND
21 THE DEFENSE COUNSEL, OUR STRONG DESIRE IS TO DO EVERYTHING YOU
22 WISH US TO DO AND TO DO NOTHING YOU DON'T WISH US TO DO.  AND,
23 THEREFORE, WE DID HAVE A FEW QUESTIONS -- ONE OF WHICH YOU
24 CLARIFIED ALREADY IN TERMS OF WITHDRAWAL OF FUNDS.
25        IF I COULD PUT A SLIGHT NUANCE ON THE ANSWER IN THE

1  FORM OF ANOTHER QUESTION, BASED ON EXPERIENCE.  YOU KNOW,
2  SOMETIMES RECEIVERS ARE APPOINTED TO BOTH PROTECT ASSETS AND
3  NOT LET ANY TRANSACTIONS OCCUR.  AND THAT SOUNDS LIKE THAT IS
4  NOT WHAT YOU HAVE IN MIND.
5       AN INTERMEDIATE STEP IS RECEIVERS ARE SOMETIMES
6  APPOINTED AND THEY HAVE PRIMARILY AN INVESTIGATORY ROLE AND
7  REPORTING TO THE COURT, AND IT LOOKS LIKE YOU HAVE THAT IN
8  MIND HERE.
9       AND SOMETIMES THEY ARE ALSO INSTRUCTED TO NOT ALLOW
10 ANY ACTIVITY WITH RESPECT TO ASSETS THAT IS NOT IN THE
11 ORDINARY COURSE OF BUSINESS.  THAT IS -- MAYBE I WILL USE A
12 SILLY EXAMPLE, BECAUSE IT DOESN'T INVOLVE MATERIAL MONEY, BUT
13 SELLING OF FURNITURE.
14       THEY ARE NOT IN THE BUSINESS OF SELLING FURNITURE.
15 IF THE OFFICE IS, YOU KNOW, STRIPPED BARE AND THE ASSETS ARE
16 GONE BY THE 19TH, IT IS PROBABLY NOT TRADING ACTIVITY IN THE
17 SENSE THAT YOU HAVE IN MIND.
18       SO SOMETIMES THERE IS A NO ACTIVITY OTHER THAN THE
19 ORDINARY COURSE, AND THE RECEIVER WATCHES TO MAKE SURE THERE
20 IS NO, YOU KNOW, SORT OF LIQUIDATION ACTIVITY OR SHIPPING
21 ASSETS OFFSHORE, YOU KNOW, THAT HASN'T BEEN THE WAY THEY HAVE
22 BEEN DOING IT IN THE PAST.  IT IS SORT OF LIKE PRESERVING
23 HISTORICAL, NORMAL BUSINESS OPERATIONS.
24       THAT MAY ALSO NOT BE WHAT YOU HAVE IN MIND.  YOU MAY
25 MERELY HAVE US WATCHING AND REPORTING.

```
 1            AND IF THERE WAS A SPECIFIC QUESTION ABOUT THE
 2   ACCOUNTING AND WITH CONTINUING ACTIVITY, DID YOU HAVE A DATE
 3   YOU WISH THE ACCOUNTING TO BE AS OF?
 4            THE COURT:  I THINK YOU HAVE SET OUT THREE SCENARIOS
 5   THERE, AND THAT THIRD ONE IS A GOOD ONE.  AND I THINK IT MAY
 6   NEED CLARIFICATION, PERHAPS IN A SUPPLEMENTAL ORDER.
 7            IT WAS MY INTENT, AS I SAY, NOT TO FREEZE ASSETS,
 8   BUT TO APPOINT A RECEIVER TO NOT ONLY PROVIDE AN ACCOUNTING
 9   BUT, ON THIS THIRD POINT THAT YOU RAISED, MR. OSIAS, IS TO
10   SERVE IN A WATCHDOG CAPACITY, AS WELL.
11            IT SEEMED TO ME THAT UNDER THE CIRCUMSTANCES THE
12   APPOINTMENT OF A RECEIVER FULFILLING THAT ROLE WOULD
13   SUFFICIENTLY ADDRESS THE COMMISSION'S CONCERNS ABOUT THE
14   SECURITY VIOLATIONS ON WHICH IT HAS MADE A PRIMA FACIE
15   SHOWING.
16            AND SO THE INTENT OF THE TRO WAS CERTAINLY NOT AS
17   BROAD AS THE COMMISSION HAS REQUESTED, BUT IT WAS INTENDED TO
18   PUT INTO PLACE A MECHANISM BY WHICH INVESTORS AND THE MARKET
19   AND OTHERS COULD BE ADEQUATELY PROTECTED THROUGH, IN THIS
20   CASE, THE RECEIVER NOT ONLY PROVIDING AN ACCOUNTING BUT, AS
21   YOU SET FORTH IN THAT THIRD SCENARIO, PROVIDING A WATCHFUL EYE
22   OVER THE ACTIVITIES OF THE DEFENDANTS TO ENSURE THAT ONLY
23   ACTIVITIES CONDUCTED IN THE ORDINARY COURSE OF BUSINESS ARE
24   BEING PURSUED.
25            MR. OSIAS:  OKAY.
```

1          **THE COURT:** IN THAT REGARD, DO YOU PROPOSE -- OR
2  PERHAPS WHAT I SHOULD REQUEST IS ADDITIONAL LANGUAGE THAT
3  WOULD BE SUBMITTED -- I GUESS BY MR. OSIAS -- THAT WOULD
4  SUPPLEMENT THE CURRENTLY ISSUED TRO.
5          **MR. OSIAS:** WE WOULD BE GLAD TO DO THAT. IT IS VERY
6  HELPFUL THAT NOW, THAT YOU HAVE EXPRESSED WHAT YOU HAVE IN
7  MIND, FOR US TO DO SO.
8          I WOULD -- JUST SO WE CAN HEAR FROM PEOPLE WHILE WE
9  HAVE THEM AND DO THIS AS QUICK AS POSSIBLE, THE BANKRUPTCY
10 CODE -- WHICH IS OFTEN LOOKED AT BY DISTRICT COURTS IN EQUITY
11 RECEIVERSHIPS AS AT LEAST A GUIDE, OR AN ANALOGY -- HAD THE
12 CONCEPT FOR DEBTORS IN POSSESSION OF THE USE OF ASSETS IN THE
13 ORDINARY COURSE OF BUSINESS WITHOUT COURT CONSENT, AND
14 PROHIBITION OF USE OF ASSETS OUTSIDE OF THE ORDINARY COURSE OF
15 BUSINESS, UNLESS YOU FIRST GET COURT CONSENT.
16         WE WOULD PROBABLY PROPOSE, FOR EASE OF DRAFTING AND
17 SPEED, TO LIFT THE LANGUAGE LIKE THAT RIGHT OUT OF THE
18 BANKRUPTCY CODE AND PUT IT IN A SUPPLEMENTAL ORDER FOR YOUR
19 HONOR -- UNLESS EITHER THE S.E.C. OR THE DEFENSE COUNSEL
20 THINKS THAT IS AN INAPPROPRIATE STANDARD TO BORROW.
21         **MS. FRON:** ON BEHALF OF THE DEFENDANTS I THINK THAT
22 IS ACCEPTABLE, AND PRECISELY THE WAY WE INTEND TO MOVE FORWARD
23 BETWEEN NOW AND MARCH 19TH; ORDINARY COURSE OF BUSINESS.
24         **THE COURT:** AND AS TO THE COMMISSION, DO YOU AGREE?
25         **MR. SEARLES:** YES, YOUR HONOR. THAT IS REASONABLE,

```
 1  AS WELL.
 2          THE COURT:  ALL RIGHT.  I HAVE THAT LANGUAGE IN
 3  MIND.
 4          I THINK WHAT WE WILL DO, IN ORDER TO BE MOST
 5  EFFICIENT, IS WE WILL SIMPLY ISSUE A SUPPLEMENTAL ORDER TO THE
 6  TRO WITH THAT LANGUAGE.
 7          MR. OSIAS:  THEN, YOUR HONOR, IN TERMS OF SORT OF
 8  DAY TO DAY, WHAT I WOULD ENVISION IS IF YOU -- IF YOU WILL
 9  BEAR WITH ME ONE MORE MINUTE.
10          THE COURT:  YES.
11          MR. OSIAS:  THE RECEIVER GOING OUT, GETTING AN
12  UNDERSTANDING OF HOW THIS BUSINESS OPERATES.  AND THEN,
13  THROUGH WHATEVER STEPS HE FEELS APPROPRIATE, MONITORING IT.
14          AND IF HE ADVISES -- I WILL SAY MANAGEMENT, I ASSUME
15  IT IS DOUGLAS FREDERICK, BUT WHOEVER WE LEARN IS MANAGEMENT --
16  THAT HE BELIEVES AN ACTIVITY IS OUTSIDE THE COURSE, THEN IT IS
17  INCUMBENT UPON -- UNLESS THEY EXPLAIN TO HIM WHY IT IS, IT IS
18  INCUMBENT UPON THE DEFENDANT TO SEEK COURT PERMISSION BEFORE
19  GOING FORWARD WITH THAT ACTIVITY.
20          THE COURT:  I THINK THAT IS APPROPRIATE LANGUAGE.
21      DO YOU OBJECT?
22          MS. FRON:  ON BEHALF OF THE DEFENDANTS WE DO NOT
23  OBJECT.
24          MR. SEARLES:  YOUR HONOR, THIS IS DON SEARLES AGAIN.
25          ONE OF MY CONCERNS IS, ONCE THE TRADERS ARE NOTIFIED
```

```
 1   OF THE EXISTENCE OF THE TRO, I WOULD IMAGINE ALL OF THEM WILL
 2   CHOSE TO -- NECESSARILY, THIS IS NOT THE SAFEST PLACE TO KEEP
 3   THEIR MONEY AND WILL SEEK TO WITHDRAW IT, CAUSING A RUN ON THE
 4   BANK THAT WE FEARED MIGHT OCCUR GIVEN THE SHORTFALL IN THE
 5   ACCOUNT -- WHICH IS PART OF THE PAPERS.  TRADERS START READING
 6   OUR PAPERS AND START TO REALIZE THE SHORTFALL AND THE
 7   MISREPRESENTATIONS, WE MAY BE CAUSING THE VERY THING THAT WE
 8   FEARED.
 9           AND IF THERE ARE REQUESTS FOR WITHDRAWALS IN THE
10   NEXT FEW WEEKS, FROM OUR PERSPECTIVE IT WOULD BE MOST PRUDENT
11   NOT TO ALLOW THOSE TO OCCUR, OR AT LEAST NOT TO OCCUR WITHOUT
12   THE RECEIVER'S REVIEW AND APPROVAL TO MAKE SURE THAT WHATEVER
13   DEBITS THAT SHOULD BE HAPPENING TO THOSE WITHDRAWALS ARE MADE,
14   AND THAT THE REQUEST FOR THE WITHDRAWAL AND THE AMOUNT OF THE
15   REQUEST IS ACCURATE.
16           **THE COURT:**  THAT SOUNDS REASONABLE.
17           DO YOU OBJECT, MS. FRON?
18           **MS. FRON:**  I DO NOT OBJECT, NO.  I THINK THAT,
19   ESPECIALLY GIVEN THEIR AGREEMENT STATES THAT, YOU KNOW, WE
20   DON'T HAVE TO GIVE THEM THEIR MONEY THAT DAY, THAT WE CAN DO
21   THIS IN A LOGICAL FASHION, SEE WHAT TYPE OF REACTION WE GET
22   FROM THE TRADERS, AND HAVE THE RECEIVER TAKE A LOOK AT ANY
23   WITHDRAWALS.
24           **THE COURT:**  ALL RIGHT.
25           MR. SEARLES, WHAT LANGUAGE WOULD YOU PROPOSE,
```

1   SPECIFICALLY?
2           **MR. SEARLES:**  WELL, PERHAPS JUST WORKING WITH DAVID
3   IN TERMS OF DEFINING WHAT "OUTSIDE OF THE SCOPE" IS, OR
4   PUTTING IN A PHRASE THERE THAT ANY REQUEST FOR WITHDRAWALS
5   PENDING THE PRELIMINARY HEARING ON THE 19TH WILL BE SUBJECT TO
6   THE REVIEW AND APPROVAL OF THE RECEIVER AND SUBJECT TO THE
7   RECEIVER'S DISCRETION AS TO WHETHER TO GRANT OR DENY THE
8   REQUEST.
9           **MR. OSIAS:**  THIS IS MR. OSIAS.
10          AND IN ORDER TO BE AS COMPLIANT AS EVERYONE WOULD
11  LIKE A RECEIVER TO BE, TO THE EXTENT WHAT I AM HEARING IS THAT
12  WITHDRAWALS ARE PERMISSIBLE, BUT TO THE EXTENT THE BUSINESS
13  ARRANGEMENTS, AS DESCRIBED BY MS. FRON, INVOLVE A RIGHT TO
14  REQUEST FUNDS BUT NO OBLIGATION TO INSTANTANEOUSLY MAKE THEM
15  AVAILABLE, AND THEY ARE GOVERNED BY CONTRACTS; THE RECEIVER'S
16  DISCRETION, IT SOUNDS LIKE, WILL BE TO LOOK AT THE VOLUME OF
17  REQUESTS, ESPECIALLY IN LIGHT OF THE ONLY TWO-WEEK PERIOD
18  BEFORE THE NEXT HEARING.  AND IF THE CONTRACTS AREN'T VIOLATED
19  BY ACTING SLOWLY ON THE WITHDRAWAL REQUESTS, I THINK THAT
20  WOULD BE THE RECEIVER'S BIAS TO POSTPONE, BUT WITHIN THE
21  CONTRACTUAL CONSTRAINTS SO HE IS NOT VIOLATING THE AGREEMENTS,
22  THE WITHDRAWAL.
23          IF IT IS -- WHAT I WOULD FEAR IS, AS MOST RECEIVER
24  OR BANKRUPTCY LAWYERS WOULD, IS A STANDARD THAT ENDS UP BEING
25  FIRST COME, FIRST SERVED.  AND THEN A WEEK AND A HALF FROM NOW

```
 1  THE RECEIVER DECIDES THERE HAVE BEEN TOO MANY, AND IT IS A
 2  DIFFERENT RULE FOR THE REST OF THE WEEK.  THAT DOESN'T STRIKE
 3  ME AS NECESSARILY A FAIR SYSTEM.
 4          SO IT SOUNDS LIKE, AS A CONTRACT, THAT ENTITLES THEM
 5  TO WITHDRAWAL IN A SHORTER PERIOD THAN BETWEEN NOW AND THE
 6  19TH, WE WOULD BE INCLINED TO RECEIVE THE WITHDRAWAL REQUEST,
 7  ACT ON IT, BUT ONLY WITHIN THE CONTRACTUAL PERIOD WHICH IS
 8  GOING TO BE LONGER THAN THE NEXT HEARING, AND THEN WE CAN TAKE
 9  UP THIS QUESTION AGAIN -- WE CAN'T, BUT YOU ALL CAN WITH THE
10  COURT.
11          IS THAT OKAY?
12          WHY DON'T THE THREE OF US, THE PARTIES, GET TOGETHER
13  AND COME UP WITH LANGUAGE THAT WE ALL AGREE ON, THEN WE CAN
14  SUBMIT IT TO THE JUDGE.  I WOULD LIKE THE MOST OBJECTIVE
15  STANDARDS POSSIBLE.
16          **MR. TERCERO:**  WE WOULD TOO.
17          YOUR HONOR, THIS IS ROBERTO TERCERO ON BEHALF OF THE
18  COMMISSION.
19          WE HAVE, AS WE INFORMED THE COURT YESTERDAY DURING
20  THE HEARING, INFORMED THE VARIOUS BROKERAGE FIRMS AND CLEARING
21  FIRMS, AND THEY VOLUNTARILY AGREED TO PLACE A HOLD ON THE
22  ACCOUNTS.  THAT HOLD, AS WE INFORMED THE COURT, ALLOWS FOR
23  TRADING TO CONTINUE BUT DOES NOT ALLOW FOR FUNDS TO BE
24  REMOVED.
25          CERTAINLY, WE HAVE BEEN IN CONTACT WITH THEM WITH
```

```
 1  REGARD TO THE ORDER THAT THE COURT ISSUED EARLIER TODAY, AND
 2  WE HAVE ASKED THEM TO WORK WITH THE RECEIVER AND WITH COUNSEL
 3  FOR THE RECEIVER.
 4          WHAT IT SOUNDS LIKE AT THIS POINT, THAT THE
 5  VOLUNTARY HOLD THAT THEY ARE ABIDING BY -- ON THEIR OWN,
 6  ACTUALLY, WE DON'T HAVE A POWER OVER THEM TO DO SO -- IS
 7  CONSISTENT WITH WHAT THE DISCUSSION HAS BEEN DURING THE COURSE
 8  OF THIS TELEPHONIC HEARING.
 9          AND BASED UPON WHAT LANGUAGE THE PARTIES AND THE
10  RECEIVERSHIP COUNSEL CAN COME UP WITH, AND WHAT THE COURT
11  ULTIMATELY DECIDES TO ISSUE, WE WILL CERTAINLY CONTINUE TO
12  INFORM THEM OF WHAT IS GOING ON, PROVIDE THEM WITH COPIES OF
13  THE ORDER, AND HAVE THEM, TO THE EXTENT THAT THEY HAVE
14  QUESTIONS, AT LEAST FIRST LOOK TOWARDS THE RECEIVER FOR
15  GUIDANCE.
16          **THE COURT:**  I THINK THAT IS FAIR.
17          ANY COMMENT BY COUNSEL?
18          **MS. FRON:**  NO.
19          **THE COURT:**  WELL, ARE THERE ANY OTHER ISSUES, THEN,
20  THAT NEED TO BE ADDRESSED AT THIS TIME?
21          **MR. OSIAS:**  YOUR HONOR, I APOLOGIZE.  MR. OSIAS.
22          ONE MORE.
23          **THE COURT:**  YES.
24          **MR. OSIAS:**  AS TO AN ACCOUNTING OR OTHER REPORTS
25  THAT WOULD BE PRODUCED BY THE RECEIVER, WHEN WOULD YOU LIKE
```

```
 1   THEM SUBMITTED TO THE COURT IN ADVANCE OF THE 19TH SO WE KNOW
 2   WHAT DEADLINE WE ARE WORKING AGAINST?
 3            THE COURT:   WHAT DO YOU PROPOSE?
 4            MR. OSIAS:   WELL, AS MUCH TIME AS POSSIBLE, BUT NOT
 5   SO MUCH THAT YOU DON'T HAVE THE TIME TO READ WHATEVER HE
 6   PRODUCES.
 7            TWO DAYS AHEAD OF THE HEARING?
 8            THE COURT:   THAT IS WHAT I WAS GOING TO SUGGEST.
 9   THE 17TH.
10            MR. OSIAS:   ACTUALLY, I DIDN'T LOOK AT YOUR BRIEFING
11   SCHEDULE FOR THE OTHERS.  DOES THAT WORK WITH THE BRIEFS THAT
12   THE OTHERS MUST SUBMIT?
13            MR. TERCERO:   THE ONLY ISSUE -- THIS IS ROBERTO
14   TECERO AGAIN.
15            THE ONLY ISSUE IS THE FOLLOWING.
16            COUNSEL FOR THE DEFENSE IS SUPPOSED TO SUBMIT TO THE
17   COURT, AND TO THE COMMISSION, ITS OPPOSITION, IF ANY, BY THE
18   12TH.  DEFENDANT COUNSEL WILL NOT HAVE AN OPPORTUNITY TO
19   ACTUALLY SEE THAT.
20            AND IF IT IS SUBMITTED ON THE 17TH, THE COMMISSION
21   WILL NOT HAVE AN OPPORTUNITY TO SEE THE ACCOUNTING BEFORE IT
22   ISSUES ANY REPLIES IT DEEMS APPROPRIATE.
23            WHILE WE WOULD LIKE TO GET THIS ON THE HEARING, WHAT
24   I DO RECOMMEND -- AND THIS CAN OR CANNOT BE PART OF THE
25   ORDER -- THAT TO THE EXTENT THAT THERE IS INFORMATION
```

```
 1   AVAILABLE IN ADVANCE, AND IF THE ACCOUNTING CAN BE -- IF IT
 2   ACTUALLY IS DONE QUICKLY, THAT IT BE PROVIDED TO BOTH PARTIES
 3   AT THAT EARLIER TIME.
 4          TO THE EXTENT THAT IT IS POSSIBLE TO GET IT DONE SO
 5   THAT MS. FRON CAN REVIEW IT AND INCORPORATE WHATEVER SHE
 6   THINKS IS APPROPRIATE TO ANY OPPOSITION THAT SHE DESIRES TO
 7   FILE, IT SEEMS FAIR TO AT LEAST GIVE HER THAT OPPORTUNITY.
 8          YOU KNOW, CERTAINLY THE COMMISSION WOULD LIKE AN
 9   OPPORTUNITY TO SEE IT, AS WELL.  BUT, OF COURSE, IF IT IS IN
10   ADVANCE OF -- IF MS. FRON GETS IT IN TIME, CERTAINLY THE
11   COMMISSION GETS IT IN TIME.
12        **MR. SEARLES:**  DAVID, HOW QUICKLY CAN YOU --
13        **MR. OSIAS:**  THAT IS A FAIR QUESTION, BUT ONE I AM
14   NOT ABLE TO ANSWER WITHOUT -- EVERYTHING I KNOW ABOUT THIS
15   CASE I HAVE HEARD SINCE, YOU KNOW, YESTERDAY.  WE HAVEN'T BEEN
16   TO THE OFFICE YET TO SEE THE QUALITY OF THE COMPUTER RECORDS.
17          IF WE WERE TO DO IT IN ADVANCE OF THE 12TH SO THAT
18   IT WOULD BE USABLE BY DEFENSE COUNSEL, THAT IS LESS THAN A
19   WEEK FROM TODAY.
20        **THE COURT:**  ANOTHER OPTION, PERHAPS, IS TO HAVE THAT
21   ACCOUNTING PROVIDED, IF POSSIBLE, BY FRIDAY, THE 14TH.  AND
22   ANY SUPPLEMENTAL BRIEFING BY THE COMMISSION, AND DEFENDANTS
23   FROM MS. FRON, BY MONDAY THE 17TH.
24          THE PARTIES ARE ALSO ALWAYS FREE TO ADJUST THE
25   BRIEFING AND THE HEARING DATE BY AGREEMENT.  COUNSEL CAN MEET
```

```
 1  AND CONFER ON THAT ISSUE.
 2          IF WE STAY WITH THE CURRENTLY SCHEDULED HEARING
 3  DATE, MR. OSIAS IS THAT A -- MARCH 14, IS THAT A DATE YOU
 4  THINK YOU CAN MAKE?
 5          MR. OSIAS:  YES, IT IS.  WE WILL MAKE ANY DATE, IT
 6  IS MERELY THE QUALITY AND THE DEPTH OF THE INVESTIGATORY WORK
 7  WE CAN DO.
 8          THE COURT:  WHY DON'T WE PROCEED THAT WAY, THEN, SO
 9  THAT THE ACCOUNTING -- THE REPORT TO THE COURT BY MARCH 14,
10  CLOSE OF BUSINESS.  AND THEN ANY SUPPLEMENTAL OPPOSITION OR
11  COMMENT BY THE COMMISSION AND MS. FRON BY CLOSE OF BUSINESS
12  MARCH 17TH.
13          MR. OSIAS:  PERHAPS, YOUR HONOR, IN LIGHT OF THIS
14  SCHEDULE, MS. FRON COULD LET US KNOW.
15          THE PARAGRAPH 9 ORDER REGARDING THE SCHEDULE OF
16  ASSETS GAVE THEM FIVE DAYS FROM ISSUANCE.  IS THERE ANY WAY
17  THAT CAN BE SHORTENED TO THREE DAYS?
18          MS. FRON:  I JUST DON'T KNOW BECAUSE I HAVEN'T
19  CONFERRED WITH MR. FREDERICK.
20          WE WILL NOT SIT ON IT, THAT IS FOR CERTAIN.  IF WE
21  CAN GET IT FINISHED UP IN THE NEXT FEW DAYS, WE WILL SEND IT
22  OUT AS SOON AS WE CAN.
23          MR. TERCERO:  THIS IS ROBERTO TERCERO.
24          WE APPRECIATE DEFENSE COUNSEL'S DESIRE TO MOVE
25  QUICKLY.  WE WILL DO THE SAME.  IN THAT SAME SPIRIT, THAT WAS
```

```
 1  OUR MOTIVATION FOR MAKING SURE THAT DEFENSE COUNSEL HAS AN
 2  OPPORTUNITY, ONCE READING THE RECEIVER'S ACCOUNTING REPORT,
 3  THAT SHE GETS A FULL OPPORTUNITY TO RESPOND, AS WELL.
 4          MR. OSIAS:  YOUR HONOR, WE WILL HAVE BOTH THE
 5  RECEIVER AND HIS ACCOUNTANT AVAILABLE IN COURT ON THE 19TH
 6  SHOULD THERE BE ANY QUESTIONS.
 7          THE COURT:  ALL RIGHT.  THANK YOU.
 8          NOW, ON THE PROPOSED LANGUAGE WITH RESPECT TO THE
 9  REQUEST FOR WITHDRAWALS, COUNSEL WILL MEET AND CONFER AT THIS
10  TIME, AND SUBMIT THAT LANGUAGE TO THE COURT LATER THIS
11  AFTERNOON.  AM I CORRECT?
12          MR. SEARLES:  YES.  WE CAN DO THAT, YOUR HONOR.
13          SHOULD WE SUBMIT A PROPOSED ORDER TO THE E-FILE
14  E-MAIL ADDRESS?
15          THE COURT:  YES.
16          MR. TERCERO:  THIS IS ROBERTO TERCERO AGAIN.
17          WE CAN GO AHEAD AND DO THAT.
18          THE COURT:  ALL RIGHT.
19          THANK YOU VERY MUCH.  I APPRECIATE THE QUESTIONS,
20  THEY WERE GOOD ONES.  AND I THINK, FOR THE DISCUSSION, THE
21  ORDER WILL BE CLARIFIED IN A MEANINGFUL WAY.  AND I WILL LOOK
22  FORWARD TO THE BRIEFING AND TO SEEING EVERYONE ON THE 19TH.
23          MS. FRON:  THANK YOU.
24          MR. SEARLES:  THANK YOU.
25          THE COURT:  YOU ARE WELCOME.
```

```
 1
 2                         *   *   *
 3       I CERTIFY THAT THE FOREGOING IS A CORRECT
         TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
 4       IN THE ABOVE-ENTITLED MATTER.
 5       S/LEEANN PENCE                         7/24/08
 6       LEEANN PENCE, OFFICIAL COURT REPORTER    DATE
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```