```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF CALIFORNIA

       BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING.


_____
SECURITIES AND EXCHANGE COMMISSION,)
              PLAINTIFF,          )  CASE NO. 08CV0400-DMS
        VS.                       )
TUCO TRADING, LLC AND             )  SAN DIEGO, CALIFORNIA
DOUGLAS G. FREDERICK,             )    MARCH 10, 2008
              DEFENDANTS.         )
_____


               TELEPHONC STATUS HEARING

            REPORTER'S TRANSCRIPT OF PROCEEDINGS

COUNSEL APPEARING:

FOR PLAINTIFF:      ROBERTO TERCERO, SENIOR COUNSEL
                    DONALD W. SERLES, ESQ.
                    UNITED STATES SECURITIES AND EXCHANGE
                       COMMISSION
                    11TH FLOOR
                    5670 WILSHIRE BOULEVARD
                    LOS ANGELES, CALIFORNIA 90036

FOR DEFENDANTS:     MICHELE R. FRON, ESQ.
                    AUDETTE MORALES, ESQ.
                    KEESAL, YOUNG & LOGAN &
                    400 OCEANGATE
                    LONG BEACH, CALIFORNIA 90801

FOR THE RECEIVER:   DAVID L. OSIAS, ESQ.
                    EDWARD FATES, ESQ.
                    ALLEN MATKINS LECK GAMBLE & MALLORY
                    501 WEST BROADWAY, 15TH FLOOR
                    SAN DIEGO, CALIFORNIA 92101


         REPORTED BY:    LEE ANN PENCE,
                         OFFICIAL COURT REPORTER
                         UNITED STATES COURTHOUSE
                         940 FRONT STREET, BOX 4199
                         SAN DIEGO, CALIFORNIA 92101
```

```
 1   SAN DIEGO, CALIFORNIA - MONDAY, MARCH 10, 2008 - 2:30 P.M.
 2                            *   *   *
 3           THE COURT:  GOOD AFTERNOON.  THIS IS JUDGE SABRAW.
 4        CAN I HAVE APPEARANCES FOR ALL COUNSEL, PLEASE?
 5           MR. TERCERO:  GOOD AFTERNOON, YOUR HONOR.  ON BEHALF
 6   OF PLAINTIFFS, SECURITIES AND EXCHANGE COMMISSION, ROBERT
 7   TERCERO.  I AM HERE WITH DON SEARLES.
 8           MS. FRON:  GOOD AFTERNOON, YOUR HONOR.  THIS IS
 9   MICHELE FRON, KEESAL, YOUNG AND LOGAN, ON BEHALF OF TUCO
10   TRADING AND DOUGLAS FREDERICK.
11        I HAVE ON THE LINE AUDETTE MORALES, AND DOUG
12   FREDERICK IS ALSO AVAILABLE.
13           MR. OSIAS:  DAVID OSIAS FOR THE RECEIVER, TOM
14   LENNON --
15           THE COURT:  MR. OSIAS, YOU WERE CUTTING OUT THERE.
16        YOU ARE WITH MR. LENNON.  AM I CORRECT?
17           MR. OSIAS:  I AM.  UNFORTUNATELY -- MR. LENNON AND
18   MY COLLEAGUE, MR. BEAMS,[PH.] ARE ALL -- I AM AT UC DAVIS ON A
19   CAMPUS TOUR WITH MY SON.  I WILL TRY TO GO TO A QUIET SPOT,
20   WITHOUT THE BACKGROUND NOISE.
21           THE COURT:  ARE THERE ANY OTHER APPEARANCES?
22           MR. DAVIS:  TIM DAVIS APPEARING ON BEHALF OF PENSON
23   FINANCIAL SERVICES.
24           THE COURT:  YES.  THANK YOU.  OKAY.
25        WHO WOULD LIKE TO TAKE THE LEAD AND PROVIDE A STATUS
```

```
 1  AS TO WHERE WE ARE?
 2          MS. FRON:  THANK YOU.  THIS IS MICHELE FRON ON
 3  BEHALF OF DEFENDANTS.
 4          I WILL JUST START WITH WHERE WE LEFT OFF ON FRIDAY;
 5  THAT IS, AS A RESULT OF TRADING HALTING IN THE TUCO ACCOUNTS,
 6  WE ARE NOT IN A SITUATION TO HAVE BUSINESS AS USUAL.  AS SUCH,
 7  WE HAVE REQUESTED THAT THE ORDER BE MODIFIED SUCH THAT WE CAN
 8  COME UP WITH AN EXPEDITED METHOD TO BE ABLE TO PAY OUT A
 9  PERCENTAGE TO THE TRADERS THAT HAVE THEIR FUNDS HELD AT TUCO.
10          WE ALSO WANT TO BE ABLE TO KEEP THE OFFICE LOCATION
11  OPEN.  THERE ARE SOME OTHER ACTIVITIES THAT GO ON IN THAT
12  OFFICE SPACE, AS A RESULT WE WOULD ASK THAT THE OFFICE BE ABLE
13  TO REMAIN OPEN, AS WELL AS ALLOW THE VIEWTRADE ACCOUNT, WHICH
14  IS HANDLED THROUGH A DIFFERENT BROKER/DEALER, TO BE ALLOWED TO
15  REMAIN OPEN, AND ALLOW THOSE TRADERS TO CONTINUE TRADING.
16          WE HAVE WORKED DILIGENTLY THROUGHOUT THE WEEKEND TO
17  TRY TO GET AS MUCH INFORMATION AS POSSIBLE TO THE RECEIVERS
18  SUCH THAT THEY CAN TAKE A LOOK AT THE STATUS OF TUCO, AND SEE
19  THAT IT IS ABLE TO MEET ITS MONTHLY EXPENSES IN COMPARISON
20  WITH THE INCOME THAT COMES FROM INDIVIDUAL RETAIL ACCOUNTS AND
21  OTHER SOURCES SUCH THAT WE BELIEVE WE ARE IN A POSITION THAT
22  WE SHOULD BE ALLOWED TO MAINTAIN THE OFFICE OPEN, AND ALSO BE
23  ABLE TO PAY OUT TO TRADERS A PERCENTAGE OF THE FUNDS THAT THEY
24  HAVE IN THEIR ACCOUNT.
25          THE COURT:  IS THERE AGREEMENT AS TO THE PROPOSED
```

1  MODIFICATION?

2          **MR. TERCERO:** YOUR HONOR, THIS IS ROBERTO TERCERO ON

3  BEHALF OF THE PLAINTIFF, S.E.C.

4          WHEN WE LEFT OFF ON FRIDAY WE SUGGESTED A HEARING

5  TODAY SO THAT THE RECEIVER WOULD HAVE AN OPPORTUNITY TO SEE

6  WHAT THE STATUS OF THE BUSINESS IS.  AND SO BEFORE WE WEIGH IN

7  ON A POSITION WE WOULD APPRECIATE A STATUS FROM THE RECEIVER,

8  INCLUDING ADDRESSING WHETHER THE TUCO BUSINESS CAN EVEN

9  SUPPORT ITSELF IN THE NEW CONFIGURATION THAT IT IS IN.

10         **THE COURT:** ALL RIGHT.

11         MR. OSIAS.

12         **MR. OSIAS:** DAVID OSIAS.  AND I AM HARD TO HEAR,

13 THAT IS JUST -- SO MR. FATES AND MR. LENNON WILL TAKE OVER.

14         AS MS. FRON SAID, THEY HAVE BEEN GETTING INFORMATION

15 TO THE RECEIVER AND THE ACCOUNTANT OVER THE WEEKEND, AND

16 INCLUDING AND UP TO VERY RECENTLY BEFORE THIS HEARING.

17         IT IS CURRENTLY THE RECEIVER'S BELIEF THAT HE CAN'T

18 RECOMMEND ANY PERCENTAGE WITHDRAWAL AT THIS TIME, PRIMARILY

19 FOR TWO REASONS.

20         THERE ARE UNALLOCATED FEES AND COSTS THAT WOULD NEED

21 TO BE CHARGED TO EACH ACCOUNT.  HE IS NOT ABLE TO RECONCILE

22 YET HOW MUCH WOULD -- IF THAT WOULD REDUCE THE ACCOUNT.

23         AND, SECOND, THIS IS AT A TIME WHEN MONEY IS NOT

24 TYPICALLY WITHDRAWN, SO AS BETWEEN NOW AND THE 19TH IT IS --

25 IT SEEMS TO BE SOME -- FROM WHAT LITTLE WE KNOW THERE SHOULD

```
 1  BE NO GREAT HARDSHIP IF THIS ISSUE IS DEFERRED TO THE 19TH,
 2  AND ESPECIALLY IN CONNECTION WITH A MORE GLOBAL RESOLUTION.
 3          THERE IS A CONCERN ABOUT AN EQUITABLE WITHDRAWAL
 4  PROGRAM, WHAT THAT NUMBER WOULD BE.  HOW COSTS WOULD BE
 5  INCURRED.  ON THE SECOND QUESTION ARE -- OF THE COST OF
 6  STAYING OPEN.
 7          I AGAIN WILL REPEAT THAT THE DEFENDANT HAS BEEN
 8  QUITE COOPERATIVE.  THEY HAVE TO TRY TO GET TOGETHER A LOT OF
 9  INFORMATION.  IT HAS VERY RECENTLY BEEN DELIVERED.  IT IS NOT
10  REALLY VERIFIED YET IN ANY WAY BY THE RECEIVER.
11          THERE IS A PROPOSAL THAT, ULTIMATELY, COSTS FOR
12  STAYING OPEN CAN BE SHIFTED TO GLB -- NOT UNTIL THE
13  TRANSACTION CLOSES AND THE RECEIVER DOES NOT, AS HE SITS HERE
14  NOW, SUBJECT TO -- CORRECT ME -- DOES NOT BELIEVE THAT WE ARE
15  ABLE TO OPERATE IN THE BLACK ON A DAILY BASIS BETWEEN NOW AND
16  THE 19TH.
17          ALTHOUGH I AM NOT SURE WHAT THE DEGREE OF INCOME
18  OVER EXPENSES ON A DAILY BASIS IS AS OF YET, THE REDUCED
19  TRADING VOLUME DOES REDUCE THE INCOME LEVELS DRAMATICALLY FROM
20  THE ONGOING OPERATIONAL EXPENSES THAT WERE REGULARLY BEING
21  INCURRED.
22          AND SO I THINK THAT IS WHERE WE FIND OURSELVES TODAY
23  AT 2:30.  THE RECEIVER AND HIS ACCOUNTANT ARE TRYING VERY HARD
24  TO GET ON TOP OF THE INFORMATION THEY PROVIDED, AND THERE HAS
25  BEEN A TERM SHEET PROVIDED WITH RESPECT TO A TRANSITION OF
```

```
 1   OPERATIONS, AT LEAST OPERATIONS, EXPENSES AND EMPLOYEES, GLB.
 2          BUT UNTIL THAT TRANSACTION -- OR TRANSITION COULD BE
 3   FULLY DOCUMENTED AND APPROVED BY THIS COURT, THERE IS NO OFFER
 4   TO COVER ANY NEGATIVE IN THE MEANTIME.  AND SO I THINK THAT IS
 5   WHERE WE FIND OURSELVES NOW, AT LEAST.
 6          MR. FATES AND MR. LANE AND MR. LENNON, IF I
 7   MISSPOKE, CORRECT ME.
 8          **MR. FATES:**  TED FATES AT THE TUCO OFFICES ON BEHALF
 9   OF THE RECEIVER.
10          AND MR. OSIAS IS CORRECT IN WHAT HE SAID.  I WOULD
11   JUST ADD THAT INFORMATION THAT HAS BEEN -- JUST NOW BEEN GIVEN
12   US HAS BEEN GIVEN TO US BY TUCO AND DOUG FREDERICK, INDICATES
13   THAT THERE IS INCOME THAT IS GENERATED OUTSIDE OF THE LIMITED
14   ACTIVITIES OF THE VIEWTRADE ACCOUNT; THIS IS, INCOME THAT
15   UNTIL RIGHT NOW WE ARE NOT AWARE OF.
16          AND AS WE UNDERSTAND IT, IT IS INCOME THAT IS
17   DERIVED OUTSIDE OF TUCO.  AND IT REPRESENTS TRADING ACTIVITY
18   THAT DOUG FREDERICK HAS BROUGHT TO GLB AND EARNS COMMISSIONS
19   ON.
20          WE DON'T KNOW IF THERE IS ANY AGREEMENTS BETWEEN
21   THESE PARTICULAR TRADERS AND TUCO, SO AS OF RIGHT NOW WE
22   BELIEVE THIS ACTIVITY IS OUTSIDE OF TUCO.  HOWEVER, THE
23   STATEMENT HERE WOULD INDICATE THAT THIS IS MONTHLY INCOME THAT
24   MAY BE TUCO RELATED.  SO THAT IS A QUESTION THAT WE HAVE.
25          IF THAT INCOME IS INCLUDED IN TUCO INCOME, THEN
```

1  THERE MAY WELL BE SUFFICIENT INCOME TO ALLOW TUCO TO OPERATE
2  IN THE BLACK, ON A MONTHLY BASIS AND WEEKLY BASIS, IN THE
3  IMMEDIATE FUTURE.
4         **THE COURT:**  ALL RIGHT.
5         MR. LENNON, DO YOU HAVE ANYTHING TO ADD?
6         **MR. LENNON:**  NO.  I AM IN FULL AGREEMENT WITH
7  MR. OSIAS AND MR. FATES, YOUR HONOR.
8         **THE COURT:**  DO YOU FEEL YOU NEED ADDITIONAL TIME TO
9  GET TO THE BOTTOM OF THESE VARIOUS ISSUES?
10        **MR. LENNON:**  I THINK IT WOULD BE ADVISABLE TO
11 CONTINUE WORKING ON THE TERM SHEET, AND BRING THAT TO
12 FRUITION.
13        **THE COURT:**  ALL RIGHT.  IN LIGHT OF WHAT HAS BEEN
14 SHARED, MR. TERCERO, WHAT IS THE S.E.C.'S POSITION?
15        **MR. TERCERO:**  YOUR HONOR, THE S.E.C., JUST TO GET
16 THIS ONE OUT OF THE WAY, CERTAINLY BELIEVES THAT IT IS
17 APPROPRIATE TO ISSUE THE RELIEF THAT THE S.E.C. HAS REQUESTED.
18        WE UNDERSTAND THE COURT'S ORDERS, WE WILL CERTAINLY
19 MAKE OUR ARGUMENTS AT THE MARCH 19TH HEARING.  HOWEVER, ONE OF
20 THE THINGS THAT THE COMMISSION ASKED FOR WAS TO GET THIS
21 UPDATE FROM THE RECEIVER.  BASED UPON THE INFORMATION THAT HAS
22 BEEN PROVIDED THUS FAR, IT DOES NOT SEEM THE WITHDRAWALS ARE
23 APPROPRIATE BECAUSE THE RECEIVER HAS NOT HAD SUFFICIENT TIME
24 TO STUDY THE FINANCES THAT HAVE BEEN, YOU KNOW, SHARED WITH
25 THE RECEIVER BY THE DEFENDANT.

1    WE BELIEVE THAT THE RECEIVER SHOULD HAVE THE
2    APPROPRIATE AMOUNT OF TIME TO LOOK AT THAT.  THERE IS THE
3    POSSIBILITY OF SOME TRANSACTIONS WITH THE BROKERAGE FIRM WHERE
4    TUCO HAD AT LEAST ITS MAJOR ACCOUNTS, GLB TRADING.  WE LEARNED
5    ABOUT THIS VERY, VERY RECENTLY, FROM COUNSEL, FROM THE
6    DEFENDANT, WITHIN THE HOUR BEFORE THE HEARING.  WE JUST
7    RECEIVED, BY E-MAIL, COPIES OF A TERM SHEET, AND IT LOOKS LIKE
8    WE HAVE GOT SOME OTHER INFORMATION, BUT WE HAVE NOT HAD AN
9    OPPORTUNITY TO STUDY IT SINCE WE GOT IT ONCE THE HEARING
10   BEGAN.
11        SO IT IS OUR POSITION THAT AT THIS POINT WITHDRAWALS
12   ARE NOT ADVISABLE.  CERTAINLY THE RECEIVER IS WORKING -- BY
13   ALL INDICATIONS DEFENDANTS ARE WORKING AS DILIGENTLY AS THEY
14   CAN.  UNTIL THE RECEIVER HAS HAD AN OPPORTUNITY TO LOOK AT THE
15   MATERIAL FROM THE DEFENDANT, GET COMFORTABLE WITH IT, AND
16   MAKE, YOU KNOW, AN INFORMED JUDGMENT, WE DON'T THINK THAT
17   WITHDRAWALS ARE APPROPRIATE AT THIS TIME.
18        **THE COURT:**  DO YOU REQUEST THAT THE TRO AND THE
19   SUPPLEMENTAL ORDER TO THE TRO SIMPLY REMAIN IN EFFECT PENDING
20   THE MARCH 19 HEARING, WITHOUT FURTHER MODIFICATION?
21        **MR. TERCERO:**  AT THIS POINT THAT IS OUR POSITION,
22   YES, YOUR HONOR.
23        **THE COURT:**  ALL RIGHT.
24        AND, MS. FRON, DO YOU OBJECT?
25        **MS. FRON:**  WELL, I DO THINK THAT, BECAUSE OF THE

1  CHANGE OF CIRCUMSTANCES, THE PROBLEM WITH THE ORDER, WOULD NOT
2  ALLOW FOR WITHDRAWALS BY THE TRADERS.  AND WE ARE AGREEABLE TO
3  HAVING THEM BE ALLOWED TO ONLY WITHDRAW A CERTAIN PERCENTAGE
4  OF WHAT IS IN THEIR ACCOUNTS.
5           MR. OSIAS MENTIONED THE ISSUE OF UNALLOCATED FEES
6  AND COSTS.  WE ARE WILLING TO, INSTEAD OF TAKING 50 PERCENT
7  OUT, TAKE 40 PERCENT OUT.  THAT WOULD CERTAINLY COVER ANY OF
8  THE FEES AND COSTS THEY ARE CONCERNED ABOUT.
9           THE OTHER ISSUE OF NO HARDSHIP.  I THINK UNDER THESE
10 CIRCUMSTANCES THERE DEFINITELY IS A HARDSHIP BECAUSE THESE
11 INDIVIDUALS UTILIZE THESE FUNDS IN ORDER TO MAKE THEIR OWN
12 LIVELIHOOD.  WE ARE STOPPING THEM FROM EARNING THEIR OWN
13 LIVING OR UTILIZING THEIR FUNDS HOWEVER THEY WANT TO.  THIS
14 WAS THE MONEY, THE CAPITAL, THAT THEY USED IN ORDER TO PAY
15 THEIR OWN PERSONAL BILLS.
16          SO THAT IS WHY THE ORDER CANNOT STAND AS IT DOES,
17 BECAUSE THEY ARE ASKING FOR EITHER A REQUEST TO BE IN THE
18 ORDINARY COURSE OF BUSINESS OF THE SPECIFIC TRADERS ACCOUNT --
19 AND TYPICALLY PEOPLE WOULDN'T BE TAKING OUT MONEY AT THIS TIME
20 OF THE MONTH.  AND OTHER EXIGENT CIRCUMSTANCES WARRANTING A
21 WITHDRAWAL, IF WE PUT IN A WITHDRAWAL REQUEST, AS THEY STAND
22 NOW, IT IS OUR UNDERSTANDING THAT THE RECEIVER WOULD NOT
23 APPROVE THEM.
24          THAT IS THE REASON WE COME BACK TO THE COURT TO ASK
25 FOR A MODIFICATION, SO THAT THESE TRADERS ARE ALLOWED TO BE

1    ABLE TO TAKE OUT A PERCENTAGE OF THE FUNDS THAT ARE IN THEIR
2    ACCOUNT RIGHT NOW.  UNTIL THE MATTERS CAN BE RESOLVED, THEY
3    ARE BASICALLY OUT OF WORK.
4            **THE COURT:**  AND, MR. OSIAS, ARE YOU INDICATING THAT
5    YOU STILL DON'T HAVE SUFFICIENT INFORMATION TO RESPOND TO THE
6    SPECIFIC PROPOSAL OF MS. FRON?
7            **MR. OSIAS:**  NOT QUITE, YOUR HONOR.  I THINK THE
8    RECEIVER'S -- I WILL BACK UP.
9            I AM NOT SURE WHETHER THE RECEIVER KNOWS WHETHER,
10   FOR EXAMPLE, A CHANGE BETWEEN 50 PERCENT AND 40 PERCENT IS
11   SUFFICIENT TO ENSURE THAT NO ONE HAD A WITHDRAWAL THAT WOULD
12   ALL BE -- THE COSTS WERE PROPERLY DEDUCTED FROM THE ACCOUNTS
13   WOULDN'T GIVE THEM MORE THAN THEY WERE ENTITLED TO.
14           BUT I HAD TWO OTHER POINTS THAT I THINK GO TO THE
15   QUESTION OF WITHDRAWAL.
16           ONE IS THAT IF THE RECEIVER HAS TO PROCESS
17   WITHDRAWAL REQUESTS OVER THE NEXT WEEK IT GETS IN THE WAY OF
18   THIS OTHER CRITICAL FUNCTION WHICH NEEDS TO BE DONE; WHICH IS
19   A COMPLETE ANALYSIS TO SEE HOW, BY THE 19TH, AT LEAST, A
20   POTENTIAL TRANSACTION WITH GLB CAN BE CONSUMMATED AND ALL OF
21   THE EXPENSES OF THE RECEIVERSHIP -- I MEAN, IF WE GET HUNDREDS
22   OF WITHDRAWAL REQUESTS AND HAVE TO CALCULATE, YOU KNOW, EVEN A
23   UNIFORM PERCENTAGE, BUT THEN MAKE SURE THEY ARE -- ALL OF THE
24   ACCOUNTS ARE AGGREGATED, I AM WORRIED ABOUT A WORKLOAD
25   QUESTION, GIVEN THE SHORTAGE OF TIME.

1    SECONDARY TO THAT, HAD THERE BEEN NO GLB SUSPENSION,
2    THESE TRADERS WOULD, BY AND LARGE, BE TRADING THE MONEY AND
3    NOT WITHDRAWING IT.  HISTORICALLY THE WITHDRAWALS TOOK PLACE
4    BETWEEN NOW AND THE 19TH -- THE RESULT OF THE FREEZE IS IF
5    THEY TRADED AND THEY MADE AS MUCH AS THEY LOST IN THE
6    AGGREGATE OVER THESE NINE DAYS.
7    THAT DOESN'T STRIKE US AS A PARTICULAR
8    HARDSHIP-IMPOSING CIRCUMSTANCE.  IT IS JUST A BREAK-EVEN, AND
9    WITHOUT THE RECEIVER HAVING TO INCUR A LOT OF ADDITIONAL
10   EXPENSE TO PROCESS WITHDRAWALS THAT ULTIMATELY HAVE TO GET
11   COVERED ANYWAY.
12   SO OUR RECOMMENDATION IS TO NOT GO DOWN THAT PATH.
13   OBVIOUSLY, THAT WAS WHERE WE HAD ORIGINALLY STARTED WHEN THE
14   WORLD WAS GOING TO BE MUCH DIFFERENT AND WE WERE GOING TO HAVE
15   TRADES GOING ON.
16   **THE COURT:**  ALL RIGHT.
17   MR. LENNON, ANYTHING IN ADDITION?
18   **MR. FATES:**  THIS IS TED FATES ON BEHALF OF THE
19   RECEIVER.
20   WE HAVE ONE SMALL THING TO ADD, THAT IS THAT IN
21   LIGHT OF THE ONGOING EFFORT TO CONSUMMATE A TRANSACTION WITH
22   GLB, SOME ATTENTION HAS BEEN DIVERTED FROM THE OTHERWISE
23   PRODUCTION OF DOCUMENTS AND ACCOUNTING WORK THAT WOULD BE DONE
24   BY THE RECEIVER AND THE TEAM, AND BY DOUG FREDERICK,
25   UNDERSTANDABLY.

1      SO, IN LIGHT OF THAT, THE CURRENT ORDER PROVIDES
2 THAT THE ACCOUNTING IS DUE ON MARCH 14TH.  WE THINK THAT THAT
3 IS GOING TO PUT A LOT OF STRAIN ON THAT ACCOUNTING, AND MAY
4 NOT ALLOW FOR A VERY ACCURATE ACCOUNTING.
5      WE WOULD REQUEST THE WEEKEND TO BE ALLOWED TO
6 GENERATE THAT REPORT SO THAT IT WILL BE PRODUCED AS OF MONDAY,
7 THE 17TH, SOMETIME IN THE MORNING, SO THAT ALL OF THE PARTIES
8 CAN HAVE SUFFICIENT TIME TO REVIEW, AND THE COURT HAS
9 SUFFICIENT TIME TO REVIEW, PRIOR TO THE MARCH 19TH HEARING.
10      **MS. FRON:**  THIS IS MICHELE FRON.
11      THAT PUTS A WRENCH IN THE ENTIRETY OF THE MARCH 19TH
12 HEARING.  AND THE REASON WE WERE GOING TO HAVE THE ACCOUNTING
13 ON THE 14TH WAS SO THAT I COULD WORK ALL WEEKEND TO GET MY
14 BRIEF IN BY THE 17TH.  SO IT IS THIS WHOLE -- IF THAT -- WITH
15 THAT REQUEST WE WOULDN'T BE ABLE TO GET OUR REPLY IN ON THE
16 17TH, ONLY RECEIVING THE REPORT ON THAT DATE, WHICH PUTS US IN
17 A DIFFICULT SITUATION.
18      IN ADDITION, I WOULD ADD THAT WITH ALL OF THE
19 REQUESTS FOR THE ACCOUNTING AND TO GET THE DOCUMENTATION TO
20 THE RECEIVER, DOING THE FINANCIALS THAT HAVE BEEN REQUESTED, I
21 MISREAD THE S.E.C.'S DISCOVERY REQUEST AND THOUGHT THEY WERE
22 DUE IN 25 DAYS.  I UNDERSTAND NOW THEY WERE DUE IN TWO DAYS.
23      THEY HAVE GIVEN ME TO WEDNESDAY TO PRODUCE A
24 MONUMENTAL AMOUNT OF DOCUMENTATION, WHICH, AGAIN, IS GOING TO
25 SEND MY FOLKS IN A DIRECTION DIFFERENT THAN PRODUCING THE

1    INFORMATION FOR THE RECEIVER.
2            SO I THINK THE STRESS OF ALL OF THE REQUESTS FOR
3    DOCUMENTATION FROM ALL OF THE DIFFERENT ENTITIES, ALONG WITH
4    DOING THE BRIEFING, I THINK, PERHAPS, WE NEED A LITTLE MORE
5    TIME FOR ALL OF THESE ACTIVITIES SO WE CAN DO THEM IN A MORE
6    EFFICIENT AND LOGICAL FASHION.
7            I WOULD REQUEST THAT WE HAVE ADDITIONAL TIME, NOT
8    ONLY TO PRODUCE THE DOCUMENTS THAT HAVE BEEN REQUESTED BY THE
9    S.E.C., BUT ALSO PERHAPS MOVE THE HEARING DATE SO THAT WE CAN
10   HAVE THE ACCOUNTANT DO HIS REPORT, THEN HAVE SUFFICIENT TIME
11   TO PUT TOGETHER OUR RESPONSE BRIEF.
12           **THE COURT:**  WHAT DO YOU PROPOSE BY WAY OF CONTINUING
13   THE HEARING DATE?
14           **MS. FRON:**  PERHAPS IF WE SET EVERYTHING OUT AN
15   ADDITIONAL WEEK IT WOULD PROVIDE EVERYBODY A LITTLE MORE
16   BREATHING ROOM TO BE ABLE TO ACCOMPLISH THESE TASKS.
17           **THE COURT:**  WOULD THERE BE ANY OBJECTION?
18           **MR. OSIAS:**  THIS IS DAVID OSIAS.  PARDON ME FOR THE
19   BACKGROUND NOISE NOW.
20           I WILL BE OUT OF TOWN THAT WEEK, AND COULD
21   PARTICIPATE BY PHONE.  BUT I UNDERSTAND THAT IS CAUSING SOME
22   ISSUES, EVEN DOING IT TODAY.
23           IF WE ARE -- I THINK ONE OF THE QUESTIONS WE HAVE
24   ARISE IS THE COSTS OF STAYING OPEN.  I ASSUME MS. FRON IS
25   SAYING, LET'S CONTINUE THE HEARING AND KEEP THE DOORS OPEN FOR

```
 1   A LONGER PERIOD OF TIME, WHICH BRINGS US BACK TO MR. FATES'
 2   OBSERVATION THAT THEY HAVE PRODUCED SOME INFORMATION TODAY
 3   WHERE THE COMMISSION IS NOT -- AT LEAST NOT TRADITIONALLY
 4   THOUGHT OF BEFORE TODAY AS TUCO'S MAY BE AVAILABLE TO COVER
 5   OPERATING EXPENSES.
 6           MR. FREDERICK AND HIS COUNSEL ARE HERE.  PERHAPS WE
 7   COULD HEAR THAT THOSE COMMISSIONS THAT ARE GOING TO BE
 8   GENERATED ARE, IN FACT, GOING TO BE DEPOSITED INTO TUCO
 9   ACCOUNTS TO COVER THE OPERATING EXPENSES.  THAT RISK, AT
10   LEAST, IS MINIMIZED.
11           WHETHER THEY WERE CONSIDERED OR NOT HISTORICALLY ON
12   GOING FORWARD, IF THEY ARE GOING TO BE AVAILABLE.  IF NOT, I
13   THINK WE HAVE SERIOUS CONCERNS ABOUT POSTPONING THE HEARING,
14   ESPECIALLY IF WE ARE OPEN IN THE MEANTIME.  IF WE CLOSE, I
15   SUPPOSE THESE COMMENTS WOULDN'T BE AS COMPELLING.
16           SO THERE IS A COMBINATION QUESTION OF ARE WE STAYING
17   OPEN AND HOW LONG ARE WE STAYING OPEN, WITH RESPECT TO SETTING
18   HEARING DATES.
19       **THE COURT:**  WHAT WOULD BE THE RESPONSE TO THAT,
20   QUESTION?
21       **MS. FRON:**  I BELIEVE THAT THE DOCUMENTATION THAT IS
22   NOW IN THE HANDS OF THE RECEIVER IS THAT THE COMMISSION AND
23   THE INCOME COMING IN FROM THESE DIFFERENT ACTIVITIES WILL
24   COVER TUCO STAYING OPEN.
25           AND SO I THINK THAT GIVING AN EXTRA WEEK ISN'T GOING
```

```
 1  TO BE CAUSING TOO TREMENDOUS OF A PROBLEM FOR KEEPING TUCO
 2  OPEN AND ALLOWING PEOPLE TO PRODUCE DOCUMENTS IN A MORE
 3  ORDERLY FASHION, AND GIVE THE ACCOUNTANT TIME TO DO HIS WORK.
 4          MR. OSIAS:  MS. FRON, WOULD YOU OBJECT TO
 5  ADDITIONAL -- TO AN ORDER THE COMMISSIONS BE TURNED OVER TO
 6  TUCO?
 7          MS. FRON:  I THINK THAT IS WHERE THEY CAN, IN ANY
 8  EVENT.
 9          THE COURT:  WELL, PERHAPS, THEN, WITH THAT
10  UNDERSTANDING, THE COMMISSION IS GOING INTO TUCO, IT MAY BE IN
11  THE BEST INTEREST OF ALL TO MOVE THE HEARING FROM THE 19TH TO
12  THE 26TH.  I WILL BE IN TRIAL THAT WEEK.
13          WE COULD HOLD THE HEARING, THOUGH, AT 3:00 O'CLOCK
14  ON THE 26TH, AND ADJUST ALL OF THE OTHER DATES IN THE TRO BY
15  ONE WEEK.
16          ANY OBJECTION?
17          MR. TERCERO:  THIS IS ROBERTO TERCERO FOR PLAINTIFF,
18  SECURITIES AND EXCHANGE COMMISSION.
19          ONE CONCERN THAT THE COMMISSION HAS IS, DURING THE
20  TIME, WE ARE CONCERNED THAT THERE IS VIOLATION OF LAW GOING
21  ON.  YOU KNOW, THE 19TH WOULD BE CLOSER IN TIME TO MAKE THE
22  DETERMINATION WHETHER A PRELIMINARY INJUNCTION WAS
23  APPROPRIATE.
24          I, YOU KNOW, LOOKED ON THE INTERNET AS A FOR
25  INSTANCE, AND TUCO HAS STILL GOT THE WEBSITE UP.  TUCO IS
```

```
 1   STILL OPERATING.  TUCO IS OPERATING THROUGH THE VIEWTRADE
 2   ACCOUNTS.  IT IS OF CONCERN TO ME TO PUSH OFF THE HEARING FOR
 3   AN ENTIRE WEEK.
 4        NOW, THE RECEIVER HAS MOST CERTAINLY TRIED HIS LEVEL
 5   BEST, WE DO NOT DOUBT THAT THE DEFENDANTS HAVE TRIED THEIR
 6   LEVEL BEST, TO GET THE APPROPRIATE INFORMATION INTO THE
 7   APPROPRIATE HANDS AS QUICKLY AS POSSIBLE.  BUT IF MR. LENNON
 8   IS ABLE TO GET A RECEIVER'S REPORT IN BY 17TH, THAT IS JUST A
 9   COUPLE OF DAYS.
10        WHAT WE WOULD RECOMMEND IS THAT THE REPLY BRIEF DATE
11   BE MOVED A COUPLE OF DAYS.  AND THAT THE HEARING, IF AT ALL
12   POSSIBLE, TAKES PLACE ON THE 21ST OF MARCH, BECAUSE THE
13   COMMISSION HAS AUTHORIZED US AND CHARGED US WITH GETTING
14   INJUNCTIVE RELIEF AND THE OTHER RELIEF THAT WE SEEK AS SOON AS
15   POSSIBLE.
16        **THE COURT:**  ANY OBJECTION TO THAT PROPOSAL?
17        **MS. FRON:**  I WOULD JUST -- I DON'T KNOW IF THE
18   COURTS ARE OPEN BECAUSE THE 21ST IS GOOD FRIDAY.
19        **THE COURT:**  WE ARE OPEN.
20        LET ME INQUIRE OF OUR CLERK.
21        WHAT WOULD BE THE BEST AVAILABLE TIME ON THE 21ST?
22        **THE CLERK:**  11:30.
23        **THE COURT:**  SO FRIDAY THE 21ST AT 11:30 WOULD WORK.
24   WHY DON'T WE DO THAT, ADJUST THE HEARING DATE FROM THE 19TH TO
25   THE 21ST AT 11:30, AND THEN ADJUST ALL OTHER DATES IN THE TRO
```

```
 1  BY TWO DAYS.
 2          ANY OBJECTION?
 3          MR. TERCERO:  THIS IS ROBERTO TERCERO FROM THE
 4  S.E.C.
 5          NO OBJECTION, YOUR HONOR.
 6          MS. FRON:  MICHELE FRON, NO OBJECTION.
 7          MR. FATES:  TED FATES.
 8          JUST FOR CLARIFICATION, THAT WOULD BE THE RECEIVER'S
 9  REPORT DUE MONDAY, THE 17TH?
10          THE COURT:  YES.  LET'S HAVE IT DUE MONDAY THE 17TH.
11  I WOULD PROPOSE BY 9:00 A.M.
12          MR. OSIAS:  I DIDN'T HEAR THE LAST PART.
13          THE COURT:  9:00 A.M. ON THE 17TH.
14          MR. FATES:  TED FATES AGAIN.
15          I THINK WE HAVE TROUBLE WITH THE CONNECTION.  I
16  CAN'T HEAR WHAT YOU SAID.
17          THE COURT:  I WAS PROPOSING THAT THE RECEIVER'S
18  REPORT BE DUE MONDAY, MARCH 17, AT 9:00 A.M.
19          MR. FATES:  OKAY.  THANK YOU.
20          THE COURT:  THEN MS. FRON'S REPLY WOULD BE DUE ON
21  WEDNESDAY, THE 19TH.
22          MR. TERCERO:  YOUR HONOR, THIS IS ROBERTO TERCERO.
23          I AM SORRY TO INTERRUPT.  THE REPLY BY THE
24  COMMISSION WOULD BE DUE ON THE 17TH, THE SAME TIME -- I AM
25  SORRY, THE 19TH.
```

17

```
1            THE COURT:  THE 19TH.
2            MR. TERCERO:  19TH BY THE END OF THE BUSINESS DAY.
3            THE COURT:  THAT WOULD BE FINE.
4            AND GIVEN THE SLIGHT ADJUSTMENT TO THE TRO, I WOULD
5   BE INCLINED TO LEAVE EVERYTHING AS IS, WITH THE EXCEPTION OF
6   MODIFYING THE DATES BY TWO DAYS, AS WE HAVE DISCUSSED.
7            MR. TERCERO:  YOUR HONOR, THIS IS ROBERTO TERCERO
8   AGAIN.
9            THE OPENING BRIEF ON THE ORDER TO SHOW CAUSE ARE DUE
10  THIS WEDNESDAY.  THE COMMISSION COULD COMPLY WITH THAT DATE.
11           BUT GIVEN ALL THAT IS GOING ON, I WOULD ASK FOR
12  MS. FRON TO LET US KNOW WHETHER THEY WOULD LIKE THE ADDITIONAL
13  TWO DAYS TO GET IN HER OPENING BRIEF, GIVEN THAT WE ARE MOVING
14  ALL THE DATES TWO DAYS.
15           MS. FRON:  I WOULD.
16           THE COURT:  SO THAT WOULD MOVE IT FROM THE 12TH TO
17  THE 14TH.
18           MR. TERCERO:  YES, THAT'S CORRECT.
19           MS. FRON:  THANK YOU.
20           THE COURT:  I THINK THAT WOULD BE FINE.  ALL RIGHT.
21           WELL, IS THERE ANYTHING ELSE WE NEED TO ADDRESS AT
22  THIS TIME?
23           MR. TERCERO:  THIS IS ROBERTO TERCERO FROM THE
24  S.E.C.
25           NO, YOUR HONOR.  WE DO APPRECIATE YOUR CONTINUED
```

1  AVAILABILITY DURING THE COURSE OF THE MATTER.
2  **THE COURT:** YOU ARE WELCOME.
3  **MS. FRON:** THANK YOU, YOUR HONOR.
4  THIS IS MICHELE FRON.
5  SO AS IT STANDS NOW, IF AN INDIVIDUAL WANTS TO
6  WITHDRAW FUNDS, HE HAS A CONTRACTUAL RIGHT TO WITHDRAW IT
7  PURSUANT TO THIS ORDER, THAT WE MAY HONOR THAT WITHDRAWAL IF
8  IT IS IN THE ORDINARY COURSE OF BUSINESS, AND THAT THE
9  VIEWTRADE ACCOUNT MAY REMAIN OPEN AND TRADING.
10 **THE COURT:** I THINK THAT IS CORRECT, GIVEN THE
11 MODIFICATION THAT WAS MADE TO THE ORIGINAL TRO.
12 AND, BY TODAY'S DISCUSSION, THE INTENT OF THE COURT
13 WAS SIMPLY TO LEAVE EVERYTHING AS PROVIDED FOR IN THE TRO AND
14 THE MODIFIED TRO, WITH THE EXCEPTION OF ADJUSTING THE DATES BY
15 TWO DAYS.
16 **MS. FRON:** THANK YOU.
17 **MR. OSIAS:** YOUR HONOR, THIS IS DAVID OSIAS.
18 MR. LENNON WILL PROCESS WITHDRAWAL REQUESTS AS BEST
19 HE IS ABLE, AND UNDER THE ORDINARY COURSE STANDARD, WHICH IS
20 TO COMPARE THE WITHDRAWAL REQUEST TO HISTORIC BEHAVIOR AT THIS
21 TIME.
22 IF HE IS INUNDATED WITH REQUESTS, AT LEAST IN OUR
23 MINDS, THAT IS A LOWER PRIORITY THAN COMPLETING THE ACCOUNTING
24 ANALYSIS THAT IS NECESSARY, PER THE PRIOR COURT ORDER, AND IT
25 HAS TO BE TURNED IN MONDAY MORNING.

```
 1          I GUESS I WANT TO MAKE SURE, IF WE HAD TO PRIORITIZE
 2   OUR TIME, THAT ACCOUNTING REPORT COMES AHEAD OF PROCESSING THE
 3   WITHDRAWAL REQUESTS, IF WE GET INTO LARGE NUMBERS OF REQUESTS.
 4          THE COURT:  I AM HOPEFUL THAT MR. LENNON CAN DO
 5   BOTH.  I THINK IF ONE HAS TO PRIORITIZE, I THINK YOU HAVE SET
 6   OUT THE CORRECT PRIORITY, MR. OSIAS.
 7          MR. OSIAS:  THANK YOU.  I DIDN'T MEAN TO SUGGEST WE
 8   WOULDN'T TRY TO DO BOTH.
 9          AND THANK YOU VERY MUCH, AGAIN, AS EVERYONE HAS
10   SAID, FOR YOUR AVAILABILITY.
11          THE COURT:  THANK YOU, VERY MUCH.  AND WE WILL LOOK
12   FORWARD TO SEEING EVERYONE ON FRIDAY THE 21ST.
13          MS. FRON:  THANK YOU, YOUR HONOR.
14          MR. TERCERO:  THANK YOU, YOUR HONOR.
15          THE COURT:  THANK YOU.
16
17                          *   *   *
18          I CERTIFY THAT THE FOREGOING IS A CORRECT
             TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
19           IN THE ABOVE-ENTITLED MATTER.
20          S/LEEANN PENCE                        7/24/08
21          LEEANN PENCE, OFFICIAL COURT REPORTER    DATE
22
23
24
25
```