UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION
July 14, 2008

ADMINISTRATIVE PROCEEDING
File No. 3-13004

In the Matter of

DOUGLAS G. FREDERICK,

Respondent.

DIVISION OF ENFORCEMENT'S MOTION FOR
SUMMARY DISPOSITION AGAINST RESPONDENT
DOUGLAS G. FREDERICK

COMMISSION RULE OF PRACTICE 250
[17 C.F.R. § 201.250]

Donald W. Searles
Roberto A. Tercero
*Attorneys for Division of Enforcement*
Securities and Exchange Commission
5670 Wilshire Blvd., 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-4573 (Searles)
Telephone: (323) 965-3891 (Tercero)
Facsimile: (323) 965-3908
E-Mail: searlesd@sec.gov
E-Mail: terceror@sec.gov

**TO THE CHIEF ADMINISTRATIVE LAW JUDGE, THE HONORABLE**

**BRENDA P. MURRAY, RESPONDENT, AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that the Division of Enforcement ("Division") hereby moves

that the Court, by summary disposition, bar Respondent Douglas G. Frederick ("Frederick")

permanently from future association with any broker or dealer. The Division's motion is made

pursuant to Rule of Practice 250 [17 C.F.R. § 201.250] and the Court's Order Following Prehearing

Conference, dated May 19, 2008 ("Prehearing Order").

Good cause exists to grant the Division's motion. As detailed in the Division's supporting

memorandum of points and authorities, there are no issues of material fact in dispute. A judgment

of permanent injunction was entered against Frederick by his consent on March 17, 2008,

prohibiting him from future violations of Sections 10(b) and 15(a) of the Securities Exchange Act of

1934 [15 U.S.C. §§ 78j(b) & 78o(a)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] in the civil

action entitled Securities and Exchange Commission v. Tuco Trading, LLC, et al., Civil Action No.

08 CV 00400 DMS (BLM) (S.D. Cal.). Frederick's violations occurred while he was an associated

person of a registered broker-dealer. The conduct is set forth in the Commission's district court

complaint, which Frederick cannot dispute because of his consent to the permanent injunction.

Furthermore, it is in the public interest that the Court bar Frederick permanently from any future

association with any broker or dealer.

This motion is based upon the supporting memorandum of points and authorities and the declaration of Roberto A. Tercero, which are both being filed with this motion, and all other papers filed in this proceeding.

Dated:  July 14, 2008

Respectfully submitted,

Donald W. Searles
Roberto A. Tercero

*Attorneys for Division of Enforcement*

2

**CERTIFICATE OF SERVICE**
**In the Matter of Douglas G. Frederick**
Administrative Proceeding File No. 3-13004

Pursuant to Commission Rule of Practice 151 [17 C.F.R. § 201.151], I certify that the attached

### DIVISION OF ENFORCEMENT'S MOTION FOR SUMMARY DISPOSITION AGAINST RESPONDENT DOUGLAS G. FREDERICK

was filed with the Office of the Secretary of the Commission and served upon the following on July 14, 2008, in the manner described next to the name and address of each recipient:

Office of the Secretary                                      By overnight mail
Securities and Exchange Commission                           [Original and 3 Copies]
100 F Street, N.E.
Washington, DC 20549-1090

Honorable Brenda P. Murray                                   By overnight mail
Chief Administrative Law Judge
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-2557
T – 202-551-6030 | F – 202-777-1031

Daniel G. Viola                                              By U.S. Mail
Sadis & Goldberg LLP
551 5th Avenue, 21st Floor
New York, NY 10176
T – 212-573-8038 | F – 212-573-8140
E/dviola@sglawyers.com

Dennis R. Hirsch                                             By U.S. mail
Sadis & Goldberg LLP
50 California Street, Suite 2320
San Francisco, CA 94111
T – 415-490-0563 | F – 415-391-1377
E/drhirsch@sglawyers.com

Roberto A. Tercero

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION
July 14, 2008

ADMINISTRATIVE PROCEEDING
File No. 3-13004

| | |
|---|---|
| **In the Matter of**<br><br>**DOUGLAS G. FREDERICK,**<br><br>**Respondent.** | **DIVISION OF ENFORCEMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY DISPOSITION AGAINST RESPONDENT DOUGLAS G. FREDERICK**<br><br>**COMMISSION RULE OF PRACTICE 250**<br><br>**[17 C.F.R. § 201.250]** |

Donald W. Searles
Roberto A. Tercero
*Attorneys for Division of Enforcement*
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-4573 (Searles)
Telephone: (323) 965-3891 (Tercero)
Facsimile: (323) 965-3908
E-Mail: searlesd@sec.gov
E-Mail: terceror@sec.gov

## **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ........................................................................................................1

II.     STATEMENT OF UNDISPUTED FACTS ...............................................................1

        A.      The Respondent ...............................................................................................2

        B.      Related Non-Party ...........................................................................................2

        C.      Tuco's Broker-Dealer Operations ...................................................................2

        D.      Frederick's and Tuco's Fraud – The Shortfall ...............................................4

        E.      The District Court Action ................................................................................5

        F.      The Administrative Proceeding .......................................................................6

III.    LEGAL DISCUSSION ...............................................................................................6

        A.      The Motion for Summary Disposition Standard ............................................6

        B.      There Is No Genuine Issue of Material Fact ..................................................7

        C.      As a Matter of Law, a Permanent Bar Is Appropriate ...................................8

        D.      Frederick's Appeal Does Not Change This Result ......................................10

IV.     CONCLUSION ..........................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*Elliott v. SEC*
  36 F.3d 86 (11th Cir. 1994).................................................................9

*In re Castle Securities Corp.*
  2005 SEC Lexis 895 (Apr. 21, 2005)..................................................7

*In re Charles Phillip Elliott*
  50 S.E.C. 1273 (1992), *aff'd on other grounds*, 36 F.3d 86 (11th Cir. 1994) ......................10

*In re Conrad P. Seghers*
  2007 SEC Lexis 2238 (Sept. 26, 2007) ...............................................6

*In re David A. Zwick*
  2007 SEC Lexis 2513 (Oct. 27, 2007)..................................................6

*In re Gary L. Jackson*
  48 S.E.C. 435 (1986)...........................................................................10

*In re Joseph P. Galluzzi*
  55 S.E.C. 1110, 2002 SEC Lexis 2202 (Aug. 23, 2002).......................10

*In re Marshall E. Melton*
  56 S.E.C. 695 (2003) .................................................................. 1, 7, 8, 9

*In re Michael Batterman*
  57 S.E.C. 1031, 2004 SEC Lexis 2855 (Dec. 3, 2004) ......................10

*In re Ragone*
  2007 SEC Lexis 1157 (May 25, 2007) ........................................... 9, 10

*In re Samuel O. Forson*
  53 S.E.C. 31 (1997) ...........................................................................7

*SEC v. Steadman*
  603 F.2d 1126 (5th Cir. 1979)......................................................8, 9

# FEDERAL STATUTES

## Securities Exchange Act of 1934

Section 10(b)
    [15 U.S.C. § 78j(b)] ........................................................................... 5, 10

Section 15(a)
    [15 U.S.C. § 78o(a)] ........................................................................... 5, 10

Section 15(b)(6)
    [15 U.S.C. § 78o(b)(6)] ..........................................................................6

# FEDERAL REGULATIONS

Rule 10b-5
    [17 C.F.R. § 240.10b-5]....................................................................... 5, 10

Rule 250
    [17 C.F.R. § 201.250]..............................................................................6

Rule 250(a)
    [17 C.F.R. § 201.250(a)].........................................................................6

Rule 323
    [17 C.F.R. § 201.323].............................................................................2, 6

## I.    INTRODUCTION

The Division of Enforcement ("Division") by summary disposition seeks an order permanently barring Respondent Douglas G. Frederick ("Frederick") from future association with any broker or dealer. Frederick ran an unregistered broker-dealer named Tuco Trading, LLC ("Tuco"). Frederick not only aided and abetted Tuco's broker-dealer registration violations; he and Tuco also defrauded Tuco's customers. Each customer could access Tuco's back office system and see his or her own equity balance, which was updated daily. Tuco and Frederick failed to disclose, however, that they were using the customers' net profits to pay their expenses. Frederick and Tuco also failed to disclose that there was a shortfall of 12% to 35% between the amount that the back office system showed and what Tuco actually had for the customer. Without any of this critical information, the customers continued to purchase and sell securities through Tuco.

Frederick consented to a permanent injunction against him prohibiting future broker-dealer registration and antifraud violations. Now that the permanent injunction has been entered – and now that Frederick is not permitted to dispute the factual allegations of the complaint – it is in the public interest to bar Frederick permanently from associating with any broker or dealer in the future.

## II.    STATEMENT OF UNDISPUTED FACTS

The following statement of undisputed facts is based upon Frederick's Answer to Order Instituting Administrative Proceedings, filed in this proceeding on May 12, 2008, and the complaint filed in the civil injunctive action entitled *Securities and Exchange Commission v. Tuco Trading, LLC, et al.*, Civil Action No. 08 CV 00400 DMS (BLM) (S.D. Cal.). (Declaration of Roberto A. Tercero in Support of the Division of Enforcement's Motion for Summary Disposition ("Tercero Dec."), Ex. 1). Pursuant to Rule of practice 250(a), 17 C.F.R. § 250(a), the facts in Frederick's Answer are deemed true for purposes of the Division's motion against him. On March 17, 2008, the district court entered a judgment of permanent injunction against Frederick pursuant to his notarized consent in which he acknowledged that he is not permitted to contest the factual allegations of the district court complaint. (Tercero Dec., Ex. 2, p. 19 at ¶ 12, Ex. 3). Frederick, therefore, may not contest the complaint's factual allegations. *In re Marshall E. Melton*, 56 S.E.C. 695, 699-700 (2003). The Division respectfully requests that the Court take official notice of the

district court complaint, consent, and judgment pursuant to Rule of Practice 323, 17 C.F.R. §
201.323.

### A.    The Respondent

Douglas G. Frederick, age 38, resides in San Diego, California. (Frederick Answer, ¶ 1;
Tercero Dec., Ex. 1, p. 5, at ¶ 7). Frederick formed Tuco in August 2006 and is its sole managing
member. (Frederick Answer ¶ 1; Tercero Dec., Ex. 1, p. 5, at ¶ 7). (Tercero Dec., Ex. 1, p. 5, at ¶
7). Frederick has been associated as a registered representative with thirteen broker-dealers since
1993, including GLB Trading, Inc. ("GLB Trading") beginning in April 2006. (*Id.*). GLB Trading
is a registered broker-dealer. (Tercero Dec., Ex. 1, p. 5, at ¶ 8).

### B.    Related Non-Party

Tuco Trading, LLC, is a Nevada limited liability company and is based in La Jolla,
California. (Tercero Dec., Ex. 1, p. 5, at ¶ 6). Tuco is a self-described "trading firm" that allows
its members to day-trade securities through Tuco's own brokerage accounts or "master accounts."
(*Id.*). Tuco maintains its main master accounts at GLB Trading through which the vast majority of
trades by Tuco's customers are conducted. (*Id.*, p. 2 at ¶ 8 and p. 7 at ¶ 16). Tuco, however, is not
registered with the Commission as a broker or dealer. (Tercero Dec., Ex. 1, p. 5, at ¶ 6).

### C.    Tuco's Broker-Dealer Operations

Tuco and Frederick provided day-trading capability to over 250 day-traders. (Tercero
Dec., Ex. 1, p. 4 at ¶ 2). A day-trader actively purchases and sells securities, often on the same
day, and hopes to make at least a small profit on a large number of buy-and-sell transactions. (*Id.*).
Tuco had three brokerage accounts in its name ("master accounts") at GLB Trading, and Frederick
was the registered representative for each master account. (Tercero Dec., Ex. 1, p. 7 at ¶ 15). Tuco
and Frederick allowed Tuco's customers to day-trade through Tuco's master accounts, by creating
"sub-accounts" for each customer using Tuco's back office software. (Tercero Dec., Ex. 1, p. 4 at
¶ 2). The back office software allowed Tuco and Frederick to track the activity in each customer's
sub-account, which Tuco reported to the customer on a daily basis. (*Id.*). To trade through Tuco,
customers contributed funds to Tuco and signed new account documents, including Tuco's
Operating Agreement. (Tercero Dec., Ex. 1, p. 6 at ¶ 12).

Frederick had exclusive managerial authority over Tuco. (Tercero Dec., Ex. 1, p. 6 at ¶ 11). He also actively participated in Tuco's day-to-day activities, controlled all of Tuco's trading and bank accounts, solicited new customers, and was the only person authorized to withdraw funds. (Tercero Dec., Ex. 1, p. 6 at ¶¶ 11-12).

Tuco and Frederick enticed customers with services unavailable to day-traders at any registered broker-dealer. (Tercero Dec., Ex. 1, p. 4 at ¶ 3). First, they allowed a customer to day-trade even if his or her sub-account had less than $25,000 in equity, even though $25,000 was the minimum equity requirement under the National Association of Securities Dealers' ("NASD") day-trading regulations. (Id.). Second, customers at Tuco could use up to $20 of Tuco's equity to purchase securities for each $1 in the customer's sub-account (i.e., 20:1 buying power). (Id.). Applicable NASD and New York Stock Exchange ("NYSE") rules, however, only allow a day-trader to have 4:1 buying power. (Id.). Frederick determined how much of Tuco's buying power each customer could use in trading securities. (Tercero Dec., Ex. 1, p. 7 at ¶ 17).

Tuco charged its customers commissions on their securities trades, which ranged from $0.20 to $8 per 1,000 shares executed. (Tercero Dec., Ex. 1, pp. 8-9 at ¶ 22). The commissions, however, were actually collected at GLB Trading's clearing firm. (Tercero Dec., Ex. 1, p. 9 at ¶ 23). The clearing firm and GLB Trading then subtracted from the commissions certain expenses. (Id.). GLB Trading then paid the net amount to Frederick, which Frederick then deposited into Tuco's bank accounts to pay Tuco's expenses, pay customer withdrawals, or deposit into Tuco's master accounts. (Id.). From December 2006 through October 2007, Frederick received a total of $1.12 million in net commissions from GLB Trading, of which more than 90% came from trading in Tuco accounts. (Id.).

Tuco incurred substantial costs that it paid using the commissions charged to its customers. (Tercero Dec., Ex. 1, p. 9 at ¶ 25). These expenses included the costs associated with purchasing and operating the trading software and the back office system, salaries, consulting fees, interest charges, travel, website maintenance and office expenses. (Id.). Tuco was only able to pay its expenses using the transaction-based commissions it received. (Id.).

### D.    Frederick's and Tuco's Fraud – The Shortfall

In connection with its solicitation and enrollment of new customers, Frederick and Tuco provided each new customer, among other things, with a copy of Tuco's Operating Agreement. (Tercero Dec., Ex. 1, pp. 9-10 at ¶ 26). In the Operating Agreement, Tuco and Frederick represented that they would create a separate sub-account for each customer through which the customer could conduct day-trading activities. (Tercero Dec., Ex. 1, p. 10 at ¶ 27).

Under Tuco's Operating Agreement, a customer was responsible for all of the trading profits and losses in his or her trading sub-account and did not share in other customers' profits and losses. (Tercero Dec., Ex. 1, p. 8 at ¶ 19). Tuco was required to adjust the amount of funds in the customer's sub-account daily by the amount of the customer's net trading profits or losses, which took into account commissions, expenses, and other charges that Tuco might make. (*Id.*). If a customer suffered losses in excess of his or her capital contributions and had a negative equity balance, Frederick was responsible for the negative balance. (*Id.*). In the Operating Agreement, Frederick and Tuco further represented that Tuco would maintain true and correct books and records and that its books and records would be sufficient to record the net income and net losses and distributions to customers as provided by the Operating Agreement. (Tercero Dec., Ex. 1, p. 10 at ¶ 29).

Each customer could log onto Tuco's back office system and see the activity in his or her sub-account. (Tercero Dec., Ex. 1, p. 8 at ¶ 20 and p. 10 at ¶ 30). The back office system displayed, as of the previous day, the equity balance for the customer's sub-account, which was purportedly the amount of money available to the customer for trading, distribution, or withdrawal. (Tercero Dec., Ex. 1, p. 10 at ¶ 30 and p. 12 at ¶ 36).

As of December 31, 2007, however, there was approximately a 35% shortfall between what customers saw when viewing their sub-accounts on Tuco's back office system and what Tuco actually held for its customers in Tuco's accounts. (Tercero Dec., Ex. 1, p. 11 at ¶ 33). As of December 31, 2007, Frederick and Tuco represented to the customers that the customers had positive net equity totaling approximately $10.2 million. (*Id.*). As of that date, however, Tuco's bank, brokerage and commodities accounts had net assets of only approximately $6.59 million.

(*Id.*). Therefore, approximately $3.62 million of the customer's funds, or about 35%, was unaccounted for. (*Id.*).

As of January 31, 2008, there was approximately a 12% shortfall between what customers saw when viewing their sub-accounts on Tuco's back office system and what Tuco actually held for its customers in its accounts. (Tercero Dec., Ex. 1, p. 11 at ¶ 34). As of January 31, 2008, Frederick and Tuco represented to its customers that the customers had positive net equity totaling approximately $11.4 million. (*Id.*). As of that date, however, Tuco's bank, brokerage and commodity futures accounts had net assets of only approximately $10.05 million. (*Id.*). Therefore, approximately $1.35 million of the customer's funds, or about 12% was unaccounted for. (*Id.*).

Those unaccounted for funds were used to pay Tuco's operating expenses and to cover other customers' losses. (Tercero Dec., Ex. 1, pp. 11-12 at ¶ 35). Frederick's and Tuco's use of those funds was contrary to their representations in Tuco's Operating Agreement, in which they represented that customers' net profits would not be used to meet Tuco's operating expenses or to cover other customers' trading losses. (*Id.*). Frederick and Tuco also failed to disclose to Tuco's customers that there were insufficient funds in Tuco's accounts to cover all of its customers' net positive equity balances. (*Id.*). Frederick's conduct continued at least through March 4, 2008, when the Commission filed its civil injunctive action. (Tercero Dec., Ex. 1, p. 12 at ¶ 36).

### E.    The District Court Action

On March 4, 2008, the Commission filed a civil injunctive action against Frederick and Tuco. (Tercero Dec., Ex. 1). The Commission alleged that Frederick and Tuco violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and that Tuco, aided and abetted by Frederick, violated Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a). (*Id.*). On March 14, 2008, Frederick and Tuco consented to the entry of a judgment of permanent injunction, enjoining Frederick from future violations of Sections 10(b) and 15(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) & 78o(a), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. (Answer, ¶ 2; Tercero Dec., Ex. 2). On March 17, 2008, the district court entered a judgment of permanent injunction against Frederick and Tuco pursuant to

5

their respective consents. (Answer, ¶ 2; Tercero Dec., Ex. 3). On May 19, 2008, Frederick and

Tuco filed a notice of appeal, which remains pending. (Tercero Dec., ¶ 5).[1]

  **F.**   **The Administrative Proceeding**

  On April 8, 2008, the Commission issued against Frederick an Order Instituting

Administrative Proceedings ("OIP"). On May 15, 2008, the Court held a prehearing conference.

As set forth in the Court's Order Following Prehearing Conference, dated May 19, 2008, the Court

determined that there were no issues of material fact in dispute in this proceeding and therefore

granted the Division's and Frederick's request for leave to each file a motion for summary

disposition.

**III.**   **LEGAL DISCUSSION**

  **A.**   **The Motion for Summary Disposition Standard**

  Under Rule 250 of the Commission's Rules of Practice, "a motion for summary disposition

may be granted if 'there is no genuine issue with regard to any material fact and the party making

the motion is entitled to a summary disposition as a matter of law.'" *In re Conrad P. Seghers*,

2007 SEC Lexis 2238, at *114-15 (Sept. 26, 2007); 17 C.F.R. § 201.250. The facts of the

pleadings of the party against whom the motion is made shall be taken as true, except as modified

by stipulations or admissions made by that party, by uncontested affidavits, or by facts officially

noted pursuant to Rule 323 of the Commission's Rules of Practice. 17 C.F.R. § 201.250(a).

  As a matter of law, the Commission may assess a sanction, including a bar as the Division

seeks here, where a person associated with a broker-dealer at the time of the misconduct has been

enjoined from violating provisions of the securities statutes if it is in the public interest to do so. 15

U.S.C. § 78o(b)(6); *see In re David A. Zwick*, 2007 SEC Lexis 2513, at *7 (Oct. 27, 2007).

Frederick's own admissions, and the certified copies of the filings from the district court action,

establish these elements based upon undisputable facts.

---

[1]   On June 27, 2008, the United States Court of Appeal for the Ninth Circuit issued an order
to show cause why the appeal should not be dismissed for lack of jurisdiction in light of
Frederick's failure to file his notice of appeal timely. (Tercero Dec., Ex. 4).

**B.**    **There Is No Genuine Issue of Material Fact**

Frederick was associated with GLB Trading from August 2006 until March 2008, shortly after the Commission filed the civil injunctive action. (Tercero Dec., Ex. 1, p. 5 at ¶ 7; Answer, ¶ 1). Frederick's violations occurred during that timeframe. (*See*, Tercero Dec., Ex. 1, p. 9 at ¶ 24 and p. 12 at ¶ 36). Frederick also admits that he has been permanently enjoined based upon his consent. (Answer, ¶ 2). This fact is also established by Frederick's consent and the permanent injunction itself. (Tercero Dec., Exs. 2-3).

Additionally, there is no genuine issue regarding the facts upon which to analyze the propriety of a sanction against Frederick. These facts are set forth in Frederick's answer, containing his admissions, and the complaint in the civil injunctive action, containing facts that Frederick, in his consent, has acknowledged he cannot dispute. (Tercero Dec., Ex. 2, p. 19 at ¶ 12). Nevertheless, Frederick attempts to relitigate these facts in his answer by denying that he violated the securities laws and by asserting various affirmative defenses. But Frederick is precluded from doing so.

Consent judgments have collateral estoppel effect in follow-on administrative proceedings. *In re Castle Securities Corp.*, 2005 SEC Lexis 895 at *10-11 (Apr. 21, 2005). "Having consented to entry of an injunction based on those allegations [in the complaint, Respondent] may not question them now in an action based on that injunction." *In re Samuel O. Forson*, 53 S.E.C. 31, 32 (1997); *In re Marshall E. Melton*, 56 S.E.C. at 699-700 (citing *Forson*). In its 2003 *Melton* opinion, the Commission went to great lengths to set forth the use of a consent injunction, stating

> For purposes of consent injunctions that are agreed to and entered by a court after issuance of this opinion, we will construe the "neither admit nor deny" language as precluding a person who has consented to an injunction in a Commission enforcement action from denying the factual allegations of the injunctive complaint in a follow-on proceeding before this agency. . . . Moreover, those allegations potentially can be dispositive of what remedial action is appropriate in the public interest.

7

*Melton*, 56 S.E.C. at 712. And there is another provision of Frederick's consent prohibiting him from disputing the complaint's allegations. In addition to the "neither admit nor deny" language, Frederick's consent explicitly states that he is prohibited from disputing the factual allegations. (Tercero Dec., Ex. 2, p. 19 at ¶ 12). He, therefore, cannot relitigate the facts, and they serve as a proper basis for the Court's determination of an appropriate sanction.

### C.      As a Matter of Law, a Permanent Bar Is Appropriate

As a matter of law, and based upon the undisputed facts, it is in the public interest to permanently bar Frederick. The public interest determination is made upon the following factors:

> [T]he egregiousness of the [respondent's] actions; the isolated or recurrent nature of the infraction; the degree of scienter involved; the sincerity of the [respondent's] assurances against future violations; the [respondent's] recognition of the wrongful nature of his conduct; and the likelihood that the [respondent's] occupation will present opportunities for future violations.

*SEC v. Steadman*, 603 F.2d 1126, 1140 (5th Cir. 1979); *Melton*, 56 S.E.C. at 698.

Frederick engaged in egregious and recurrent fraudulent conduct. On a daily basis, he substantially overstated the customers' equity balances on Tuco's back office system. The shortfalls ranged from 12% to 35% or from $1.35 to $3.62 million. Contrary to his representations, Frederick used customer equity to cover other traders' losses rather than live up to his promise to assume those losses. He also failed to disclose that he used customer equity to pay Tuco's expenses and that Tuco was only able to pay those expenses by misappropriating customers' funds. Frederick's misrepresentations and omissions were material because reasonable investors would consider a massive shortfall in their brokerage accounts, the misuse of funds, and the likelihood of being made whole, important in making their decisions to day-trade securities and whether to do so through Tuco. And for well over a year, Frederick ran Tuco as a day-trading firm and controlled its operations, but he did not register it with the Commission. Frederick's conduct is particularly egregious because his fifteen years in the securities industry should have given him a greater appreciation, and an appropriate respect, for the importance of the rules he was obligated to follow.

Frederick acted with a high degree of scienter. He ran Tuco and controlled all of its accounts. Despite Frederick's knowledge of the materially false and misleading nature of the information on the back office system, he nevertheless gave his customers daily access to it thereby giving them an overly optimistic view of how much money they had. Frederick also knew that he was aiding and abetting Tuco's broker-dealer registration violations. He knew that Tuco was acting as a brokerage firm by soliciting customers, receiving transaction-based compensation (commissions), and was effecting securities transactions for it day-trading customers. As the person who ran Tuco day-to-day, solicited customers, and controlled its bank and brokerage accounts, Frederick knew of his role in connection with Tuco's registration violations and provided substantial assistance in perpetuating them.

Moreover, Frederick did not acknowledge his fraudulent activities or his aiding and abetting Tuco's broker-dealer registration violations. Indeed, he denies that he committed these violations. (Answer, ¶¶ 2-3, 6, 10, 11). As a result, he has made no credible assurances to refrain from committing future securities law violations.

In considering the *Steadman* factors, the antifraud injunction against Frederick is a particularly strong component of the analysis. As the Commission set forth in *Melton*, such an injunction

> has especially serious implications for the public interest. Based on our
> experience enforcing the federal securities laws, we believe that ordinarily, and
> in the absence of evidence to the contrary, it will be in the public interest to
> revoke the registration of, or suspend or bar from participation in the securities
> industry, or prohibit from participation in an offering of penny stock, a
> respondent who is enjoined from violating the antifraud provisions.

*Melton*, 56 S.E.C. at 713. "Under the statutory language, existence of the injunction provides a ground for the bar adequate in itself." *Elliott v. SEC*, 36 F.3d 86, 87 (11th Cir. 1994).

Recently, the Commission has barred similar conduct. *In re Ragone*, 2007 SEC Lexis 1157, at *2-3 (May 25, 2007). In *Ragone*, the respondent, through an unregistered firm, effected securities transactions for his customers and defrauded them by misrepresenting the status of a

9

transaction to delay payment and by improperly withholding a portion of his customers' trading proceeds. *Id.* In a civil injunctive action, respondent consented, as here, to be permanently enjoined from future violations of Sections 10(b) and 15(a) of the Exchange Act, U.S.C. §§ 78j(b) & 78o(a), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. He then consented to the permanent bar in the follow-on administrative proceeding. *Id.*

Based upon the foregoing, a permanent bar is appropriate.

**D.    Frederick's Appeal Does Not Change This Result**

Frederick's pending Ninth Circuit appeal of the civil injunctive action does not bar summary disposition. Under longstanding precedent, appeals do not stay or delay resolution of follow-on administrative proceedings (*In re Michael Batterman*, 57 S.E.C. 1031, 1036 n.10, 2004 SEC Lexis 2855, at *8-9 (Dec. 3, 2004); *In re Charles Phillip Elliott*, 50 S.E.C. 1273, 1276 n.15 (1992), *aff'd on other grounds*, 36 F.3d 86 (11th Cir. 1994).) or alter an injunction's ability to serve as a basis for an administrative proceeding. *Elliot*, 50 S.E.C. at 1276; *In re Joseph P. Galluzzi*, 55 S.E.C. 1110, 1116 n.21, 2002 SEC Lexis 2202, at *11 (Aug. 23, 2002). As the Court pointed out in its May 19 Order, Frederick's remedy – assuming his appeal is successful – is to petition the Commission to reconsider any sanction imposed against him in this proceeding. *In re Gary L. Jackson*, 48 S.E.C. 435, 438 n.3 (1986).

**IV.    CONCLUSION**

For all the facts, law, and arguments set forth above, the Division respectfully requests that the Court, by summary adjudication, bar Frederick permanently from future association with any broker or dealer.

Dated: July 14, 2008                              Respectfully submitted,

                                                  Donald W. Searles
                                                  Roberto A. Tercero

                                                  *Attorneys for Division of Enforcement*

## CERTIFICATE OF SERVICE
### In the Matter of Douglas G. Frederick
Administrative Proceeding File No. 3-13004

Pursuant to Commission Rule of Practice 151 [17 C.F.R. § 201.151], I certify that the attached

**DIVISION OF ENFORCEMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY DISPOSITION AGAINST RESPONDENT DOUGLAS G. FREDERICK**

was filed with the Office of the Secretary of the Commission and served upon the following on July 14, 2008, in the manner described next to the name and address of each recipient:

| | |
|---|---|
| Office of the Secretary<br>Securities and Exchange Commission<br>100 F Street, N.E.<br>Washington, DC 20549-1090 | By overnight mail<br>[Original and 3 Copies] |
| Honorable Brenda P. Murray<br>Chief Administrative Law Judge<br>Securities and Exchange Commission<br>100 F Street, N.E.<br>Washington, DC 20549-2557<br>T – 202-551-6030 \| F – 202-777-1031 | By overnight mail |
| Daniel G. Viola<br>Sadis & Goldberg LLP<br>551 5th Avenue, 21st Floor<br>New York, NY 10176<br>T – 212-573-8038 \| F – 212-573-8140<br>E/dviola@sglawyers.com | By U.S. Mail |
| Dennis R. Hirsch<br>Sadis & Goldberg LLP<br>50 California Street, Suite 2320<br>San Francisco, CA 94111<br>T – 415-490-0563 \| F – 415-391-1377<br>E/drhirsch@sglawyers.com | By U.S. mail |

Roberto A. Tercero

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION
July 14, 2008

ADMINISTRATIVE PROCEEDING
File No. 3-13004

| | |
|---|---|
| In the Matter of<br><br>DOUGLAS G. FREDERICK,<br><br>Respondent. | DECLARATION OF ROBERTO A. TERCERO IN SUPPORT OF DIVISION OF ENFORCEMENT'S MOTION FOR SUMMARY DISPOSITION AGAINST RESPONDENT DOUGLAS G. FREDERICK<br><br>COMMISSION RULE OF PRACTICE 250<br>[17 C.F. R. § 201.250] |

Donald W. Searles
Roberto A. Tercero
*Attorneys for Division of Enforcement*
Securities and Exchange Commission
5670 Wilshire Blvd., 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-4573 (Searles)
Telephone: (323) 965-3891 (Tercero)
Facsimile: (323) 965-3908
E-Mail: searlesd@sec.gov
E-Mail: terceror@sec.gov

DECLARATION OF ROBERTO A. TERCERO

I, Roberto A. Tercero, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am an attorney at law admitted to practice in the State of California, the United States District Court for the Southern District of California ("District Court"), and the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit"). I am a Senior Counsel in the Division of Enforcement ("Division") of the Securities and Exchange Commission ("Commission") and work at the Commission's Los Angeles Regional Office. I have personal and first hand knowledge of the facts set forth in this Declaration and, if called and sworn as a witness, could and would competently testify thereto.

2.      On March 4, 2008 the Commission filed its Complaint for Violations of the Federal Securities Laws ("Complaint") in the District Court for the Southern District of California against Tuco Trading, LLC and the respondent in this administrative proceeding, Douglas G. Frederick ("Frederick"), in the civil injunctive action entitled *Securities and Exchange Commission v. Tuco Trading, LLC*, Case No. 08 CV 00400 DMS (BLM) ("Civil Injunctive Action"). A certified copy of the Complaint is attached hereto as Exhibit 1.

3.      On March 14, 2008, the Commission filed in the Civil Injunctive Action the Consent of Defendant Douglas G. Frederick ("Consent") pursuant to which Frederick consented to the entry of a judgment of permanent injunction – prohibiting him from future violations of Sections 10(b) and 15(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78o, and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5 – in addition to other relief. A certified copy of Frederick's Consent is attached hereto as Exhibit 2.

4.      On March 17, 2008, the District Court entered in the Civil Injunctive Action its Judgment as to Defendants Tuco Trading, LLC and Douglas G. Frederick and Orders: (1)

1

Freezing Tuco's Assets; (2) Appointing a Permanent Receiver over Tuco; and (3) Prohibiting the

Destruction of Documents ("Judgment"). The Judgment was in the form which was attached to

Frederick's Consent. A certified copy of the Judgment is attached hereto as Exhibit 3.

5.      On May 19, 2008, Tuco and Frederick appealed the Judgment entered pursuant to

their consents to the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit"). On

June 27, 2008, the Ninth Circuit issued an Order directing Tuco and Frederick to either

voluntarily dismiss the appeal, or show cause why the appeal should not be dismissed for lack of

jurisdiction. A true and correct conformed copy of the Ninth Circuit's June 27 Order is attached

hereto as Exhibit 4.

6.      The Division respectfully requests that this Court take official notice of the

attached exhibits pursuant to Rule 323 of the Commission's Rules of Practice, 17 C.F.R. §

201.323.

Executed at Los Angeles, California on July 14, 2008.

I declare under the penalty of perjury that the foregoing is true and correct.

ROBERTO A. TERCERO

2

ORIGINAL

1  DONALD W. SEARLES, Cal. Bar No. 135705
   SearlesD@sec.gov
2  KELLY BOWERS, Cal. Bar No. 164007
   BowersK@sec.gov
3  J. CINDY ESON, Cal. Bar No. 219782
   EsonJC@sec.gov
4  ROBERTO A. TERCERO, Cal. Bar No. 143760
   TerceroR@sec.gov
5
   Attorneys for Plaintiff
6  Securities and Exchange Commission
   Rosalind R. Tyson, Acting Regional Director
7  Andrew Petillon, Associate Regional Director
   5670 Wilshire Boulevard, 11th Floor
8  Los Angeles, California 90036
   Telephone: (323) 965-3998
9  Facsimile: (323) 965-3908

10

11                  UNITED STATES DISTRICT COURT

12              SOUTHERN DISTRICT OF CALIFORNIA

13

14  SECURITIES AND EXCHANGE              Case No.: '08 CV 0400 DMS BLM
    COMMISSION,
15                                       COMPLAINT FOR VIOLATIONS OF THE
              Plaintiff,                 FEDERAL SECURITIES LAWS
16
        vs.
17
18  TUCO TRADING, LLC and
    DOUGLAS G. FREDERICK,
19
             Defendants.
20

21

22

23

24

25

26

27

28

Exhibit ___1___ Page ___3___

FILED

MAR 0 4 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

### SUMMARY

1.    This case involves ongoing violations of the antifraud and broker-dealer registration provisions of the federal securities laws by Tuco Trading, LLC ("Tuco"), an unregistered Southern California securities day-trading firm, and its controlling principal, Douglas G. Frederick ("Frederick" and collectively "Defendants").

2.    Tuco and Frederick provide day-trading capability to over 250 day-traders. A day-trader actively purchases and sells securities, often on the same day, and hopes to make at least a small profit on a large number of buy-and-sell transactions. Tuco and Frederick allow Tuco's members to day-trade through Tuco's own brokerage accounts ("master accounts"), by creating "sub-accounts" for each trader. Tuco and Frederick then track the activity in each trader's sub-account, including trades, balances, commissions, fees, deposits and withdrawals, which Tuco reports to the trader on a daily basis. Tuco, however, is not registered as a broker or dealer with the Commission, in violation of Section 15(a) of the Exchange Act, 15 U.S.C. §78o(a)(1).

3.    Tuco and Frederick entice traders with services unavailable to day-traders at any registered broker-dealer. First, the Defendants allow a trader to day-trade even if his or her sub-account has less than $25,000 equity, which, under applicable National Association of Securities Dealers ("NASD") regulations, is the minimum equity requirement to day-trade. Second, traders at Tuco can use up to $20 of Tuco's equity to purchase securities for each $1 in the trader's sub-account (i.e., 20:1 buying power). Applicable NASD and New York Stock Exchange ("NYSE") rules, however, only allow a day-trader to have 4:1 buying power.

4.    Tuco and Frederick are also violating the antifraud provisions of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. On a daily basis, Tuco and Frederick report to the traders their purported equity balances in their sub-accounts. As of December 31, 2007, however, Tuco and Frederick have used approximately $3.62 million of the traders' approximate $10.2 million total equity to pay Tuco's expenses and to cover trader losses. In reporting the traders' equity balances, however, Tuco and Frederick

-1-

Exhibit____1____Page____4____

1    have failed to disclose to Tuco's traders that their equity balances are overstated and that Tuco

2    and Frederick have misused approximately 35% of the traders' equity to pay Tuco's expenses

3    and to cover other traders' losses.  Defendants' misuse of the traders' equity is continuous and

4    ongoing.  As of January 31, 2008, Tuco and Frederick used approximately $1.35 million of the

5    traders' approximate $11.4 million total equity to pay Tuco's expenses and to cover trader losses.

6         5.    The Defendants' conduct violates the antifraud and broker-dealer registration

7    provisions of the federal securities laws.  By this action, the Commission seeks a temporary

8    restraining order, preliminary and permanent injunctive relief, an asset freeze, an accounting, an

9    order preventing the destruction of documents, the appointment of a receiver over Tuco,

10   disgorgement with prejudgment interest of the defendants' ill-gotten gains, and civil penalties.

11                              **THE DEFENDANTS**

12        6.    Tuco Trading, LLC, is a Nevada limited liability company formed in August 2006

13   and based in La Jolla, California.  Tuco is a self-described "trading firm" that creates sub-

14   accounts for members to day-trade securities through Tuco's master brokerage accounts.  Tuco is

15   not registered with the Commission as a broker or dealer.

16        7.    Douglas G. Frederick, age 38, resides in San Diego, California.  Frederick formed

17   Tuco in August 2006 and is its sole managing member.  He has held various securities licenses,

18   including Series 6 and 7 since 1993 and Series 55 and 63 since 2002.  Frederick has been

19   associated as a registered representative with thirteen broker-dealers since 1993, including GLB

20   Trading, Inc. since April 2006.  Frederick is not registered with the Commission in any capacity.

21                            **RELATED NON-PARTY**

22        8.    GLB Trading, Inc. ("GLB Trading") has been registered with the Commission

23   since 2003 as a broker-dealer.  It is an introducing broker-dealer based in Irvine, California, and

24   clears through Penson Financial Services, Inc.  Tuco maintains it principal master accounts at

25   GLB Trading.

26                          **JURISDICTION AND VENUE**

27        9.    This Court has jurisdiction over this action pursuant to Sections 21(d)(1),

28   21(d)(1)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15

Exhibit____1____Page____5____

1    U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa. Defendants have, directly or indirectly, made

2    use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a

3    national securities exchange, in connection with the transactions, acts, practices, and courses of

4    conduct alleged in this Complaint.

5        10.     Venue is proper in this district pursuant to Section 27 of the Exchange Act, 15

6    U.S.C. § 78aa, because the defendants reside and transact business in this district and certain of

7    the transactions, acts, practices, and courses of conduct constituting violations of the federal

8    securities laws alleged in this Complaint occurred within this district.

9                               **GENERAL ALLEGATIONS**

10    **Tuco's Operations**

11        11.     Tuco describes itself on its website as a "private equity firm" that provides

12    "trading solutions for the active trader." Frederick is Tuco's only Class A "owner member" and,

13    as such, has exclusive managerial authority over Tuco and is vested with the sole and exclusive

14    power to transact business on Tuco's behalf. Frederick also actively participates in Tuco's day-

15    to-day activities, controls all of Tuco's trading and bank accounts, and is the only person

16    authorized to withdraw funds from Tuco's accounts. Frederick also controls and monitors the

17    daily trading activity of Tuco's traders and determines each trader's maximum buying power.

18        12.     To trade through Tuco, customers contribute funds to Tuco and sign Tuco's

19    Operating Agreement as a "Class B" member, and sign Trader Agreements and Confidentiality

20    Agreements with Tuco. There is no minimum initial capital contribution amount required by

21    Tuco or Frederick for a customer to open an account. New traders come from referrals by

22    Tuco's existing traders or vendors, or through Tuco's website, which Tuco uses to advertise its

23    day-trading brokerage services.

24        13.     As of December 31, 2007, Tuco had 274 traders, with 330 sub-accounts. Of

25    those, 186 traders had 229 sub-accounts with positive equity balances totaling approximately

26    $10.2 million. Significantly, 157 of the 229 sub-accounts that had positive equity balances had

27    equity balances below $25,000, the minimum equity required by NASD day-trading rules.

28    ///

Exhibit____1____Page____6____

14.     As of January 31, 2008, Tuco had 261 traders, with 335 sub-accounts. Of those, 198 traders had 257 sub-accounts with positive equity balances totaling approximately $11.4 million. Significantly, 159 of the 257 sub-accounts that had positive equity balances had equity balances below $25,000, the minimum equity required by NASD day-trading rules.

15.     Tuco pools its traders' funds in bank, brokerage and commodity futures accounts in Tuco's name, all of which are controlled by Frederick. Tuco has three brokerage accounts at GLB Trading, and Frederick is the registered representative on each account. Tuco also allows customers to trade commodity futures through two commodities accounts in Tuco's name which are also controlled by Frederick. Tuco also maintains two bank accounts, both controlled by Frederick, which Tuco uses to receive traders' initial and additional contributions, to send withdrawals or distributions to traders, and to pay Tuco's expenses. Frederick is the only person authorized to withdraw funds from Tuco's accounts.

16.     Tuco uses its own back office system to create sub-accounts for each trader through which the trader can day-trade securities through Tuco's master accounts. All but 1% of Tuco's business consists of equity trading, and 99% of that trading occurs in Tuco's master accounts at GLB Trading. Traders can conduct their trading activities at Tuco's six offices located nationwide, its two foreign offices, and at a remote location of the customer's choosing. Tuco provides trading platform software from several vendors, which enables a trader to use his or her sub-account to place trades through Tuco's master accounts. Tuco also uses the trading software to monitor each trader's profits and losses on a real-time basis and whether the trader is incurring substantial trading losses.

17.     Under Tuco's Operating and Trader Agreements, Tuco determines how much of Tuco's funds each trader may use in trading securities and can stop the trader from trading at any point. Frederick sets each trader's buying power based upon the amount of funds in the trader's sub-account and the trader's trading experience. New traders begin with 6:1 to 10:1 buying power (*i.e.*, a new trader can use $6 to $10 of Tuco's equity to purchase securities for each $1 in the trader's sub-account). Approximately 80% of Tuco's traders have between 10:1 and 20:1 buying power, far in excess of the 4:1 buying power maximum imposed by applicable NASD

-4-

Exhibit____1____ Page____7____

1    and NYSE rules.

2        18.    Frederick monitors how much trading power each trader uses by checking Tuco's

3    back office system daily.   Tuco's master accounts at GLB Trading are limited to 4:1 power.  If a

4    master accounts exceeds the 4:1 limit, Tuco receives a margin call from GLB Trading, which

5    Tuco satisfies by borrowing funds from third parties.  Each week, Tuco borrows and pays back

6    from $500,000 to $2.3 million to meet these margin calls.

7        19.    Under Tuco's Operating Agreement, the trader is responsible for all of the trading

8    profits and losses in his or her trading account and does not share in other traders' profits and

9    losses. The Operating Agreement also states that the trader may withdraw any of the trader's net

10   trading profits.  Tuco is required under the Operating Agreement to adjust, on a daily basis, the

11   amount of funds in the trader's account by the amount of the trader's trading profits and losses,

12   net any commissions, expenses, or other charges that Tuco may take.  If a trader suffers losses in

13   excess of his or her contributions, resulting in a negative equity balance, under the Operating

14   Agreement, the Class A member (*i.e.*, Frederick) is solely responsible for the negative equity

15   balance.

16       20.    Each trader can log onto Tuco's back-office system and see the activity in his or

17   her sub-account.  The back office system displays, as of the previous day, the sub-account's

18   equity and account history (trades, trade breaks, commissions, fees, deposits, and withdrawals),

19   and purports to represent the balance available to the trader for withdrawal or distribution.

20       21.    Tuco's traders are conducting substantial amounts of day-trading through Tuco's

21   master accounts at GLB Trading — both in terms of the dollar amount of the trades and the

22   number of trades.  For example, in December 2007, one trade was worth $42.7 million.  The

23   most recent monthly account statement for Tuco's principal master account is over 10,000 pages,

24   representing hundreds of millions of shares traded each month.

25   **Tuco's Commissions, Fees and Expenses**

26       22.    Tuco charges its traders commissions on their securities trades.  Frederick

27   negotiates with each trader the commissions that will be charged but typically sets the

28   commission rate for new traders at $5 per 1,000 shares traded.  Commissions range from $0.20

1   to $8 per 1,000 shares traded. Tuco also charges its traders certain additional fees, such as for

2   wiring of funds withdrawn from Tuco, sending withdrawal checks by overnight mail, and for

3   providing software, stock quotes and news feeds.

4       23.    The trading software calculates Tuco's commissions, which are then downloaded

5   daily into Tuco's back office system and then debited from the trader's sub-account. The

6   commissions are collected at GLB Trading's clearing firm, Penson Financial, which also

7   receives a copy of the commission calculations generated by the trading software. Penson

8   Financial and GLB Trading then subtract from the calculated commissions various expenses and

9   fees, and GLB Trading's share of the commission. GLB Trading then pays the net commissions

10   to Frederick, which Frederick then deposits into Tuco's bank accounts to pay Tuco's expenses or

11   to pay trader withdrawals, or deposits into Tuco's master accounts.

12       24.    Through their trading activity, Tuco's traders have generated substantial

13   commissions for Frederick as the registered representative on the Tuco-GLB Trading accounts.

14   From December 2006 through October 2007, Frederick received approximately $1.12 million in

15   net commissions from GLB Trading, of which more than 90% has come from trading in Tuco's

16   accounts. Frederick's commissions skyrocketed to $2.14 million in November 2007 alone, the

17   increase being largely attributable to a new trader, which is itself a day-trading firm with

18   approximately 150 traders.

19       25.    Tuco incurs substantial costs that its pays through its transaction-based

20   commission charges to its traders. These expenses include the costs associated with purchasing

21   and operating the trading software and back office system, salaries, consulting fees, interest

22   charges, travel, website maintenance and office expenses. Tuco is only able to pay its expenses

23   using the transaction-based commissions it receives.

24       **Tuco's and Frederick's Material Misrepresentations and Omissions and Tuco's**

25       **Multi-Million Dollar Shortfall**

26       26.    In connection with its solicitation and enrollment of new traders, Tuco and

27   Frederick provide to each new trader, among other things, a copy of Tuco's Operating

28   Agreement. Each new member is required to execute a counterpart signature page to the

Exhibit____1____Page____9____

1  Operating Agreement in order to become a member of Tuco, in which the trader acknowledges

2  receipt of the Operating Agreement and agrees to be bound by its terms.

3       27.    In the Operating Agreement, Tuco and Frederick represent that they will create a

4  separate sub-account for each trader through which the trader can conduct day-trading activities.

5  In the Operating Agreement, Tuco and Frederick further represent that the profits (and losses)

6  generated by each trader within the trader's sub-account shall be allocated pursuant to a certain,

7  agreed upon "payout percentage." In practice, the agreed upon payout percentage is always

8  100%. In other words, Tuco and Frederick agree and represent to the trader that 100% of the

9  trader's net profits shall be allocated to the trader for the trader's exclusive benefit.

10       28.    In the Operating Agreement, Tuco and Frederick further represent that Tuco's

11  books shall reflect, among other things, the trader's initial and additional funds deposited and the

12  amount of the net trading profits that has been credited to the trader. Tuco and Frederick further

13  represent that the only amounts that shall be debited from the trader's sub-account shall be the

14  amount of money (or property) distributed by Tuco to the trader and the amount of any net

15  trading losses assessed to the trader.

16       29.    In the Operating Agreement, Tuco and Frederick further represent that Tuco will

17  maintain true and correct books and records, in which shall be entered all transactions of Tuco,

18  and all other records necessary, convenient or incidental to recording Tuco's business and

19  affairs, which shall be sufficient to record the allocation of net income and net losses and

20  distributions to traders as provided by the Operating Agreement.

21       30.    In connection with the daily trading activity of Tuco's traders, and to induce

22  Tuco's traders to continue trading with Tuco and to generate commissions and other charges for

23  Tuco's brokerage services, Tuco and Frederick make additional representations to Tuco's traders

24  through the operation of Tuco's back office system, which traders can log onto to see the activity

25  and current balances in their designated sub-accounts. Tuco's back office system displays, as of

26  the previous day, the trader's account equity, which is purportedly the amount of money

27  available to the trader for trading, distribution or withdrawal.

28  ///

Exhibit \_\_\_\_1\_\_\_ Page\_\_\_10\_\_\_

31.     Tuco and Frederick knew, or were reckless in not knowing, that each of the afore-mentioned material statements were false and misleading, in that the sub-accounts, Tuco's books and records, and Tuco's back office system and associated software did not accurately reflect the traders' net equity balances or the actual amount of money available to the trader for distribution or withdrawal.

32.     Indeed, Tuco and Frederick have misused and continue to misuse various amounts of the traders' net equity to pay Tuco's expenses, to cover other traders' trading losses, and to otherwise maintain and continue Tuco's operations. The Defendants' misuse of the traders' funds was neither authorized by, nor disclosed to, Tuco's traders.

33.     As of December 31, 2007, there was approximately a 35% shortfall between what traders saw when viewing their sub-accounts on Tuco's back office system and what Tuco actually held for its traders in its accounts. As of December 31, 2007, Tuco and Frederick represented to its traders that the traders had positive net equity totaling approximately $10.2 million. As of that date, however, Tuco's bank, brokerage and commodities accounts had net assets of only approximately $6.59 million. Therefore, approximately $3.62 million of the trader's funds, or about 35%, was unaccounted for.

34.     As of January 31, 2008, there was approximately a 12% shortfall between what traders saw when viewing their sub-accounts on Tuco's back office system and what Tuco actually held for its traders in its accounts. As of January 31, 2008, Tuco and Frederick represented to its traders that the traders had positive net equity totaling approximately $11.4 million. As of that date, however, Tuco's bank, brokerage and commodity futures accounts had net assets of only approximately $10.05 million. Therefore, approximately $1.35 million of the trader's funds, or about 12% was unaccounted for.

35.     These misused funds were used to pay Tuco's operating expenses and to cover other traders' losses. Tuco's and Frederick's use of those funds was improper and contrary to Tuco's and Frederick's representations set forth in Tuco's Operating Agreement, in which they represented that traders' net profits would not be used to meet Tuco's operating expenses or to cover other traders' trading losses. Needless to say, Tuco and Frederick failed to disclose to

-8-

Exhibit _____ Page _____

1   Tuco's traders that their net trading profits were being used to meet Tuco's and Frederick's

2   expenses and liabilities and that there were insufficient funds in Tuco's accounts to cover all of

3   its traders' net positive equity balances.

4        36.    Tuco and Frederick are continuing Tuco's operations and allowing traders to day-

5   trade securities through Tuco's accounts. Tuco and Frederick are also continuing to solicit new

6   traders, receive deposits from and pay withdrawals to traders, and receive commissions. Tuco

7   and Frederick are also continuing to make false and misleading statements to traders and

8   continuing to misuse traders' funds.

9   **FIRST CLAIM FOR RELIEF**

10  **UNREGISTERED BROKER-DEALER**

11  **VIOLATIONS OF SECTION 15(a) OF THE EXCHANGE ACT**

12  **(AGAINST TUCO)**

13  **AIDING AND ABETTING VIOLATIONS OF SECTION 15(a) OF THE EXCHANGE ACT**

14  **(AGAINST FREDERICK)**

15       37.    The Commission realleges and incorporates by reference paragraphs 1 through 36

16  above.

17       38.    Defendant Tuco, by engaging in the conduct described above, directly or

18  indirectly, made use of the mails and other means or instrumentalities of interstate commerce to

19  effect transactions in securities, without being registered as a broker or dealer pursuant to Section

20  15(b) of the Exchange Act, 15 U.S.C. § 78o(b), in violation of Section 15(a) of the Exchange

21  Act, 15 U.S.C. § 78o(a).

22       39.    Defendant Frederick knowingly provided substantial assistance to Tuco's

23  violation of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a). By engaging in the conduct

24  described above and pursuant to Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e),

25  defendant Frederick aided and abetted defendant Tuco's violations of Section 15(a) of the

26  Exchange Act, 15 U.S.C. § 78o(a).

27       40.    By engaging in the conduct described above, defendants Tuco and Frederick

28  violated, and unless restrained and enjoined will continue to violate, Section 15(a) of the

Exhibit_____1_____Page____12

1 | Exchange Act, 15 U.S.C. §78o(a).

2 | ### SECOND CLAIM FOR RELIEF

3 | ### FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES

4 | ### VIOLATIONS OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 THEREUNDER

5 | ### (AGAINST TUCO AND FREDERICK)

6 | 41.    The Commission realleges and incorporates by reference paragraphs 1 through 36

7 | above.

8 | 42.    The defendants, and each of them, by engaging in the conduct described above,

9 | directly or indirectly, in connection with the purchase or sale of a security, by the use of means

10 | or instrumentalities of interstate commerce, of the mails, or of the facilities of a national

11 | securities exchange, with scienter:

12 | a.    employed devices, schemes, or artifices to defraud;

13 | b.    made untrue statements of a material fact or omitted to state a material

14 | fact necessary in order to make the statements made, in the light of the

15 | circumstances under which they were made, not misleading; or

16 | c.    engaged in acts, practices, or courses of business which operated or would

17 | operate as a fraud or deceit upon other persons.

18 | 43.    By engaging in the conduct described above, each of the defendants violated, and

19 | unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15

20 | U.S.C. § 78j(b),  and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

21 | ### PRAYER FOR RELIEF

22 | WHEREFORE, the Commission respectfully requests that the Court:

23 | ### I.

24 | Issue findings of fact and conclusions of law that the defendants committed the alleged

25 | violations.

26 | ### II.

27 | Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily

28 | and permanently enjoining defendant Tuco and Frederick and their officers, agents, servants,

-10-        Exhibit____1____Page____13____

1   employees, and attorneys, and those persons in active concert or participation with any of them,

2   who receive actual notice of the order by personal service or otherwise, and each of them, from

3   violating Sections 10(b) and 15(a), of the Exchange Act, 15 U.S.C. §§ 78j(b), 78o(a), and Rule

4   10b-5 thereunder, 17 C.F.R. § 240.10b-5.

5                                         III.

6          Issue in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and a

7   preliminary injunction freezing the assets of defendants Tuco and Frederick; appointing a

8   receiver over defendant Tuco; prohibiting each of the defendants from destroying documents;

9   and ordering accountings from the defendants.

10                                        IV.

11         Order defendants Tuco and Frederick to disgorge all ill-gotten gains from their illegal

12  conduct, together with prejudgment interest thereon.

13                                        V.

14         Order defendants Tuco and Frederick to pay civil penalties under Section 21(d)(3) of the

15  Exchange Act, 15 U.S.C. § 78u(d)(3).

16                                        VI.

17         Retain jurisdiction of this action in accordance with the principles of equity and the

18  Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and

19  decrees that may be entered, or to entertain any suitable application or motion for additional

20  relief within the jurisdiction of this Court.

21                                        VII.

22         Grant such other and further relief as this Court may determine to be just and necessary.

23

24  DATED: March 4, 2008

25                                          ROBERTO A. TERCERO
                                            Attorneys for Plaintiff
26                                          Securities and Exchange Commission

27  I hereby attest and certify on 6/18/08
    That the foregoing document is a full, true and correct
28  copy of the original on file in my office and in my legal
    custody.
          CLERK, U.S. DISTRICT COURT
    SOUTHERN DISTRICT OF CALIFORNIA
    By S. Dennis                          -11-
                  Deputy

Exhibit ___1___ Page ___14___

&JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Securities and Exchange Commission

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Donald W. Searles, Roberto A. Tercero, SEC, 5670 Wilshire Blvd., 11th Fl., Los Angeles, CA 90036, Telephone - 323-965-3998

## DEFENDANTS

08 MAR -4  AM 8: 59

Tuco Trading, LLC and Douglas G. Frederick

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
County of Residence of First Listed Defendant    San Diego
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.           DEPUTY

Attorneys (If Known) **'08 CV 0400 DMS BLM**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15USC78j(b), 17CFR240.10b-5, 15USC780(a)

Brief description of cause:
Securities fraud, broker-dealer registration violations

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE _____   DOCKET NUMBER _____

DATE  03/03/2008

SIGNATURE OF ATTORNEY OF RECORD  _Roberto A. Tercero_

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

Exhibit __I__ Page __15__

03/14/2008 13:07 FAX  8584545360    CONFIDENTIAL    ☑001/006

1  DONALD W. SEARLES, Cal. Bar No. 135705
   SearlesD@sec.gov
2  ROBERTO A. TERCERO, Cal. Bar No. 143760
   TerceroR@sec.gov
3
   Attorneys for Plaintiff
4  Securities and Exchange Commission
   Rosalind R. Tyson, Acting Regional Director
5  Andrew Petillon, Associate Regional Director
   5670 Wilshire Boulevard, 11th Floor
6  Los Angeles, California 90036
   Telephone: (323) 965-3998
7  Facsimile: (323) 965-3908

8

9                    UNITED STATES DISTRICT COURT

10                  SOUTHERN DISTRICT OF CALIFORNIA

11

12

13  SECURITIES AND EXCHANGE            Case No.: 08 CV 00400 DMS (BLM)
    COMMISSION,
14                                     CONSENT OF DEFENDANT DOUGLAS G.
                                       FREDERICK
15            Plaintiff,

16      vs.

17  TUCO TRADING, LLC, and DOUGLAS G.
    FREDERICK,
18
              Defendants.
19

20

21

22

23

24

25

26

27

28

                                                      08cv400

                        Exhibit___2___ Page__16__

1.      Defendant Douglas G. Frederick ("Defendant") acknowledges service of the summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Without admitting or denying the allegations of the complaint (except as to personal jurisdiction and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the Judgment in the form attached hereto (the "Judgment") and incorporated by reference herein, which among other things:

        a.    permanently restrains and enjoins Defendant from violations of Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) & 78o(a), and Rule 10b-5 thereunder, 17 C.F.R. §§ 240.10b-5.

        b.    orders Defendant to pay disgorgement, plus prejudgment interest thereon, in an amount to be determined;

        c.    orders Defendant to pay a civil penalty in an amount to be determined under Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

3.      Defendant agrees that he shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays pursuant to the Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Defendant further agrees that he shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendant pays pursuant to the Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

4.      Defendant agrees that the Court shall order disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3). Defendant further agrees that the amounts of the disgorgement and civil penalty shall be determined by the Court upon motion of the Commission, and that

-1-

Case 3:08-cv-00400-DMS-BLM    Document 50-9    Filed 08/08/2008    Page 38 of 60
03/14/2008 13:07 FAX  8584545360            CONFIDENTIAL                    ☑003/006
     Case 3:08-cv-00400-DMS-BLM    Document 23-3    Filed 03/14/2008    Page 3 of 17

1  prejudgment interest shall be calculated from the date of entry of the Judgment, based on the

2  rates set forth in 28 U.S.C. § 1961. Defendant further agrees that in connection with the

3  Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a

4  motion: (a) Defendant will be precluded from arguing that he did not violate the federal

5  securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of this

6  Consent or the Judgment; (c) solely for the purposes of such motion, the allegations of the

7  Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine

8  the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn

9  deposition or investigative testimony, and documentary evidence, without regard to the standards

10  for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In

11  connection with the Commission's motion for disgorgement and/or civil penalties, the parties

12  may take discovery, including discovery from appropriate non-parties.

13      5.      Defendant agrees that the Court shall enter additional orders, in the form set forth

14  in the Judgment: (a) freezing Tuco's assets; (b) appointing a permanent receiver over Tuco; (c)

15  requiring Defendant to cooperate with and to pays the fees, costs and expenses of the permanent

16  receiver; (d) limiting the permanent receiver's liability for any loss or damage incurred by any of

17  the Defendants as a result of any act or omission of the permanent receiver; (e) granting the

18  Commission continuing access to the books and records of Tuco Trading LLC; and (f)

19  prohibiting the destruction of documents.

20      6.      Defendant waives the entry of findings of fact and conclusions of law pursuant to

21  Rule 52 of the Federal Rules of Civil Procedure.

22      7.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of

23  the Judgment.

24      8.      Defendant enters into this Consent voluntarily and represents that no threats,

25  offers, promises, or inducements of any kind have been made by the Commission or any

26  member, officer, employee, agent, or representative of the Commission to induce Defendant to

27  enter into this Consent.

28

Exhibit___2___ Page___18___    08cv400

9.     Defendant agrees that this Consent shall be incorporated into the Judgment with the same force and effect as if fully set forth therein.

10.     Defendant will not oppose the enforcement of the Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

11.     Defendant waives service of the Judgment and agrees that entry of the Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Judgment.

12.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

13.     Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction

-3-

Exhibit __2__   Page __19__

1   while denying the allegation in the complaint or order for proceedings." 17 C.F.R. § 202.5. In

2   compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to

3   be made any public statement denying, directly or indirectly, any allegation in the complaint or

4   creating the impression that the complaint is without factual basis; and (ii) that upon the filing of

5   this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they

6   deny any allegation in the complaint.  If Defendant breaches this agreement, the Commission

7   may petition the Court to vacate the Judgment and restore this action to its active docket.

8   Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take

9   legal or factual positions in litigation or other legal proceedings in which the Commission is not

10  a party.

11          14.     Defendant hereby waives any rights under the Equal Access to Justice Act, the

12  Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to

13  seek from the United States, or any agency, or any official of the United States acting in his or

14  her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees,

15  expenses, or costs expended by Defendant to defend against this action.  For these purposes,

16  Defendant agrees that Defendant is not the prevailing party in this action since the parties have

17  reached a good faith settlement.

18          15.     In connection with this action and any related judicial or administrative

19  proceeding or investigation commenced by the Commission or to which the Commission is a

20  party, Defendant:  (i) agrees to appear and be interviewed by Commission staff at such times and

21  places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile

22  transmission of notices or subpoenas issued by the Commission for documents or testimony at

23  depositions, hearings, or trials, or in connection with any related investigation by Commission

24  staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices

25  and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on

26  service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local

27  rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and

28  subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to

                                        -4-

                        Exhibit ___2___ Page ___20___        08cv400

03/14/2008 13:08 FAX 8584545360    CONFIDENTIAL    ☐006/006

Case 3:08-cv-00400-DMS-BLM    Document 50-9    Filed 08/08/2008    Page 41 of 60
Case 3:08-cv-00400-DMS-BLM    Document 23-3    Filed 03/14/2008    Page 6 of 17

Mar 14 08 02:47p                                                    p.2

1  personal jurisdiction over Defendant in any United States District Court for purposes of

2  enforcing any such subpoena.

3      16.    Defendant agrees that the Commission may present the Judgment to the Court for

4  signature and entry without further notice.

5      17.    Defendant agrees that this Court shall retain jurisdiction over this matter for the

6  purpose of enforcing

7

8

9  Dated:    3/14/08                         _Douglas G. Frederick_

10

11  State of California

12  County of San Diego

13

14  On 3/14/08 _____ before me, (here insert name and title of the officer), _Robert Brown, a Notary Public_, personally appeared

15  _Douglas b Fredrick_ _____, who proved
   to me on the basis of satisfactory evidence to be the person whose name is subscribed to the

16  within instrument and acknowledged to me that he executed the same in his authorized capacity,
   and that by his signature on the instrument the person, executed the instrument.

17

18  I certify under PENALTY OF PERJURY under the laws of the State of California that the
   foregoing paragraph is true and correct.

19  WITNESS my hand and official seal.

20  Signature _Robert Brown_ _____ (Seal)

21

22

23  Approved as to form:

24  _Michele Fron_
   J. Stephen Young
   Michele R. Fron

25  Keesal, Young and Logan
   400 Oceangate, P.O. Box 1730

26  Long Beach, CA 90801-1730
   Telephone: (562) 436-2000

27

28

ROBERT BROWN
Comm. # 1546794
NOTARY PUBLIC-CALIFORNIA
San Diego County
My Comm. Expires Jan. 23, 2009

I hereby attest and certify on 6/19/08
That the foregoing document is a full, true and correct
copy of the original on file in my office and in my legal
custody.

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _S. Harris_ _____ Deputy

08cv400

-5-

Exhibit    2    Page    21

1

2

3

4

5

6

7

8    **UNITED STATES DISTRICT COURT**

9    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   SECURITIES AND EXCHANGE                    Case No. 08 CV 00400 DMS (BLM)
     COMMISSION,
12                                              **JUDGMENT AS TO DEFENDANTS TUCO TRADING,**
                      Plaintiff,                **LLC AND DOUGLAS G. FREDERICK AND**
13                                              **ORDERS: (1) FREEZING TUCO'S ASSETS; (2)**
                                                **APPOINTING A PERMANENT RECEIVER OVER**
14        vs.                                   **TUCO; AND (3) PROHIBITING THE DESTRUCTION**
                                                **OF DOCUMENTS**
15
     TUCO TRADING, LLC and
16   DOUGLAS G. FREDERICK,

17                    Defendants.

18

19

20        This matter came to be heard upon the Joint Motion ("Joint Motion") for Judgment as to

21   Defendants Tuco Trading, LLC ("Tuco") and Douglas G. Frederick ("Frederick") and Orders:

22   (1) Freezing Tuco's Assets; (2) Appointing a Permanent Receiver over Tuco; and (3) Prohibiting

23   the Destruction of Documents ("Judgment"), which was filed by Plaintiff Securities and

24   Exchange Commission ("Commission"), Defendant Tuco, and Defendant Frederick (collectively

25   the "Parties").

26        The Court, having considered the Parties' Joint Motion and the Consents of Defendants

27   Tuco and Frederick (collectively "Consents"); the Commission having filed a Complaint and

28   Defendants Tuco and Frederick (collectively "Defendants") having entered a general appearance;

EXHIBIT ___-1- / ___ PAGE ___ 6 ___

                                                                    08cv400
                                                    Exhibit ___ 2 ___ Page ___ 22 ___

1   Defendants having consented to the Court's jurisdiction over Defendants and the subject matter

2   of this action; Defendants having consented to entry of this Judgment without admitting or

3   denying the allegations of the Complaint (except as to jurisdiction); Defendants having waived

4   findings of fact and conclusions of law; and Defendants having waived any right to appeal from

5   this Judgment:

6                                                    I.

7          IT IS HEREBY ORDERED that the Parties' Joint Motion for Judgment as to Defendants

8   Tuco Trading, LLC and Douglas G. Frederick and Orders:  (1) Freezing Tuco's Assets; (2)

9   Appointing a Permanent Receiver over Tuco; and (3) Prohibiting the Destruction of Documents

10  is GRANTED.

11                                                   II.

12         IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants and their

13  subsidiaries, affiliates, officers, agents, servants, employees and attorneys, and those persons in

14  active concert or participation with any of them, who receive actual notice of this Judgment, by

15  personal service or otherwise, and each of them, be and hereby are permanently restrained and

16  enjoined from violating Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act")

17  [15 U.S.C. § 78o(a)] by making use of the mails or any means or instrumentality of interstate

18  commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of,

19  any security, without being registered as a broker or dealer in accordance with Section 15(b) of

20  the Exchange Act ]15 U.S.C. § 78o(b)].

21                                                  III.

22         IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants, and their

23  subsidiaries, affiliates, officers, agents, servants, employees and attorneys, and those persons in

24  active concert or participation with any of them, who receive actual notice of this Judgment, by

25  personal service or otherwise, and each of them, be and hereby are permanently restrained and

26  enjoined from, directly or indirectly, in connection with the purchase or sale of any security, by

27  the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility

28  of any national securities exchange:

- 2 -



EXHIBIT ____1____  PAGE __7__  08cv400

Exhibit __2__ Page __23__

A.  employing any device, scheme or artifice to defraud;

B.  making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

C.  engaging in any practice, or course of business which operates or would operate as a fraud or deceit upon any person in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**IV.**

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants shall pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. The Court shall determine the amounts of the disgorgement and civil penalty upon motion of the Commission. Prejudgment interest shall be calculated from the date of entry of the Judgment, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income taxes as set forth in 28 U.S.C. § 1961. In connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendants will be precluded from arguing that either Tuco or Frederick did not violate the federal securities laws as alleged in the Complaint; (b) Defendants may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

///

///

///

- 3 -

EXHIBIT ___1___  PAGE ___8___  08cv400

Exhibit ___2___  Page ___24___

**V.**

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consents of Defendants are incorporated herein with the same force and effect as if fully set forth herein, and that Defendants shall comply with all of the undertakings and agreements set forth therein.

**VI.**

IT IS FURTHER ORDERED that, except as otherwise ordered by this Court, Defendant Tuco and its subsidiaries, affiliates, officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of this Judgment, by personal service or otherwise, and each of them, be and hereby are preliminarily restrained and enjoined from, directly or indirectly, transferring, assigning, selling, hypothecating, changing, wasting, dissipating, converting, concealing, encumbering, or otherwise disposing of, in any manner, any funds, assets, equities, claims, negotiable instruments, or other real or personal property, wherever located, of Defendant Tuco, whether owned by, controlled by, managed by or in the possession or custody of any of them, and from transferring, encumbering, dissipating, incurring charges or cash advances on any debit or credit card or credit arrangement, of Defendant Tuco.

**VII.**

IT IS FURTHER ORDERED that, except as otherwise ordered by this Court, an immediate freeze shall be placed on all monies and assets in all accounts at any bank, financial institution, or brokerage firm, all certificates of deposit, and other funds or assets, held in the name of, for the benefit of, or over which signatory authority is held by Tuco, and its subsidiaries, affiliates, officers, agents, servants, employees or attorneys or any persons in active concert or participation with any of them, including, but not limited to, the accounts set forth below:

| Bank/ Entity Name | Account Name | Account Number(s) |
|---|---|---|
| GLB Trading, Inc. | Tuco Trading LLC Master Account of YU31 | 2131-4075 |

- 4 -

EXHIBIT _1_ PAGE _9_   08cv400

Exhibit _2_   Page _25_

| Bank/ Entity Name | Account Name | Account Number(s) |
|---|---|---|
| GLB Trading, Inc. | Tuco Trading LLC Sub-Account #1 of 21314075 | 2132-0155 |
| GLB Trading, Inc. | Tuco Trading, LLC | 2131-7813 |
| JP Morgan Chase Bank | Tuco Trading LLC Operating Account | 000000722923067 |
| JP Morgan Chase Bank | Tuco Trading LLC Tuco Wire Account | 000000722923075 |
| Wedbush Financial | Tuco Trading LLC c/o Doug Frederick | 8244-9330 |
| Wedbush Financial | Tuco Trading LLC Income and Expense Account | 8244-9331 |
| Evolution Financial | Tuco Trading LLC | 1153-2603 |
| View Trade | Tuco Trading LLC | 4936-3559 |
| MF Global, Inc. | Tuco Trading LLC | E-480-HSP1-SP404 |
| Advantage Futures, LLC | Tuco Trading LLC-Mstr | MH006-A0535 |

## VIII.

IT IS FURTHER ORDERED that Thomas F. Lennon is appointed as permanent receiver of Tuco, with full powers of an equity receiver, including, but not limited to, full power over all funds, assets, accounts, equities, negotiable instruments, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other real or personal property, belonging to, being managed by, or in the possession of or control of Tuco and its subsidiaries and affiliates, and that such permanent receiver is immediately authorized, empowered and directed:

///

- 5 -

EXHIBIT ___1___ PAGE _10_ 08cv400

Exhibit ___2___ Page _26_

A.   to have access to and to collect and take custody, control, possession, and charge of all funds, assets, accounts, equities, negotiable instruments, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other real or personal property, belonging to, being managed by, or in the possession of or control of Tuco and its subsidiaries and affiliates, with full power to sue, foreclose, marshal, sell, liquidate, trade, collect, receive, and take into possession all such property;

B.   to have control of, and to be added as the sole authorized signatory for, all accounts of Tuco and its subsidiaries and affiliates, including all accounts over which Tuco and any of its subsidiaries, affiliates, officers, agents, servants, employees or attorneys have signatory authority, at any bank, financial institution, or brokerage firm (including, but not limited to GLB Trading, Inc.) which has possession, custody, or control of any assets or funds of Tuco or which maintains accounts over which Tuco and/or any of its officers, agents, servants, employees or attorneys have signatory authority;

C.   to conduct such investigation and discovery as may be necessary to locate and account for all of the assets belonging to, being managed by, or in the possession of or control of Tuco and its subsidiaries and affiliates, and to engage and employ attorneys, accountants, and other persons to assist in such investigation and such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any assets belonging to, being managed by, or in the possession of or control of Tuco or any of its subsidiaries or affiliates;

D.   to take such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any assets belonging to, being managed by, or in the possession of or control of Tuco and its subsidiaries and affiliates;

///

- 6 -

Exhibit __2__ Page __27__

08cv400

EXHIBIT ___1___ PAGE __11__

E.   to make an accounting, as soon as practicable, to this Court and the Commission of the assets and financial condition of Tuco and the assets being managed by, or in the possession of or control of Tuco and its subsidiaries and affiliates;

F.   to make such payments and disbursements from the funds and assets taken into custody, control, and possession or thereafter received by him or her, and to incur, or authorize the making of such agreements as may be necessary and advisable in discharging his or her duties as permanent receiver;

G.   to employ attorneys, accountants, and others to investigate, advise and, where appropriate, to institute, pursue, and prosecute all claims and causes of action of whatever kind and nature that may now or hereafter exist as a result of the activities of present or past officers, agents, servants or employees of Tuco;

H.   to have access to and monitor all mail of Tuco in order to review such mail that he or she deems relevant to the business of Tuco and the discharging of his or her duties as permanent receiver; and

I.   to exercise all of the lawful powers of Tuco and its subsidiaries, affiliates, officers, directors, employees, representatives, or persons who exercise similar powers and perform similar duties.

### IX.

IT IS FURTHER ORDERED that Defendants and their subsidiaries, affiliates, officers, agents, servants, employees, and attorneys, and any other persons who are in custody, possession, or control of any assets, negotiable instruments, equities, collateral, books, records, papers, notes, deeds of trust, and other interests in real property, or other property of, or managed by, Tuco (including, but not limited to, GLB Trading, Inc.) shall forthwith give access to and control of such property to the permanent receiver.

### X.

IT IS FURTHER ORDERED that no subsidiary, affiliate, officer, member, agent, servant, employee, or attorney of Defendant Tuco, shall take any action or purport to take any

- 7 -

EXHIBIT _____1_____ PAGE __12__     08cv400

Exhibit ___2___ Page __28__

1 action, in the name of or on behalf of Tuco, without the written consent of the permanent

2 receiver or order of this Court.

XI.

4      IT IS FURTHER ORDERED that, except by leave of this Court, during the pendency of

5 this receivership, all clients, members, investors, trust beneficiaries, note holders, creditors,

6 claimants, lessors, and all other persons or entities seeking relief of any kind, in law or in equity,

7 from Tuco, and all persons acting on behalf of any such client, member, investor, trust

8 beneficiary, note holder, creditor, claimant, lessor, or other person, including sheriffs, marshals,

9 servants, agents, employees, and attorneys, are hereby preliminarily restrained and enjoined

10 from, directly or indirectly, with respect to Tuco:

11      A.    commencing, prosecuting, continuing, or enforcing any suit or proceeding (other

12            than the present action by the Commission) against Tuco;

13      B.    using self-help or executing or issuing or causing the execution or issuance of any

14            court attachment, subpoena, replevin, execution, or other process for the purpose

15            of impounding or taking possession of or interfering with or creating or enforcing

16            a lien upon any property or property interests owned by or in the possession of

17            Tuco, wherever situated; and

18      C.    doing any act or thing whatsoever to interfere with taking control, possession, or

19            management by the permanent receiver appointed hereunder of the property and

20            assets owned, controlled or in the possession of Tuco, or in any way to interfere

21            with or harass the permanent receiver, or his attorneys, accountants, employees, or

22            agents or to interfere in any manner with the discharge of the permanent receiver's

23            duties and responsibilities hereunder.

XII.

25      IT IS FURTHER ORDERED that Defendants, and their subsidiaries, affiliates, officers,

26 agents, servants, employees, and attorneys, shall cooperate with and assist the permanent

27 receiver, his attorneys, accountants, employees, and agents and shall take no action, directly or

28 indirectly, to hinder, obstruct, or otherwise interfere with the permanent receiver, and his or her

1  attorneys, accountants, employees, or agents in the conduct of the permanent receiver's duties or

2  to interfere in any manner, directly or indirectly, with the custody, possession, management, or

3  control by the permanent receiver of the funds, assets, negotiable instruments, collateral,

4  premises, and choses in action described above.

5                                                    XIII.

6          IT IS FURTHER ORDERED that Defendants shall pay the costs, fees, and expenses of

7  the permanent receiver incurred in connection with the performance of his or her duties

8  described in this Judgment, including the costs and expenses of those persons who may be

9  engaged or employed by the permanent receiver to assist him or her in carrying out his or her

10  duties and obligations.  All applications for costs, fees and expenses for services rendered in

11  connection with the permanent receivership other than routine and necessary business expenses

12  in conducting the permanent receivership, such as salaries, rent, and any and all other reasonable

13  operating and liquidating expenses, shall be made by application setting forth in reasonable detail

14  the nature of the services and shall be heard by the Court.

15                                                    XIV.

16          IT IS FURTHER ORDERED that no bond shall be required in connection with the

17  appointment of the permanent receiver.  Except for an act of gross negligence, the permanent

18  receiver shall not be liable for any loss or damage incurred by any of the Defendants, their

19  officers, agents, servants, employees, and attorneys or any other person, by reason of any act

20  performed or omitted to be performed by the permanent receiver in connection with the

21  discharge of his duties and responsibilities.  In particular, the permanent receiver shall not be

22  liable for any losses incurred in connection with any of the sub-accounts held by Defendants

23  arising out of or related to the permanent receiver's work hereunder, including, but not limited

24  to, losses from either the sale or failure to sell securities or delays in the sale of securities during

25  the course of the permanent receiver's term.

26                                                    XV.

27          IT IS FURTHER ORDERED that representatives of the Commission are authorized to

28  have continuing access to inspect or copy any or all of the corporate books and records and other

- 9 -

EXHIBIT ___1___ PAGE ___14___    08cv400

Exhibit____2____ Page___30___

1 documents of Tuco, and their subsidiaries and affiliates, and continuing access to inspect their

2 funds, property, assets, equities, negotiable instruments, and collateral, wherever located.

3 **XVI.**

4     IT IS FURTHER ORDERED that, except as otherwise ordered by this Court, Defendants

5 and their subsidiaries, affiliates, officers, agents, servants, employees, attorneys, and those

6 persons in active concert or participation with any of them, who receive actual notice of this

7 Judgment, by personal service or otherwise, and each of them, be and hereby are preliminarily

8 restrained and enjoined from, directly or indirectly: destroying, mutilating, concealing,

9 transferring, altering, or otherwise disposing of, in any manner, any documents, which includes

10 all books, records, computer programs, computer files, computer printouts, correspondence,

11 memoranda, brochures, or any other documents of any kind in their possession, custody, or

12 control, however created, produced, or stored (manually, mechanically, electronically, or

13 otherwise), pertaining in any manner to Defendants.

14 **XVII.**

15     IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

16 jurisdiction of this matter for the purposes of enforcing the terms of this Judgment.

17 **XVIII.**

18     There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

19 Procedure, the Clerk is ordered to enter this Judgment forthwith and without further notice.

20

21 IT IS SO ORDERED.

22     DATED: March _____, 2008

23

24

25                        UNITED STATES DISTRICT JUDGE

26

27

28

CERTIFICATE OF SERVICE

Pursuant to CivLR 5.2, I hereby certify that I am a member of the bar of this Court and

that, on March 14, 2008, I served by e-mail the following document – Consent of Defendant

Douglas G. Frederick – upon the following individuals at the e-mail addresses below:

| Counsel to Defendants Tuco Trading, LLC and Douglas G. Frederick | Counsel to Receiver Thomas F. Lennon |
|---|---|
| J. Stephen Young<br>Michele R. Fron<br>Audette Paul Morales<br>Keesal, Young & Logan<br>400 Oceangate, P.O. Box 1730<br>Long Beach, CA 90802-1730<br>T/562-436-2000 (General)<br>F/562-436-7416<br>E/steve.young@kyl.com<br>E/michele.fron@kyl.com<br>E/audette.morales@kyl.com | David Osias<br>Deb Riley<br>Ted Fates<br>Allen Matkins Leck Gamble<br>  Mallory & Natsis LLP<br>501 W. Broadway, 15th Floor<br>San Diego, CA 92101-1158<br>T/619-233-1155<br>F/619-233-1158<br>E/dosias@allenmatins.com<br>E/driley@allenmatkins.com<br>E/tfates@allenmatkins.com |

Dated: March 14, 2008

/s/ Roberto A. Tercero
Roberto A. Tercero
Attorney for Plaintiff
Securities and Exchange Commission

Exhibit ___2___ Page ___32___          08cv400

1
2
3
4
5
6
7
8                              UNITED STATES DISTRICT COURT

9                            SOUTHERN DISTRICT OF CALIFORNIA

10

11   SECURITIES AND EXCHANGE                      Case No. 08 CV 00400 DMS (BLM)
     COMMISSION,
12                                                **JUDGMENT AS TO DEFENDANTS TUCO TRADING,**
                       Plaintiff,                 **LLC AND DOUGLAS G. FREDERICK AND**
13                                                **ORDERS: (1) FREEZING TUCO'S ASSETS; (2)**
                                                  **APPOINTING A PERMANENT RECEIVER OVER**
14          vs.                                   **TUCO; AND (3) PROHIBITING THE DESTRUCTION**
                                                  **OF DOCUMENTS**
15
     TUCO TRADING, LLC and
16   DOUGLAS G. FREDERICK,

17                     Defendants.

18

19

20          This matter came to be heard upon the Joint Motion ("Joint Motion") for Judgment as to

21   Defendants Tuco Trading, LLC ("Tuco") and Douglas G. Frederick ("Frederick") and Orders:

22   (1) Freezing Tuco's Assets; (2) Appointing a Permanent Receiver over Tuco; and (3) Prohibiting

23   the Destruction of Documents ("Judgment"), which was filed by Plaintiff Securities and

24   Exchange Commission ("Commission"), Defendant Tuco, and Defendant Frederick (collectively

25   the "Parties").

26          The Court, having considered the Parties' Joint Motion and the Consents of Defendants

27   Tuco and Frederick (collectively "Consents"); the Commission having filed a Complaint and

28   Defendants Tuco and Frederick (collectively "Defendants") having entered a general appearance;

                              - 1 -      Exhibit  _3_  Page _33_
                                                                  08cv400

Defendants having consented to the Court's jurisdiction over Defendants and the subject matter of this action; Defendants having consented to entry of this Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); Defendants having waived findings of fact and conclusions of law; and Defendants having waived any right to appeal from this Judgment:

**I.**

IT IS HEREBY ORDERED that the Parties' Joint Motion for Judgment as to Defendants Tuco Trading, LLC and Douglas G. Frederick and Orders: (1) Freezing Tuco's Assets; (2) Appointing a Permanent Receiver over Tuco; and (3) Prohibiting the Destruction of Documents is GRANTED.

**II.**

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants and their subsidiaries, affiliates, officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of this Judgment, by personal service or otherwise, and each of them, be and hereby are permanently restrained and enjoined from violating Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)] by making use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security, without being registered as a broker or dealer in accordance with Section 15(b) of the Exchange Act ]15 U.S.C. § 78o(b)].

**III.**

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants, and their subsidiaries, affiliates, officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of this Judgment, by personal service or otherwise, and each of them, be and hereby are permanently restrained and enjoined from, directly or indirectly, in connection with the purchase or sale of any security, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange:

A.   employing any device, scheme or artifice to defraud;

B.   making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

C.   engaging in any practice, or course of business which operates or would operate as a fraud or deceit upon any person in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**IV.**

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants shall pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. The Court shall determine the amounts of the disgorgement and civil penalty upon motion of the Commission. Prejudgment interest shall be calculated from the date of entry of the Judgment, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income taxes as set forth in 28 U.S.C. § 1961. In connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendants will be precluded from arguing that either Tuco or Frederick did not violate the federal securities laws as alleged in the Complaint; (b) Defendants may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

///

///

///

- 3 -

Exhibit ___3___ Page ___35___

08cv400

**V.**

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consents of Defendants are incorporated herein with the same force and effect as if fully set forth herein, and that Defendants shall comply with all of the undertakings and agreements set forth therein.

**VI.**

IT IS FURTHER ORDERED that, except as otherwise ordered by this Court, Defendant Tuco and its subsidiaries, affiliates, officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of this Judgment, by personal service or otherwise, and each of them, be and hereby are preliminarily restrained and enjoined from, directly or indirectly, transferring, assigning, selling, hypothecating, changing, wasting, dissipating, converting, concealing, encumbering, or otherwise disposing of, in any manner, any funds, assets, equities, claims, negotiable instruments, or other real or personal property, wherever located, of Defendant Tuco, whether owned by, controlled by, managed by or in the possession or custody of any of them, and from transferring, encumbering, dissipating, incurring charges or cash advances on any debit or credit card or credit arrangement, of Defendant Tuco.

**VII.**

IT IS FURTHER ORDERED that, except as otherwise ordered by this Court, an immediate freeze shall be placed on all monies and assets in all accounts at any bank, financial institution, or brokerage firm, all certificates of deposit, and other funds or assets, held in the name of, for the benefit of, or over which signatory authority is held by Tuco, and its subsidiaries, affiliates, officers, agents, servants, employees or attorneys or any persons in active concert or participation with any of them, including, but not limited to, the accounts set forth below:

| **Bank/ Entity Name** | **Account Name** | **Account Number(s)** |
|---|---|---|
| GLB Trading, Inc. | Tuco Trading LLC Master Account of YU31 | 2131-4075 |

| Bank/ Entity Name | Account Name | Account Number(s) |
|---|---|---|
| GLB Trading, Inc. | Tuco Trading LLC Sub-Account #1 of 21314075 | 2132-0155 |
| GLB Trading, Inc. | Tuco Trading, LLC | 2131-7813 |
| JP Morgan Chase Bank | Tuco Trading LLC Operating Account | 000000722923067 |
| JP Morgan Chase Bank | Tuco Trading LLC Tuco Wire Account | 000000722923075 |
| Wedbush Financial | Tuco Trading LLC c/o Doug Frederick | 8244-9330 |
| Wedbush Financial | Tuco Trading LLC Income and Expense Account | 8244-9331 |
| Evolution Financial | Tuco Trading LLC | 1153-2603 |
| View Trade | Tuco Trading LLC | 4936-3559 |
| MF Global, Inc. | Tuco Trading LLC | E-480-HSP1-SP404 |
| Advantage Futures, LLC | Tuco Trading LLC-Mstr | MH006-A0535 |

## VIII.

IT IS FURTHER ORDERED that Thomas F. Lennon is appointed as permanent receiver of Tuco, with full powers of an equity receiver, including, but not limited to, full power over all funds, assets, accounts, equities, negotiable instruments, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other real or personal property, belonging to, being managed by, or in the possession of or control of Tuco and its subsidiaries and affiliates, and that such permanent receiver is immediately authorized, empowered and directed:

///

A.   to have access to and to collect and take custody, control, possession, and charge of all funds, assets, accounts, equities, negotiable instruments, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other real or personal property, belonging to, being managed by, or in the possession of or control of Tuco and its subsidiaries and affiliates, with full power to sue, foreclose, marshal, sell, liquidate, trade, collect, receive, and take into possession all such property;

B.   to have control of, and to be added as the sole authorized signatory for, all accounts of Tuco and its subsidiaries and affiliates, including all accounts over which Tuco and any of its subsidiaries, affiliates, officers, agents, servants, employees or attorneys have signatory authority, at any bank, financial institution, or brokerage firm (including, but not limited to GLB Trading, Inc.) which has possession, custody, or control of any assets or funds of Tuco or which maintains accounts over which Tuco and/or any of its officers, agents, servants, employees or attorneys have signatory authority;

C.   to conduct such investigation and discovery as may be necessary to locate and account for all of the assets belonging to, being managed by, or in the possession of or control of Tuco and its subsidiaries and affiliates, and to engage and employ attorneys, accountants, and other persons to assist in such investigation and such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any assets belonging to, being managed by, or in the possession of or control of Tuco or any of its subsidiaries or affiliates;

D.   to take such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any assets belonging to, being managed by, or in the possession of or control of Tuco and its subsidiaries and affiliates;

///

- 6 -

Exhibit  3  Page  38

E.  to make an accounting, as soon as practicable, to this Court and the Commission of the assets and financial condition of Tuco and the assets being managed by, or in the possession of or control of Tuco and its subsidiaries and affiliates;

F.  to make such payments and disbursements from the funds and assets taken into custody, control, and possession or thereafter received by him or her, and to incur, or authorize the making of such agreements as may be necessary and advisable in discharging his or her duties as permanent receiver;

G.  to employ attorneys, accountants, and others to investigate, advise and, where appropriate, to institute, pursue, and prosecute all claims and causes of action of whatever kind and nature that may now or hereafter exist as a result of the activities of present or past officers, agents, servants or employees of Tuco;

H.  to have access to and monitor all mail of Tuco in order to review such mail that he or she deems relevant to the business of Tuco and the discharging of his or her duties as permanent receiver; and

I.  to exercise all of the lawful powers of Tuco and its subsidiaries, affiliates, officers, directors, employees, representatives, or persons who exercise similar powers and perform similar duties.

## IX.

IT IS FURTHER ORDERED that Defendants and their subsidiaries, affiliates, officers, agents, servants, employees, and attorneys, and any other persons who are in custody, possession, or control of any assets, negotiable instruments, equities, collateral, books, records, papers, notes, deeds of trust, and other interests in real property, or other property of, or managed by, Tuco (including, but not limited to, GLB Trading, Inc.) shall forthwith give access to and control of such property to the permanent receiver.

## X.

IT IS FURTHER ORDERED that no subsidiary, affiliate, officer, member, agent, servant, employee, or attorney of Defendant Tuco, shall take any action or purport to take any

- 7 -    Exhibit___3___Page___39

Case 3:08-cv-00400-DMS-BLM    Document 24    Filed 03/17/2008    Page 8 of 10

1    action, in the name of or on behalf of Tuco, without the written consent of the permanent

2    receiver or order of this Court.

3                                    **XI.**

4         IT IS FURTHER ORDERED that, except by leave of this Court, during the pendency of

5    this receivership, all clients, members, investors, trust beneficiaries, note holders, creditors,

6    claimants, lessors, and all other persons or entities seeking relief of any kind, in law or in equity,

7    from Tuco, and all persons acting on behalf of any such client, member, investor, trust

8    beneficiary, note holder, creditor, claimant, lessor, or other person, including sheriffs, marshals,

9    servants, agents, employees, and attorneys, are hereby preliminarily restrained and enjoined

10   from, directly or indirectly, with respect to Tuco:

11        A.    commencing, prosecuting, continuing, or enforcing any suit or proceeding (other

12              than the present action by the Commission) against Tuco;

13        B.    using self-help or executing or issuing or causing the execution or issuance of any

14              court attachment, subpoena, replevin, execution, or other process for the purpose

15              of impounding or taking possession of or interfering with or creating or enforcing

16              a lien upon any property or property interests owned by or in the possession of

17              Tuco, wherever situated; and

18        C.    doing any act or thing whatsoever to interfere with taking control, possession, or

19              management by the permanent receiver appointed hereunder of the property and

20              assets owned, controlled or in the possession of Tuco, or in any way to interfere

21              with or harass the permanent receiver, or his attorneys, accountants, employees, or

22              agents or to interfere in any manner with the discharge of the permanent receiver's

23              duties and responsibilities hereunder.

24                                   **XII.**

25        IT IS FURTHER ORDERED that Defendants, and their subsidiaries, affiliates, officers,

26   agents, servants, employees, and attorneys, shall cooperate with and assist the permanent

27   receiver, his attorneys, accountants, employees, and agents and shall take no action, directly or

28   indirectly, to hinder, obstruct, or otherwise interfere with the permanent receiver, and his or her