1  DONALD W. SEARLES, Cal. Bar No. 135705
   SearlesD@sec.gov
2  ROBERTO A. TERCERO, Cal. Bar No. 143760
   TerceroR@sec.gov
3
   Attorneys for Plaintiff
4  Securities and Exchange Commission
   Rosalind R. Tyson, Regional Director
5  Andrew Petillon, Associate Regional Director
   5670 Wilshire Boulevard, 11th Floor
6  Los Angeles, California 90036
   Telephone:  (323) 965-3998
7  Facsimile: (323) 965-3908

8

9                UNITED STATES DISTRICT COURT

10              SOUTHERN DISTRICT OF CALIFORNIA

11 SECURITIES AND EXCHANGE            Case No. 08 CV 00400 DMS (BLM)
   COMMISSION,
12                                    **PLAINTIFF'S OPPOSITION TO**
                Plaintiff,            **DEFENDANTS TUCO TRADING, LLC'S**
13                                    **AND DOUGLAS G. FREDERICK'S**
          vs.                        **MOTION UNDER FED. R. CIV. P. 60(b)(6)**
14                                    **FOR VACATUR OF THE JUDGMENT**

15 TUCO TRADING, LLC, and DOUGLAS G.  Date:      September 19, 2008
   FREDERICK,                         Time:      1:30 p.m.
16                                    Place:     Courtroom 10
                Defendants.                      (Honorable Dana M. Sabraw)
17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.   Introduction ...................................................................................................................1

II.  The Standard For Granting Relief Under Rule 60(b)(6) Requires A
     Showing Of "Extraordinary Circumstances" And A Meritorious Defense,
     Neither Of Which Is Satisfied Here .........................................................................2

III. The Collateral Estoppel Consequences Of Frederick's Consent Judgment In
     The Division of Enforcement's Follow-On Administrative Proceeding ....................4

IV.  The Fact That Frederick Now Regrets His Decision To Settle In Light Of The
     Follow-On Administrative Proceeding Does Not Amount To "Extraordinary
     Circumstances" Warranting Relief ...........................................................................5

V.   Relief Under Rule 60(b) Must Be Denied As Frederick Has Failed To Demonstrate
     That He Has A Meritorious Defense To The Underlying Action .................................7

     A.    Frederick's Conduct Violated Section 10(b) Of The Exchange Act ...........................8

     B.    Frederick's Conduct Violated The Broker-Dealer Provisions Of
           The Exchange Act ..............................................................................................10

VI.  Frederick's Personal Financial Circumstances At The Time He Signed
     His Consent Are Not Relevant ..................................................................................12

     A.    The "Potential" Freeze On Frederick's Assets Does Not Warrant Relief ...............13

     B.    Penson's Unilateral Decision To Suspend Trading Activity In Tuco's
           Accounts Does Not Warrant Relief ....................................................................14

     C.    Frederick Has A Full And Fair Opportunity To Present His Case ...........................15

VII. The Commission Will Be Prejudiced If Relief Is Granted ........................................15

VIII. Conclusion ................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*Ackermann v. United States*
   340 U.S. 193 (1950) ............................................................................. 3, 7, 12

*Cashner v. Freedom Stores, Inc.*
   98 F.3d 572 (10th Cir. 1996) ................................................................. 7

*Cassidy v. Tenorio*
   856 F.2d 1412 (9th Cir. 1988) ............................................................... 3, 15

*Elliott v. SEC*
   36 F.3d 86 (11th Cir. 1994) ................................................................... 4

*Falk v. Allen*
   739 F.2d 461 (9th Cir. 1984) ................................................................. 3

*Harrison v. Fred S. James, P.A., Inc.*
   558 F. Supp. 438 (E.D. Pa. 1983) ......................................................... 12

*Homefront, Inc. v. Cashmere Crafts, Inc.*
   2005 U.S. Dist. LEXIS 40401 (N.D. Cal. Dec. 12, 2005) ...................... 3, 15

*In re Castle Secs. Corp.*
   2005 SEC LEXIS 815 (Apr. 21, 2005) .................................................. 4

*In re Hammer*
   940 F.2d 524 (9th Cir. 1991) ................................................................. 3

*In re M/V Peacock*
   809 F.2d 1403 (9th Cir. 1987) ............................................................... 15

*In re Martin Kaiden*
   54 S.E.C. 194 (Jul. 20, 1999) ................................................................ 6

*In re Martinelli*
   96 B.R. 1011 (9th Cir. 1988) ................................................................. 2

*In re Michael Batterman*
   2004 SEC LEXIS 2855 (Dec. 3, 2005) .................................................. 4

*In re Michael T. Studer, et al.*
   2004 SEC 2135 (Sept. 20, 2004) ........................................................... 4

*In re Pacific Far East Lines, Inc.*
      889 F.2d 242 (9th Cir. 1989).................................................................... 2, 3

*In re William H. Mathis*
      1990 SEC LEXIS 291 (Aug. 3, 1990)........................................................... 4, 6

*Latshaw v. Trainer Wortham & Co., Inc.*
      452 F.3d 1097 (9th Cir. 2006).................................................................... 3

*Liljeberg v. Health Services Acquisition Corp.*
      486 U.S. 847 (1988) ................................................................................ 2

*Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp.*
      411 F. Supp. 411 (D. Mass.), *aff'd*, 545 F.2d 754 (1st. Cir. 1976) ............................ 10, 11

*McIntosh v. Consolidated Edison Co.*
      1999 U.S. Dist. LEXIS 3264 (S.D.N.Y. Mar. 19, 1999),
      *aff'd*, 2000 U.S. App. LEXIS 13555 (2d Cir. June 8, 2000)...................................... 12, 13

*Merrill Lynch, Pierce, Fenner & Smith v. Adcock*
      176 F.R.D. 539 (N.D. Ill. 1997) .............................................................. 13

*Nemaizer v. Baker*
      793 F.2d 58 (2d Cir. 1986)...................................................................... 7

*Pettle v. Bickham*
      410 F.3d 189 (5th Cir. 2005).................................................................... 6

*Pierce v. Atchison, Topeka and Santa Fe Ry. Co.*
      65 F.3d 562 (7th Cir. 1995)..................................................................... 12

*Pioneer Investment Services Co. v. Brunswick Assocs. Ltd Partnership*
      507 U.S. 380 (1993) .............................................................................. 2

*Price v. Seydel*
      961 F.2d 1470 (9th Cir. 1992)................................................................... 15

*Schwartz v. United States*
      976 F.2d 213 (4th Cir. 1992).................................................................... 3, 7

*SEC v. Hansen*
      1984 U.S. Dist. LEXIS 17835 (S.D.N.Y. Apr. 6, 1984)............................................ 10, 11

*SEC v. Margolis*
      1992 U.S. Dist. LEXIS 14872 (S.D.N.Y. Sept. 30, 1992) ......................................... 10

*SEC v. McNulty*
      1996 U.S. Dist. LEXIS 10649 (S.D.N.Y. July 29, 1996) .......................................... 3

*SEC v. Rana Research, Inc.*
    8 F.3d 1358 (9th Cir. 1993)..........................................................................9

*SEC v. Schmidt*
    1971 U.S. Dist. LEXIS 11884 (S.D.N.Y. Aug. 26, 1971) ...............................11

*SEC v. Zandford*
    535 U.S. 813 (2002) .........................................................................................9

*United States v. Alpine Land & Reservoir Co.*
    984 F.2d 1047 (9th Cir. 1993).........................................................................2

## FEDERAL STATUTES

28 U.S.C. § 2112 ......................................................................................................7

**Securities Exchange Act of 1934**

Section 3(a)(4)
    [15 U.S.C. § 78c(a)(4)]...............................................................................10

Section 10(b)
    [15 U.S.C. § 78j(b)].........................................................8, 9, 10, 11, 15

Section 15(a)
    [15 U.S.C. § 78o(a)]...............................................................................10, 11

Section 15(b)(6)
    [15 U.S.C. § 78o(b)(6)] ...................................................................................4

## FEDERAL REGULATIONS

17 C.F.R. § 201.411 ..................................................................................................7

17 C.F.R. § 201.490 ..................................................................................................7

Rule 10b-5
    [17 C.F.R. § 240.10b-5] .................................................................................8

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 59(b) .................................................................................................2

Fed. R. Civ. P. 60(b) ................................................................1, 2, 3, 6, 12, 14, 15

Fed. R. Civ. P. 60(b)(1)........................................................................................... 2

Fed. R. Civ. P. 60(b)(1)-(5)...................................................................................... 2

Fed. R. Civ. P. 60(b)(2)........................................................................................... 2

Fed. R. Civ. P. 60(b)(3)........................................................................................... 2

Fed. R. Civ. P. 60(b)(4)........................................................................................... 2

Fed. R. Civ. P. 60(b)(5)........................................................................................... 2

Fed. R. Civ. P. 60(b)(6).......................................................................... 1, 2, 5, 11, 16

Fed. R. Civ. P. 60(b)(c)......................................................................................... 15

## OTHER AUTHORITIES

12 *Moore's Federal Practice*
    § 60.24 (Matthew Bender 3d ed.)....................................................................... 3

12 *Moore's Federal Practice*
    § 60.41[1][c] (Matthew Bender 3d ed.)............................................................... 6

12 *Moore's Federal Practice*
    § 60.43[1][c] (Matthew Bender 3d ed.)............................................................... 15

12 *Moore's Federal Practice*
    § 60.48[3][c] (Matthew Bender 3d ed.)............................................................... 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    **Introduction**

Defendants Tuco Trading, LLC's ("Tuco") and Douglas Frederick's ("Frederick") motion, pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, for a "modification" and "partial vacatur" of the consent judgment entered by this Court on March 17, 2008, should be denied as defendants have failed to demonstrate "extraordinary circumstances" that would entitle them to relief.[1]  Defendants' motion is not the product of Frederick having suddenly awoken from a stressful slumber, as he claims, but is rather a litigation tactic designed to avoid the collateral estoppel effect of this Court's judgment in the Commission's Division of Enforcement's follow-on administrative proceeding against him, which has been fully briefed and is awaiting decision by an administrative law judge.  Frederick made a deliberate and counseled choice to settle.  He did so to avoid the uncertainty of trial and its attendant litigation costs, and the fact that Frederick may now regret his decision in light of the preclusive effect of this Court's judgment in the administrative action does not arise to a showing of "extraordinary circumstances."

To be entitled to relief under Rule 60(b)(6), defendants must also demonstrate that they have a meritorious defense to the action.  In that regard, defendants only claim that the Commission's action was unprecedented (in fact, it was not), but they make no assertion that they have a meritorious defense or that the ultimate outcome of the proceedings would be any different if the judgment were to be vacated.  Rule 60(b)(6) is to be used sparingly to prevent a manifest injustice; it is not intended to give settling defendants a second bite at the apple, particularly where the outcome would not be any different.

Finally, the fact that Frederick was under "considerable stress" at the time he signed his consent, in light of his scant financial resources and other personal circumstances, is simply irrelevant.  If such a showing were all that is required under Rule 60(b), no case could ever be considered final, as virtually defendant is required, under stressful circumstances, to conduct a

---

[1]    Defendants do not explain which portions of the consent or judgment they want modified or vacated. Accordingly, for purposes of analysis, defendants' motion will be treated as a motion to vacate the judgment it is entirety and to reset the matter for a hearing on the Commission's motion for a preliminary injunction and for a trial on the merits.   The Commission notes that if this Court were to grant defendants' Rule 60(b0(6) motion, provision must be made  for the continued appointment of the receiver, who is in the process of winding Tuco down.

08 CV 00400 DMS (BLM)

cost/benefit analysis in choosing between continued litigation and settlement.

**II.    The Standard For Granting Relief Under Rule 60(b)(6) Requires A Showing Of "Extraordinary Circumstances" And A Meritorious Defense, Neither Of Which Is Satisfied Here**

Rule 60(b) of the Federal Rules of Civil Procedure provides that a court may relieve a party from a final judgment for the following reasons:

(1)    mistake, inadvertence, surprise or excusable neglect;

(2)    newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)    fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)    the judgment is void;

(5)    the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)    any other reason that justifies relief.

The specific clauses of Rule 60(b)(1)-(5) and the "catchall" provision of Rule 60(b)(6) are mutually exclusive, in that a motion brought under (b)(6) may not be premised on one of the grounds enumerated in clauses (b)(1) to (b)(5). *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863 & n.11 (1988). In addition to showing that his motion does not, in fact, fall under clauses (b)(1) to (b)(5), a movant proceeding under clause (b)(6) must also demonstrate "extraordinary circumstances." *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd Partnership*, 507 U.S. 380, 393 (1993). *Accord United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049-50 (9th Cir. 1993) (Rule 60(b)(6) "has been used sparingly as an equitable remedy to prevent manifest injustice. This rule is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment."); *In re Pacific Far East Lines, Inc.*, 889 F.2d 242 (9th Cir. 1989) (same). In order to satisfy that heavy burden, Frederick must demonstrate, among other things, that he is completely without fault or is not otherwise responsible for his predicament. *Pioneer Investment Services Co.*, *supra,* 507 U.S. at 393; *In re Martinelli*, 96 B.R. 1011 (9th Cir. 1988) (burden is on the movant to bring himself within the provisions of Rule 60(b)(6)).

If the judgment, as here, is the result of a deliberate litigation choice by the movant, it must stand.  As the Supreme Court observed in the leading Rule 60(b) case, *Ackermann v. United States*, 340 U.S. 193, 198 (1950):

> Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home.  His choice was a risk, but calculated and deliberate and such as follows a free choice.  Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision was probably wrong…..There must be an end to litigation someday, and free, calculated choices are not to be relieved from.

*Accord, Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1101 (9th Cir. 2006) ("Rule 60(b) is not intended to remedy the effects of a deliberate and independent litigation decision that a party later comes to regret through second thoughts or subsequently-gained knowledge that corrects prior erroneous legal advice of counsel.") (collecting cases); *In re Pacific Far East Lines, Inc., supra,* 889 F.2d at 250 ("Where parties have made deliberate litigation choices, Rule 60(b) should not provide a second chance."); *Schwartz v. United States*, 976 F.2d 213, 218-19 (4th Cir. 1992) ("The decision to settle a case is made in the same manner as any other decision with respect to the course of litigation…..His was [a] calculated, free and deliberate choice …[and] he should not be relieved from it.").  Similarly, the failure to take advantage of pre-judgment opportunities to litigate an issue will preclude the use of the issue to secure relief under Rule 60(b)(6).  12 *Moore's Federal Practice*, § 60.48[3][c] (Matthew Bender 3d ed.).

In addition, a movant must demonstrate that he or she has a meritorious defense.  *In re Hammer*, 940 F.2d 524, 525-26 (9th Cir. 1991); *Cassidy v. Tenorio*, 856 F.2d 1412, 1415-18 (9th Cir. 1988); *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984); *Homefront, Inc. v. Cashmere Crafts, Inc.*, 2005 U.S. Dist. LEXIS 40401, at *3 (N.D. Cal. Dec. 12, 2005).  *See also*, 12 *Moore's Federal Practice*, § 60.24 (Matthew Bender 3d ed.) ("A precondition of relief from judgment is that the movant show that he or she has a meritorious claim or defense.  The moving party must demonstrate 'that vacating the judgment will not be an empty exercise.'") (citations omitted).  To make a showing of a meritorious defense, conclusory allegations are not sufficient; rather, a movant must point to specific facts that, if proven at trial, would constitute a defense to the claim asserted.  *SEC v. McNulty*, 1996 U.S. Dist. LEXIS 10649, at *14 (S.D.N.Y. July 29, 1996).

### III. The Collateral Estoppel Consequences Of Frederick's Consent Judgment In The Division of Enforcement's Follow-On Administrative Proceeding

Before addressing the merits of Frederick's motion, it is important to place his request to vacate the judgment in its proper context. Frederick seeks to vacate the judgment -- not because he did not know what he was doing at the time he signed the consent -- but because he seeks to avoid the collateral estoppel effect of the consent judgment in the Division of Enforcement's follow-on administrative proceeding.

With respect to that administrative proceeding, as a matter of law, the issuance of a permanent injunction for any conduct or practice connected with activity of a broker-dealer or in connection the purchase or sale of any security, is a sufficient basis to impose an administrative bar. *See* 15 U.S.C. § 78o(b)(6) (authorizing institution of administrative proceedings against any associated person for, among other things, being enjoined from any act or practice described in 15 U.S.C. § 78o(b)(4)(C)). *See, e.g., Elliott v. SEC*, 36 F.3d 86, 87 (11th Cir. 1994) ("[u]nder the statutory language, existence of the injunction provides a ground for the bar adequate in itself."); *In re William H. Mathis*, 1990 SEC LEXIS 291, at *6-7 (Aug. 3, 1990) ("[t]he proof of the entry of such an injunction, whether based on the defendant's consent or otherwise, and whether the defendant has denied the allegations of the complaint or not, may in itself form a sufficient basis for finding that revocation is in the public interest.").

In connection with such administrative proceedings, the Commission has "consistently applied the doctrine of collateral estoppel to prevent respondents from relitigating in an administrative proceeding … factual findings or legal conclusions previously determined." *In re Michael Batterman*, 2004 SEC LEXIS 2855, at *13, n. 18 (Dec. 3, 2005). *Accord, In re Michael T. Studer, et al.,* 2004 SEC 2135, at *6 (Sept. 20, 2004) ("[f]indings of fact and conclusions of law made in an injunctive action cannot be attacked in a subsequent administrative proceeding") (collecting cases), *aff'd, sub nom, In re Castle Secs. Corp.*, 2005 SEC LEXIS 815, at *4-5 (Apr. 21, 2005); *In re William H. Mathis, supra,* 1990 SEC LEXIS 2911, at *15-16 ("Commission case law and common sense support a finding that respondent should not be allowed to demonstrate that he did not violate the securities statutes in an administrative proceeding based on the existence of an injunction to which he consented where the issue is whether or not a sanction is

4

1  in the public interest.").

2  Hence, placed in its proper context, it is obvious that Frederick seeks to avoid the

3  collateral estoppel effect of this Court's judgment in the follow-on administrative proceeding.

4  Indeed, he filed his Rule 60(b)(6) motion in this Court on the very day that his reply brief to the

5  Division of Enforcement's opposition to his motion for summary disposition was due in the

6  administrative proceeding. His timing could not be more telling of his motives.[2]

7  **IV.    The Fact That Frederick Now Regrets His Decision To Settle In Light Of The Follow-On Administrative Proceeding Does Not Amount To "Extraordinary Circumstances" Warranting Relief**

8

9  In both his memorandum of law and supporting declaration, Frederick concedes that he

10  brought his Rule 60(b)(6) motion to try to avoid the collateral estoppel effect of the consent

11  judgment in the Commission's follow-on administrative proceeding. As Frederick asserts:

12  •    *In the companion administrative proceedings, In re Frederick, File No. 3-13004, the SEC is now seeking to bar Frederick from ever working in the securities industry again, and is relying entirely upon the Consent.* Defendant Douglas G. Frederick's Memorandum of Law in Support of His Motion Under Fed. R. Civ. P. 60(b)(6) for Vacatur of the Judgment ("Frederick Memo"), p. 13.

13

14

15

16  •    *It is indisputable that Frederick has – and will continue – to suffer a career-ending injury as a result of the permanent injunction which bars him from continuing a Tuco-like business or from violation the broad provisions of Rule 10b-5 of the Exchange Act. But these injunctive provisions do not act alone – they serve as the basis for the SEC to bring a "follow-on" administrative procedure to bar Frederick from ever working in the securities industry.* Frederick Memo, p. 15.

17

18

19

20  •    *I did not understand what I was signing. For example, I believed that I was not admitting any wrongdoing, since the terms of the Consent stated that I was neither admitting nor denying the allegations in this case.* Declaration of Defendants Tuco Trading LLC and Douglas G. Frederick in Support of Their Motion Under Fed. R. Civ. P. 60(b)(6) for Vacatur of the Judgment ("Frederick Decl.") ¶ 4.

21

22

23  •    *I have challenged the legal theories behind the Complaint in the SEC administrative proceedings, In re Frederick, File no. 3-13004. A copy of*

24

25  _____
[2]    In the administrative proceeding, both the Commission and Frederick filed simultaneous motions for

26  summary disposition. The parties opening briefs were due on July 15, 2008, opposition briefs were due on July 30, 2008, and reply briefs, if any, were due on August 8, 2008. Declaration of Roberto Tercero In Support of Plaintiff's

27  Opposition to Frederick's Motion under Fed. R. Civ. P. 60(b)(6) for Vacatur of the Judgment ("Tercero Decl."), Ex. 6 (briefing schedule). Frederick filed his Rule 60(b)(6) motion in this Court on August 8, 2008, and attached his

28  supporting memorandum of law and declaration in support of his motion as exhibits to his reply in opposition to the Division of Enforcement's motion for summary disposition in the administrative action. Tercero Decl., Ex. 8, p. 2.

1

*my Motion for Summary Disposition is annexed hereto as Exhibit C.*
Frederick Decl., p. 6, n. 5.

2

At the time he signed his consent, however, Frederick's clearly understood the collateral

3

estoppel effect of the consent judgment in any future administrative proceeding.  In consenting to

4

the entry of this Court's judgment permanently enjoining him from violations of the broker-

5

dealer and antifraud provisions of the Exchange Act, Frederick expressly acknowledged in the

6

consent itself that in any disciplinary proceeding before the Commission based on the entry of

7

the injunction, "[d]efendant understands that he shall not be permitted to contest the factual

8

allegations of the complaint in this action."  Docket Entry No. 23-3 (Consent, ¶12).[3]  As such,

9

Frederick understood that he would be collaterally estopped in the Commission's follow-on

10

administrative proceeding from attacking the factual or legal validity of the consent judgment

11

against him.  *In re Martin Kaiden*, 54 S.E.C. 194, 208, n.39 (Jul. 20, 1999); *In re William H.*

12

*Mathis*, *supra*, 1990 SEC LEXIS 2911, at *6 ("sanctions may be imposed based on a consent

13

judgment where neither the court nor the Commission found that the defendant violated the

14

securities statutes.").  In addition, during settlement discussions, the Commission's staff

15

repeatedly advised Frederick's counsel that following the issuance of a permanent injunction,

16

that it would institute follow-on administrative proceedings against Frederick.   Declaration of

17

Roberto Tercero In Support of Plaintiff's Opposition to Frederick's Motion under Fed. R. Civ. P.

18

60(b)(6) for Vacatur of the Judgment ("Tercero Decl.")Tercero Decl., ¶¶ 17, 19.

19

Furthermore, even if Frederick or his counsel did not understand the consequences of his

20

consent in the follow-on administrative proceeding, or that the doctrine of collateral estoppel

21

would prevent him from relitigating the factual findings or legal conclusions implicit to the

22

consent judgment, his mistake does not entitle him to relief under Rule 60(b).  Quite simply,

23

"ignorance of the law is no excuse."  12 *Moore's Federal Practice*, § 60.41[1][c] (Matthew

24

Bender 3d ed.).  *See, e.g., Pettle v. Bickham*, 410 F.3d 189, 192-93 (5th Cir. 2005) (plaintiff's

25

voluntary request for dismissal of claim with prejudice, without fully understanding effect of that

26

27

28

---

[3]     Frederick further acknowledged that in connection with the Commission's motion for disgorgement and/or civil penalties, "the allegations of the Complaint shall be accepted as and deemed true by the Court" and that he would "be precluded from arguing that either Tuco or Frederick did not violate the federal securities laws as alleged in the Complaint."  Docket Entry No. 23 (Judgment, Section IV); Docket Entry No. 23-3 (Consent, ¶ 4).

1    dismissal in another action, does not constitute excusable neglect that would justify relief from

2    judgment of dismissal); *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572 (10th Cir. 1996) ("Rule

3    60(b)(1) relief is not available for a party who simply misunderstands the legal consequences of

4    his deliberate acts"); *Nemaizer v. Baker*, 793 F.2d 58, 62-63 (2d Cir. 1986) (denying relief under

5    Rule 60(b)(1) and 60(b)(6) where counsel overlooked or misunderstood principles of res

6    judicata).

7        Here, Frederick's decision to settle was a deliberate and counseled decision.  As

8    Frederick freely admits:

9        My attorneys informed me … that I would spend at least $500,000 litigating this
         matter if I did not settle the case with the SEC, and that I could not be guaranteed
10       a victory, since the regulatory policy regarding day-trading is unclear (this being
         the first proceeding against a registered representative of a registered broker-
11       dealer who operated a fully-disclosed day-trading firm through the member firm).

12   Frederick Decl., ¶ 63.  Just like any party who chooses to settle, Frederick's "choice was a risk,

13   but calculated and deliberate and such as follows a free choice" and he "cannot be relieved of

14   such a choice because hindsight seems to indicate to him that his decision … was probably

15   wrong…"  *Ackermann v. United States*, *supra*, 340 U.S. at 198.  *See also, Schwartz v. United*

16   *States*, *supra*, 976 F.2d at 218-19 ("[a] litigant weighs the chance of success against the probable

17   cost of achieving that success through further litigation, all based on whatever limited

18   information is available at the time… [defendant's choice to settle] was … calculated, free and

19   deliberate … and … he should not be relieved from it.").  Accordingly, Frederick is not entitled

20   to relief under Rule 60(b).[4]

21       **V.    Relief Under Rule 60(b) Must Be Denied As Frederick Has Failed To
             Demonstrate That He Has A Meritorious Defense To The Underlying Action**
22

23       Frederick does not claim that he has a meritorious defense to the allegations in the

24   Commission's complaint.  Rather, all he claims is that the underlying case "involves issues of

25   ───────────────────────

26   [4]     It also bears noting that the length of the bar, if any, that will be imposed in the administrative proceeding,
     is a matter to be determined by the administrative law judge and there is no guarantee that the judge will impose a
27   lifetime bar against Frederick.  Furthermore, even is such a bar is imposed, Frederick has further procedural rights in
     the administrative action, first to appeal the decision of the administrative law judge to the Commission (*see* 17
     C.F.R. § 201.411) and, if he is not successful there, to seek further judicial review in the D.C. Circuit Court of
28   Appeals (*see* 17 C.F.R. § 201.490, 28 U.S.C. § 2112).

                                                                                            08 CV 00400 DMS (BLM)

first impression," namely, whether:

(a)    the specific statutory exemption from the duty to register for persons associated with a broker or dealer applies to a day-trading firm that is operated by a registered representative of a member firm; and

(b)    an interest in a day-trading firm organized as a limited liability company is a "security" under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. Frederick Memorandum, p. 1.

Frederick further asserts that the complaint failed to "eludicate how Tuco, a customer of GLB, could be considered a broker-dealer or how the interests in Tuco could be considered 'securities' with the meaning of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5." Frederick Memo., p. 6. Finally, Frederick notes that he had challenged the legal theories behind the complaint in the administrative proceeding, and has attached a copy of his motion for summary disposition filed in the administrative action as an exhibit to his declaration. Frederick Memo., p. 6, n. 6; Frederick Decl., Ex. C.

Significantly, Frederick has neglected to attach to his declaration a copy of the Division of Enforcement's opposition to his motion for summary disposition. As that opposition makes clear, the complaint did not involve "issues of first impression," nor did it involve the question of whether of an interest in Tuco is a "security" under the Exchange Act. *See* Tercero Decl., Ex. 7 (Division of Enforcement's Opposition to Frederick's Motion for Summary Disposition).

## A.    Frederick's Conduct Violated Section 10(b) Of The Exchange Act

In his motion for summary disposition in the administrative action, Frederick has argued that his conduct did not violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, as his numerous false representations to Tuco's day traders were not "in connection with the purchase or sale of any security," claiming that a membership interest in Tuco is not a security. That, however, was never the basis for the Commission's Section 10(b) claim. Instead, the securities at issue were the publicly traded securities bought and sold by Tuco's day-traders based on Frederick's representations that the money they earned from their day trading activity was theirs, and theirs alone. Indeed, as the complaint alleged:

> ***In connection with the daily trading activity of Tuco's traders,*** *and to induce Tuco's traders to continue trading with Tuco and to generate commissions and other charges for Tuco's brokerage services, Tuco and Frederick make additional representations to Tuco's traders through the operation of Tuco's back office system, which … displays, as of the previous day, the trader's account equity, which is purportedly the amount of money available to the trader for trading, distribution or withdrawal.*

Frederick Decl., Ex. A (Complaint, ¶¶ 27-30) (emphasis added).  The complaint's allegations clearly establish that Frederick's false representations were in connection with the purchase and sale of securities by Tuco's day-traders.  That trading activity clearly satisfies the "in connection with" requirement.[5]

The Supreme Court has held that the "in connection with" element is met if the fraudulent statement and the securities transaction coincide.  *SEC v. Zandford*, 535 U.S. 813, 822 (2002).  Consistent with *Zandford*, the Ninth Circuit has stated repeatedly that the requirement is met if the fraud "'somehow touches upon' or has 'some nexus' with 'any securities transaction.'"  *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993) (citations omitted).  The fraudulent statement need not concern a specific security.  *See Zandford*, 535 at 820-21; *Arrington v. Merrill Lynch*, 651 F.2d 615, 619 (9th Cir. 1981) (misrepresenting the risks of buying securities on margin).  Even undisclosed and unauthorized securities sales, as part of a course of business that operates as a fraud, are "in connection with."  *Zandford*, 535 at 821.  In short, Frederick's assertion in the administrative proceeding that the misrepresentation must concern the security that is purchased or sold is contrary to Supreme Court and Ninth Circuit precedent.

Here, Frederick's fraudulent statements -- all to the effect, "keep on trading and keep those commissions rolling in since your money is safe with me" -- have a close nexus to securities purchases and sales and therefore meet the "in connection with" requirement.  Frederick's fraudulent statements concern the value of the actual sub-accounts in which the traders purchase and sell securities and the risk of loss associated with trading in the sub-

---

[5]      In addition, the Commission's theory behind its Section 10(b) claim – that the securities at issue were the securities bought and sold on a daily basis by Tuco's day-trading customers -- was further explained in the Commission's memorandum of points and authorities filed in support of its motion for a temporary restraining order. That motion was filed on March 3, 2008, two weeks before Frederick signed his consent.  Docket Entry No. 2-2.

accounts.  Frederick Decl., Ex. A (Complaint, ¶¶ 27, 28, 29).  Frederick also failed to disclose

that that he and Tuco used traders' funds to pay Tuco's expenses and traders' withdrawals.

Those fraudulent statements coincide with securities trading and, as such, satisfy the "in

connection with" requirement.

### B.   Frederick's Conduct Violated The Broker-Dealer Provisions Of The Exchange Act

In his motion for summary adjudication in the administrative proceeding, Frederick also

argues that since he was a registered representative of a registered broker-dealer (GLB Trading,

Inc.), he was not required to register as broker-dealer.  As Frederick has asserted, "[u]ntil this

case, the SEC has never prosecuted a registered representative of a member firm for failure to

register as a broker-dealer."  Frederick Decl., Ex. C, p. 3.  As he did with the Commission's

Section 10(b) claim, Frederick grossly mischaracterizes the Commission's Section 15(a) claim.

The complaint plainly alleges that Tuco failed to register as a broker-dealer, and that

Frederick aided and abetted Tuco's violation of Section 15(a).  *See* Frederick Decl., Ex. A

(Complaint, First Cause of Action).  The fact that Frederick may have been a registered

representative of some other broker dealer is entirely beside the point.  The fact remains that

Tuco was a broker, "engaged in the business of effecting transactions for the accounts of others."

*See* 15 U.S.C. § 78c(a)(4) (defining "broker").  As such Tuco -- not Frederick -- was required to

be registered with the Commission as a broker or dealer.

None of this breaks new ground or creates an issue of "first impression." The phrase

"engaged in the business" has long been interpreted to connote regular participation in securities

transactions and is evidenced by soliciting securities transactions and receiving transaction-based

compensation, such as commissions.  *See SEC v. Margolis*, 1992 U.S. Dist. LEXIS 14872 at *15

(S.D.N.Y. Sept. 30, 1992); *SEC v. Hansen*, 1984 U.S. Dist. LEXIS 17835, at *26 (S.D.N.Y. Apr.

6, 1984); *Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp*., 411 F.

Supp. 411, 415 (D. Mass.), *aff'd*, 545 F.2d 754 (1st. Cir. 1976).  A person effects securities

transactions for others by participating in the key points of a securities transaction, including

soliciting investors, handling customer funds and securities, participating in the order-taking or

order-routing process, and extending or arranging for the extension of credit in connection with a securities transaction. *See SEC v. Schmidt*, 1971 U.S. Dist. LEXIS 11884, at *3-4 (S.D.N.Y. Aug. 26, 1971); *Massachusetts Fin. Srvcs.*, *supra,* 411 F. Supp. at 415; *Hansen*, *supra,* 1984 U.S. Dist. LEXIS 17835, at *26.

Tuco satisfied all of these well-established tests. Contrary to Frederick's claim that Tuco was simply a "customer account" (Frederick Memo., p. 2; Frederick Decl., ¶ 12), Tuco was a separate and distinct business entity that bore all the hallmarks of a day-trading firm. Tuco was organized as a Nevada limited liability company, with the stated purpose "to engage in Securities Trading, including electronic day-trading of listed and over-the-counter securities." Frederick Decl., Ex. B (Tuco Operating Agreement, § 1.06). *See also* Frederick Decl., Ex. A (Complaint, ¶¶ 5, 11) ("Tuco describes itself on its website as a 'private equity firm' that provides 'trading solutions for the active trader.'). In furtherance of that business, Tuco solicited securities transactions through Frederick's direct efforts to solicit new traders and through Tuco's own website. *Id*. (Complaint, ¶¶ 3, 12). Tuco also regularly participated in securities transactions by providing day-trading services, including creating and maintaining sub-accounts for the traders and providing traders access to software to place and route securities orders. *Id*. (Complaint, ¶¶ 11-18). In addition, Tuco handled the traders' funds, which were used for securities transactions, and granted leverage and access to trade by allowing sub-account holders to trade against the equity of Tuco's pooled master accounts. *Id.* Tuco also received commissions. It set commission rates for each trader and deducted the commission for each trade from the trader's sub-account. Although the commissions were collected by GLB Trading's clearing broker and paid to Frederick, Frederick remitted the commissions to Tuco. Tuco relies on the commissions paid to Frederick to pay its operating expenses. *Id.* (Complaint, ¶¶ 22-25).

In short, the complaint properly alleged violations of both Section 10(b) and Section 15(a) of the Exchange Act, and Frederick, in his Rule 60(b)(6) motion, does not even attempt to articulate a meritorious defense to the complaint. Furthermore, even if his arguments in the administrative proceeding were to be considered by this Court, his arguments in that proceeding are frivolous, as they are based on an artful misreading of the complaint and a gross factual mischaracterization of

Tuco Trading as nothing more than a customer account.  Finally, and most importantly, Frederick had a chance to litigate these so-called "issues of first impression" in this Court but chose not to do so.  Rather, like any other litigant, he weighed his litigation risks against his financial resources and chose to settle. His was a deliberate and counseled choice and he should be given a second chance, particularly where the ultimate outcome would not be any different.

**VI.**     **Frederick's Personal Financial Circumstances At The Time He Signed His Consent Are Not Relevant**

The bulk of Frederick's motion is devoted to his claim that he was under "considerable stress" at the time he signed his consent, such that "he did not understand what he was signing." Frederick Memo., p. 2.  His "perfect storm" of stress includes: (a) treatment costs for his autistic son; (b) his wife, who had previously miscarried, was then seven-months pregnant; (c) dozens of Tuco's customers were calling Frederick seeking an explanation of this Court's issuance of the TRO; (d) Frederick was personally responsible for the costs of the receiver that this Court had appointed, which Frederick claims were $20,000.00 a day; and (e) Frederick was facing a potential freeze of his assets.  None of these factors have any relevance under Rule 60(b).

In *Ackermann v. United States*, *supra*, 340 U.S. 193, the petitioner Ackermann had sought relief under Rule 60(b), claiming that his failure to timely file an appeal should be excused because he it would have cost him his home to pursue it.  The Supreme Court flatly rejected Ackermann's position that his financial circumstances justified his decision not to appeal.  As the Court stated, "[p]etitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home." *Id*. at 198.  Since *Ackermann*, numerous court have followed suit, finding that the existence of a difficult bargaining position or the pressure of financial circumstances are irrelevant under Rule 60(b) where the defendant, as here, has made a deliberate and counseled choice to settle.  *See, e.g., Pierce v. Atchison, Topeka and Santa Fe Ry. Co*., 65 F.3d 562, 559 (7th Cir. 1995); *McIntosh v. Consolidated Edison Co.*, 1999 U.S. Dist. LEXIS 3264, at * 2 (S.D.N.Y. Mar. 19, 1999), *aff'd,* 2000 U.S. App. LEXIS 13555 (2d Cir. June 8, 2000); *Harrison v. Fred S. James, P.A., Inc.*, 558 F. Supp. 438, 443 (E.D. Pa. 1983); *Merrill Lynch, Pierce,*

1    *Fenner & Smith v. Adcock*, 176 F.R.D. 539, 545 (N.D. Ill. 1997).

2        Nor did the Commission knowingly or improperly exploit Frederick's financial condition

3    or other personal circumstances to coerce him into signing his consent.  *See, e.g., McIntosh v.*

4    *Consolidated Edison Co., supra*, 1999 U.S. Dist. LEXIS 3264, at *2 ("Duress may not be found

5    merely from the existence of a difficult bargaining position or the pressure of financial

6    circumstances.  To succeed on a theory that the agreement was procured by duress, a plaintiff

7    must show that he was compelled to agree to its terms by way of wrongful and oppressive

8    conduct that precluded the plaintiff from the exercise of his own free will.").

9        **A.    The "Potential" Freeze On Frederick's Assets Does Not Warrant Relief**

10        In an attempt to demonstrate that the Commission knowingly exploited Frederick's

11    financial condition, Frederick points to his autistic son's medical and education expenses, and to

12    the Commission's position during settlement negotiations that if a preliminary injunction were to

13    be imposed that Frederick should only be entitled to reasonable living expenses and that

14    Frederick's remaining assets should be frozen for future distribution to Tuco's defrauded

15    customers.  *See* Tercero Decl., ¶¶ 15, 19.  There are two fundamental problems with Frederick's

16    argument.  First, the Commission had no knowledge of Frederick's son's medical and

17    educational expenses and, hence, could not have exploited those circumstances, even if it had

18    wanted to.  In his statement of financial condition, filed with the Court on March 11, 2008

19    Frederick claimed no educational expenses, and total medical expenses of $400-$500 a month.

20    Tercero Decl., ¶ 16.  *See* Docket No. 21.[6]

21        Second, Frederick was aware that the Commission's position that he should only be

22    entitled to reasonable living expenses, and that the remainder of his assets should be frozen for

23    the benefit of Tuco's defrauded customers, was not something that would occur in the absence of

24    a court order.  Since this Court had previously *refused* to freeze Frederick's assets at the time of

25    the TRO,[7] Frederick must have been aware that the Commission's position on a reasonable

26

27    [6]    In fact, Frederick's greatest claimed expenses were $1,195.00 per month for an auto loan and another $800.00 per month in auto insurance and other monthly automobile costs for his $60,000.00 Hummer.  Docket No. 21.

28    [7]    *See* Temporary Restraining Order of March 5, 2008, Docket Entry No. 7, p.2 ("the Court denies the Commission's request to freeze Defendants' assets).

living allowance, if litigated, might be well be rejected by the Court.  Indeed, Frederick

acknowledges as much in his motion, where he argues:

> Since the SEC had tried repeatedly to freeze Frederick's personal assets in this
> case – and he understood that if he litigated this case with the SEC, he would
> **likely** get no more than $3,000 each month for living expenses while the case was
> pending – Frederick feared this case would jeopardize his ability to continue to
> pay for [his son's] treatment plan.

Frederick Memo., p. 10 (emphasis added).  In short, whether the Commission would have

prevailed in its position was a risk, not a foregone conclusion, and as with any litigation risk,

Frederick weighed the cost and benefits of further litigation versus settlement, and chose to settle.

The fact that he did so out of consideration for his son's welfare, or for other personal reasons,

cannot be laid at the Commission's doorstep.

### B.    Penson's Unilateral Decision To Suspend Trading Activity In Tuco's Accounts Does Not Warrant Relief

To buttress his claim of economic duress, Frederick contends that Penson (Tuco's

clearing broker) refused to honor margin calls to Tuco, which effectively shut down Tuco's

ability to trade.  "Without any trading activity, no commissions were generated for Frederick

from GLB, thus depriving Frederick of any income."  Frederick Memo., p. 8.  Elsewhere,

Frederick suggests that the Commission induced or was other responsible for Penson's decision

to suspend all trading in Tuco's accounts.  Frederick Decl., ¶ 44.[8]  Again, there are two

fundamental problems with Frederick's position.  First, as discussed above, economic duress is

not grounds for relief under Rule 60(b).  Second, Penson's decision to suspend trading in Tuco's

accounts was a unilateral decision, made for reasons entirely independent of the Commission's

action.  *See* Declaration of Tim Davis in Support of the Division of Enforcement's Opposition to

Frederick's Motion under Fed. R. Civ. P. 60(b)(6) for Vacatur of the Judgment ("Davis Decl."),

¶¶ 5-8.  Moreover, even assuming Penson's decision to suspend trading constituted actionable

duress under Rule 60(b), Penson was not a party to the action.  For duress to be grounds for

---

[8]    During the hearing before this Court on March 4, 2008, Commission attorney Roberto A. Tercero advised
the Court that he had contacted Penson and requested that Penson put a hold on withdrawals from the Tuco account
in order to prevent a "run on the bank."  Frederick Decl., Ex. E. p. 23.  Tercero, however, did not request Penson to
suspend all trading in the Tuco account.  *See* Tercero Decl., ¶12.

relied, the fraud, duress or other misconduct must be by an adverse party.  *See* Fed. R. Civ. P. 60(b)(c) (requiring that fraud, misrepresentation or misconduct be "by an opposing party").

### C.    <u>Frederick Has A Full And Fair Opportunity To Present His Case</u>

Finally, in addressing claims of fraud, duress or other misconduct, courts "always require proof that the alleged fraud or other misconduct prevented the moving party from fully and fairly presenting his or her case at trial."  12 *Moore's Federal Practice*, § 60.43[1][c], n. 10 (Matthew Bender 3d ed.) (*citing, inter alia, In re M/V Peacock*, 809 F.2d 1403, 1405 (9th Cir. 1987)).  Significantly, Frederick hired counsel to assist him during the course of the Commission's investigation and to contest the Commission's application for a temporary restraining order.  At the TRO hearing, Frederick's counsel advanced many of the same arguments that Frederick has asserted in the administrative action, namely, that Tuco was not required to be registered as a broker-dealer, and that there was no fraud under Section 10(b) as the amount of the shortfall in Tuco's customer accounts was overstated.  Frederick Decl., Ex. E (Transcript of March 4, 2008 hearing, pp. 4-10).  There is no reason that Frederick was prevented from continuing to litigate those issues, either at the preliminary injunction hearing or at trial, other than by his own deliberate and counseled decision to settle.  And the fact that he took his financial resources or other personal circumstances into consideration in making that decision does not render his decision unknowing or involuntary.  As such, he is not entitled to relief under Rule 60(b).

### VII.    <u>The Commission Will Be Prejudiced If Relief Is Granted</u>

This Court may also deny Frederick's motion where the opposing party would be prejudiced if the judgment were set aside.  *Price v. Seydel*, 961 F.2d 1470, 1473 (9th Cir. 1992); *Cassidy v. Tenorio*, *supra*, 856 F.2d at 1415; *Homefront, Inc. v. Cashmere Crafts, Inc*., *supra*, 2005 U.S. Dist LEXIS 40401, at * 3.  In the present case, Frederick waited over four months to file his Rule 60(b) motion.  During that time, the Commission's Division of Enforcement initiated a follow-on administrative proceeding, which has now been fully briefed and is awaiting a decision by an administrative law judge.  If the judgment were to be vacated, that administrative proceeding would be nullified.  While that is precisely Frederick's strategy, Frederick overlooks the fact that the Division of Enforcement has spent considerable resources in

filing that action, briefing its own summary disposition motion, and responding to Frederick's

cross-motion for summary disposition. As such, the Division of Enforcement will be prejudiced

through a waste of its resources if the finality of Frederick's consent judgment is not respected.

**VIII.    Conclusion**

For all the foregoing reasons, Tuco's and Frederick's Rule 60(b)(6) motion should be

denied.


DATED:  September 4, 2008                    /s/ Donald W. Searles
                                            DONALD W. SEARLES
                                            ROBERTO A. TERCERO
                                            Attorneys for Plaintiff
                                            Securities and Exchange Commission

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

> U.S. SECURITIES AND EXCHANGE COMMISSION, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036-3648
> Telephone No. (323) 965-3998; Facsimile No. (323) 965-3908.

On September 4, 2008, I caused to be served the document entitled **PLAINTIFF'S OPPOSITION TO DEFENDANTS TUCO TRADING, LLC'S AND DOUGLAS G. FREDERICK'S MOTION UNDER FED. R. CIV. P. 60(b)(6) FOR VACATUR OF THE JUDGMENT** on all the parties to this action addressed as stated on the attached service list:

[ ]    **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

> [ ]    **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

> [ ]    **INTERNATIONAL REGISTERED MAIL, RETURN RECEIPT REQUESTED:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of International Registered Mail, Return Receipt Requested at Los Angeles, California, with International Registered Mail, Return Receipt Requested postage paid.

[ ]    **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

[ ]    **FEDERAL EXPRESS:**  By placing in sealed envelope(s) designated by Federal Express with delivery fees paid or provided for, which I deposited in a facility regularly maintained by Federal Express or delivered to a Federal Express courier, at Los Angeles, California.

[X]    **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

[ ]    **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

[X]    **(Federal)** I declare that I am a member of the bar of this Court.  I declare under penalty of perjury that the foregoing is true and correct.

Date: <u>September 4, 2008</u>                    <u>/s/ Donald W. Searles</u>
                                                                        Donald W. Searles

<u>**SEC v. TUCO TRADING and DOUGLAS G. FREDERICK**</u>
**United States District Court – Southern District of California**
**Case No. 08 CV 00400 DMS (BLM)**
**(LA-3458)**

<u>SERVICE LIST</u>

Daniel G. Viola, Esq.
Sadis & Goldberg LLP
551 5th Avenue, 21st Floor
New York, NY 10176
Telephone:  (212) 573-8038
Facsímile:  (212) 573-8140
Email:  dviola@sglawyers.com
***Counsel to Defendant Douglas G. Frederick***

Dennis R. Hirsch, Esq.
Sadis & Goldberg LLP
50 California Street, Suite 2320
San Francisco, CA 94111
Telephone:  (415) 490-0563
Facsímile:  (415) 391-1377
Email:  drhirsch@sglawyers.com
***Counsel to Defendant Douglas G. Frederick***

David L. Osias, Esq.
Debra A. Riley, Esq.
Ted Fates, Esq.
Allen Matkins Leck Gamble Mallory & Natsis LLP
501 W. Broadway, 15th Floor
San Diego, CA 92101-1158
Telephone:  (619) 233-1155
Facsímile:  (619) 233-1158
Email:  dosias@allenmatins.com
Email:  driley@allenmatkins.com
Email:  tfates@allenmatkins.com
***Counsel to Receiver Thomas F. Lennon***

James S. Barber, Esq.
Clausen Miller P.C.
10 South LaSalle Street
Chicago, IL 60603
Telephone:  (312) 606-7712
Facsímile:  (312) 606-7500
Email:  jbarber@clausen.com
***Counsel to GLB Trading, Inc.***

Mark G. Hanchet, Esq.
Mayer Brown Rowe & Maw LLP
1675 Broadway
New York, NY 10019-5820
Telephone:  (212) 506-2695
Email:  mhanchet@mayerbrown.com
***Counsel to Penson Financial Services***

18