1  DONALD W. SEARLES, Cal. Bar No. 135705
   SearlesD@sec.gov
2  ROBERTO A. TERCERO, Cal. Bar No. 143760
   TerceroR@sec.gov
3
   Attorneys for Plaintiff
4  Securities and Exchange Commission
   Rosalind R. Tyson, Regional Director
5  Andrew Petillon, Associate Regional Director
   5670 Wilshire Boulevard, 11th Floor
6  Los Angeles, California  90036
   Telephone:  (323) 965-3998
7  Facsimile: (323) 965-3908

8

9                  UNITED STATES DISTRICT COURT

10                SOUTHERN DISTRICT OF CALIFORNIA

11

12

13  SECURITIES AND EXCHANGE              Case No.:  08 CV 00400 DMS (BLM)
    COMMISSION,
14                                       **DECLARATION OF ROBERTO A.
                                         TERCERO IN SUPPORT OF
                Plaintiff,               PLAINTIFF'S OPPOSITION TO
15                                       DEFENDANTS' MOTION UNDER FED.
                                         R. CIV. P. 60(b)(6) FOR VACATUR OF
16        vs.                            THE JUDGMENT**

17  TUCO TRADING, LLC, and DOUGLAS G.    DATE:  September 19, 2008
    FREDERICK,                           TIME:  1:30 p.m.
18                                       COURTROOM: 10
                Defendants.              BEFORE: Hon. David M. Sabraw
19

20

21

22

23

24

25

26

27

28

1   I, ROBERTO A. TERCERO, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

2   1.   I am an attorney admitted to practice law by the State Bar of California. I am

3   employed by the United States Securities and Exchange Commission (the "Commission") as

4   Senior Counsel - Enforcement in the Los Angeles Regional Office. I make this declaration in

5   support of the Commission's Opposition to Defendants Tuco Trading, LLC's ("Tuco") and

6   Douglas G. Frederick's ("Frederick") Motion Under Fed. R. Civ. P. 60(b)(6) for Vacatur of the

7   Judgment. I have personal knowledge of the matters set forth herein and, if called as a witness,

8   could and would competently testify under oath hereto.

9   2.   In the course of my duties with the Commission, I conduct inquiries and

10  investigations into possible violations of the federal securities laws. My responsibilities include:

11  (1) obtaining and analyzing documents; (2) subpoenaing witnesses and taking testimony; (3)

12  applying statutes and regulations promulgated by the Commission; and (4) representing the

13  Commission before United States District Courts and administrative courts. In my capacity as a

14  Senior Counsel for the Commission, I am required to be, and have become, personally familiar

15  with the manner in which the Commission's documents, books and records are prepared and

16  made. The Commission maintains records of its investigatory and litigation activities in the

17  ordinary and regular course of its business, and it is the ordinary and regular course of business

18  of the Commission to make and keep such records. It is the regular course of business of the

19  Commission staff with knowledge of an investigatory or litigation activity to make or receive a

20  record of the activity or to transmit information thereof to be included in such record, and the

21  record was made at or near the time of the activity or reasonably soon after.

22  3.   In the course of the Commission's investigation in this matter, I and other

23  members of the Commission staff received information indicating that, from at least November

24  2007 to March 2008, Mr. Frederick, a registered representative associated with registered broker-

25  dealer GLB Trading, Inc. ("GLB Trading"), may have operated an unregistered broker-dealer,

26  Tuco, through GLB Trading. In the course of the Commission's investigation in this matter, I

27  and other members of the Commission staff sought and obtained documents, sworn testimony,

28  and other materials regarding the activities of the individuals and entities named as Defendants in

-1-

1   this action. The Commission staff kept records of the investigation in the ordinary and regular

2   course of business, and it was the ordinary and regular course of business to make and maintain

3   such records.

4       4.    On February 7, 2008, I and the Branch Chief assigned to the investigation, J.

5   Cindy Eson ("Eson"), spoke to Mr. Frederick by telephone. I asked Mr. Frederick to come to the

6   Commission's Los Angeles office and provide testimony under oath concerning his and Tuco's

7   activities. I explained to Mr. Frederick that his appearance was voluntary and that it was his

8   choice whether to testify. Mr. Frederick agreed to appear for voluntary testimony on February

9   11, 2008. On February 7, 2008, I sent Mr. Frederick an e-mail confirming his testimony date,

10  time, and place, and I reiterated that his testimony was voluntary. I also attached a copy of the

11  Commission's SEC Form 1662, which provided additional information. A true and correct copy

12  of my February 7, 2008 e-mail to Mr. Frederick with attachment is attached hereto as Exhibit 1.

13      5.    On February 9, 2008, I received an e-mail from Mr. Frederick in which he stated

14  that he decided to hire counsel, J. Stephen Young ("Young"), and that Mr. Young would contact

15  me to arrange a convenient time to meet. A true and correct copy of Mr. Frederick's February 9,

16  2008 e-mail is attached hereto as Exhibit 2.

17      6.    On February 11, 2008, I received a telephone call from Mr. Young who proposed

18  different dates for Mr. Frederick's testimony during the week of February 11, 2008. I proposed

19  February 13, 14, or 15, 2008. Mr. Young stated that he would contact Mr. Frederick.

20      7.    On February 12, 2008, I spoke to Mr. Young by telephone, and he informed me

21  that he had no date yet for Mr. Frederick's testimony. Mr. Young informed me that Mr.

22  Frederick planned to go on a vacation from February 15 to February 19, 2008, so he was not

23  available. Mr. Young also informed me of his schedule. I asked Mr. Young if Mr. Frederick

24  could move his vacation date one day so that he could testify on February 15, 2008. Mr. Young

25  responded that he would ask Mr. Frederick.

26      8.    During our February 12 telephone call, I informed Mr. Young that the

27  Commission's staff was making a request for Mr. Frederick's voluntary testimony and that it was

28  his choice whether or not to appear. I also told Mr. Young that this testimony would be Mr.

-2-

1  Frederick's opportunity to explain his and Tuco's activities and that it was up to Mr. Frederick

2  whether to make use of that opportunity. I also informed Mr. Young that the Commission's staff

3  was available when and if Mr. Frederick decided to provide voluntary testimony.

4         9.    During our February 12 telephone call, Mr. Young also asked me if the

5  Commission's staff contemplated filing an action seeking a temporary restraining order against

6  his clients. I informed Mr. Young that the staff was conducting a factual inquiry to find out more

7  about Mr. Frederick's and Tuco's activities. I also informed him, however, that the

8  Commission's staff could not take any possible action "off the table" and that an action for a

9  temporary restraining order was possible if the facts merited it.

10        10.    Mr. Young called me once again on February 12, 2008, and he informed me that

11  Mr. Frederick would appear with him on February 13, 2008, for Mr. Frederick's voluntary

12  testimony. I sent Mr. Young a confirming letter with another copy of the SEC Form 1662 by e-

13  mail, and true and correct copies of these documents are attached hereto as Exhibit 3.

14        11.    On February 13, 2008, I took Mr. Frederick's voluntary testimony under oath.

15  Also in attendance with Ms. Eson and Donald W. Searles ("Searles"), Senior Trial Counsel at the

16  Commission's Los Angeles office.

17        12.    On March 3, 2008, I asked Penson Financial Services ("Penson") to place a

18  "voluntary hold" on Tuco's and Frederick's brokerage accounts. By "voluntary hold," I

19  explained to the Penson representative that the Commission was requesting that Penson not

20  allow funds or securities to be withdrawn from the accounts, although trading could continue. I

21  requested the "voluntary hold" because the Commission would be filing an action the next day

22  and wanted to prevent a "run on the bank." A true and correct copy of the confirming e-mail I

23  sent on March 3, 2008, is attached hereto as Exhibit 4.

24        13.    On March 4, 2008, the Commission filed an emergency action against Frederick

25  and Tuco, alleging violations of the antifraud and broker-dealer registration provisions of the

26  federal securities laws, and seeking by *ex parte* application a temporary restraining order, an

27  asset freeze, a temporary receiver over Tuco, an accounting and other relief. On March 5, 2008,

28  the Court granted in part and denied in part the Commission's *ex parte* application.

-3-

14.    On March 10, 2008, I received a telephone call from Mr. Young. He informed me that he would like to discuss a possible settlement of this action, explaining that Mr. Frederick did not have the assets to litigate. Mr. Young proposed various terms, namely Mr. Frederick's consent to a permanent injunction against future broker-dealer registration violations and an agreement to shut down Tuco's operations. I informed Mr. Young that I would consider his offer. I also explained that the Commission's staff could not bind the Commission to a settlement and that only the Commission could do so. I also informed Mr. Young that the Commission's staff could, however, recommend acceptance of a settlement offer to the Commission.

15.    On March 11, 2008, Mr. Searles and I spoke to Mr. Young and his law partner, Michele Fron ("Fron"), regarding Mr. Frederick's settlement proposal. Mr. Searles and I informed Mr. Young and Ms. Fron that the Commission's staff could not yet respond to Mr. Frederick's proposal. Mr. Searles and I did, however, propose an interim solution. Specifically, he and I proposed that Mr. Frederick and Tuco consent to the entry of a preliminary injunction prohibiting them from committing future violations of the broker-dealer registration and antifraud provisions of the securities laws, appointing a permanent receiver over Tuco, relieving Mr. Frederick from providing an accounting, and providing him with reasonable living expenses. Mr. Searles and I further informed them that Mr. Frederick and Tuco could consent to the proposed relief without admitting or denying the allegations of the complaint. Mr. Young and Ms. Fron stated that they would convey the preliminary injunction proposal to Mr. Frederick.

16.    On March 11, 2008, Frederick and Tuco each filed accountings (Docket Nos. 21 and 22, respectively) as required by Section IX of the Court's Order, entered March 5, 2008, as amended (Docket No. 7). Frederick's accounting states that, excluding Tuco, he had a negative net worth of $22,637.35 as of February 29, 2008. (Docket No. 21 at p. 2). The accounting also shows that Frederick had $25,607.58 in cash as of the same date. (Docket No. 21 at p. 1). Frederick did not declare any educational expenses, and he only declared $400 to $500 in monthly medical expenses. (Docket No. 21 at p. 9).

*

17.    On March 12, 2008, Mr. Young again called me regarding possible settlement of this action. Mr. Young explained to me that Mr. Frederick wanted to stop incurring legal costs, that Mr. Frederick wanted to conclude this action as soon as possible and that he was amenable to consenting to permanent injunctions against him and Tuco, prohibiting them from committing future violations of both the broker-dealer registration and antifraud provisions of the federal securities laws. Mr. Young also informed me that Mr. Frederick wanted to focus upon his family because his wife was eight months pregnant and because he had a son who had medical issues. I informed Mr. Young that Mr. Frederick would also have to consent to pay disgorgement of any ill-gotten gains and a civil penalty in amounts to be determined at a later time, which could be waived (disgorgement) or not assessed (civil penalty) if warranted after examining his clients' sworn financial statements. I further informed Mr. Young that one of the consequences to a permanent injunction was that the Commission would seek to bar Mr. Frederick from future association with a broker or dealer, in an administrative proceeding before an administrative law judge of the Commission, based upon the entry of the injunction. Mr. Young told me that Mr. Frederick was resigned to the fact that he would receive at least a suspension in the administrative proceeding.

18.    On March 12, 2008, I again spoke with Mr. Young along with Mr. Searles. Mr. Searles and I informed Mr. Young that Mr. Frederick and Tuco could consent to permanent injunctions without an asset freeze order issued against Mr. Frederick or they could consent to preliminary injunctions where Mr. Frederick would be subject to an asset freeze but be able to use an amount for reasonable living expenses.

19.    On March 13, 2008, I participated in a conference call with Mr. Searles, Mr. Young, and Ms. Fron. During the call, Mr. Young and Ms. Fron asked whether Mr. Frederick would be able to spend any amounts he earned if he were subject to an asset freeze. I responded that if an asset freeze were in place, Mr. Frederick would be able to spend any new amounts he earned if they were not the proceeds of securities law violations. I also explained that Mr. Frederick could use frozen funds if pursuant to an order of the Court for reasonable living expenses. Mr. Searles and I explained that the consent to a permanent injunction, and the

-5-

1  permanent injunction's issuance, meant that Mr. Frederick could not challenge the allegations of

2  the Commission's complaint in this action in any subsequent Commission action. I further

3  explained that, once the Court entered a permanent injunction against Mr. Frederick, the

4  Commission would within twenty (20) days institute an administrative proceeding against Mr.

5  Frederick based upon the permanent injunction and would seek to bar him from further

6  association with any broker or dealer. I also stated that the Commission's staff would be willing

7  to discuss settlement of the administrative proceeding at a later time but that the administrative

8  proceeding could not be settled before the entry of a permanent injunction in this action should

9  Mr. Frederick consent.

10      20.    On March 13, 2008, Mr. Young and Ms. Fron informed me and Mr. Searles that

11  Mr. Frederick had decided that he and Tuco would consent to permanent injunctions against

12  future broker-dealer registration and antifraud violations of the federal securities laws,

13  disgorgement with prejudgment interest and civil penalties in amounts to be determined at a later

14  time, and other relief but no asset freeze against Mr. Frederick. Mr. Searles and I provided drafts

15  of consents and judgments for Mr. Frederick and Tuco to Ms. Fron. After discussing various

16  comments from Ms. Fron, Mr. Searles and I provided her with execution copies. She and Mr.

17  Frederick returned them with his notarized signature on each consent and her signature on each

18  consent approving the consents as to form. On March 17, 2008, the Court issued the consent

19  judgments against Mr. Frederick and Tuco.

20      21.    On April 8, 2008, the Commission instituted an administrative proceeding against

21  Mr. Frederick based upon the entry of the Court's permanent injunction against him. A true and

22  correct copy of the Order Instituting Proceedings is attached hereto as Exhibit 5.

23      22.    On May 19, 2008, the Court in the administrative proceeding issued an Order,

24  which set forth the briefing schedule for the Commission's Division of Enforcement and

25  Frederick to file their respective motions for summary disposition. A true and correct copy of

26  the May 19 Order is attached hereto as Exhibit 6.

27      23.    Both the Division of Enforcement and Mr. Frederick filed motions for summary

28  disposition in the administrative proceeding. On July 30, 2008, the Division of Enforcement

1    filed its opposition to Frederick's motion for summary disposition. A true and correct copy of

2    the Division of Enforcement's July 30, 2008 opposition is attached hereto as Exhibit 7.

3          24.      On August 8, 2008, I received a copy of Mr. Frederick's reply to the Division of

4    Enforcement's Motion for Summary Disposition in the administrative proceeding. In that reply,

5    Mr. Frederick attached both his motion for vactur in this action and his supporting declaration as

6    exhibits. A true and correct copy of Mr. Frederick's August 8, 2008 reply brief in the

7    administrative proceeding is attached hereto as Exhibit 8.

8

9

10        I declare under penalty of perjury that the foregoing is true and correct.

11        Executed on September **3**, 2008, at Los Angeles, California.

12

13

14

15                         Roberto A. Tercero

16

17

18

19

20

21

22

23

24

25

26

27

28

List of Exhibits

| Exhibit | Description |
|---------|-------------|
| 1 | Tercero E-Mail to Frederick, dated February 7, 2008 |
| 2 | Frederick E-Mail to Tercero, dated February 9, 2008 |
| 3 | Tercero E-Mail of Letter to J. Stephen Young, dated February 12, 2008 |
| 4 | Tercero E-Mail to Penson, dated March 3, 2008 |
| 5 | Order Instituting Administrative Proceedings against Frederick ("*In re Frederick*"), dated April 8, 2008 |
| 6 | Order Following Prehearing Conference – *In re Frederick*, dated May 19, 2008 |
| 7 | Division of Enforcement's Opposition to Frederick's Motion for Summary Disposition – *In re Frederick*, dated July 30, 2008 |
| 8 | Frederick's Reply in Support of his Motion for Summary Disposition – *In re Frederick*, dated August 8, 2008 |

-8-

08cv400

1

**PROOF OF SERVICE**

2  I am over the age of 18 years and not a party to this action.  My business address is:

3  U.S. SECURITIES AND EXCHANGE COMMISSION, 5670 Wilshire Boulevard, 11th
   Floor, Los Angeles, California 90036-3648

4  Telephone No. (323) 965-3998; Facsimile No. (323) 965-3908.

5  On September 4, 2008, I caused to be served the document entitled **DECLARATION OF
   ROBERTO A. TERCERO IN SUPPORT OF PLAINTIFF'S OPPOSITION TO**

6  **DEFENDANTS' MOTION UNDER FED. R. CIV. P. 60(b)(6) FOR VACATUR OF THE
   JUDGMENT** on all the parties to this action addressed as stated on the attached service list:

7
   [ ]   **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and
8         mailing today following ordinary business practices.  I am readily familiar with this
          agency's practice for collection and processing of correspondence for mailing; such
9         correspondence would be deposited with the U.S. Postal Service on the same day in the
          ordinary course of business.

10
          [ ]   **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I
11              personally deposited with the U.S. Postal Service.  Each such envelope was
                deposited with the U.S. Postal Service at Los Angeles, California, with first class
12              postage thereon fully prepaid.

13        [ ]   **INTERNATIONAL REGISTERED MAIL, RETURN RECEIPT
                REQUESTED:**  Each such envelope was deposited in a facility regularly
14              maintained at the U.S. Postal Service for receipt of International Registered Mail,
                Return Receipt Requested at Los Angeles, California, with International
15              Registered Mail, Return Receipt Requested postage paid.

16 [ ]   **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of
       the addressee as stated on the attached service list.

17
   [ ]   **FEDERAL EXPRESS:**  By placing in sealed envelope(s) designated by Federal Express
18        with delivery fees paid or provided for, which I deposited in a facility regularly
          maintained by Federal Express or delivered to a Federal Express courier, at Los Angeles,
19        California.

20 [X]   **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the
       electronic mail address as stated on the attached service list.

21
   [ ]   **FAX:**  By transmitting the document by facsimile transmission.  The transmission was
22      reported as complete and without error.

23 [X]   **(Federal)**  I declare that I am a member of the bar of this Court.  I declare under penalty
       of perjury that the foregoing is true and correct.

24

25 Date: September 4, 2008                    /s/ Donald W. Searles
                                              Donald W. Searles
26

27

28

1

08 CV 00400 DMS (BLM)

**SEC v. TUCO TRADING and DOUGLAS G. FREDERICK**
**United States District Court – Southern District of California**
**Case No. 08 CV 00400 DMS (BLM)**
**(LA-3458)**

SERVICE LIST

Daniel G. Viola, Esq.
Sadis & Goldberg LLP
551 5th Avenue, 21st Floor
New York, NY 10176
Telephone: (212) 573-8038
Facsimile: (212) 573-8140
Email: dviola@sglawyers.com
***Counsel to Defendant Douglas G. Frederick***

Dennis R. Hirsch, Esq.
Sadis & Goldberg LLP
50 California Street, Suite 2320
San Francisco, CA 94111
Telephone: (415) 490-0563
Facsimile: (415) 391-1377
Email: drhirsch@sglawyers.com
***Counsel to Defendant Douglas G. Frederick***

David L. Osias, Esq.
Debra A. Riley, Esq.
Ted Fates, Esq.
Allen Matkins Leck Gamble Mallory & Natsis LLP
501 W. Broadway, 15th Floor
San Diego, CA 92101-1158
Telephone: (619) 233-1155
Facsimile: (619) 233-1158
Email: dosias@allenmatins.com
Email: driley@allenmatkins.com
Email: tfates@allenmatkins.com
***Counsel to Receiver Thomas F. Lennon***

James S. Barber, Esq.
Clausen Miller P.C.
10 South LaSalle Street
Chicago, IL 60603
Telephone: (312) 606-7712
Facsimile: (312) 606-7500
Email: jbarber@clausen.com
***Counsel to GLB Trading, Inc.***

Mark G. Hanchet, Esq.
Mayer Brown Rowe & Maw LLP
1675 Broadway
New York, NY 10019-5820
Telephone: (212) 506-2695
Email: mhanchet@mayerbrown.com
***Counsel to Penson Financial Services***

2