DENNIS R. HIRSCH, Cal. Bar No. 194243
drhirsch@sglawyers.com
DANIEL G. VIOLA, Pro Hac Vice
dviola@sglawyers.com

SADIS & GOLDBERG LLP
50 California Street, Suite 2320
San Francisco, California 94111
Tel: (415) 490-0563

Counsel for Defendants
Tuco Trading LLC and Douglas G. Frederick

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>TUCO TRADING, LLC and DOUGLAS G. FREDERICK,<br><br>Defendants. | Case No.: 08 CV 00400 DMS (BLM)<br><br>DECLARATION OF DOUGLAS G. FREDERICK IN FURTHER SUPPORT OF THE MOTION UNDER FED.R.CIV.P. 60(B)(6) FOR VACATUR OF THE JUDGMENT<br><br>Date:  September 19, 2008<br>Time:  1:30 p.m.<br>Place: Courtroom 10<br>       (Honorable Dana M. Sabraw) |

SEC V. TUCO AND FREDERICK, CASE NO. 08-CV-00400

I, DOUGLAS G. FREDERICK, hereby declare, pursuant to 28 U.S.C. §1746, as follows:

1. I make and submit this declaration in further support of the motion, pursuant to Fed.R.Civ.P. 60(b)(6), to vacate of the judgment of March 31, 2008. I have personal knowledge of all matters set forth herein and, if called as a witness, could and would competently testify under oath hereto.

2. The primary purpose of this declaration is to address the following three points: (i) to provide evidence that Tim Davis's declaration, submitted by the SEC, is contradictory to what Penson actually did to shut down Tuco's accounts; (ii) to provide declaratory evidence about the SEC's recent attempts to have my former counsel breach the attorney-client privilege; and (iii) to explain how the commencement of my son's new treatment plan made it difficult to determine what monthly expenses would result from it.

*Penson Shut Down the Tuco Accounts Immediately After the SEC Called on March 3rd*

3. Despite the declaration from Tim Davis, in-house counsel at Penson, the Tuco accounts were not shut down because of an outstanding margin call and "without consideration of the SEC's prior request". In fact, it is clear that the Tuco accounts were shut done exclusively in response to the SEC's request made at 11:15 a.m. CT. (9:15 a.m. PT) on Monday, March 3rd.

4. In my earlier declaration, dated August 7th, 2008, and submitted with the initial moving papers, I discussed how Tuco was required to satisfy margin calls on a weekly basis and did so by borrowing money from one of the McDonald Entities, each of which had a Penson account as well.

5. And every Friday, Tuco would repay the appropriate McDonald Entity by having the assets transferred from the Tuco accounts back to a McDonald account.

6. On Monday, March 3rd, however, Penson rejected the "journal" of funds from a McDonald account into the Tuco accounts. Our attempts to have the funds journaled to the Tuco accounts on March 3rd were made after 11:15 a.m. CT.

7. Penson's refusal to transfer the funds left the margin call outstanding as of March 3rd.

8. According to Tim Davis, however, Tuco accounts were restricted as of March 5th, not March 3rd, due to the outstanding margin calls.

9. But an email sent by Penson's Margins Department to GLB on March 3rd makes it clear as to why the attempt to cover the margin call was rejected. Attached as Exhibit 1 hereto is an email, sent on March 3rd, from Tammy Albright at Penson to GLB, confirming that "no journals will be done into or out of any of the Tuco accounts". This email, which was in accordance with the compliance department's order, resulted in the rejection of our attempt to cover the margin call.

10. Moreover, this email made it clear that Penson intended to immediately shut down all aspects of the Tuco accounts, not just prohibit withdrawals or deposits. Albright's email states that the accounts will "most likely be closed tomorrow [March 4th], so don't let any trade [sic] in the accounts".

11. Yet, somehow, Tim Davis's declaration claims that Penson did not close the accounts due to the SEC's call but, instead, due to the outstanding margin calls discovered on March 5th. Tim Davis was not involved in any of the calls or decisions and is simply cooperating with the SEC, the governmental agency that regulates Penson as well.

12. Accordingly, the Court should discredit every aspect of Mr. Davis's declaration.

*The SEC Recently Called My Former Counsel*

13. On or about August 26th, 2008, I received a call from Steve Young, a partner at the law firm of Keesal, Young & Logan, the former counsel for Tuco Trading LLC and myself. Without providing details, Mr. Young was calling to inform me that he had been contacted by the SEC seeking Mr. Young's cooperation with their opposition to the instant motion.

SEC V. TUCO AND FREDERICK, CASE NO. 08-CV-00400

14. Mr. Young later advised me, in writing, that he did not, and would not, discuss with the SEC conversations we had as they are covered under the attorney-client privilege.

15. In light of the timing of the SEC's request, they undoubtedly sought to use my former counsel against me and the instant motion.

*It Was Difficult to Determine My Family's Medical Expenses as of March 11th, 2008*

16. The SEC challenges my assessment of my family's on-going medical expenses as stated in my earlier declaration. The SEC refers back to my Statement of Financial Condition, submitted on March 11th, which has a lower assessment of such monthly medical expenses.

17. What the SEC overlooks is the new medical treatment plan that my son commenced just a few weeks before March 11th. In fact, we had not even met the program's doctors as of that day. Jack was admitted to the program following the February evaluation so it was difficult to determine exactly what to expect the costs to be and, more importantly, how much of those costs would be covered by our health insurance carrier.

18. In short, Jack had just started a new treatment plan and we could only guess what the actual costs of this treatment would be. The costs listed in my prior declaration are accurate.

*Conclusion*

19. As more fully discussed in the accompanying memorandum of law, I was under incredible pressure as a result of all of the circumstances arisen by this action and the SEC's pending emergency motion. These circumstances, whether considered individually or in their totality, were extraordinary and serve as the basis for this Court to vacate the judgment entered upon my consent.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 11, 2008, at La Jolla, California.

_____
Douglas G. Frederick